1
2
3
4
5

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NATURAL RESOURCES DEFENSE COUNCIL, et al.,** | **1:05-CV-01207 OWW TAG** |
| **Plaintiffs,** | **ORDER RE: PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD (DOC 183)** |
| **v.** | |
| **GALE A. NORTON, in her official capacity as Secretary of the Interior, et al.,** | |
| **Defendants.** | |

**I.   INTRODUCTION**

Plaintiffs, a coalition of environmental groups, challenge the legal validity of a Biological Opinion issued by the United States Fish and Wildlife Service ("USFWS") concerning the coordinated operation of the Central Valley Project ("CVP") and State Water Project ("SWP").  Before the court for decision is Plaintiff's motion to supplement the administrative record. (Doc. 183, filed Mar. 8, 2006.)  Plaintiff's original motion to supplement sought to add twenty-two (22) documents to the administrative record. (*Id*.)  The federal defendants stipulate to adding Documents 2, 3, 5, 6, 7, and 8 to the record, but oppose adding any of the remaining sixteen (16) documents. (Doc. 195, filed Mar. 27, 2006.)  All other parties have filed oppositions.  (Doc. 194 (San Luis & Delta-Mendota and Westlands), Doc. 196 (DWR), Doc. 197 (Glenn-Colusa's Joinder).)

**1**

## II.   THE DOCUMENTS IN DISPUTE[1]

**Document 1:**   Herren and Kawasaki, Inventory of Water Diversions in Four Geographic Areas in California Central Valley, California Fish and Game Fish Bulletin, 179:343-355 (2001).

[2001 California Department of Fish and Game document examining potential impacts of unscreened water diversions in the Delta smelt's critical habitat on fish species, including the smelt.]

**Document 4:**   Close et al., A Strategic Review of CALSIM II and its Use for Water Planning, Management, and Operations in Central California (December 4, 2003).

[Peer review of CALSIM II model as basis for predicting effects of water operations.]

**Document 9:**   Summary of Annual Joint Meeting of California Bay-Delta Authority and Bay-Delta Public Advisory Committee (December 8-9, 2004).

[Summary of proceedings of CALFED meeting.]

**Document 10:**   Climate Change Uncertainties & CALFED Planning: What Are Current Observations and Models Saying? Powerpoint presentation by Michael Dettinger, U.S. Geological Survey at the Scripps Institute for Oceanography, et al. to Bay-Delta Authority (December 8, 2004).

[CALFED Powerpoint presentation re global climate change.]

**Document 11:**   Summary of Annual Joint Meeting of California Bay-Delta Authority and Bay-Delta Public Advisory Committee (February 9-10, 2005).

[Summary of proceedings of CALFED meeting.]

**Document 12:**   Letter from H. Candee and K. Poole, NRDC, to S. Thompson re Consultation on OCAP: Significant New Delta Smelt Information, Service (Feb. 14, 2005).

[NRDC letter to Service re new information on smelt relevant to ongoing OCAP consultation.]

---

[1]   The descriptions of these documents, included in brackets beneath the citation, was taken directly from Plaintiff's most recent filing, summarizing the documents in dispute.   (Doc. 206.)

**Document 13:**    Delta smelt abundance trends, Powerpoint
presentation by Chuck Armor, DFG, to Bay-Delta
Authority (February 9, 2005) (Att. 1 to NRDC
letter).

[CALFED Powerpoint presentation re smelt
population abundance.]

**Document 14:**    Letter from Enrique Manzanilla, EPA to Joe
Thompson, U.S. Bureau of Reclamation, with EPA
Comments on Draft Environmental Assessment for
Renewal of Long-Term Contract for Delta-Mendota
Canal (Dec. 15, 2004 ) (Att. 3 to NRDC letter).

[Letter discussing full amount of water projected
to be exported from Delta pursuant to OCAP.]

**Document 15:**    Letter from Wayne Nastri, EPA, to Kirk C. Rodgers,
Bureau of Reclamation, w/ EPA comments on DEIS for
Renewal of Long Term San Luis Contractors (Jan.
25, 2005) (Att. 4 to NRDC letter).

[Letter discussing full amount of water projected
to be exported from Delta pursuant to OCAP.]

**Document 16:**    Comment letter from NRDC to Buford Holt, Bureau of
Reclamation re Draft EIS re Long-Term Renewal
Contracts for Sacramento River Settlement
Contractors (w/ attached CALSIM II modeling
report) (Nov. 15, 2004) (Att. 5 to NRDC letter).

[Letter discussing full amount of water projected
to be exported from Delta pursuant to OCAP.]

**Document 17:**    Bureau of Reclamation CVP Schedule A12 (chart)
Historical & Projected Water Deliveries (Jan. 20,
2004) (Att. 6 to NRDC letter).

[Bureau of Reclamation chart showing projected
future water deliveries pursuant to OCAP
significantly higher than those assumed in the
BiOp.]

**Document 18:**    Memorandum from Kenneth Sanders, USFWS, to Richard
Stevenson, Bureau of Reclamation, re Comments on
Central Valley Project Long-Term Water Service
Contracts (Dec. 27, 2004) (Att. 7 to NRDC letter).

[Letter from Service to Bureau of Reclamation re
Bureau's failure to comply with requirements to
protect listed species under a biological opinion
on implementation of the Central Valley Project
Improvement Act ("CVPIA").]

**Document 19:**   Letter from Enrique Manzanilla, EPA to Buford
Holt, U.S. Bureau of Reclamation, with EPA
Comments on Draft Environmental Impact Statement
for Renewal of Long-Term Contracts for Sacramento
River Settlement Contractors (Nov. 15, 2004) (Att.
8 to NRDC letter).

[Letter from EPA to Bureau of Reclamation
expressing concerns re Bureau's failure to
implement CVPIA provisions intended to restore
fisheries and overallocation of water to detriment
of water quality.]

**Document 20:**   Supplemental Biological Opinion on CVP and SWP
Operations, April 1, 2004 through March 31, 2006
(Feb. 27, 2004).

[Biological opinion by National Marine Fisheries
Service on CVP-SWP operations that evidences
Service knowledge of loss of mitigation water
available to protect smelt and other fish.]

