**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NATURAL RESOURCES DEFENSE COUNCIL, et al.,**<br><br>　　　　　　　　**Plaintiffs,**<br><br>　　　　v.<br><br>**GALE A. NORTON, in her official capacity as Secretary of the Interior, et al.,**<br><br>　　　　　　　　**Defendants.** | 1:05-CV-01207 OWW TAG<br><br>ORDER RE: KERN COUNTY WATER AUTHORITY'S MOTION TO INTERVENE (DOC 173) |

## I. INTRODUCTION

Plaintiffs, a coalition of environmental groups, challenge the legal validity of a Biological Opinion issued by the United States Fish and Wildlife Service ("USFWS") concerning the coordinated operation of the Central Valley Project ("CVP") and State Water Project ("SWP"). Before the court for decision is a motion to intervene filed by the Kern County Water Authority ("KCWA"). (Doc. 173, filed Mar. 3, 2006.) Plaintiffs oppose. (Doc. 209, filed May 10, 2006.) Existing intervenor defendants have filed statements of non-opposition to KCWA's intervention. (Docs. 198 (Farm Bureau), 201 (DWR), 203 (Glenn-Colusa).) The Federal Defendants have filed a statement indicating that they take no position on KCWA's intervention. (Doc. 200.)

## II. **PROCEDURAL HISTORY**

On September 6, 2005, this case was transferred to this court from the Northern District of California. (Doc. 122.) Prior to the transfer, United States District Judge Claudia Wilken decided three motions to intervene, filed by: the San Luis & Delta-Mendota Water Authority and Westlands Water District (collectively the "Authority")(Doc. 5, filed March 14, 2005); the California Farm Bureau Federation ("Farm Bureau") (Doc. 19, filed March 30, 2005); and the State Water Contractors ("SWC") (Doc. 27, filed Apr. 8, 2005). Judge Wilken granted the Authority and Farm Bureau's motions, but denied SWC's on the ground that SWC's interest "will be adequately represented by the Authority and the Farm Bureau." (Doc. 45 at 11, filed June 13, 2005.) SWC filed an interlocutory appeal from that order. (Doc. 113.)

On October 12, 2005, while the interlocutory appeal was pending, the California Department of Water Resources (DWR) moved to intervene. (Doc. 137.) Plaintiffs opposed, relying in part on the reasoning set forth in Judge Wilken's order denying intervention to SWC. (Doc. 142) The district court granted DWR's motion, subject to certain conditions, reasoning that DWR had unique interests in the litigation that could not and would not be protected by the existing parties. (Doc. 164, Jan. 5, 2006.)

Also while SWC's interlocutory appeal was still pending, KCWA moved to intervene, advancing three supporting arguments. First, KCWA argues that the interests of entities receiving water from the State Water Project would not be protected by the existing parties. Second, that it supplies water for both

**2**

farming and municipal users and that this dual role puts it in a "far different position" from any existing intervenor-defendants. Finally, KCWA argues that it intends to advance a defense based upon the Commerce Clause that no other party is willing to pursue. (Doc. 173.)

On April 19, 2006, prior to oral argument on KCWA's motion to intervene, the Ninth Circuit issued a memorandum opinion concerning SWC's interlocutory appeal, reversing Judge Wilken's denial of intervention. The Ninth Circuit reasoned that:

> [G]iven the Contractors' members' exclusive interest in a majority of the water contracts issued from the State Water Project and Contractors' unique interest in defending the South Delta Improvement Program, there is no assurance that all of the Contractors' arguments will be addressed if they are not included as parties to this action. Moreover, as a result of its exclusive interest in the State Water Project and the South Delta Improvement Program, there are serious doubts that the existing parties would protect those interests to the same extent, particularly if the parties were to enter into settlement discussions. Thus, because the "burden in showing inadequate representation is minimal," we conclude that the Contractors should be allowed to intervene.

(*Natural Resources Defense Council v. Norton*, No. 05-16581, Memorandum dated April 19, 2006, at 3-4.)

KCWA will stipulate to that its participation will be limited to advancing only its Commerce Clause defense. Plaintiffs still oppose intervention.