**Document 21:**   Future Water Availability in the West: Will there
be enough? Powerpoint presentation by M. Dettinger
to 24th Annual Conference on Water, Climate and
Uncertainty: Implications for Western Water Law,
Policy, and Management (June 11-13, 2003).

[Powerpoint re effects of global climate change on
availability of water in the western United
States.]

**Document 22:**   Letter from John W. Keys, Bureau, to Hon. George
Miller, House of Representatives re Bureau's
renewal of CVP water contracts (Dec. 23, 2004).

[Letter from Bureau of Reclamation to
congressperson re water quantities expected to be
exported from the Delta under OCAP.]

### III.   APPLICABLE LEGAL STANDARD

Section 706 of the Administrative Procedure Act (APA), 5
U.S.C. § 706, provides for judicial review of federal
administrative actions based upon "the whole record or those
parts of it cited by the party."  In general, review should be of
"the full administrative record that was before the [agency
decisionmaker] at the time he made his decision."  *Citizens to*

**4**

*Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

"[T]he focal point for judicial review should be the   The Ninth

Circuit recognizes several exceptions to this general rule,

however.   District courts are permitted to admit extra-record

evidence:

> (1)   if admission is necessary to determine whether the
>        agency has considered all relevant factors and has
>        explained its decision,

> (2)   if the agency has relied on documents not in the
>        record,

> (3)   when supplementing the record is necessary to explain
>        technical terms or complex subject matter

> (4)   when plaintiffs make a showing of agency bad faith.[2]

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2004).

These limited exceptions operated to identify and plug holes in

the administrative record...[and] are narrowly construed and

applied."   *Id.*

> The scope of these exceptions permitted by our
> precedent is constrained, so that the exception does
> not undermine the general rule.   Were the federal
> courts routinely or liberally to admit new evidence
> when reviewing agency decisions, it would be obvious
> that federal courts would be proceeding, in effect, de
> novo, rather than with the proper deference to agency
> process, expertise, and decision-making.

*Id.* at 1030.

Plaintiffs rely primarily on the second exception allowing

for supplementation when the agency relied on documents not in

the record:

---

[2]   Plaintiffs make no allegation of bad faith under the
fourth exception here.

**5**

1
2
3
4
5

> The "whole record" includes everything that was before the agency pertaining to the merits of its decision. An incomplete record must be viewed as a "fictional account of the actual decisionmaking process." When it appears the agency has relied on documents or materials not included in the record, supplementation is appropriate.... If the record is not complete, then the requirement that the agency decision be supported by "the record" becomes almost meaningless.

6 *Portland Audubon Soc. v. Endangered Species Cmte.*, 984 F.2d 1534,

7 1548 (9th Cir. 1993).  When analyzing a motion to supplement the

8 administrative record on the ground that supplementation would

9 complete the "whole record" (i.e., an open-ended request for

10 supplementation, rather than a request that the court consider

11 documents for one of the specific purposes articulated in

12 exceptions one and three), the crux of the analysis is whether

13 the documents and materials were actually considered, directly or

14 indirectly, by the agency decisionmakers.  *See Thompson v. United*

15 *States Dept. of Labor*, 885 F.2d 551, 555-56 (9th Cir. 1989).

16
17

## IV.  __ANALYSIS__

18      Plaintiffs argue that fourteen of the disputed documents (4,

19 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 22) should be

20 added to the administrative record.[3]  Plaintiffs argue in the

21 alternative that all of these documents, along with documents 1

22 and 21, should be considered by the district court under the

23

24      [3]    Although Plaintiffs suggest in their "Supplemental
25 Summary of Documents in Dispute" several bases for the inclusion
in the administrative record of all 16 remaining disputed
26 documents (Doc. 206), Plaintiffs did not argue in their opening
brief for the inclusion of Documents 1 and 21 in the
27 administrative record (Doc. 183).  Rather, Plaintiffs' opening
brief only suggested that Documents 1 and 21 should be admitted
28 under the "relevant factors" and "complex matters" exceptions.

"relevant factors" and "complex matters" exceptions.

As discussed, the federal defendants do not object to supplementing the record with Documents 2, 3, 5, 6, 7, and 8. The federal defendants concede that these six documents "are important documents associated with regional water management, were known to (and in most instances, signed by) the Service, provide information relevant to the project description in the 2005 OCAP BiOp, and therefore were, arguably, indirectly considered by the Federal Defendants at the time the decision was made."  Federal defendants have also become aware of and voluntarily added to the administrative record three additional documents: (1) *Trends in Fall Midwater Trawl Abundance Index for Delta Smelt*, Drs. Many, Buryan, William J. Miller, and Tracy Hillman (Apr. 17, 2002); (2) Estimating the Population of Sub-Adult Delta Smelt, Miller, William J. and Allison Britton (July 2, 2002); and (3) *Converting Sub-Adult Delta Smelt Population Estimates to Estimates of Adult Population*, Miller, William J. (July 8, 2002).

The federal defendants and intervenor-defendants object to supplementation with or consideration of the remaining sixteen documents.

//

//

//

//

//

//

//

**7**

**A.   Request to Add Documents to the Administrative Record**.

### 1.   Federal Defendants' General Arguments Concerning *Linemaster* and *Kent County.*

Federal defendants point to a line of cases from the D.C. Circuit that hold, essentially, that agencies are not obligated to "comb" through all of their files for potentially relevant data prior to compiling an administrative record. *See Linemaster Switch Corp v. EPA*, 938 F.2d 1299, 1305 (D.C. Cir. 1991); *Kent County, Delaware Levy Court v. EPA*, 963 F.2d 391 (D.C. Cir. 1992).