//
//
//
//
//

**3**

### III. BACKGROUND

#### A. The Central Valley Project, the State Water Project, and the California Bay Delta.

This case concerns the coordinated operation of the federally-managed Central Valley Project ("CVP") and the State of California's State Water Project ("SWP"). The CVP alone is one of the largest water projects in the world, managing annually approximately nine million acre-feet of water. (Compl. at ¶25.) The CVP is managed by the United States Department of the Interior's Bureau of Reclamation ("Bureau") under licenses from the California State Water Board. The SWP, the largest state-built water project in the country, is managed by the California Department of Water Resources ("DWR"). Both projects divert large volumes of water from the California Bay Delta ("Delta") and use the Delta to store water. The CVP, for example, operates the Tracy Pumping Plant, which draws billions of gallons of water per year out of the Delta and into the Delta-Mendota Canal. (Compl. at ¶25.) The SWP operates diversion facilities in both the southern and northern Delta, which divert water into the California Aqueduct (for distribution to the San Joaquin Valley and points south) and the North Bay Aqueduct (for distribution to Napa and Solano counties).

The Delta, from which these CVP and SWP facilities draw water, is home to a number of endangered and threatened species, including the endangered delta smelt (*Hypomesus transpacificus*), a small, slender-bodied fish endemic to the Delta.[1]

---

[1] A typical Delta smelt will live for only one year and spend its entire lifespan in the Delta.

Historically, the Delta smelt could be found throughout the Delta, but the population has declined significantly in recent years. (Compl. at ¶20.)

**B.  Coordinated Operations and The Endangered Species Act.**

The state and federal agencies charged with management of the CVP and SWP share certain facilities and coordinate operations with one another pursuant to a Coordinated Operating Agreement ("COA"). The COA, which originated in 1986, has evolved over time to reflect, among other things, changing facilities, delivery requirements, and regulatory restrictions. The most recent document concerning coordinated management is the Operating Criteria and Plan (OCAP). The OCAP proposes a number of changes to the coordinated operation of the CVP and SWP.

Because the Delta smelt and a number of other endangered and/or threatened species reside in the area affected by the CVP and SWP, any coordinated management plan, including the OCAP, must comply with various provisions of the Endangered Species Act ("ESA"). Specifically, prior to authorizing, funding, or carrying out any action, a federal agency must first consult with USFWS and/or the National Marine Fisheries' Service ("NMFS") to "insure that [the] action...is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined...to be critical...." 16 U.S.C. § 1536(a)(2) [ESA § 7(a)(2)]. (This form of consultation is called "formal consultation." 50 C.F.R. § 402.02.) In addition, an independent consultation obligation arises under § 1536(a)(3) where the federal agency "has reason to

**5**

believe that an endangered species or a threatened species may be present in the area affected by this project and that implementation of such action will likely affect such species." (This form of consultation is called "early consultation." 50 C.F.R. § 402.02.)

In this case, the Bureau entered into formal and early consultation with the USFWS concerning the OCAP. The consultation process resulted in the issuance by the USFWS of a Biological Opinion ("BiOp") on June 30, 2004 (the "2004 OCAP BiOp").

On August 4, 2005, the Ninth Circuit decided *Gifford Pinchot Task Force v. United States Fish & Wildlife Serv*., 378 F.3d 1059, 1069 (9th Cir. 2004), which held that the USFWS's definition of "adverse modification" to critical habitat is an impermissible interpretation of the ESA because it focuses on whether critical habitat modifications would impact the <u>survival</u> of a species, effectively ignoring the statutorily-mandated goal of "<u>recovery</u>." In November 4, 2004, presumably in response to this ruling, the Bureau requested reinitiation of formal consultation to address critical habitat issues.

Plaintiffs, a coalition of non-profit conservation organizations, filed suit on February 15, 2005, alleging that the 2004 OCAP BiOp is legally inadequate in light of *Gifford Pinchot* and should be invalidated. (Doc. 1.) Plaintiffs named as defendants the Department of the Interior and the USFWS. (*Id*.)

On February 16, 2005, USFWS issued an amended BiOp (the "OCAP BiOp"), which superceded the 2004 OCAP BiOp. In this document, the USFWS asserts that it relied on statutory

**6**

provisions of the ESA, not on the regulatory definition of adverse modification invalidated in *Gifford Pinchot*.