In *Linemaster*, the D.C. Circuit denied a plaintiff's request to supplement the record with data because plaintiff failed to submit the data to the appropriate agency officials and failed to "flag the data as relevant" during the administrative decisional process  Rather, plaintiff submitted the data to an entirely different branch of the agency pursuant to an unrelated administrative consent order and never sent the data to anyone involved with making the particular rule in dispute.  The D.C. Circuit held that the data was not "before" the agency decisionmakers.  938 F.2d at 1306.  In addition, the D.C. Circuit noted that the plaintiff could have submitted the data to the proper officials within days of the close of the public comment period,[4] citing 53 Fed. Reg. 23,990 (announcing that EPA will continue to consider late-filed comments "to the extent

---

[4]     The parties note that there is no formal timeline or requirement with respect to public comment in ESA Section 7 review, which the Plaintiff contends distinguishes this case from the NEPA review in *Linemaster.*

1   practicable"). *Id.* at 1305-06.  The D.C. Circuit held that

2   allowing supplementation under such circumstances would

3   "effectively require EPA to comb all regional files for

4   potentially relevant data before listing a site on the [the

5   National Priorities List (NPL) for cleanup under CERCLA], and

6   would be inconsistent with our prior decisions emphasizing the

7   necessarily abbreviated nature of the listing process and

8   tolerating somewhat cursory agency actions and explanations in

9   that context."  *Id.* at 1306 (emphasis added).

10        In *Kent County*, the D.C. Circuit reached the opposite

11  conclusion with respect to certain documents.  963 F.2d at 292-

12  93.  In *Kent County* the party requesting supplementation "never

13  knew the documents existed until after the EPA issued its

14  decision."  The D.C. Circuit found that the agency "was at least

15  negligent in failing to discover [the documents in question] when

16  it searched for documents to support its position..."

17  Critically, however, the D.C. Circuit noted:

18              We do not think that it was the EPA's responsibility to
            find all documents discussing [the issue] located in
19          any office of the EPA.  Here, however, because the EPA
            itself looked outside its national CERCLA files and
20          relied on a single memorandum from another program
            (RCRA), we think it was arbitrary and capricious for
21          the agency not to examine the Region III CERCLA files
            for documents discussing filtration before relying on
22          the single RCRA memorandum. This is true particularly
            in a case like this one where the EPA's policy
23          regarding filtration varies region to region. Had the
            EPA simply checked the files at the Region III office,
24          it would have found the documents that discuss what
            appears to be a well-aired debate [over the issue]. The
25          documents relate to the position of the agency's own
            experts on the question central to this case. To deny
26          their relevance would be inconsistent with rational
            decisionmaking by an administrative agency.

27
    *Id.* at 293 (emphasis added)(internal citations omitted).
28

**9**

1    Here, the federal defendants urge the district court to

2  follow *Linemaster* and deny supplementation here on the ground

3  that plaintiffs failed to timely bring documents 1, 2, 3, 5, 10,

4  13, 16, 19, and 21 to the attention of appropriate officials.

5  The federal defendants also argue that *Kent County* reaffirms the

6  general rule that it is <u>not</u> the agency's responsibility to find

7  *all* documents discussing a particular issue located in any office

8  of the agency.  Finally, federal defendants maintain that the

9  narrow exception articulated in *Kent County* – which provides for

10 supplementation where the agency's search for relevant documents

11 was negligent – does not apply here where there is no evidence of

12 such negligence.

13   Federal defendants' reliance upon this line of cases is

14 misplaced.  Both cases concern the unique and "abbreviated" NPL

15 listing process under CERCLA.  *Linemaster* specifically noted that

16 the D.C. Circuit has tolerated "somewhat cursory agency actions

17 and explanations in that context."  In contrast, ESA Section 7

18 review of the OCAP by USFWS is not even arguably an "abbreviated"

19 process.  *Linemaster* and *Kent County* are simply inapposite.

20

21              **2.   Document-Specific Arguments.**

22   The disputed documents can be divided into two categories:

23 (a) CALFED-Related documents, and (b) comment letters submitted

24 by Plaintiffs and documents attached thereto.  As discussed, the

25 critical question is whether the agency considered the documents

26 in question, either directly or indirectly, in reaching their

27 decision.

28

**10**

### a. *CALFED-Related Documents*.

Plaintiffs summarize their arguments as to the CALFED documents:

> The Service's attempt to divorce itself from knowledge of relevant CALFED proceedings is astounding. The Service is an active member of CALFED, a consortium of state and federal agencies formed to improve "the health of the San Francisco Bay/Sacramento-San Joaquin River Delta." The Service is charged by law to protect the Delta smelt, a species wholly dependent on the Delta ecosystem. Yet the Service would have the Court believe that its regional manager attends CALFED meetings, hears and discusses presentations on topics highly pertinent to the survival and recovery of the Delta smelt and to water project impacts on that species that it is required by the ESA to analyze, but leaves these meetings with no obligation to pass that information on to staff working on the BiOp regarding the impacts of a major project that will allow significant increases in water exports from the smelt's critical habitat. The Service cannot evade having to consider relevant information put before it by not choosing not to direct it to the right staff members, especially in light of its ESA-mandated duty to use the best scientific data available to insure that the Delta smelt is not jeopardized. Moreover, information in the Service's record refutes any notion that it does not participate regularly and extensively in CALFED on matters pertaining to Delta smelt.  See, e.g., AR 9225-26 (Letter dated Jan. 23, 2004, from R. Rempel, Cal. Dept. of Fish and Game, to W. White, Service: "We have worked with you and others through the CALFED collaborative process to manage this species with respect to take at the State and Federal water project pumps....We will continue to work with your agency at all levels...to ensure recovery of this species.")

(Doc. 205, at 4 (internal citations omitted)).

The federal defendants and DWR raise what is essentially a "slippery slope" objection to the inclusion of <u>any</u> of these CALFED documents, asserting that if these documents are added to the record, it opens the door for the inclusion of all CALFED documents.  But, to adopt the federal defendants' position outright would absolve participating agencies from any responsibility for forwarding or considering relevant material

**11**

from the CALFED process directly to decisionmakers within the agency.  This would ignore working data and information known to the agency in implementing one of the central purposes of CALFED in which the USFWS participates:  to share information between and coordinate the activities of the various participating agencies.[5]  Contemporaneous documents used by the USFWS in its coordination with other state and federal agencies to comply with ESA requirements, water qaulity standards, and the CVPIA are necessarily relevant to ESA Section 7 review.  As a participant in CALFED, USFWS should have considered and provided obviously relevant material from CALFED to the appropriate USFWS officials participating in the Section 7 process.  Documents presented to CALFED were "before" USFWS and if they were obviously relevant they should have been placed "before" the officials in charge of making decisions regarding the 2005 OCAP BiOp.