### C. Issues Addressed by the OCAP BiOp.

The OCAP BiOp addresses current-day operations of the CVP and SWP as well as several future actions: (1) increasing flows in the Trinity River; (2) "8500 Banks"; (3) operating permanent barriers in the South Delta; (4) operating an intertie between the California Aqueduct and the Delta-Mendota Canal; (5) a long-term Environmental Water Account ("EWA"); (6) delivery of CVP water to the Freeport Regional Water Project ("FRWP"); and (7) various other operational changes, including changes to a monitoring program at the North Bay Aqueduct. (OCAP BiOp at 10; 76-77.) The OCAP BiOp concludes that the coordinated operation of the SWP and CVP, including the proposed future actions, will not jeopardize the Delta smelt's continued existence. (OCAP BiOp at 223.)

### D. The Claims in this Case.

Plaintiffs filed a First Supplemental Complaint on May 20, 2005, which modified the central claims in the case in light of the 2005 OCAP BiOp. The charging allegations are summarized in Paragraphs 30 through 34:

> 30. The Biological Opinion states baldly that [USFWS] relied on the statutory provisions of the ESA and not the regulatory definition of adverse modification when reaching its conclusions. However, this statement is not supported by any new analysis or by the few changes made to the original biological opinion, and no new definition of adverse modification is provided or applied.

//

//

//

**7**

31. In reaching a "no jeopardy" conclusion, the Biological Opinion relies heavily on certain existing or potential future protective measures, the adequacy of which has not been demonstrated, and several of which may not be implemented in the form assumed by the Biological Opinion or at all. The Bureau has a long history of disregarding or violating such protective measures. For example, the Bureau failed to consistently meet the conservation obligations agreed upon in the biological opinions for the Friant Unit long- and short-term renewal contracts. In addition, in multiple years since the endangered Sacramento River winter-run Chinook salmon and the threatened delta smelt were listed under the ESA, the Bureau <u>and the California Department of Water Resources have operated the CVP and SWP in such a way that the ESA-mandated incidental take limits for both species have been exceeded</u>.

32. Among other defects, the Biological Opinion assumes benefits to the delta smelt from future, long-term implementation of an Environmental Water Account (EWA). The Environmental Water Account as it presently exists is a water redistribution program that maintains exports to entities with contracts for water from the Delta when protections for delta smelt or certain other species are put into effect. At the time the original biological opinion was signed, however, the then-existing EWA was scheduled to expire by September 2004. Although both the original and the revised Biological Opinion assume a future EWA, the Biological Opinion also states that "inclusion of the EWA in this description does not constitute a decision on future implementation of the EWA." *See* Biological Opinion at 84. Any benefits to delta smelt from any long-term EWA are, at best, speculative. Moreover, the Biological Opinion's characterization of the EWA does not agree with the description provided by the Bureau in the June 30, 2004 OCAP when consultation with the Service was requested.

33. Recognizing that assumed protective measures may be inadequate and, indeed, may not even be fully carried out, the Biological Opinion provides for an "adaptive management" process under which the Bureau and certain fisheries management agencies would discuss and *potentially* agree to *further* changes in the CVP operations that affect delta smelt through an "adaptive management" process. However, the Biological Opinion does not provide any assurance of any particular level of protection for the delta smelt as a result of this promise of future "adaptive management."

        34. The Biological Opinion's adaptive management process involves the use of a so-called "Delta Smelt Risk Assessment Matrix" as a decision-making tool intended to be used by a Working Group to monitor the effects of the CVP and SWP on the delta smelt. The Matrix is a tool to identify when delta smelt may be negatively affected by a project and to suggest possible management strategies. The Biological Opinion generally requires that the Working Group be informed should the triggering conditions be met. However, the Biological Opinion does not require that the Working Group, or the Bureau, take any particular action if a triggering condition occurs. No particular level of protection for delta smelt or its critical habitat is ensured.

(Compl. ¶¶ 30-34 (emphasis added).)