Whether this obligation to provide documents to appropriate

---

[5]    Regarding operational coordination,

Operators of the California State Water Project (SWP) and the federal Central Valley Project (CVP) recognized that compliance with underlined(endangered species protections), water quality standards, and provisions of the Central Valley Project Improvement Act would require project operations to be coordinated even more closely than in the past. To help ensure this coordination, representatives of the two projects and the other CALFED agencies meet regularly to manage day-to-day project operations. The deliberations of this Operations Group or "Ops Group" are conducted in consultation with water user, environmental, and fishery representatives.

http://calwater.ca.gov/AboutCalfed/AboutCalfedOperationalCoordination.shtml

USFWS individuals within the agency justifies supplementation of the administrative record and whether the particular documents highlighted by Plaintiffs from CALFED studies and meetings belong in the administrative record are more difficult questions. Plaintiffs submit six documents, 4, 9, 10, 11, 13, and 20 under this rubric:

**Document 4**     Close et al., A Strategic Review of CALSIM II and its Use for Water Planning, Management, and Operations in Central California (December 4, 2003).

[Peer review of CALSIM II model as basis for predicting effects of water operations.]

**Document 9**     Summary of Annual Joint Meeting of California Bay-Delta Authority and Bay-Delta Public Advisory Committee (December 8-9, 2004).

[Summary of proceedings of CALFED meeting.]

**Document 10**    Climate Change Uncertainties & CALFED Planning: What Are Current Observations and Models Saying? Powerpoint presentation by Michael Dettinger, U.S. Geological Survey at the Scripps Institute for Oceanography, et al. to Bay-Delta Authority (December 8, 2004).

[CALFED Powerpoint presentation re global climate change.]

**Document 11**    Summary of Annual Joint Meeting of California Bay-Delta Authority and Bay-Delta Public Advisory Committee (February 9-10, 2005).

[Summary of proceedings of CALFED meeting.]

**Document 13**    Delta smelt abundance trends, Powerpoint presentation by Chuck Armor, DFG, to Bay-Delta Authority (February 9, 2005) (Att. 1 to NRDC letter).

[CALFED Powerpoint presentation re smelt population abundance.]

//

//

1  **Document 20:**   Supplemental Biological Opinion on CVP and
2              SWP Operations, April 1, 2004 through March
              31, 2006 (Feb. 27, 2004).

3              [Biological opinion by National Marine
              Fisheries Service on CVP-SWP operations that
4              evidences Service knowledge of loss of
              mitigation water available to protect smelt
5              and other fish.]

6       Federal defendants object to the inclusion of any of these

7  documents on the ground that they simply were not considered by

8  the agency because either (1) the underlying information

9  contained within the disputed documents was already being

10 considered by the agency or (2) the content of the document

11 simply does not warrant inclusion in the administrative record.

12 If the information was already being considered, the foundation

13 is provided to ascertain whether USFWS arbitrarily ignored it.

14      **Document 4,** dated December 4, 2003, is a peer review of

15 CALSIM II, a model used to evaluate the effects of CVP and SWP

16 operations on various species including the Delta smelt.  There

17 appears to be no dispute that USFWS received this document

18 because of its membership in the CALFED Bay-Delta Authority.  The

19 federal defendants object to the inclusion of this document in

20 the record because it "was not considered by the Service during

21 its development of the 2005 OCAP BiOp."  Specifically, federal

22 defendants point out that the document merely "presents a 'wish

23 list' of things that the authors would like to see implemented in

24 future efforts to develop or apply water management models, based

25 upon future efforts of a peer-review panel that has not

26 convened."  (Doc. 195 at 12.)  Plaintiffs offer no response.  As

27 discussed, the critical inquiry is whether the documents and

28 materials were actually considered, directly or indirectly, by

**14**

the agency decisionmakers.  *Thompson,* 885 F.2d at 555-56.

Although admission of this document may be appropriate under one

of the other exceptions, Plaintiffs have not shown how the

content of this document is not otherwise represented by

information already in the record.  The request to supplement the

record with Document 4 is **DENIED.**

**Documents 9 and 10** concern the issue of global climate

change, which Plaintiffs allege poses a significant threat to the

delta smelt.  Plaintiffs maintain that these two documents should

have been considered in preparing the BiOp.  A review of

Documents 9 and 10 revels they do not obviously relate to issues

in this case any more than would any other CALFED document.  FWS

denies that anyone within the agency ever considered these

documents when preparing the OCAP BiOp.  The request to

supplement the record with these documents is **DENIED.**

**Document 11** is a summary of the proceedings of CALFED

meetings held on February 9 and 10, 2005.  The minutes explain

that during one of those two sessions, Chuck Armor, from the

California Department of Fish and Game, provided an update to

CALFED members on Delta fish trends.  A page-long section of the

summary discusses delta smelt population trends.  The first

sentence of that section states:

> Mr. Armor, program manager for the Interagency
> Ecological Group (IEP), said the briefing was prompted
> by data showing that estimates of Delta smelt appear to
> be at their lowest since 1964.

(Document 11 at 5.)  Arguably, although the title of this

document does not reveal the nature of the information contained

therein, the content of Mr. Armor's presentation should also have

**15**

1   been passed along by USFWS's CALFED representative to the

2   relevant decisionmaker within the agency.  However, federal

3   defendants object that the minutes themselves were not produced

4   until mid-April 2005, two months after the issuance of the OCAP-

5   BiOp in February 2005.  Post-decisional documents are not

6   ordinarily included in the administrative record.  *See Rock Creek*

7   *Alliance v. United States Fish and Wildlife Serv.,* 390 F. Supp .

8   2d 993, 998 (D. Mont. 2005)(refusing to consider post-decisional

9   information not available to the agency in that particular form

10  at the time of the decision).  Federal defendants also note that

11  the underlying data discussed during this meeting "was already

12  known to and considered by the Service, as part of the biological

13  opinion, and is already reflected in the existing administrative

14  record, as described above in Section 5 of the AR."  This means

15  Plaintiffs may argued the technical significance of the

16  underlying data and whether the USFWS should have considered it.