      **E.**    **The Moving Party**.

     KCWA is a special district formed by the California Legislature in 1961, primarily for the purpose of acquiring water supplies for its "member units." KCWA is party to a contract with the State of California to receive a supply of water from the State Water Project. In turn, KCWA has contracted with its member units, also public agencies, pursuant to which each member unit receives a portion of KCWA's SWP supply. The member units deliver the water to farmers and municipalities. (KCWA delivers water directly for use by the City of Bakersfield.) In total, KCWA possesses contract rights to receive over one million acre feet of water annually from the SWP (twenty-five percent of all SWP water).

//
//
//
//
//
//

# IV. DISCUSSION

KCWA moves both to intervene of right and, in the alternative, to permissively intervene.

## A. Intervention as of Right.

### 1. Legal Standard.

Intervention is governed by Federal Rule of Civil Procedure 24. To intervene as a matter of right under Rule 24(a)(2), an applicant must claim an interest, the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without the applicant. *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1993). The Ninth Circuit applies Rule 24(a) liberally, in favor of intervention, and requires a district court to "take all well-pleaded, non-conclusory allegations in the motion as true absent sham, frivolity or other objections." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). A four part test is used to evaluate a motion for intervention of right:

(1) the motion must be timely;

(2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action;

(3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and

(4) the applicant's interest must be inadequately represented by the parties to the action.

*Forest Conservation Council*, 66 F.3d at 1493.

**2. Timeliness; Significant Protectable Interests; Impairment of Interests.**

There is essentially no dispute that KCWA satisfies the first three elements for intervention of right.

In assessing timeliness, courts in the Ninth Circuit must consider: (1) the current stage of the proceedings; (2) whether the existing parties would be prejudiced; and (3) the reason for any delay in moving to intervene. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). In this case, the district court set March 8, 2006 as the deadline for motions to intervene March 8, 2006. (Doc. 171 at 6, filed Feb. 14, 2006.) KCWA timely moved to intervene on March 8, 2006. (Doc. 173.) The district court has not yet made any jurisdictional or merits rulings in this case. Existing parties are not prejudiced when "the motion was filed before the district court made any substantive rulings." *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996). The motion to intervene is timely.

To demonstrate a "significantly protectable interest," "a prospective intervenor must establish that (1) the interest asserted is protectable under some law, and (2) there is a relationship between the legally protected interest and the claims at issue." *Id*. A prospective intervenor has a sufficient interest "where the contractual rights of the applicant may be affected by a proposed remedy." *Forest Conservation Council*, 66 F.3d at 1495. Here, among other remedies, Plaintiffs seek to have the OCAP BiOp declared invalid and request injunctive relief to prevent the defendants "from taking any action in reliance on

**11**

the invalid Biological Opinion." Either of these remedies would affect "significant protectable interests" held by KCWA, which is party to a contract with the State of California annually to receive one million acre feet of SWP water.

Finally, KCWA has demonstrated that disposition of this action may impair or impede its ability to protect its contract right. This requirement demands only a showing that the applicant "would be substantially affected in a practical sense by the determination made in an action." *Southwest Ctr. for Biodiversity*, 268 F.3d at 822. If the OCAP is invalidated, the amount of water available under the State Water Project may be reduced.

### 3. Adequate Representation of KCWA's Interest by Existing Parties.

The remaining issue in dispute is whether KCWA's interests are adequately protected by other defendants or defendant-intervenors. In assessing the adequacy of representation, the Ninth Circuit looks at three factors:

> (1) whether the existing parties will undoubtedly make all of the applicant's arguments;
>
> (2) whether the existing parties are capable of and willing to make the applicant's arguments; and
>
> (3) whether the applicant offers a necessary element to the proceedings that otherwise would be neglected.

*Id.* at 823. "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests may be inadequate....[T]he burden of making this showing is minimal." *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

It is "well-settled precedent in this circuit" that "[w]here an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *League of United Latin Am. Citizens*, 131 F.3d at 1305; *see also Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).[2] This presumption is triggered here because KCWA and SWC

---

[2]  The parties advance divergent interpretations of the Ninth Circuit's presumption of adequacy rule, both citing the following passage from *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) in support of its position:

> When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. *League of United Latin Am. Citizens*, 131 F.3d at 1305. If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation.