17  Although the minutes contain relevant information, they are post-

18  decisional and Plaintiffs have made no showing that the existing

19  administrative record does not include the underlying data

20  presented at the meeting.  Plaintiff's request to supplement the

21  record with Document 11 is **DENIED.**

22      It cannot be disputed that **Document 13** -- a powerpoint

23  presentation concerning trends in the Delta smelt population --

24  is obviously relevant to the issues raised in this litigation.

25  USFWS objects that this powerpoint presentation was made by "non-

26  [USFWS] personnel to entities other than the [USFWS]."  (Doc. 195

27  at 5.)  But, as discussed, if the CALFED process is to mean

28  anything at all, such obviously relevant documents and

**16**

1    information should have been provided to or accessed by the BiOp

2    team.  However, USFWS asserts that "the underlying information

3    discussed at these meetings was already known to and considered

4    by the Service, as part of the biological opinion, and is already

5    reflected in the existing administrative record."  Plaintiffs

6    make no showing to the contrary.  Although it is appropriate to

7    admit this evidence under one of the other exceptions, the motion

8    to supplement the record with Document 13 is **DENIED.**

9         **Document 20,** the Supplemental Biological Opinion on CVP and

10   SWP Operations, was generated by the National Marine Fisheries

11   Service (NMFS) with respect to a different species.  Plaintiffs

12   assert that this is one of several documents in which other Bay-

13   Delta Authority member agencies expressed doubts regarding the

14   adequacy and availability of water under the EWA and CVPIA (b)(2)

15   program.  It is not clear from Plaintiffs' submissions whether

16   this document was circulated through the CALFED process.

17   Plaintiffs make no alternative argument as to why USFWS personnel

18   working on the BiOp should be charged with pre-decisional

19   knowledge of its contents.  Moreover, although the contents of

20   this document are generally relevant to the smelt, there is no

21   indication that this subject matter is any more relevant than the

22   climate change documents discussed above.  The motion to

23   supplement the record with Document 20 is **DENIED.**

24   //

25   //

26   //

27   //

28

**17**

1

              **b.**   ***Documents attached to or Referenced in***
                      ***Comment Letters Submitted by Plaintiffs.***

2

3

      On February 14, 2005 Plaintiffs submitted a letter addressed

4

to "S. Thompson re Consultation on OCAP: Significant New Delta

5

Smelt Information."

6

**Document 12**      Letter from H. Candee and K. Poole, NRDC, to
                              S. Thompson re Consultation on OCAP:
                              Significant New Delta Smelt Information,
                              Service (Feb. 14, 2005).

7

8

                              [NRDC letter to Service re new information on
                              smelt relevant to ongoing OCAP consultation.]

9

Plaintiffs seek inclusion of this letter in the administrative

10

record, along with five documents that were attached to it.

11

**Document 13**      Delta smelt abundance trends, Powerpoint

12

                              presentation by Chuck Armor, DFG, to
                              Bay-Delta Authority (February 9, 2005) (Att.

13

                              1 to NRDC letter).

14

                              [CALFED Powerpoint presentation re smelt
                              population abundance.]

15

**Document 14**      Letter from Enrique Manzanilla, EPA to Joe

16

                              Thompson, U.S. Bureau of Reclamation, with
                              EPA Comments on Draft Environmental

17

                              Assessment for Renewal of Long-Term Contract
                            for Delta-Mendota Canal (Dec. 15, 2004 )

18

                            (Att. 3 to NRDC letter).

19

                            [Letter discussing full amount of water
                            projected to be exported from Delta pursuant

20

                            to OCAP.]

21

**Document 15**      Letter from Wayne Nastri, EPA, to Kirk C.

22

                              Rodgers, Bureau of Reclamation, w/ EPA
                            comments on DEIS for Renewal of Long Term San

23

                            Luis Contractors (Jan. 25, 2005) (Att. 4 to
                            NRDC letter).

24

                            [Letter discussing full amount of water
                            projected to be exported from Delta pursuant

25

                            to OCAP.]

26

**Document 16**      Comment letter from NRDC to Buford Holt,

27

                            Bureau of Reclamation re Draft EIS re
                          Long-Term Renewal Contracts for Sacramento

28

                          River Settlement Contractors (w/ attached
                          CALSIM II modeling report) (Nov. 15, 2004)
                        (Att. 5 to NRDC letter).

[Letter discussing full amount of water projected to be exported from Delta pursuant to OCAP.]

**Document 17**   Bureau of Reclamation CVP Schedule A12 (chart) Historical & Projected Water Deliveries (Jan. 20, 2004) (Att. 6 to NRDC letter).

[Bureau of Reclamation chart showing projected future water deliveries pursuant to OCAP significantly higher than those assumed in the BiOp.]

**Document 18**   Memorandum from Kenneth Sanders, USFWS, to Richard Stevenson, Bureau of Reclamation, re Comments on Central Valley Project Long-Term Water Service Contracts (Dec. 27, 2004) (Att. 7 to NRDC letter).

[Letter from Service to Bureau of Reclamation re Bureau's failure to comply with requirements to protect listed species under a biological opinion on implementation of the Central Valley Project Improvement Act ("CVPIA").]

**Document 19**   Letter from Enrique Manzanilla, EPA to Buford Holt, U.S. Bureau of Reclamation, with EPA Comments on Draft Environmental Impact Statement for Renewal of Long-Term Contracts for Sacramento River Settlement Contractors (Nov. 15, 2004) (Att. 8 to NRDC letter).

[Letter from EPA to Bureau of Reclamation expressing concerns re Bureau's failure to implement CVPIA provisions intended to restore fisheries and overallocation of water to detriment of water quality.]

Plaintiffs also seek to add to the administrative record a letter that was <u>referenced</u> by Plaintiffs in the February 14, 2005 letter.

**Document 22**   Letter from John W. Keys, Bureau, to Hon. George Miller, House of Representatives re Bureau's renewal of CVP water contracts (Dec. 23, 2004).

[Letter from Bureau of Reclamation to congressperson re water quantities expected to be exported from the Delta under OCAP.]