*Id*. at 1086.  Plaintiffs emphasize the first sentence, asserting that, in this case, KCWA and numerous existing parties share the same ultimate objective of shielding the OCAP-BiOp.  Therefore, according to Plaintiffs' logic, KCWA must make a compelling showing of <u>inadequacy</u>.  KCWA suggests that this language actually imposes a heightened burden upon <u>Plaintiffs</u> to establish that KCWA's interests are <u>identical</u> to those of the existing intervenor-defendants.  In support of this contention, KCWA points out that *Arakaki*, in the paragraph before the above quoted passage, cites *Trbovich v. United Mine Workers*, 404 U.S. 528, 529 n.10 (1972), for the proposition that "[t]he requirement of [Rule 24] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."  But, KCWA's interpretation of *Arakaki* is not an entirely faithful one.  The language from *Trbovich* is in no way contrary to the position advanced by Plaintiffs.  Put simply, the analysis suggested by the Ninth Circuit in *Arakaki* is as follows.  First, a court must examine whether "an applicant for intervention and an existing party have the same ultimate objective."  324 F.3d at 1086.  If this is the case "a presumption of adequacy of representation arises."  In most cases, this presumption can be rebutted by a minimal showing of inadequacy, as suggested by *Trbovich*.

**13**

share the same ultimate objectives of upholding the validity of the OCAP BiOP and ensuring continued delivery of water from the SWP. However, the presumption is rebuttable upon a showing that the applicant and the existing parties "do not have sufficiently congruent interests." *Southwest Center for Biological Diversity*, 268 F.3d at 823.

Initially, KCWA suggested that its interests diverge from existing intervenor-defendants' in several respects: (1) the interests of entities receiving water from the State Water Project would not be protected by the existing parties; (2) KCWA supplies water for both farming and municipal users, putting it in a "far different position" than any existing intervenor-defendants; (3) KCWA intends to advance at the remedies stage a defense based upon the Commerce Clause that no other party is willing to pursue. (Doc. 173, filed March 8, 2006.)

The first of these bases for a finding of divergence is no longer valid after the Ninth Circuit's decision granting SWC's motion to intervene. SWC specifically represents the interests of SWP contractors.

It is not clear whether KCWA continues to rely on the second

---

Although *Arakaki* and *Trbovich* are arguably inconsistent with one another, a district court is bound to follow the holdings of the Ninth Circuit unless clearly in conflict with supervening authority. *See Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (articulation of rule by circuit court is law of the circuit, even if not technically necessary to disposition of case). *Arakaki* controls with respect to the subset of cases in which the applicant's interest is shown to be "identical to that of one of the present parties." In such cases, the applicant must make a "compelling showing of inadequacy." Neither *Arakaki* nor *Trbovich* impose an additional burden of proof upon the party <u>opposing</u> intervention.

**14**

basis for intervention.  KCWA has not offered any support, legal or logical, for its assertion that the existence of municipal users within its jurisdiction alters the nature of its interests in this litigation vis-a-vis any other SWP contractor, already represented by SWC.

KWCA's remaining contention to justify intervention is its intent to assert the so-called "Commerce Clause defense".  KCWA describes this defense as follows:

> [T]he Secretary of the Interior lacks authority under the Commerce Clause to apply Section 7 of the ESA on behalf of the delta smelt, which has no apparent role in interstate commerce and whose habitat is located entirely within the State of California.  (*See United States v. Lopez*, 514 U.S. 549, 561 (1995).  Thus [KCWA] will contend that the operations of the CVP and [SWP], as they apply to the delta smelt, do not substantially affect interstate commerce.

(Doc. 173 at 13.)  KCWA does not clearly explain how or in what context this so-called "defense" would be raised during the remedies phase.  Apparently, SWC has informed the Ninth Circuit that it has no intention to pursue the Commerce Clause defense before the district court.  (*See* Doc. 175 at 5.)[3]  KCWA agrees voluntarily limit its participation in this lawsuit to only raising this single issue of the Commerce Clause defense.  Plaintiffs nonetheless oppose KCWA's intervention.