**19**

1   Whether it is appropriate to append these documents to the
2   record is largely a question of timing.  It is well established
3   that the administrative record should consist of material before
4   the decision-maker at the time of the decision.  *Citizens to*
5   *Preserve Overton Park*, 402 U.S. at 402.  Federal defendants
6   object that all of these documents were submitted to the agency
7   at the eleventh hour, attached to letters dated February 14, and
8   15, 2005, several days <u>after</u> the 2005 OCAP BiOp had been
9   submitted by its authors to USFWS officials for formal approval.
10  USFWS maintains that none of these documents were considered by
11  the agency before the 2005 OCAP BiOp was signed on February 16,
12  2005.

13  Plaintiffs rely on *San Luis & Delta-Mendota Water Authority*
14  *v. Badgley*, 136 F. Supp. 2d 1136 (E.D. Cal. 2000), in which the
15  district court evaluated an agency's failure to consider
16  documents received by the agency after the close of the comment
17  period but weeks before the actual decision.  The district court
18  held that it was "unreasonable" for the agency to ignore such
19  "significant, conflicting data."  Plaintiffs ignore the
20  procedural posture in which that holding was made.  The district
21  court in *Badgley* was not **<u>ruling on a motion to supplement the</u>**
22  **<u>administrative record</u>** when it found the agency's decision to
23  ignore the data unreasonable, but, rather, was analyzing the
24  merits of the case.  The agency in *Badgley* chose not to consider
25  certain documents, and therefore chose not to include them in the
26  administrative record.  There, the agency was found to have acted
27  arbitrarily and capriciously for doing so, but the agency was not
28  forced to supplement the record with the documents in question.

**20**

As a general rule, the agency is permitted to define the record based upon what it believes its decisionmakers considered.  Here, the agency maintains that the documents attached to and/or referenced in the February 14, 2006 letter from NRDC were not considered.  The agency has chosen to ignore these documents, which were submitted before release of the BiOp.  This does not mean that these documents should now become part of the administrative record, however.  Plaintiffs' request to supplement the administrative record with **Documents 12-19 & 22** is **DENIED.**  Rather, these documents may be more appropriately admitted under the "relevant factors" exception for the limited purpose of challenging the reasonableness of the agency's scope of consideration.

Plaintiffs make a few alternative arguments concerning several of the documents already discussed above (14, 15, 16, 17, 18, 19, 22).  Plaintiffs point out that several of the documents were created by "sister agencies" like the Bureau of Reclamation or the EPA.  Plaintiffs maintain that USFWS should have known about and considered these documents and therefore that they should have been part of the AR.  However, the agency <u>did not consider</u> these documents, either directly or indirectly.  The agency therefore did not include them in the administrative record and cannot rely on these documents to support its merits case.

Plaintiffs request to supplement the administrative record is **DENIED WITHOUT PREJUDICE.**

21

**B.    Application of the "Relevant Factors" and "Complex Matters" Exceptions.**

Among other potential bases for the admission of extra-record evidence, a reviewing court is permitted to consider such evidence if "admission is necessary to determine whether the agency has considered all <u>relevant factors</u>..." or if "supplementing the record is necessary to explain <u>technical terms or complex subject matter</u>." *Lands Council*, 395 F.3d at 1030. These exceptions are to be "narrowly construed and applied." *Id*. Plaintiffs contend that all of the documents are admissible under one or both of these exceptions.

**1.    The "Relevant Factors" Exception.**

Plaintiffs assert that USFWS failed to consider certain issues addressed by the disputed documents, namely: (1) certain Delta smelt abundance data indicating the population was in decline in the fall of 2004, (2) information calling into question the adequacy of the Environmental Water Account and CVPIA(b)(2) assets, and (3) the potential impacts of climate change on the Delta smelt.

First, with respect to the decline of Delta smelt populations, Plaintiffs offer **Documents 11 and 13:**

**Document 11:**    Summary of Annual Joint Meeting of California Bay-Delta Authority and Bay-Delta Public Advisory Committee (Feb. 9-10, 2005)

**Document 13:**    Delta smelt abundance trends, Powerpoint presentation by C. Armor, DFG, to Bay-Delta Authority (Feb. 9, 2005)

Plaintiffs argue that "the administrative record does not evidence any consideration of the fall 2004 abundance information. The BiOp is instead based on outdated abundance data

**22**

1   that reflect a somewhat more viable population. BiOp, AR 366-67."

2   (Doc. 183 at 13.)  USFWS asserts that it did consider abundance

3   data and submits that it, in fact, considered the very data used

4   to generate Document 13 (the powerpoint presentation).  USFWS

5   points to Section six of the administrative record, Document 576,

6   which contains the fall midwater trawl survey data for the

7   regional fish -- including the Delta smelt data later analyzed by

8   others.  However, USFWS has not pointed to any material in the

9   record where this trawl data was analyzed or evaluated or where

10  the results of any such analysis were succinctly communicated to

11  decisionmakers.  Whether USFWS adequately evaluated and

12  considered the trawl data is a merits issue and Documents 11 and

13  13 may shed light on this question.  Plaintiff's request to admit

14  **Documents 11 and 13** for the limited purpose of showing that USFWS

15  failed to consider relevant Delta smelt population data and its

16  scientific significance is **GRANTED.**

17       Second, Plaintiffs assert that USFWS failed to adequately

18  consider information that questions whether the EWA and

19  CVPIA(b)(2) programs can meet their environmental goals.  The

20  documents Plaintiffs seek to have admitted on this basis are:

21       **Document 9:**    Summary of Annual Joint Meeting of California
                           Bay-Delta Authority and Bay-Delta Public
22                         Advisory Committee (Dec. 8-9, 2004)

23       **Document 20:**   Supplemental Biological Opinion on CVP and
                           SWP Operations, April 1, 2004 through March
24                         31, 2006 (Feb. 27, 2004)

25  Plaintiffs argue that these documents express "longstanding,

26  significant doubts on the part of the Service and other Bay-Delta

27  Authority member agencies that adequate EWA and CVPIA(b)(2)

28                                  **23**

assets will be available in the short-term or the long-term for protective actions to benefit the Delta smelt." Despite the existence and relevance of this information, Plaintiffs assert that:

> The Service appears to have entirely ignored these concerns. In the BiOp, the Service relied on modeling efforts that assumed continued availability of EWA assets and (b)(2) water for long-term operations (i.e., as much as 25 to 40 years) and included the EWA as part of the adaptive management scheme that replaced firm take limits – even though the information in front of the agency indicated that a viable EWA might cease to exist in the very near future. The Service should have considered the information directly speaking to the future availability and reliability of EWA and (b)(2) assets, and the Court should consider this information in determining whether the Service acted arbitrarily and capriciously in issuing a "no jeopardy" BiOp based on the assumption that these assets would be available.