The question is whether KCWA's interests are identical to those of the existing parties.  Specifically, does KCWA's desire

---

[3] KCWA requests that the district court take judicial notice pursuant to Federal Rule of Evidence 201 of the "Notice of Ruling and Request to Expedite Oral Argument" which was filed by SWC with the Ninth Circuit on January 10, 2006.  (*See* Doc. 175.)  As the document is a public record subject to judicial notice, this request is granted.

to advance the Commerce Clause defense create sufficient divergence?  "Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention."  *Id*. at 1086.  Where the existing parties will "make all arguments necessary to defend [the applicant]" intervention should not be permitted.  *Id*.  In *Arakaki*, the applicant argued that the existing defendants would not raise a particular defense.  Based upon the record, the Ninth Circuit found that the existing parties "will adequately represent [the applicant's] interest at trial...[because they] will make all arguments necessary to defend [the applicant]."  Here, SWC has confirmed that it <u>will not</u> pursue the Commerce Clause defense in the district court.  Plaintiffs nevertheless object to intervention on the ground that the Commerce Clause defense is not "necessary" to KCWA's defense because the argument (1)is not relevant and (2) has been "universally rejected by every Court of Appeals that has confronted it, and the Supreme Court has uniformly declined to review those appellate decisions."

   KCWA responds that plaintiffs are "seeking court orders that would result in SWP operations being altered until, and after, a new BO is prepared and approved.  At that point, the scope of ESA authority to regulate operations of the State Water Project becomes very relevant."  (Doc. 209, KCWA's Reply, at 6.)  KCWA also adds that "this issue of how the ESA applies to the sovereign activities of the State, in the context of the reach of the commerce clause, has never been litigated."  (*Id*.)

   The Commerce Clause defense rases issues which have not previously succeeded in any circuit.  However, the test for

**16**

intervention is not whether the defense has merit in the context of this case, where the State of California has managed the SWP cooperatively with the federal government for many years.  the merits of the defense cannot be addressed dispositively without notice and opportunity to be heard.

Plaintiffs express concern that litigating this issue here will unnecessarily complicate the litigation, and overburden their resources, suggesting that it might be more appropriate for KCWA to raise this issue in a separate lawsuit.  Requiring KCWA to bring a separate action would likely only delay the proceedings and unnecessarily burden judicial and party resources.  KCWA's Commerce Clause defense is integrally related to the subject matter of this case and a separate lawsuit based on the defense would likely become the subject of a transfer and/or consolidation motion.  Allowing KCWA to raise the defense here will not "unnecessarily complicate the litigation."  If the defense is meritless, a Rule 12 or other dispositive motion should appropriately address its efficacy.

Plaintiffs object separately to KCWA's suggestion that it be permitted to raise the Commerce Clause defense during the remedies phase of the case, arguing that interjection of the defense at that stage may unnecessarily delay resolution and thereby further jeopardize the Delta smelt.  This is a valid concern.  KCWA has indicated that it is prepared to advance the Commerce Clause defense according to the existing dispositive motions schedule.  This approach will permit decision on the Commerce Clause defense in a more timely manner.

Finally, Plaintiffs express concern about the growing number

**17**

of intervenors and the potential burden placed on Plaintiffs if required to respond to full-length briefs from all opposing parties. All parties agreed to address this concern at the up-coming case management conference.

### B. **Permissive Intervention**.

Alternatively, KCWA requests permission to permissively intervene pursuant to Rule 24(b)(2), which provides that a court may, in its discretion, permit intervention, "when an applicant's claim or defense and the main action have a question of law or fact in common." In exercising its discretion the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id*.

> The language of the rule makes clear that if the would be intervenor's claim or defense contains no question of law or fact that is raised also by the main action, intervention under Rule 24(b)(2) must be denied. But, if there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention.

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002). "Where proposed intervenors would present no new questions to the court, a motion for permissive intervention is properly denied." *Hallco Mfg. Co., Inc. v. Quaeck*, 161 F.R.D. 98, 103 (D. Or. 1995). Here, KCWA plans to present one new legal issue, concerning its Commerce Clause defense.

//
//
//
//

**18**

### V.  CONCLUSION

KCWA's motion to intervene as a matter of right is **GRANTED,** conditioned upon strictly limiting its participation to presenting the Commerce Clause defense.  Further conditions on briefing length may be imposed at the case management conference.

**SO ORDERED**

　　　　　　　　　　　　　　　　　/s/ Oliver W. Wanger
　　　　　　　　　　　　　　　**OLIVER W. WANGER**
　　　　　　　　　　　　**United States District Judge**