(Doc. 183 at 14.) USFWS asserts that it <u>did</u> consider the issue, but fails to identify any specific documents in the administrative record that confirm the assertion. Although the ultimate import of these documents at the merits phase is not yet clear, Plaintiff's request that **Documents 9 & 20** be considered for the limited purpose of determining whether USFWS failed to adequately consider the EWA/CVPIA(b)(2) issue is **GRANTED.**

Plaintiffs next seek admission of **Documents 9, 10, and 21,** which concern climate change.

**Document 9:**     Summary of Annual Joint Meeting of California Bay-Delta Authority and Bay-Delta Public Advisory Committee (Dec. 8-9, 2004)

**Document 10:**    Climate Change Uncertainties & CALFED Planning: What Are Current Observations and Models Saying? Powerpoint presentation by M. Dettinger, U.S. Geological Survey at the Scripps Institute for Oceanography, et al. to Bay-Delta Authority, December 8, 2004

**24**

**Document 21:**   Future Water Availability in the West: Will there be enough? Powerpoint presentation by M. Dettinger to 24th Annual Conference on Water, Climate and Uncertainty: Implications for Western Water Law, Policy, and Management (June 11-13, 2003)

Plaintiffs argue that USFWS failed to adequately take these documents into consideration as well.  Although the BiOp analyzes Delta smelt location and distribution according to a model that takes into consideration flow rates and salinity in the Delta, the model does not consider the potential impact of climate change on the hydrology of the delta.  NRDC sent a comment letter to USFWS on July 28, 2004 specifically calling attention to the climate change issue.  Plaintiffs, therefore, request admission of these three documents, two of which were presented to USFWS through the CALFED process and one of which was attached to the February 14 and 15 comment letter.  The federal defendants offer no rebuttal to this argument.  Plaintiffs request for admission of **Documents 9, 10, and 21** for the limited purposes of determining whether USFWS failed to adequately consider the climate change issue and the scientific significance of any such failure is **GRANTED.**

    Plaintiffs next seek admission of **Document 4** to demonstrate that USFWS failed to adequately consider weaknesses in the CALSIM model used in the BiOp.

**Document 4**   Close et al., A Strategic Review of CALSIM II and its Use for Water Planning, Management, and Operations in Central California (Dec. 4, 2003)

USFWS declined to include this document in the administrative record because it merely "presents a 'wish list' of things that

**25**

the authors would like to see implemented in future efforts to develop or apply water management models, based upon future efforts of a peer-review panel that has not convened." (Doc. 195 at 12.)  Although USFWS's questions the evidentiary weight this document may deserve, it was timely placed before the agency through the CALFED process and raises issues its proponents sought to have considered in the Section 7 process.  Plaintiffs' request for admission of **Document 4** for the limited purposes of demonstrating that USFWS failed to consider weaknesses in the CALSIM model and the technical significance of these weaknesses is **GRANTED.**

Plaintiffs also request admission of a number of documents concerning "the actual amount of water that would be delivered under current and future long-term water delivery contracts":

| | |
|---|---|
| **Document 12** | Letter from H. Candee, NRDC, to S. Thompson, Service (Feb. 14, 2005) |
| **Document 14** | Letter from E. Manzanilla, EPA, to J. Thompson, Bureau, with Comments on Draft Environmental Assessment for Renewal of Long-Term Contract for Delta-Mendota Canal, copied to J. Winckel, Service (Dec. 15, 2004) |
| **Document 15** | Letter from W. Nastri, EPA, to K. Rodgers, Bureau, with comments on DEIS for Renewal of Long Term San Luis Contractors, copied to S. Thompson, Service (Jan. 25, 2005) |
| **Document 16** | Comment letter from NRDC to B. Holt, Bureau, re Draft EIS re Long-Term Renewal Contracts for Sacramento River Settlement Contractors (with attached CALSIM II modeling report) (Nov. 15, 2004) |
| **Document 17** | Bureau of Reclamation CVP Schedule A12 (chart), Historical & Projected Water Deliveries, Jan. 20, 2004 |
| **Document 22** | Letter from John W. Keys, Bureau, to Hon. George Miller, House of Representatives (Dec. 23, 2004) |

1    These documents reflect Plaintiffs' and EPA's concern that

2  the volume of water deliveries assumed in the BiOp might differ

3  significantly from the amount of water deliveries authorized

4  under renewed long term contracts.  Plaintiffs request admission

5  of these documents to support their argument that USFWS should

6  have made different assumptions when modeling future OCAP

7  operations and their potential impacts on Delta smelt.  But,

8  USFWS only had two of these documents prior to the issuance of

9  the decision:  Documents 14 and 15, letters from EPA to the

10  Bureau that were copied to USFWS.  Plaintiffs' request is **GRANTED**

11  with respect to those documents that were before USFWS at the

12  time of the decision: **Documents 14 and 15.**  These documents may

13  be referenced by Plaintiffs for the limited purposes of arguing

14  that USFWS should have considered the alleged discrepancy between

15  existing assumptions about water delivery and the volume of

16  deliveries actually set forth in future long-term delivery

17  contracts and their scientific significance.

18    In contrast, Documents 16 is a letter that was sent by NRDC

19  to the Bureau and was not copied to USFWS.  Similarly, there is

20  no indication that Document 17, a Bureau-authored chart

21  reflecting historical and projected water deliveries, was ever

22  placed before USFWS prior to the NRDC's February 14, 2005 letter

23  (Document 12).  Finally, there is no indication that Document 22

24  was ever brought to USFWS's attention prior to NRDC's February

25  14, 2005.  That letter was not a timely submission, and Plaintiff

26  offers no authority for the proposition that USFWS can be charged

27

28

**27**

with a duty to consider material of which it was not made aware.[6] Plaintiffs point out that USFWS was consulting with the Bureau over the OCAP BiOp, but Plaintiffs do not explain how or why these specific documents would have been submitted to and considered by USFWS in drafting the OCAP BiOp.  The request to admit **Documents 12, 16, 17, and 22** under the relevant factors exception is **DENIED.**  Plaintiffs can adequately frame their argument utilizing the documents that were clearly before the agency at the time of the decision.

Plaintiffs next seek the admission of **Documents 18 and 19,** arguing that these letters "document the Bureau's history of failure to comply with its obligations to implement protective measures for fish species under the ESA and CVPIA."

| **Document 18** | Memorandum from K. Sanders, Service, to R. Stevenson, Bureau, re Comments on Central Valley Project Long-Term Water Service Contracts (Dec. 27, 2004) |
| --- | --- |
| **Document 19** | Letter from E. Manzanilla, EPA, to B. Holt, Bureau, with Comments on Draft Environmental Impact Statement for Renewal of Long-Term Contracts for Sacramento River Settlement Contractors (Nov. 15, 2004) |

Plaintiffs assert that "this poor compliance record is directly relevant to whether the Service reasonably relied in the BiOp on the Bureau's promises of future action to avoid jeopardy." However, Plaintiffs have not provided the foundation that these exhibits were before USFWS or that the USFWS was aware of this

---

[6]    Plaintiffs point out that there was no deadline for submission of materials and no deadline for the issuance of the BiOp, so Plaintiffs had no way of knowing that their submission would not be timely.  However, USFWS was not legally required to issue a timetable with respect to this decision.

purported "compliance problem" prior to the issuance of the BiOp. This request with respect to **Documents 18 and 19** is **DENIED**.

Finally, Plaintiffs seek admission of **Document 1**:

**Document 1**      Herren and Kawasaki, Inventory of Water Diversions in Four Geographic Areas in California Central Valley, California Fish and Game Fish Bulletin, 179:343-355 (2001)

This study "reports that more than 2500 unscreened water diversions exist in Suisun Marsh and the Delta, areas that comprise critical habitat for the Delta smelt...represents information that the Service should have considered in formulating the BiOp and that the Court should consider in determining if the agency considered all relevant factors in reaching its decision." (Doc. 183 at 17.) Plaintiffs argue that this document should be admitted because "several service biologists contributed papers to the symposium [where this paper was presented], showing that the service was involved in the symposium and aware of the information presented." The mere presence of USFWS biologists at the same symposium does not indicate that the document was "before" the agency at the time of the decision. There is no evidence that any USFWS biologists, let alone any who contributed to the BiOp, were aware of the content of the particular paper in question, nor is there any evidence that the USFWS biologists in attendance at this conference had any connection to the BiOp in any way. Plaintiffs also note that this paper was cited in the Bureau of Reclamation's Biological Assessment of the 2004 OCAP, which is included in the record. Plaintiffs cite no authority to support the proposition that USFWS should have reviewed all of the papers

29

cited in a prior administrative record, particularly when the document citing that paper was authored by another agency. There is no evidence that any party brought this paper to the attention of the decisionmakers within USFWS. Plaintiffs' request regarding **Document 1** is **DENIED**.

## 2. The "Technical Terms and Complex Subject Matter" Exception.

Plaintiffs argue that all of the documents should come in to aid the court's understanding of various technical concepts. Plaintiffs have categorized the documents according to subject matter and argue that they will shed light on the court's understanding of the technical aspects of that subject. Defendants and defendant intervenors suggest that Plaintiff has failed to establish that the existing record is inadequate to explain the technical terms, but point to no authority requiring such a showing. There is ample precedent in the CVP cases litigated over the past fourteen years to justify consideration of the documents to assist the court's understanding of the exceedingly complex technical and scientific issues placed in dispute by the parties' respective claims. Plaintiffs' request to permit reference to all of the documents in dispute for the limited purpose of aiding the court's understanding of technical concepts is **GRANTED**.

## C. **Plaintiffs' Alternative Request for Judicial Notice**.

Finally, Plaintiffs argue in the alternative that "many" of the documents are subject to judicial notice, citing *United States v. Alisal Water Corp.*, 326 F. Supp. 2d 1032, 1036 n.5

1  (N.D. Cal. 2004), for the proposition that a court may take

2  judicial notice of an agency's own records and reports.  But, in

3  *Alisal*, the district court specifically found that it was

4  appropriate to take judicial notice of certain agency

5  publications downloaded from the agency's own website because

6  those publications were offered "for the purpose of demonstrating

7  facts not reasonably subject to dispute," as is required by

8  Federal Rule of Evidence 201.  The underlying contents of the

9  documents in dispute here <u>are</u> reasonably subject to dispute among

10 the parties.  Plaintiffs fail to otherwise justify admission of

11 any disputed document under Rule 201, except to the extent that

12 they can identify documents authored and officially adopted by

13 the USFWS.  They have not done this.  The request for judicial

14 notice is **DENIED**.

15

16                        **V.   CONCLUSION**

17      For the reasons set forth above:

18      (1)  Plaintiffs' request to supplement the administrative

19           record as to documents as to 2, 3, 5, 6, 7 & 8 is

20           **GRANTED** and **DENIED** as to all other documents in

21           dispute.

22      (2)  Plaintiffs' request for admission under the "relevant

23           factors" exception is **GRANTED** as to Documents 4, 9, 10,

24           11, 13, 14, 15, 20 & 21 and **DENIED** as to Documents 1,

25           12, 16, 17, 18, 19, & 22.

26 //

27 //

28 //

                              **31**

1     (3)   Plaintiffs' request for admission under the "complex

2           matters and technical terms" exception is **GRANTED** as to

3           all documents.  They may be referenced as appropriate

4           for this purpose.

5     (4)   Plaintiffs' request for judicial notice is **DENIED.**

6

7  **SO ORDERED**

8                           ____/s/ Oliver W. Wanger___

                              **OLIVER W. WANGER**

9                     **United States District Judge**