1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Natural Resources Defense Council, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Dirk Kempthorne, Secretary, U.S. Department of the Interior, et al.,<br><br>    Defendants.<br><hr>California Department of Water Resources, State Water Contractors, San Luis & Delta-Mendota Water Authority, Glenn-Colusa Irrigation District, et al.,<br><br>    Defendant-Intervenors. | 1:05-cv-01207-OWW-GSA<br><br>ORDER DENYING DEFENDANT-INTERVENOR STATE WATER CONTRACTORS' MOTION TO DISMISS PLAINTIFFS' SECOND SUPPLEMENTAL COMPLAINT (Doc. 502)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT-INTERVENORS SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, ET AL. MOTION TO DISMISS PLAINTIFFS' SECOND SUPPLEMENTAL COMPLAINT (Doc. 503)<br><br>ORDER DENYING DEFENDANT-INTERVENOR CALIFORNIA DEPARTMENT OF WATER RESOURCES' MOTION TO DISMISS PLAINTIFFS' SECOND SUPPLEMENTAL COMPLAINT (Doc. 516) |

I.  Introduction.

     This case concerns the ongoing controversy regarding the threatened delta smelt species as it is impacted by the coordinated operations of the federally-managed Central Valley Project ("CVP") and California's State Water Project ("SWP").  In the motions now before the court, defendant-intervenors State Water Contractors ("SWC"); San Luis & Delta Mendota Water Authority ("SLDMWA"), Westlands Water District ("Westlands"),

1  California Farm Bureau ("CFB"), and Glenn-Colusa Irrigation

2  District ("GCID"), et al. (collectively "San Luis Parties"); and

3  the California Department of Water Resources ("DWR"), have filed

4  three separate motions to dismiss Natural Resources Defense

5  Council's, et al. ("Plaintiffs") second supplemental complaint

6  ("SSC").

7

8                      II.  **Background**.

9       Plaintiffs first supplemental complaint alleged that the

10 United States Fish and Wildlife Service ("FWS") failed to perform

11 its duties under the Endangered Species Act ("ESA") § 7(a)(2) in

12 consulting with the United States Bureau of Reclamation

13 ("Bureau") regarding the impacts of the 2004 Operations Criteria

14 and Plan ("OCAP") on the delta smelt.  On March 20, 2006,

15 Plaintiffs sent a sixty-day notice of intent to sue for

16 violations of ESA § 7(a) and § 7(d) to Secretary of the Interior

17 Gale A. Norton ("Norton"); to Kirk C. Rodgers, Regional Director,

18 Mid-Pacific Region of the Bureau of Reclamation ("Rodgers"); and

19 John W. Keys, Commissioner, Bureau of Reclamation ("Keys").

20      On May 25, 2007, summary judgment was granted in favor of

21 Plaintiffs on their claim against FWS under the Administrative

22 Procedures Act ("APA"), 5 U.S.C. § 706.  The summary judgment

23 decision found, among other things, that the OCAP Biological

24 Opinion ("OCAP BO") was unlawful and inadequate in several

25 respects.  Supplemental briefing on interim remedies was ordered

26 pending reconsultation and the issuance of a new biological

27 opinion and a remedies evidentiary hearing scheduled.

28      In their remedies briefs, Plaintiffs maintained that in

                                2

1  light of summary judgment in their favor, the court has

2  jurisdiction, through its equitable powers under the APA, to

3  enforce its judgment by requiring the Bureau to modify its CVP

4  operations and DWR to modify its SWP operations, to prevent

5  jeopardy to and extinction of the delta smelt, to avoid adverse

6  modification of its critical habitat, and to prevent the

7  irreversible and irretrievable commitment of resources.  On July

8  10, 2007, Plaintiffs moved to supplement their complaint to add

9  two claims against the Bureau to resolve uncertainty over the

10 court's authority to enjoin the Bureau from committing ongoing

11 violations of the ESA.  Plaintiffs were granted leave to file the

12 SSC on August 30, 2007.

13        The SSC, among other things, added two claims for relief.

14 The second claim for relief alleges that the Bureau has failed

15 and is failing to ensure that its actions will neither jeopardize

16 the continued existence of the delta smelt or destroy its

17 critical habitat in violation of ESA § 7(a)(2) and APA § 706.

18 The second claim for relief provides:

19                     SECOND CLAIM FOR RELIEF

20    Violations Of ESA And APA: Bureau's Failure To Ensure That Its
      Actions Are Not Likely To Jeopardize The Continued Existence Of
21 The Species Or Destroy Or Adversely Modify Their Critical Habitat
                 (16 U.S.C. § 1536(a)(2); 5 U.S.C. § 706)

22
          74.   Plaintiffs re-allege, as if fully set forth herein,
23              each   and   every   allegation   contained   in   the
                preceding paragraphs.
24
          75.   As    alleged   above,   the   Biological   Opinion
25              incorrectly concludes that the 2004 OCAP will not
                jeopardize the delta smelt. Moreover, the Bureau
26              has an independent duty to ensure that its actions
                avoid jeopardy. Implementation of the 2004 OCAP
27              operations, including its direct, indirect, and
                cumulative   effects,   has   both   short-term   and
28              long-term adverse impacts on the delta smelt that

                                    3

jeopardize its continued existence. Accordingly, notwithstanding the Biological Opinion, by implementing the 2004 OCAP the Bureau has failed and is failing to ensure that its actions will not jeopardize the continued existence of the delta smelt, in violation of section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2).

76. For the same reasons, the Bureau also has failed and is failing to ensure that its actions are not likely to destroy or adversely modify the designated critical habitat of the delta smelt. The final rules designating critical habitat for the delta smelt describe many features of critical habitat essential for these species' recovery, including, among other things, adequate water quality and quantity, water temperature, and safe passage conditions. Implementation of the 2004 OCAP will adversely impact these features of designated critical habitat and will destroy and adversely modify the ability of the critical habitat to contribute to the recovery of the species, in violation of section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2).

77. Defendants' failure to insure that their actions will not jeopardize the continued existence of the delta smelt or destroy or adversely modify their critical habitat is arbitrary, capricious, an abuse of discretion, and not in accordance with law, contrary to the APA, 5 U.S.C. § 706(2).

The third claim for relief alleges that the Bureau has taken and is taking actions that constitute irreversible and irretrievable commitments of resources prior to completion of a valid § 7 consultation in violation of ESA § 7(d) and APA § 706.  The third claim for relief provides:

THIRD CLAIM FOR RELIEF

Violations Of ESA And APA: Irretrievable And Irreversible Commitments Of Resources That Foreclose Reasonable And Prudent Alternatives
(16 U.S.C. § 1536(d); 5 U.S.C. § 706)

78. Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

79. Section 7(d) of the ESA, 16 U.S.C. § 1536(d), prohibits federal agencies, including the Bureau,

4

from making any irretrievable and irreversible commitments of resources during consultation pursuant to section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), "which [have] the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures" that would avoid jeopardy to the species. This prohibition continues until the requirements of section 7(a)(2) are satisfied. 50 C.F.R. § 402.09.

80. The restrictions imposed by section 7(d) are in effect because the Bureau has not yet completed the consultation process lawfully by ensuring that a valid biological opinion is in place regarding the 2004 OCAP before putting the species at risk. The prohibition against the irreversible and irretrievable commitment of resources applies to and bars the implementation of any changes to CVP and SWP operations contained in the 2004 OCAP where such implementation involves irreversible or irretrievable commitments of resources until a valid section 7 consultation has been completed and a valid biological opinion has been adopted.

81. The Bureau has taken and is taking actions that could foreclose implementation of reasonable and prudent alternatives that would avoid jeopardy, including but not limited to signing and implementing new long-term contracts promising delivery of substantially increased quantities of water, in violation of section 7(d). This violation is arbitrary, capricious, an abuse of discretion, and not in accordance with law, contrary to the APA, 5 U.S.C. § 706(2).

SWC filed its motion to dismiss or strike (Doc. 502) on October 1, 2007.  The San Luis Parties filed their motion to dismiss (Docs. 503-04) on October 1, 2007.  DWR filed its motion to dismiss or strike (Docs. 516-17) on October 15, 2007.  Dirk Kempthorne, Secretary of the United States Department of Interior and other federal defendants ("Federal Defendants") filed a non-opposition brief to SWC's, DWR's, and the San Luis Parties' motions to dismiss (Doc. 540) on November 16, 2007.  Plaintiffs filed a joint opposition brief (Doc. 543) to SWC's and DWR's motions to dismiss because of the similarity of arguments on

1  November 21, 2007.  Plaintiffs filed an opposition brief to the

2  San Luis Parties' motion to dismiss (Doc. 544) on November 21,

3  2007.  SWC, DWR, and the San Luis Parties filed separate reply

4  briefs (Docs. 547, 548, 549, respectively) on December 3, 2007.

5  GCID filed a separate reply brief (Doc. 550) on December 3, 2007.

6  CFB filed a joinder to the San Luis Parties' reply brief and

7  GCID's reply brief (Doc. 551) on December 3, 2007.

8                    III.  **Legal Standard**.

9       A.  **Rule 12(b)(1)**.

10      Federal Rule of Civil Procedure 12(b)(1) ("FRCP" or "Rule")

11  permits a motion to dismiss for lack of subject matter

12  jurisdiction.  It is a fundamental precept that federal courts

13  are courts of limited jurisdiction.  Limits upon federal

14  jurisdiction must not be disregarded or evaded.  *Owen Equipment &*

15  *Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  The plaintiff

16  has the burden to establish that subject matter jurisdiction is

17  proper.  *Kokkonen v. Guardian Life Ins. Co.*, 114 S. Ct. 1673,

18  1675 (1994).  This burden, at the pleading stage, must be met by

19  pleading sufficient allegations to show a proper basis for the

20  court to assert subject matter jurisdiction over the action.

21  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189

22  (1936); Fed. R. Civ. P. 8(a)(1).  When a defendant challenges

23  jurisdiction facially, all material allegations in the complaint

24  are assumed true, and the question for the court is whether the

25  lack of federal jurisdiction appears from the face of the

26  pleading itself.  *Thornhill Publishing Co. v. General Telephone*

27  *Electronics*, 594 F.2d 730, 733 (9th Cir. 1979); *Mortensen v.*

28  *First Fed. Sav. & Loan Ass'n*, 549 F. 2d 884, 891 (3d Cir.1977);

                                6

1  *Cervantez v. Sullivan*, 719 F. Supp. 899, 903 (E.D. Cal. 1989),

2  rev'd on other grounds, 963 F. 2d 229 (9th Cir. 1992).

3      A defendant may also attack the existence of subject matter

4  jurisdiction apart from the pleadings. *Mortensen*, 549 F. 2d at

5  891.  In such a case, the court may rely on evidence extrinsic to

6  the pleadings and resolve factual disputes relating to

7  jurisdiction. *St. Clair v. City of Chico*, 880 F. 2d 199, 201

8  (9th Cir. 1989); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th

9  Cir. 1987); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th

10 Cir. 1983).  "No presumptive truthfulness attaches to plaintiff's

11 allegations, and the existence of disputed material facts will

12 not preclude the trial court from evaluating for itself the

13 merits of jurisdictional claims."  *Thornhill Publishing*, 594 F.2d

14 at 733 (quoting *Mortensen*, 549 F.2d at 891).

15      B.   Rule 12(b)(6).

16      Federal Rule of Civil Procedure 12(b)(6) provides that a

17 motion to dismiss may be made if the plaintiff fails "to state a

18 claim upon which relief can be granted."  The question before the

19 court is not whether the plaintiff will ultimately prevail,

20 rather, it is whether the plaintiff could prove any set of facts

21 in support of his claim that would entitle him to relief.  *See*

22 *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint

23 should not be dismissed unless it appears beyond doubt that

24 plaintiff can prove no set of facts in support of his claim which

25 would entitle him to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d

26 977, 980 (9th Cir. 2002).

27      In deciding whether to grant a motion to dismiss, the court

28 "accept[s] all factual allegations of the complaint as true and

draw[s] all reasonable inferences" in the light most favorable to the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).  A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

C.   Rule 12(f).

The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings.  Rule 12(f) provides that "a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A motion to strike is limited to pleadings.  *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  However, a "motion to strike" materials that are not part of the pleadings may be regarded as an "invitation" by the movant "to consider whether [proffered material] may properly be relied upon." *United States v. Crisp*, 190 F.R.D. 546, 551 (E.D. Cal. 1999) (quoting *Monroe v. Board of Educ.*, 65 F.R.D. 641, 645 (D. Conn. 1975) ("[A] motion to strike has sometimes been used to call to courts' attention questions about the admissibility of proffered material in [ruling on motions].") (citations omitted)).

Motions to strike are disfavored and infrequently granted. *See Pease & Curran Refining, Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990), abrogated on other grounds by Stanton Road Ass'n v. Lohrey Enters., 984 F.2d 1015 (9th Cir. 1993).  Such motions should be granted only where it can be shown

8

1  that none of the evidence in support of an allegation is

2  admissible.  *See id.*

3                    IV.  <u>Discussion</u>.

4       SWC and DWR raise similar arguments in their respective

5  motions to dismiss, and plaintiffs oppose both motions in a joint

6  opposition brief.  Therefore, SWC's and DWR's motions to dismiss

7  are analyzed together.  The San Luis Parties' motion to dismiss

8  raises arguments not addressed by either SWC or DWR and is

9  therefore analyzed separately.

10      A.  <u>SWC's and DWR's Motions to Dismiss</u>.

11      SWC seeks to dismiss or strike portions of Plaintiffs' SSC

12  that seek excessive or unavailable relief against DWR and SWC

13  under Rule 12(b)(1), (b)(6), and (f).  SWC advances the following

14  two grounds to dismiss or strike portions of the SSC:

15      (A)  The court lacks subject matter jurisdiction over DWR
16           and SWC to directly enjoin their activities and, in
             particular, those activities that are unrelated to the
17           OCAP because the SSC does not allege Plaintiffs
             submitted a written sixty-day notice to either DWR or
18           SWC for alleged violations of the Endangered Species
             Act ("ESA").

19      (B)  The SSC fails to allege that either the DWR or SWC have
20           violated or are violating the ESA, and therefore no
             direct relief may issue against DWR or SWC,
21           particularly to the extent the challenged activity is
             unrelated to the OCAP.

22      SWC contends that it is improper for the SSC to include

23  certain language in the prayer for relief that requests the court

24  to enjoin "defendant-intervenors," including DWR and SWC, from

25  undertaking various activities, including "any action" which

26  results in the taking of delta smelt or the destruction or

27  adverse modification of its critical habitat.  SWC also contends

28  the lack of any charging allegations against DWR and SWC and the

                                  9

1   lack of a written sixty-day notice to DWR and SWC precludes the

2   court from awarding the broadly-worded injunction that

3   Plaintiffs' prayer for relief seeks.  As an alternative to

4   dismissal, SWC requests that the words "and defendant-

5   intervenors" be stricken  from paragraph "D" of the SSC's prayer

6   for relief to the extent it includes DWR and SWC.

7        DWR seeks to dismiss or strike portions of Plaintiffs' SSC

8   under Rule 12(b)(1), (b)(6), and (f) on the following two

9   grounds:

10       (A)  The court lacks subject matter jurisdiction to render
11            relief against DWR under the ESA because the plaintiffs
             failed to allege in the SSC that they provided DWR with
12            a sixty-day notice that DWR has violated any provision
             of the ESA as required under 16 U.S.C. 1540(g).

13       (B)  The SSC fails to allege that DWR has taken any action
             in violation of the ESA.

14

15  DWR seeks dismissal or striking portions of the prayer for relief

16  in the SSC to the extent that it requests that the court "enjoin"

17  DWR as a defendant-intervenor "from taking any action that would

18  jeopardize the continued existence of the delta smelt or

19  adversely modify is critical habitat" as set forth in paragraph

20  "D."  DWR also requests that the court dismiss or strike portions

21  of paragraph "E" to the extent it requests that the court enjoin

22  DWR as a defendant-intervenor "from making any irreversible or

23  irretrievable commitment of resources that could foreclose the

24  implementation of reasonable prudent alternatives to protect the

25  smelt and its critical habitat until a new Biological Opinion is

26  completed."

27       Plaintiffs' opposition contends the only "concrete" relief

28  sought by either motion is that the court strike the phrase "and

                                    10

1  defendant-intervenors" from paragraphs "D" and "E" in the prayer
2  for relief.  Plaintiffs argue that striking "and defendant-
3  intervenors" is trivial.  Plaintiffs reason that this would not
4  dismiss all or part of any claim for relief against SWC or DWR
5  because the SSC does not allege violations of ESA § 7(a) or (d)
6  by either of these parties and ESA § 7 only applies to federal
7  agencies.  Plaintiffs included references to all defendant-
8  intervenors in the prayer for relief in recognition of the
9  court's broad equitable powers to include, as appropriate, any
10 and all defendant parties in any injunctive relief prohibiting
11 actions that violate the ESA.  Additionally, Plaintiffs argue,
12 whether or not the phrase "and defendant-intervenors" is included
13 in the prayer for relief does not alter the ESA § 7 claims
14 against the Federal Defendants, it does not make SWC and DWR
15 directly subject to § 7 duties that apply only to federal
16 agencies, and it does not affect the extent of the court's power
17 to fashion injunctive relief against any party before it to
18 prevent a violation of the ESA.

19      Plaintiffs rejoin the court does have subject matter
20 jurisdiction over SWC and DWR even if they have no § 7 duties
21 because subject matter jurisdiction concerns a court's power to
22 hear a matter—which it does here under federal question
23 jurisdiction—and does not extend to individual parties, but
24 rather to the action itself.  Plaintiffs assert that SWC and DWR
25 seek to avoid injunctive relief over their actions.

26      The ESA contains a citizen-suit provision that permits any
27 person to commence a civil suit on his own behalf to enforce
28 provisions of the ESA.  16 U.S.C. § 1540(g).  The citizen suit

11

1   provision is:

2   (g) Citizen suits

3       (1)   Except as provided in paragraph (2) of this
            subsection any person may commence a civil suit on
4           his own behalf—

5           (A)   to enjoin any person, including the
                United States and any other governmental
6                 instrumentality or agency (to the extent
                permitted by the eleventh amendment to
7                 the Constitution), who is alleged to be
                in violation of any provision of this
8                 chapter or regulation issued under the
                authority thereof; or
9

10          (B)   to compel the Secretary to apply,
                pursuant to section 1535(g)(2)(B)(ii) of
11                this title, the prohibitions set forth in
                or authorized pursuant to section 1533(d)
12                or 1538(a)(1)(B) of this title with
                respect to the taking of any resident
13                endangered species or threatened species
                within any State; or

14
15          (C)   against the Secretary where there is
                alleged a failure of the Secretary to
16                perform any act or duty under section
                1533 of this title which is not
                discretionary with the Secretary.
17

18  The district courts shall have jurisdiction, without regard to the
    amount in controversy or the citizenship of the parties, to enforce
19  any such provision or regulation, or to order the Secretary to
    perform such act or duty, as the case may be. In any civil suit
20  commenced under subparagraph (B) the district court shall compel
    the Secretary to apply the prohibition sought if the court finds
21  that the allegation that an emergency exists is supported by
    substantial evidence.

22      (2)(A)    No action may be commenced under subparagraph
                (1)(A) of this section--
23
24          (i)   prior to sixty days after written
                notice of the violation has been
25                given to the Secretary, and to any
                alleged violator of any such
26                provision or regulation;

27          (ii)  if the Secretary has commenced
                action to impose a penalty pursuant
28                to subsection (a) of this section;
                or

                            12

(iii)  if the United States has commenced and is diligently prosecuting a criminal action in a court of the United States or a State to redress a violation of any such provision or regulation.

(B)  No action may be commenced under subparagraph (1)(B) of this section--

(i)  prior to sixty days after written notice has been given to the Secretary setting forth the reasons why an emergency is thought to exist with respect to an endangered species or a threatened species in the State concerned; or

(ii)  if the Secretary has commenced and is diligently prosecuting action under section 1535(g)(2)(B)(ii) of this title to determine whether any such emergency exists.

(C)  No action may be commenced under subparagraph (1) (C) of this section prior to sixty days after written notice has been given to the Secretary; except that such action may be brought immediately after such notification in the case of an action under this section respecting an emergency posing a significant risk to the well-being of any species of fish or wildlife or plants.

(3)  (A)  Any suit under this subsection may be brought in  the judicial district in which the violation   occurs.

(B)  In any such suit under this subsection in which the United States is not a party, the Attorney General, at the request of the Secretary, may intervene on behalf of the United States as a matter of right.

(4)  The court, in issuing any final order in any suit brought pursuant to paragraph (1) of this subsection, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

(5)  The injunctive relief provided by this subsection shall not restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or

13

1
2

                **limitation or to seek any other relief (including relief against the Secretary or a State agency).**

3   16 U.S.C. § 1540(g).  A citizen may not bring suit prior to sixty

4   days after written notice of an alleged violation has been given

5   to the Secretary and alleged violator.  *Southwest Ctr. for*

6   *Biological Diversity v. Bureau of Reclamation*, 143 F.3d 515, 520

7   (9th Cir. 1998).  The sixty-day notice is jurisdictional. *Id.*  "A

8   failure to comply with the notice requirement acts as an absolute

9   bar to bringing suit under the ESA."  *Id.*

10        The purpose of the 60-day notice provision is to put the
11        agencies on notice of a perceived violation of the
          statute and an intent to sue. When given notice, the
12        agencies have an opportunity to review their actions and
          take corrective measures if warranted.   The provision
13        therefore provides an opportunity for settlement or other
          resolution of a dispute without litigation.

14  *Id.* (citing *Forest Conservation Council v. Espy*, 835 F. Supp.

15  1202, 1210 (D. Id. 1993), *aff'd*, 42 F.3d 1399 (9th Cir.1994)).

16       SWC argues that the court lacks jurisdiction to impose

17  remedies upon DWR and SWC, particularly for activities not

18  covered by the OCAP BO.  SWC's argument that the court lacks

19  subject matter jurisdiction over DWR and SWC to impose a remedy

20  because neither party received a sixty-day notice is unavailing.

21       First, ESA § 7 applies to federal agencies.  DWR is a state

22  agency and SWC is an association of public agencies in California

23  that purchase water from the SWP.  SWC and DWR have no ESA § 7

24  duties and cannot be subject to a citizen suit for violating § 7.

25  Neither the DWR nor SWC were sued by Plaintiffs for ESA relief in

26  this case.  They voluntarily sought and were granted permission

27  to intervene in this lawsuit on their respective assertions to

28  the court that they have cognizable and protectible interests

that will be prejudiced or impaired if they were not permitted to intervene in this lawsuit.   Neither party specially appeared and both voluntarily and unreservedly submitted to the court's jurisdiction.   DWR and SWC were not entitled to a sixty-day § 7 ESA notice.   DWR and SWC sought to be and are parties to this lawsuit by their own choice.

Second, "[a] motion to dismiss under Federal Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject matter jurisdiction *over the action before it*." 5B Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure* § 1350 (3d ed. 2004) (emphasis added).   "The federal courts are courts of limited jurisdiction and only can adjudicate those cases that fall within Article III of the Constitution and a congressional authorization enacted thereunder."   *Id.*   "Subject matter jurisdiction should not be confused with personal jurisdiction, which involves the federal court's ability to exercise power over an individual or entity for the purpose of adjudicating that defendant's rights and liabilities stemming from a particular transaction or event."   *Id.*   Rule 12(b)(1) motions "determine[] whether the plaintiff has a right to be in the particular court . . . ."   *Id.*

Here, federal subject matter jurisdiction exists because this lawsuit arises under the APA and ESA, two federal statutory schemes.   Plaintiffs have invoked the court's federal question jurisdiction under 28 U.S.C. § 1331.   In the SSC, Plaintiffs allege violations of § 7(a)(2) by the Federal Defendants for failing to ensure their actions will not jeopardize the delta smelt or adversely modify its critical habitat.   Plaintiffs also

1   allege the Bureau is taking actions that could foreclose

2   implementation of reasonable and prudent alternatives including,

3   but not limited to, signing and implementing new long-term water

4   service contracts promising delivery of substantially increased

5   quantities of water in violation of § 7(d).  Federal subject

6   matter jurisdiction is properly invoked over this action, and

7   Plaintiffs can obtain relief against the Federal Defendants for

8   violations of the ESA.  Personal jurisdiction exists over SWC and

9   DWR because they voluntarily intervened in this case under Rule

10  24 for all purposes including trial.  DWR and SWC do not argue

11  the court lacks personal jurisdiction over them.  Each has

12  facilities and entities that affect or are affected by operations

13  of the CVP and SWP in the Eastern District of California that are

14  alleged to violate ESA § 7, even if these § 7 claims do not

15  directly apply to SWC and DWR.  There is no basis to dismiss the

16  ESA claims as to those parties, as Plaintiffs' claims for relief

17  include that DWR's and SWC's combined activities with the federal

18  agencies, are violating the ESA.

19      SWC and DWR alternatively seek to strike the phrase "and

20  defendant-intervenors" from paragraphs "D" and "E" in the SSC's

21  prayer for relief under Rule 12(f).  Paragraphs "D" and "E" seek

22  to:

23      D.   Enjoin the defendants and defendant-intervenors
         from taking any action that would jeopardize the
24       continued existence of the delta smelt or destroy
         or adversely modify its critical habitat.
25
         E.   Enjoin the defendants and defendant-intervenors
26       from making any irreversible or irretrievable
         commitment of resources that could foreclose the
27       implementation of reasonable and prudent
         alternatives to protect the smelt and its critical
28       habitat until a new Biological Opinion is

**16**

1    completed.

2  This requested relief is sought under ESA § 7(a)(2) with respect

3  to paragraph "D" and ESA § 7(d) with respect to paragraph "E."

4  As discussed above, ESA § 7 does not apply to SWC and DWR because

5  neither is federal agency.  Plaintiffs argue these paragraphs

6  seek injunctive relief against defendant-intervenors under the

7  court's broad equitable powers to prevent violations of the ESA.

8     Although DWR and SWC are not federal agencies, as a

9  practical matter, to the extent such defendant-intervenors engage

10 in actions in concert with the federal agencies, the court has

11 authority to issue injunctive relief over parties to this lawsuit

12 who have actively participated in all aspects of the litigation,

13 have sought dispositive relief by summary judgment, and have

14 addressed interim remedies that are required pending FWS's

15 issuance of a new biological opinion after the completion of the

16 ongoing reconsultation regarding the OCAP.   Rule 65(d)

17 injunctions bind the following persons who receive actual notice

18 through personal service or otherwise: the parties; the parties'

19 officers, agents, servants, employees, and attorneys; and other

20 persons who are in active concert or participation with any of

21 the previously mentioned persons.  Fed. R. Civ. P. 65(d)(2)(A-C).

22     SWC's and DWR's motions to dismiss under Rule 12(b)(1) and

23 12(b)(6) are DENIED.  SWC's and DWR's motions to strike the

24 phrase "and defendant intervenors" from paragraphs "D" and "E" in

25 the SSC's prayer for relief are DENIED.

26

27     B.   San Luis Parties' Request for Judicial Notice.

28     The San Luis Parties request that the court take judicial

17

notice of three documents obtained from the Bureau's website: (1) a print out of an introductory list categorizing and web-linking various Long-Term Water Service Contracts; (2) a print out of the 2005 Executed Water Service Contracts, which includes information regarding the name of the contractor with the Bureau and the contract number; and (3) a printout of the 2005 Executed Water Sacramento River Settlement Contracts, which includes the name of the contractor with the Bureau and the contract number.

Each of these documents is a public record available on official United States government websites maintained by the Bureau's Mid-Pacific Region.  These three documents evidence the existence of water contracts entered into between the Bureau and various contracting parties since 2005 that are not identified in the Plaintiffs SSC.  Plaintiffs have not objected to the San Luis Parties' request for judicial notice.  These documents are prepared and made available by a government agency to inform the public of its official acts in entering into these contracts. *See In re Calpine Corporation Securities Litigation*, 288 F. Supp. 2d 1054, 1075-76 (N.D. Cal. 2003) (taking judicial notice of documents issued by the Securities and Exchange Commission and obtained from the its website).  The existence of these water contracts are not reasonably subject to dispute and are the proper subject of judicial notice under Federal Rule of Evidence 201 because their existence is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

The San Luis Parties' request for judicial notice is GRANTED.

C. <u>San Luis Parties' Motion to Dismiss</u>.

The San Luis Parties move to dismiss Plaintiffs' third claim for relief under Rule 12(b)(6).

Plaintiffs' third claim for relief alleges:

THIRD CLAIM FOR RELIEF

Violations Of ESA And APA: Irretrievable And Irreversible Commitments Of Resources That Foreclose Reasonable And Prudent Alternatives
(16 U.S.C. § 1536(d); 5 U.S.C. § 706)

78. Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

79. Section 7(d) of the ESA, 16 U.S.C. § 1536(d), prohibits federal agencies, including the Bureau, from making any irretrievable and irreversible commitments of resources during consultation pursuant to section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), "which [have] the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures" that would avoid jeopardy to the species. This prohibition continues until the requirements of section 7(a)(2) are satisfied. 50 C.F.R. § 402.09.

80. The restrictions imposed by section 7(d) are in effect because the Bureau has not yet completed the consultation process lawfully by ensuring that a valid biological opinion is in place regarding the 2004 OCAP before putting the species at risk. The prohibition against the irreversible and irretrievable commitment of resources applies to and bars the implementation of any changes to CVP and SWP operations contained in the 2004 OCAP where such implementation involves irreversible or irretrievable commitments of resources until a valid section 7 consultation has been completed and a valid biological opinion has been adopted.

81. The Bureau has taken and is taking actions that could foreclose implementation of reasonable and prudent alternatives that would avoid jeopardy, including but not limited to signing and implementing new long-term contracts promising delivery of substantially increased quantities of water, in violation of section 7(d). This violation is arbitrary, capricious, an abuse of discretion, and not in accordance with law, contrary to the APA, 5 U.S.C. § 706(2).

19

1    The San Luis Parties advance three reasons why the third

2 claim for relief should be dismissed under Rule 12(b)(6).  First,

3 as a matter of law, a federal agency's § 7(d) obligation expires

4 upon the issuance of a no jeopardy biological opinion.  Second,

5 even if Plaintiffs attempt to reframe their third claim for

6 relief to allege violations of § 7(d) after the Bureau

7 reinitiated consultation, Plaintiffs never provided a sixty-day

8 notice of such claim.  Third, no specific actions and actors are

9 identified and the allegations are so vague and ambiguous that

10 they do not state a claim under § 7(d).

11    The San Luis Parties also seek to dismiss the third claim

12 under Rule 12(b)(7) for failure to join an indispensable party

13 under Rule 19.  During the interim remedies proceedings,

14 Plaintiffs announced that under the third claim for relief they

15 seek to invalidate numerous water supply and settlement contracts

16 between the Bureau and various entities.  Plaintiffs, however,

17 have not joined many of these entities as parties.  The San Luis

18 Parties argue that Plaintiffs' failure to join these parties is

19 contrary to Rule 19, which requires all parties to a contract to

20 be joined in a suit to invalidate such contract, especially when

21 the contract involves valuable property interests such as water

22 rights.

23    The San Luis Parties alternatively argue that if Plaintiffs'

24 third claim for relief is not dismissed, a more definite

25 statement under Rule 12(e) is required.

26         1.   <u>Motion to Dismiss for Failure to State a Claim</u>.

27    The San Luis Parties urge the third claim for relief must be

28 dismissed because no ESA § 7(d) action exists.  Plaintiffs have

1  not provided the proper sixty-day notice; Plaintiffs have not

2  pleaded sufficient facts to support their third claim for relief.

3                    **a.    ESA § 7(d) Prohibition.**

4      Plaintiffs' third claim for relief is premised on the claim

5  that the Bureau remained subject to § 7(d) after the issuance of

6  the no jeopardy OCAP BO on February 16, 2005.  The Plaintiffs'

7  sixty-day notice dated March 20, 2006, asserted  that the

8  "additional restrictions imposed by § 7(d) are in effect because

9  the Bureau has not yet completed the consultation process

10 lawfully by ensuring that a valid biological opinion is in place

11 before putting the species at risk."  According to the San Luis

12 Parties, this means that Plaintiffs assert that the Bureau was

13 not relieved from the prohibitions of § 7(d) by completing the

14 consultation process and receiving a no jeopardy biological

15 opinion from FWS.  The San Luis Parties argue the third claim is

16 non-cognizable because it attempts to apply § 7(d) to actions

17 taken by the Bureau after it completed consultation and received

18 a no jeopardy biological opinion.

19     Plaintiffs rejoin their third claim alleges that the

20 Bureau's "implementation [of the OCAP] involves irreversible and

21 irretrievable commitments of resources," and the Bureau has been

22 and remains in violation of ESA § 7(d) and APA § 706.  Plaintiffs

23 identify the signing and implementation of long-term water

24 service contracts promising delivery of substantially increased

25 quantities of water as an example of irreversible and

26 irretrievable commitments of resources in violation of § 7(d).

27 Plaintiffs assert the signing and implementation of these

28 contracts violate § 7(d) because "until a valid section 7

                              **21**

consultation has been completed and a valid biological opinion has been adopted," the § 7(d) prohibition remains in effect.

The Federal Defendants have filed a statement of non-opposition to DWR's, SWC's, and the San Luis Parties' motions to dismiss. The Federal Defendants maintain that § 7(d) did not apply to the Bureau when it signed the water service contracts because the Bureau had already completed consultation with FWS and received the no jeopardy OCAP BO. The Bureau argues § 7(d) only applies when it is "in consultation" with FWS, not after consultation is completed; the Bureau cites § 7(d) and 50 C.F.R. § 402.09 for support. Nothing prevents Plaintiffs from alleging that the Bureau's renewal of the water contracts violated § 7(a)(2), which remains in force after consultation is complete. Plaintiffs have not made this allegation.

To determine the temporal scope of § 7(d), a review of the statute, the legislative history to the ESA's 1978 amendments, the regulations promulgated under the ESA, and FWS's and NMFS's interpretation of the regulations is helpful. "The starting point for our interpretation of a statute is always its language." *United States v. Fei Ye*, 436 F.3d 1117, 1120 (9th Cir. 2006). "When the statute is ambiguous or the statutory language does not resolve an interpretive issue, our approach to statutory interpretation is to look to legislative history." *SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003). The text of § 7(d) is the starting point. Section 7(d), captioned "Limitation on Commitment of Resources[,]" provides:

> After initiation of consultation required under
> subsection (a)(2), the Federal agency and the permit or
> license applicant shall not make any irreversible or

irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2).

While the text of § 7(d) prohibits the commitment of resources after initiation of consultation under § 7(a)(2), it is silent when the § 7(d) prohibition ends.  FWS and National Marine Fisheries Service ("NMFS"), however, have adopted joint regulations governing § 7 consultations, which refer to when the § 7(d) prohibition ends.  In particular, FWS and NMFS promulgated regulation § 402.09, which  addresses the irreversible or irretrievable commitment of resources under § 7(d).  Regulation § 402.09 provides:

After initiation or reinitiation of consultation required under section 7(a)(2) of the Act, the Federal agency and any applicant shall make no irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternatives which would avoid violating section 7(a)(2). *This prohibition is in force during the consultation process and continues until the requirements of section 7(a)(2) are satisfied*. This provision does not apply to the conference requirement for proposed species or proposed critical habitat under section 7(a)(4) of the Act.

50 C.F.R. § 402.09 (2006) (emphasis added).  The San Luis Parties and Federal Defendants argue the phrase "until the requirements of section 7(a)(2) are satisfied" in regulation § 402.09 means the issuance of a no jeopardy biological opinion, while Plaintiffs argue the phrase means until a valid § 7 consultation has been completed and a valid biological opinion has been adopted.

    The 1986 regulations, of which § 402.09 is a part, amended existing rules governing § 7 consultations by implementing the

23

changes required by the 1978, 1979, and 1982 amendments to the

ESA.  Interagency Cooperation – Endangered Species Act of 1973,

as Amended, 51 Fed. Reg. 19926 (June 3, 1986).  The preamble to

the final regulations explains the final rules adopted, the

substantive issues of each section, noteworthy modifications from

the proposed rules, significant changes from the 1978 rules, and

responses to public comments.  51 Fed. Reg. at 19928.  The

proposed rule that addressed the duration of the § 7(d)

prohibition read as follows:

> After initiation of the consultation process, the Federal
> agency and any applicant shall make no irreversible or
> irretrievable commitment of resources with respect to the
> agency action which may have the effect of foreclosing
> the formulation or implementation of any reasonable and
> prudent alternative measures which would avoid violating
> Section 7(a)(2) of the act. This requirement exists
> until: a "no jeopardy" biological opinion is issued by
> the Service (see § 402.15(g)); the Federal agency adopts
> reasonable and prudent alternatives; or an exemption is
> granted under Section 7(h). This provision does not apply
> to proposed species or proposed critical habitat.

Interagency Cooperation; Endangered Species Act of 1973, 48 Fed.

Reg. 29990, 30000 (June 29, 1983).

The language of the proposed rule was corrected to conform

more closely to § 7(d).  51 Fed. Reg. at 19939.  The proposed

rule addressed the duration of the § 7(d) prohibition as follows:

"This requirement exists until: a "no jeopardy" biological

opinion is issued by the Service (see § 402.15(g)); the Federal

agency adopts reasonable and prudent alternatives; or an

exemption is granted under Section 7(h)." *Id.*  Several

commenters asked for a clarification or expansion of the criteria

that terminate § 7(d) restrictions.  *Id.*  FWS's and NMFS's

summary of the commenters' remarks is as follows:

Noting that the Act is silent as to when the section 7(d) prohibition ceases, one commenter contended that the prohibition should end when consultation is terminated. Another commenter, concerned that the proposed language would deprive Federal agencies of the responsibility and authority to determine compliance with section 7(a)(2), urged the addition of a fourth criterion that would terminate the section 7(d) prohibition if "the Federal agency determines that its proposed action will not jeopardize the continued existence of endangered and threatened species or adversely affect critical habitat." Another commenter went further and urged the Service to adopt other criteria where Federal agency compliance with section 7(a)(2) would remove the section 7(d) restriction. Two other commenters felt that the second criterion--adoption of reasonable and prudent alternatives--must be restricted to those recommended by the Service. They opposed allowing the Federal agency to formulate its own "reasonable and prudent alternatives" without Service approval in order to avoid the prohibition of section 7(d).

*Id.* at 19939-40. FWS and NMFS offered the following explanation in response to the commenters' remarks:

The commenters raise valid concerns that illustrate the need to reexamine the duration of the prohibition against the irreversible and irretrievable commitment of resources. First, the Service recognizes that, although its biological opinions issued by authority of section 7(b) are entitled to great deference, the ultimate decision of whether to proceed with an action in light of section 7 responsibilities rests with the Federal agency. The proposed language did preempt Federal agency discretion by placing an agency that disagreed with the conclusion of the Service's biological opinion in the awkward position of facing section 7(d) restrictions on its action, even though it had determined through its own analysis that the section 7(a)(2) standards were satisfied. Second, case law indicates that section 7(d)'s proscriptive force continues while Federal agency efforts to conform its action to the requirements of section 7(a)(2) are "ongoing." *See North Slope Borough v. Andrus*, 642 F.2d 589, 611 n.143 (D.C. Cir. 1980); *Conservation Law Foundation of New England, Inc. v. Andrus*, 623 F.2d 712, 714 n.1 (1st Cir. 1979). *The final rule has been amended to provide that the section 7(d) prohibition is in force during consultation and continues until the requirements of section 7(a)(2) are satisfied.*

*Therefore, if a Federal agency receives a "no jeopardy" biological opinion from the Service or chooses any reasonable and prudent alternative recommended by the Service, the requirements of section 7(a)(2) are met and*

*the section 7(d) prohibition expires.*  **If the Federal agency disagrees with a "jeopardy" biological opinion or chooses an alternative not provided by the Service based on its own analysis, then the validity of the Federal agency's "no jeopardy" finding will decide whether section 7(a)(2) has been satisfied and whether section 7(d) no longer applies.  If it is later determined that the finding is not valid, the Federal agency would be taking the risk of noncompliance with the Act.**

*Id.* at 19940 (emphasis added).

FWS has interpreted the phrase "[t]his prohibition is in force during the consultation process and continues until the requirements of section 7(a)(2) are satisfied" in 50 C.F.R. § 402.09 to mean that if a no jeopardy/adverse modification biological opinion is issued, the § 7(d) obligation expires. Endangered Species Consultation Handbook, Figure 2-1, p. 2-9 (1998).  Figure 2-1 of FWS's and NMFS's Endangered Species Consultation Handbook provides:

```
Figure 2-1.  Application of section 7(d): irreversible or
irretrievable commitment of resources.


     Agency requests consultation, either formal or informal


I.    "May affect" situation exists          section 7(d)
      formal consultation is required        prohibition begins


II.   If:

      A.  The Services concur with a "not     section 7(d)
          likely to adversely affect"        not applicable
          finding
```

    B.   The Services issue a no jeopardy/    section 7(d)
         adverse modification biological     obligation expires
         opinion, or the action agency
         chooses a reasonable prudent
         alternative from a
         jeopardy/adverse modification
         opinion

    C.   Action agency chooses to disagree
         with the Services'
         jeopardy/adverse modification
         determination, or chooses to
         implement an alternative that has
         not been prescribed by the
         Services; and

        1.   The best available scientific   section 7(d)
            and commercial data support    obligation expires
            the agency decision

        2.   The action agency decision is  section 7(d)
            not justified by available     applies
            data

III.   Reinitiation of consultation is      section 7(d)
      required under 50 C.F.R. § 402.16    applies
      (Return to step II)

Section 7(d) was enacted in response to the Supreme Court's decision in *Tennessee Valley Auth. v. Hill*, 437 U.S. 153 (1978) [hereinafter *TVA*]. *Pacific Rivers Council v. Thomas*, 936 F. Supp. 738, 745 (D. Idaho 1996). In *TVA* the Court was faced with the issue of whether the ESA requires a court to enjoin the operation of a virtually completed federal dam, which had been authorized prior to the enactment of the ESA and constructed at a cost of millions of dollars, when the Secretary of the Interior had determined that operation of the dam would eradicate an endangered species. *TVA*, 437 U.S. at 156. *TVA* involved the construction of Tellico Dam. Congress had appropriated funding

27

1  for Tellico Dam every year since 1967, until progress was stopped

2  by a tangle of lawsuits and administrative proceedings. *Id.*

3  During construction of the dam, an unknown species of fish, now

4  known as the snail darter, was discovered in the waters of the

5  Little Tennessee River. *Id.* at 158.  Roughly two years later,

6  the snail darter was listed as an endangered species. *Id.* at

7  161.  Funding for Tellico Dam continued after the snail darter

8  was listed. *Id.* at 163-64.  In early 1976, environmental groups

9  filed suit to enjoin completion of the dam and impoundment of the

10 reservoir on the ground that those actions would violate the ESA

11 by directly causing the extinction of the snail darter. *Id.* at

12 164.  A trial was held and the district court found that closure

13 of the dam and the consequent impoundment of the reservoir would

14 result in the adverse modification, if not complete destruction,

15 of the snail darter's critical habitat making it highly probable

16 that the continued existence of the snail darter would be

17 jeopardized. *Id.* at 165.  The district court also found that the

18 project was roughly 80% complete and there were no alternatives

19 to impoundment of the reservoir short of scrapping the entire

20 project. *Id.* at 166.  The district court further found that if

21 the Tellico Project was permanently enjoined, nearly $53 million

22 would be lost in non-recoverable obligations, meaning that a

23 large portion of the $78 million already expended would be

24 wasted. *Id.*  Weighing these various findings, the district court

25 concluded:

26        At some point in time a federal project becomes so near
         completion and so incapable of modification that a court
27       of equity should not apply a statute enacted long after
         inception of the project to produce an unreasonable
28       result. . . .  Where there has been an irreversible and

1
2

>    irretrievable commitment of resources by Congress to a
>    project over a span of almost a decade, the Court should
>    proceed with a great deal of circumspection.

3  *Id.*  The district court dismissed the plaintiffs' lawsuit.  *Id.*

4  at 165.  The Sixth Circuit Court of Appeals reversed and found

5  that the district court abused its discretion by not issuing an

6  injunction in the face of a blatant statutory violation.  *Id.* at

7  168.  The Sixth Circuit remanded with instructions that a

8  permanent injunction issue halting all activities incident to the

9  Tellico Project which may destroy or modify the critical habitat

10 of the snail darter.  *Id.*  The Supreme Court affirmed the Sixth

11 Circuit finding "[t]he plain intent of Congress in enacting [the

12 ESA] was to halt and reverse the trend toward species extinction,

13 whatever the cost."  *Id.* at 184.

14      It is against the Tellico Project background "that § 7(d)

15 must be scrutinized."  *Pacific Rivers Council*, 936 F. Supp. at

16 745.  "Congress enacted § 7(d) to prevent Federal agencies from

17 'steamrolling' activity in order to secure completion of the

18 projects regardless of their impact on endangered species."  *Id.*

19 In response to the huge waste of resources committed to the

20 Tellico Project, the court in *Pacific Rivers Council* stated:

21  >   Congress enacted § 7(d) to preclude the investments of
22  >   large sums of money in any endeavor if (1) at the time of
     >   the investment there was a reasonable likelihood that the
23  >   project, at any stage of development, would violate §
     >   7(a)(2), and (2) that investment was not salvageable
24  >   (i.e. it could not be applied to either an alternative
     >   approach to the original endeavor or to another project).

25 *Id.* (citing *North Slope Borough v. Andrus*, 486 F. Supp. 332, 356

26 (D.D.C. 1980), *aff'd in part and rev'd in part on other grounds*,

27 642 F.2d 589 (D.C. Cir.1980)).  By requiring consultation to be

28 initiated prior to the commitment of resources, Congress sought

1   to prevent the situation that occurred in *TVA*, where proceeding

2   with the project would have violated the ESA, but halting the

3   project would not have been a reasonable, economically feasible

4   alternative in light of the huge investment in the project.

5   *Pacific Rivers Council*, 936 F. Supp. at 745.  "Courts have

6   consistently stated that the purpose of § 7(d) is to 'ensur[e]

7   that the status quo will be maintained during the consultation

8   process."  *Id.* (citing *Connor v. Burford*, 848 F.2d 1441, 1445 n.

9   34 (9th Cir. 1988) *cert. denied* 489 U.S. 1012 (1989)) (alteration

10  in original)).

11      The legislative history behind § 7(d) is sparse, but it does

12  provide some insight to the duration of the § 7(d) prohibition.

13  The House Report describing the 1978 amendments to ESA § 7

14  contains a description of the purpose of § 7 and subsequent

15  judicial interpretations, most notably the Supreme Court's

16  decision in *TVA*.  H.R. Rep. No. 95-1625, at pp. 10-12 (1978).  In

17  particular, with respect to § 7(d), the legislative history

18  states:

19          The new section 7(c)(4) [enacted as ESA § 7(d)] of the
            act *would further strengthen the consultation process*.
20          It prohibits any Federal agency from making any
            irreversible or irretrievable commitment of resources
21          once consultation has been initiated if such commitment
            would have the effect of foreclosing efforts to avoid the
22          adverse impacts on the species or their critical habitat.

23  *Id.* at p. 20 (emphasis added).  The House Conference Report

24  discusses that the integrity of the interagency consultation

25  process under § 7 is preserved, and that four provisions were

26  included to expedite and improve the consultation process.  H.R.

27  Rep. No. 95-1804, at 18 (1978)(Conf. Rep.).  The four provisions

28  in the House Conference Report are described as follows:

30

First, consultation would have to be completed within 90 days or such other time as it is mutually agreeable to the Secretary and the Federal Agency.

Second, after the conclusion of consultation the Secretary is required to provide the Federal Agency a written statement detailing whether the agency's actions are in violation of section 7 and outline any reasonable and prudent alternatives to the action.

Third, a biological assessment shall be conducted for the purpose of identifying the presence of any proposed or listed species which might be affected by projects where no contracts for actual construction have been entered into and no construction has begun before the date of enactment of this bill and where the Secretary has advised that such species may be present.

Fourth, after the initiation of consultation, the Federal Agency is prohibited from making any irreversible or irretrievable commitment of resources which has the effect of foreclosing the formulation of implementation of reasonable and prudent alternatives to the proposed action.

*Id.* at 18-19.

It appears that only one case has directly addressed when the § 7(d) prohibition expires. In *Enos v. Marsh*, 616 F. Supp. 32 (D. Haw. 1984), a case overlooked by the parties, residents of the Waianae Coast on the island of Oahu, brought suit against the Secretary of the Army, among others, for declaratory and injunctive relief seeking to stop the construction of a deep draft harbor at Barbers Point.  The plaintiffs argued that the Army Corps of Engineers violated § 7(d) which prohibited the Corps from making irreversible or irretrievable commitments of resources which had the affect of foreclosing the formulation or implementation of reasonable and prudent alternatives.  *Id.* at 62.  In determining that no violation of the ESA occurred, the district court held that § 7(d) duties "exist[] only while the Corps is consulting with the Service."  *Id.*  The Corps' § 7(d)

1   "duty is terminated when the consultation is terminated."  *Id.*

2   "[O]nce the Service has issued its biological opinion (as it has

3   done here), no further consultation is required."  *Id.* (citing

4   *Stop H-3 v. Lewis*, 538 F. Supp. 149 (D. Haw. 1982).

5           These authorities establish that the § 7(d) prohibition

6   commences with the initiation of consultation and ends upon FWS's

7   issuance of a no jeopardy/adverse modification 61biological

8   opinion.  There is no dispute when the § 7(d) prohibition

9   commences.  Section 7(d) provides that the federal agency and

10  permit or license applicant shall not make an irreversible or

11  irretrievable commitment of resources after initiation of

12  consultation; initiation of consultation triggers the § 7(d)

13  prohibition.  As other courts have explained, the purpose of §

14  7(d) is to maintain the "status quo" during the § 7 consultation

15  process.  *Pacific Rivers Council*, 936 F. Supp. at 745 (citing

16  *Connor v. Burford*, 848 F.2d 1441, 1445 n. 34 (9th Cir. 1988)

17  *cert. denied* 489 U.S. 1012 (1989)).  Plaintiffs' sixty-day

18  notice, at page nine, even acknowledges § 7(d)'s purpose.

19          Regulation § 402.09 supports the San Luis Parties' and

20  Federal Defendants' argument that the § 7(d) prohibition ends

21  when FWS issues a no jeopardy/adverse modification biological

22  opinion.  The regulation states that the § 7(d) prohibition is in

23  force during the consultation process and continues until the

24  requirements of § 7(a)(2) are satisfied.  The plain language of

25  the regulation contemplates that the § 7(d) prohibition remains

26  in force during the consultation process.  Consultation is not an

27  ever-lasting and indefinite process; it has triggering actions

28  and must end at some point when FWS determines that the federal

32

1  agency's proposed action either will or will not jeopardize or
2  adversely modify the critical habitat of a listed species.   Upon
3  the issuance of a no jeopardy biological opinion, FWS has
4  completed its duties and the consultation process ends.  *Enos*,
5  616 F. Supp. at 62 (citing *Stop H-3 v. Lewis*, 538 F. Supp. 149
6  (D. Haw. 1982).  The issuance of a no jeopardy/adverse
7  modification biological opinion satisfies the procedural
8  requirements of § 7(a)(2).  It is at this point that the federal
9  action agency can proceed with its formerly proposed actions that
10 were the subject of consultation.

11      The preamble to regulation § 402.09 also supports the San
12 Luis Parties' and Federal Defendants' contention that the § 7(d)
13 prohibition ends upon the issuance of a no jeopardy/adverse
14 modification biological opinion.  In adopting § 402.09, which was
15 modified from its proposed form after several comments were
16 received,  FWS understood § 402.09 in its final form to mean that
17 the § 7(d) prohibition expired upon the issuance of a no
18 jeopardy/adverse modification biological opinion.  The preamble
19 states: "[t]he final rule has been amended to provide that the
20 section 7(d) prohibition is in force during consultation and
21 continues until the requirements of section 7(a)(2) are
22 satisfied."  51 Fed. Reg. at 19940.  In the next sentence FWS
23 states: "[t]herefore, if a Federal agency receives a "no
24 jeopardy" biological opinion from the Service or chooses any
25 reasonable and prudent alternative recommended by the Service,
26 the requirements  of section 7(a)(2) are met and the section 7(d)
27 prohibition expires."  *Id.*  Figure 2-1 in FWS's Consultation
28 Handbook is consistent with both regulation § 402.09 and the

1    preamble.

2         The brief legislative history behind § 7(d) also supports

3    the argument that the § 7(d) prohibition ends upon the issuance

4    of a no jeopardy/adverse modification biological opinion.   The

5    House Report states that § 7(d) "would further strengthen the

6    consultation process."   H.R. Rep. No. 95-1625, at p. 20.   In

7    overhauling ESA § 7 in 1978, Congress was concerned with the

8    integrity of the consultation process.   H.R. Rep. No. 95-1804, at

9    18 (Conf. Rep.).

10        Finally, in the only case found discussing the temporal

11   scope of § 7(d), the district court in *Enos*, determined that the

12   Army Corps of Engineers had not violated the ESA.   In making this

13   determination the court held that a federal agency's § 7(d) duty

14   exists only while the agency is consulting with the service.

15   *Enos*, 616 F. Supp. at 62.   The court also concluded that the §

16   7(d) duty terminates when consultation terminates, and that

17   consultation terminates once the service issues its biological

18   opinion.   *Id.*   Plaintiffs have not cited a case to the contrary.

19        FWS's interpretation of § 7(d) regarding when a federal

20   agency's § 7(d) duty expires is reasonable and consistent with

21   the § 7 consultation process as a whole and is entitled to

22   deference under *Chevron USA, Inc. v. Natural Resources Defense*

23   *Council, Inc.*, 467 U.S. 837, 842-44 (1984), and *National Assoc.*

24   *of Homebuilders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2533-

25   36 (2007).

26        Based on commencement of the § 7(d) prohibition upon

27   initiation of consultation, which ends with the issuance of a no

28   jeopardy/adverse modification biological opinion, the SSC must be

                                    **34**

analyzed to determine whether Plaintiffs have stated a valid claim against the Bureau for violating § 7(d).  Several key dates and events are critical to Plaintiffs'§ 7(d) claim.  On July 30, 2004, FWS issued the original biological opinion concluding that proposed OCAP operations would neither jeopardize the delta smelt, nor cause adverse modification of its critical habitat.  At the Bureau's request consultation was reinitiated to reexamine potential critical habitat issues.  Plaintiffs filed their original complaint in this case on February 15, 2005, alleging that the original biological opinion was arbitrary, capricious, and not in accordance with the law.  Plaintiffs alleged FWS's conclusion had no basis in the record, FWS failed to consider the cumulative effects of the action, FWS failed to rely on the best available science, and FWS improperly relied on uncertain mitigation measures.  Plaintiffs' original complaint only asserted claims under the APA.  The following day, February 16, 2005, FWS issued a new no jeopardy/adverse modification biological opinion (the OCAP BO) with only minor alterations to the original.[1]  Roughly thirteen months later, on March 20, 2006, Plaintiffs sent their sixty-day notice of intent to sue for violations of ESA § 7(a) and § 7(d) to Norton, Rodgers, and Keys.[2]  Plaintiffs sixty-day notice contained the following language regarding the Bureau's § 7(d) violation:

    D.  <u>The Bureau is Making Irretrievable and Irreversible</u>

_____

[1] Plaintiffs supplemented their original complaint to challenge the superseding February 16, 2005, biological opinion.

[2] May 19, 2006, is the earliest date the Plaintiffs could have filed suit for violations of the ESA.  16 U.S.C. § 1540(g).

**Commitments of Resources, in Violation of ESA §
7(d).**

Section 7(d) of the ESA, 16 U.S.C. § 1536(d), prohibits
federal agencies from making any irretrievable and
irreversible commitments of resources "which [have] the
effect of foreclosing the formulation or *implementation*
of any reasonable and prudent alternative measures"
which would not jeopardize the species. (emphasis
added).  "This prohibition . . . continues until the
requirements of section 7(a)(2) are satisfied."  50
C.F.R. § 402.09.  *See Pacific Coast Fed'n of
Fishermen's Assoc. v. Bureau of Reclamation*, 138 F.
Supp. 2d 1228 (N.D. Cal. 2001)(requiring that the
Bureau suspend water deliveries in Klamath Basin,
unless flows were fully adequate for fish, pending
completion of biological opinion); *Greenpeace v.
National Marine Fisheries Service*, 80 F. Supp. 2d 1137
(W.D. Wash. 2000)(enjoining implementation of fishing
management plans in specific areas pending completion
of biological opinion).

The additional restrictions imposed by section 7(d) are
in effect because the Bureau has not yet completed the
consultation process lawfully by ensuring that a valid
biological opinion is in place before putting the
species at risk.  The prohibition against the
irreversible and irretrievable commitment of resources
in section 7(d) applies to the implementation of any
changes to the CVP and SWP operations contained in the
2004 OCAP.  Until a valid Section 7 consultation has
been completed and valid biological opinions have been
adopted and implemented, implementation of the 2004
OCAP is barred under section 7(d) where such
implementation involves irreversible or irretrievable
commitments of resources.

The Bureau is violating this prohibition by taking
actions that could potentially foreclose implementation
of measures required to avoid jeopardy, including but
not limited to committing resources to the construction
of the Intertie Canal, moving forward with plans to
construct physical alterations as part of the South
Delta Improvement Project, and signing and implementing
new long-term contracts promising delivery of water at
substantially increased quantities during the life of
these renewed contracts, despite the fact that in
recent years the Bureau has been unable to deliver the
amount of water promised in the existing contracts.
These and other actions that make irreversible or
irretrievable commitments of resources are contrary to
law.  *See Pacific Rivers Council v. Thomas*, 936 F.
Supp. 738, 745 (D. Id. 1996)(preservation of "status
quo" as required by *Conner* means enjoining the action
under consultation); *Pacific Coast Fed'n of Fishermen's*

36

*Assoc.*, 138 F. Supp. 2d at 1249 & n.19; *Pacific Rivers Council*, 30 F.3d at 1057.

V.    CONCLUSION

If the Bureau does not take immediate steps to remedy the violations of law described above, upon expiration of the 60 days the parties to this notice intend to file suit against the Bureau pursuant to the citizen suit provision of the ESA.  16 U.S.C. § 1540(g).

(Emphasis in original).

Less than four months after receiving Plaintiffs' sixty-day notice, the Bureau reinitiated consultation with FWS on July 6, 2006.  This reinitiated consultation is presently ongoing, and the issuance of a new biological opinion is pending.

Here, the Bureau's § 7(d) obligation ended when FWS issued the OCAP BO on February 16, 2005.  When consultation was reinitiated with FWS on July 6, 2006, the Bureau again became subject to § 7(d).  During the time period between the issuance of the OCAP BO on February 16, 2005, and reinitiation of consultation on July 6, 2006, the Bureau did not have § 7(d) duties with respect to the 2004 OCAP.  Plaintiffs, however, sent their sixty-day notice of intent to sue under § 7(a) and § 7(d) on March 20, 2006, during the period between issuance of the OCAP BO and reinitiation of consultation.  Plaintiffs' sixty-day notice is valid for their § 7(a) claims, but is invalid to assert § 7(d) violations against the Bureau as it did not have § 7(d) duties it could violate at the time the notice was sent.

The expiration of the Bureau's § 7(d) duty does not depend on whether FWS issues a biological opinion that is "valid" as Plaintiffs insist.  Rather, the expiration of the Bureau's § 7(d) duties depend on whether FWS has issued a no jeopardy/adverse

37

1   modification biological opinion.  The § 7(d) focus is on FWS's

2   act of issuing the no jeopardy/adverse modification biological

3   opinion, not whether such biological opinion withstands a legal

4   challenge some time in the future.  If the expiration of the

5   Bureau's § 7(d) duty turned on the "validity" of a biological

6   opinion after a legal challenge rather than upon its issuance,

7   federal agencies could be delayed from taking any actions

8   previously proposed and later approved by a biological opinion

9   until litigation, including appeals, concluded.  The purpose of §

10  7(d) is to maintain the "status quo" during the consultation

11  process, *Conner v. Burford*, 848 F.2d 1441, 1455 n.34. (9th Cir.

12  1988), not to maintain the "status quo" until litigation over a

13  biological opinion concludes.

14      If Plaintiffs seek to enjoin the Bureau from performing

15  under contracts executed after the issuance of the OCAP BO on

16  February 16, 2005, and before reinitiation of consultation on

17  July 6, 2006, their third claim for relief under § 7(d) is not

18  the vehicle for doing so.

19          **b.    Sixty-Day Notice Under ESA § 11(g)**.

20      The San Luis Parties contend that the third claim for relief

21  must be dismissed because Plaintiffs failed to serve their sixty-

22  day notice after the Bureau reinitiated consultation.  The San

23  Luis Parties argue that Plaintiffs' sixty-day notice dated March,

24  20, 2006, cannot apply to their § 7(d) claim because it was sent

25  during a period in which the Bureau did not have § 7(d) duties,

26  i.e., after FWS issued the no jeopardy OCAP BO in February 2005

27  and more than three months before the Bureau reinitiated

28  consultation on July 6, 2006.

                            38

1    The San Luis Parties rely on *Southwest Ctr. for Biological*
2  *Diversity v. United States Bureau of Reclamation*, 143 F.3d 515,
3  520 (9th Cir. 1998), for the proposition that the "purpose of the
4  60-day notice provision is to put agencies on notice of a
5  perceived violation . . . [and provide them] an opportunity to
6  review their actions and take corrective measures if warranted."
7  The San Luis Parties assert if an agency has no legal duty—in
8  this case under § 7(d)—then the agency has nothing to review and
9  potentially correct, and a pre-violation notice would be entirely
10  inimical to the purpose underlying the ESA's sixty-day notice
11  requirement.  Accordingly, Plaintiffs must wait for a perceived
12  violation by the Bureau of an actual, legal duty before sending a
13  sixty-day notice of the violation.

14    Like the San Luis Parties, the Federal Defendants also
15  contend Plaintiffs' March 20, 2006, sixty-day notice is an
16  invalid "pre-violation" notice.  The Federal Defendants argue
17  Plaintiffs' sixty-day notice cannot provide adequate notice of an
18  alleged § 7(d) violation that occurred after the Bureau
19  reinitiated consultation on July 6, 2006.  The Federal Defendants
20  maintain that the ESA does not permit a party to reserve a right
21  to sue by sending a "pre-violation" notice because the purpose of
22  a sixty-day notice is to provide a period of time, free of
23  litigation, for the federal agency to cure the alleged ESA
24  violation.

25    Plaintiffs contend that the court already determined that
26  their March 20, 2006, sixty-day notice provided sufficient notice
27  to sue the Bureau for violations of § 7(d), when it moved to file
28  the SSC.  Plaintiffs argue that the San Luis Parties and the

1  Federal Defendants raised this same argument when opposing

2  Plaintiffs' motion to file their SSC, and the court already

3  decided that the March 20, 2006, sixty-day notice was not a "pre-

4  violation" notice regarding the § 7(d) claims against the Bureau.

5  Plaintiffs argue the San Luis Parties are now asking the court to

6  ignore its prior ruling and law of the case to dismiss the third

7  claim for relief on the grounds that the sixty-day notice was

8  insufficient to put the Bureau on notice of its ongoing § 7(d)

9  violations.  According to Plaintiffs, their sixty-day notice

10 informed the Bureau that all long-term water service contracts

11 that were executed in reliance on the amended biological opinion

12 constituted ongoing violations of ESA § 7(d).

13      The ESA contains a citizen-suit provision that permits any

14 person to commence a civil suit on his own behalf to enforce

15 provisions of the ESA.  16 U.S.C. § 1540(g).  The citizen suit

16 provision provides in relevant part:

17      (g) Citizen suits

18      (1)  Except as provided in paragraph (2) of this
             subsection any person may commence a civil suit on
19           his own behalf—

20           (A)  to enjoin any person, including the United
                  States   and   any   other   governmental
21                instrumentality or agency (to the extent
                  permitted by the eleventh amendment to the
22                Constitution),  who  is  alleged  to  be  in
                  violation of any provision of this chapter or
23                regulation issued under the authority thereof;
                  or
24
         (2)(A)   No action may be commenced under subparagraph
25                (1)(A) of this section--

26                (i)  prior to sixty days after written notice
                       of  the  violation  has  been  given  to  the
27                     Secretary, and to any alleged violator of
                       any such provision or regulation;
28

40

1  16 U.S.C. § 1540(g).  A citizen may not bring suit prior to sixty

2  days after written notice of an alleged violation has been given

3  to the Secretary and alleged violator.  Southwest Ctr. for

4  Biological Diversity, 143 F.3d at 520.  The sixty-day notice is

5  jurisdictional. *Id.*  "A failure to comply with the notice

6  requirement acts as an absolute bar to bringing suit under the

7  ESA."  *Id.*

> The purpose of the 60-day notice provision is to put the agencies on notice of a perceived violation of the statute and an intent to sue.  When given notice, the agencies have an opportunity to review their actions and take corrective measures if warranted.  The provision therefore provides an opportunity for settlement or other resolution of a dispute without litigation.

12  *Id.* (citing *Forest Conservation Council v. Espy*, 835 F. Supp.

13  1202, 1210 (D. Id. 1993), *aff'd*, 42 F.3d 1399 (9th Cir.1994)).

14      Here, the following three dates are critical to determine

15  whether Plaintiffs' sixty-day notice is an invalid "pre-

16  violation" notice regarding the § 7(d) claim against the Bureau:

17  FWS issued the OCAP BO on February 16, 2005, Plaintiffs sent

18  their sixty-day notice March 20, 2006, and the Bureau

19  reinitiated consultation on July 6, 2006.  Section 7(d) only

20  applies to the Bureau when it is in consultation with FWS.  The

21  time span between FWS's issuance of the OCAP BO and the Bureau's

22  reinitiation of consultation with FWS was a period in which the

23  Bureau was not in consultation and did not have § 7(d) duties.

24  Plaintiffs, however, sent their sixty-day notice during this time

25  span.

26      The March 20, 2006, sixty-day notice does not allege that

27  the Bureau was violating § 7(d) during its consultations with FWS

28  that produced the original biological opinion on July 30, 2004,

41

and the OCAP BO on February 16, 2005.  Nor does, or could, Plaintiffs' March 20, 2006, sixty-day notice allege that the Bureau was violating § 7(d) during the reinitiated consultation that began July 6, 2006.  This would have alleged a prospective violation that had not yet occurred.  To the extent Plaintiffs allege that the Bureau violated § 7(d) during the period between February 16, 2005, and July 6, 2006, their third claim for relief fails as the Bureau did not have § 7(d) duties during this time period.  Because the Bureau did not have § 7(d) duties during this time period, sending a sixty-day notice of an alleged violation would serve little purpose; the Bureau had nothing to review and correct in the litigation-free period before suit could be filed.

To the extent Plaintiffs third claim for relief alleges the Bureau has been violating § 7(d) since it reinitiated consultation on July 6, 2006, this claim also fails for lack of a valid sixty-day notice.  Plaintiffs cannot rely on the March 20, 2006, sixty-day notice to assert a § 7(d) claim against the Bureau for violations that occurred after consultation was reinitiated on July 6, 2006; this would be a "pre-violation" notice.  Rather, Plaintiffs had to send a sixty-day notice after July 6, 2006, a time in which the Bureau was in—and remains in—consultation with FWS, to allege a § 7(d) cause of action.  A new sixty-day notice after July 6, 2006, by Plaintiffs would have afforded the Bureau the opportunity to assess and correct its actions that violated § 7(d) to avoid a potential lawsuit.

Plaintiffs' contention that the court previously decided that their March 20, 2006, sixty-day notice provided sufficient

1  notice to sue the Bureau for § 7(d) violations is incorrect.  The
2  August 30, 2007, order granting Plaintiffs' motion to file the
3  SSC did not decide on the merits, the legal issue of whether the
4  March 20, 2006, sixty-day notice was valid to assert § 7(d)
5  violations against the Bureau for actions taken in the time
6  period between the issuance of the OCAP BO on February 16, 2005,
7  and reinitiation of consultation on July 6, 2006.  Rather, the
8  order granting Plaintiffs' motion to file the SSC determined that
9  the March 20, 2006, sixty-day notice sufficiently described, and
10  the San Luis Parties do not disagree, Plaintiffs' theory of the
11  Bureau's alleged § 7(d) violation.  The order gave Plaintiffs the
12  opportunity to file a supplemental complaint to add new claims
13  and to allege subsequent factual developments in the case.
14  Although the court did not determine filing a supplemental
15  complaint would be futile, at the hearing on Plaintiffs' motion
16  to file the SSC, the court stated that if any party believed that
17  the SSC suffered legal infirmities, the appropriate method to
18  challenge any infirmity was through a Rule 12 motion.  These Rule
19  12 motions followed.

20                    c.   Indefiniteness of the Third Claim for Relief.

21       The San Luis Parties contend the third claim for relief
22  fails to state a claim upon which relief can be granted because
23  no specific relief is justified in that Plaintiffs do not provide
24  facts that demonstrate actions that could foreclose
25  implementation of reasonable and prudent alternatives.

26       Plaintiffs contend that Rule 8(a)(2)'s notice pleading
27  requires only a short plain statement of the claims showing that
28  the pleader is entitled to relief; that they identified § 7(d) as

43

the legal authority under which they were proceeding; and they alleged actions taken by the Bureau in reliance on the OCAP BO, including the execution of long-term water service contract renewals, constituted an irreversible and irretrievable commitment of resources.

Plaintiffs' third claim for relief sufficiently describes the Bureau's actions in operating the projects and overcommitting water to contracts that allegedly violate the ESA. Paragraph "E" of the prayer describes the relief sought under Plaintiffs' third claim in the language of § 7(d). Paragraph 81 of the SSC also asserts that the signing and implementation of new long-term contracts for increased amounts of water violates § 7(d). The number of these contracts is finite, and the San Luis Parties have in fact listed the holders of these contracts in their request for judicial notice. Plaintiffs' express concern raised by their third claim for relief is the increased delivery of water. Plaintiffs' third claim for relief is not indefinite.

The San Luis Parties motion to dismiss Plaintiffs' third claim for relief under Rule 12(b)(6) is GRANTED, with leave to amend if Plaintiffs so desire. Plaintiffs must send a new sixty-day notice with respect to any § 7(d) claims.

## 2. Motion to Dismiss for Failure to Join a Party Under Rule 19.

The San Luis Parties contend that Plaintiffs' third claim for relief should be dismissed for failure to join a party under Rule 19 to the extent they seek to challenge and invalidate any water service contracts. In support of this position, they note the following: Plaintiffs sought, in their interim remedies

1   brief, an order that the Bureau "must rescind the renewals of

2   long-term water contracts it negotiated[;]" Plaintiffs' third

3   claim for relief alleges the Bureau has violated § 7(d) by

4   "signing and implementing new long-term contracts" for delivery

5   of water; and the prayer for relief  requests the Court to

6   "enjoin defendants and defendant-intervenors from making any

7   irreversible or irretrievable commitment of resources . . . until

8   a new biological opinion is completed."  While the San Luis

9   Parties maintain that the third claim for relief is indefinite,

10  Plaintiffs' interim remedies brief demonstrates that they seek to

11  invalidate numerous water service contracts between the Bureau

12  and various third parties.  The San Luis Parties argue that if

13  the aim of Plaintiffs' third claim for relief is to invalidate

14  long-term water service contracts, it must be dismissed because

15  Plaintiffs have not named and served the contracting parties as

16  required by Rule 19.[3]

17

18  [3] The San Luis Parties filed their motion to dismiss on
    October 1, 2007.  Plaintiffs filed a motion for permanent
19  injunction and partial summary judgment on November 11, 2007, in
    which they seek rescission of water contracts entered into by the
20  Bureau and various contracting entities after issuance of the
    OCAP BO on February 16, 2005.  Plaintiffs filed an amended
21  memorandum of points and authorities correcting a footnote and
    abbreviations on November 26, 2007.  Plaintiffs seek the
22  following relief in their motion for permanent injunction and
    partial summary judgment: "Plaintiffs request, on the basis of
23  this Court's prior ruling, the equitable remedy of rescission of
    long-term water contract renewals that were based on the
24  invalidated OCAP BO."  Plaintiffs' Memorandum in Support of
    Motion for Permanent Injunctive Relief and Partial Summary
25  Judgment, p. 25 lns. 11-13.  "Plaintiffs also request summary
    judgment on their second and third claims for relief against the
26  Bureau and ask the Court to hold that the contract renewals
    constitute ongoing violations of §§ 7(a)(2) and (d) of the ESA
27

28

1    The San Luis Parties argue *Lomayakteqa v. Hathaway*, 520 F.2d

2  1324, 1325 (9th Cir. 1975), requires that each individual water

3  district or other entity whose contract Plaintiffs seek to

4  invalidate be joined as a party because all parties affected by

5  an action to set aside a contract are indispensable.  The San

6  Luis Parties also argue that the Ninth Circuit has repeatedly

7  held that "a party to a contract is necessary, and if not

8  susceptible to joinder, indispensable to litigation seeking to

9  decimate that contract."  *Wilbur v. Locke*, 423 F.3d 1101, 1113

10 (9th Cir. 2005).

11   The Federal Defendants also contend that Plaintiffs' third

12 claim for relief should be dismissed under Rule 12(b)(7) for

13 failure to name and serve numerous parties to water contracts

14 entered into with the Bureau.  The Federal Defendants argue that

15 these absent parties have a significant interest in the receipt

16 of water deliveries and will be adversely affected if Plaintiffs

17

18 that must, therefore, be set aside."  *Id.* at lns. 13-15.

19   The following paragraph from Plaintiffs' motion for
   permanent injunction and partial summary judgment aptly
20 summarizes the reason Plaintiffs seek to rescind the water
   contracts:
21

22     Leaving  in  place  these  contracts  will  seriously
       compromise the reconsultation process, the purpose of
23     which is to compel the agencies first to determine the
       needs of the delta smelt and then to condition allocation
24     of the remaining water among CVP contractors consistent
       with those needs. Without rescission, the reconsultation
25     will be turned on its head by requiring the agencies to
       try to fashion adequate protection for the delta smelt
26     from within the confines of these contractual terms.
27

28 *Id.* at p. 18 lns. 4-8.

1   prevail in obtaining rescission of contracts that were entered
2   into in reliance on the OCAP BO.

3        Plaintiffs contend that the remaining contractors not
4   already parties to this suit are neither necessary nor
5   indispensable; the San Luis Parties failed to demonstrate that
6   either (1) in the absence of contractors not already parties to
7   this suit, complete relief is not possible among those already
8   parties, or (2) the absent contractors have a legally protected
9   interest in the outcome of the litigation and their absence would
10  as a practical matter impair or impede their ability to protect
11  that interest.

12       Plaintiffs argue that the Bureau is the only necessary party
13  required for the Court to grant complete relief.  According to
14  Plaintiffs, they would receive all of the relief they have
15  requested if the Court were to make the following determinations
16  and take the following actions: determine that the Bureau has
17  violated and is violating § 7(d); set aside any past irreversible
18  or irretrievable commitment of resources by the Bureau; and
19  enjoin the Bureau from making any future irreversible or
20  irretrievable commitment of resources until completion of a valid
21  § 7 consultation.  At the hearing on the San Luis Parties' motion
22  to dismiss, Plaintiffs' counsel stated that the only relief they
23  sought and was available under the SSC against the Bureau, was
24  with respect to the contracts entered into that were premised  on
25  the now-invalidated OCAP BO.  Counsel for Plaintiffs further
26  stated that they do not seek to litigate private rights that
27  exist between CVP contractors and the Bureau.

28       Plaintiffs also argue that to the extent absent contractors

47

have legally cognizable interests in the outcome of this litigation, this is not a case where "as a practical matter" those interests will be impaired or impeded by their absence. They assert that the absent contractors' interests will not be impaired because their interests are already represented by existing parties to the lawsuit.  Plaintiffs maintain that FWS and the Bureau have avidly defended against the rescission of long-term water contract renewals, and that various defendant-intervenors, including the San Luis Parties, have vigorously defended the absent contractors' interests.  According to Plaintiffs, the forty-one water agencies already participating in this lawsuit are fully capable of representing the interests of the absent contractors whose long-term contracts closely resemble those held by contractors who are currently participating in this case.

Finally, Plaintiffs argue that even if the absent contractors are necessary parties under Rule 19(a), they are not indispensable when the lawsuit seeks vindication of a public right, even though their interests could be adversely affected by an unfavorable decision.  Plaintiffs assert the third claim for relief seeks to vindicate a right held by the public, namely the Bureau's compliance with its statutory duty to protect threatened and endangered species of fish and wildlife.  Plaintiffs maintain they are seeking to protect and enforce the public's right to agency compliance with the ESA, not to adjudicate the rights of individual CVP contractors.

Rule 19 governs the circumstances under which persons must be joined as parties to a lawsuit.  Rule 19 provides in relevant

part:

      (a)  **Persons Required to Be Joined if Feasible.**

           (1)  **Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

                (A)  in that person's absence, the court cannot accord complete relief among existing parties; or

                (B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

                    (i)  as a practical matter impair or impede the person's ability to protect the interest; or

                    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. . . .

      (b)  **When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

           (1)  the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

           (2)  the extent to which any prejudice could be lessened or avoided by:

                (A)  protective provisions in the judgment;

                (B)  shaping the relief; or

                  (C)  other measures;

1

2

3

4

> > (3)  whether  a  judgment  rendered  in  the person's absence would be adequate; and
> >
> > (4)  whether  the  plaintiff  would  have  an adequate  remedy  if  the  action  were dismissed for nonjoinder.

5  Fed. R. Civ. P. 19.

6       The "[a]pplication of Rule 19 involves three successive

7  inquiries." *Wilbur*, 423 F.3d at 1111.  "First, the court must

8  determine whether a nonparty should be joined under Rule 19(a)."

9  The term "necessary" is used to describe those persons to be

10  joined if feasible.  *Id.* at 1112.  "The inquiry is a practical

11  one and fact specific, and is designed to avoid the harsh results

12  of rigid application."  *Shermoen v. United States*, 982 F.2d 1312,

13  1317 (9th Cir. 1992).  "If an absentee is a necessary party under

14  Rule 19(a), the second stage is for the court to determine

15  whether it is feasible to order that the absentee be joined."

16  *Wilbur*, 423 F.3d at 1112.  "Finally, if joinder is not feasible,

17  the court must determine at the third stage whether the case can

18  proceed without the absentee, or whether the absentee is an

19  'indispensable party' such that the action must be dismissed."

20  *Id.*; *Shermoen* 982 F.2d at 1317 (a court must determine whether

21  the absent party is "indispensable" "so that in 'equity and good

22  conscience' the suit should be dismissed.).  "Rule 19 uses the

23  word 'indispensable' only in a conclusory sense, that is, a

24  person is 'regarded as indispensable' when he cannot be made a

25  party and, upon consideration of the factors in Rule 19(b), it is

26  determined that in his absence it would be preferable to dismiss

27  the action, rather than to retain it."  *Wilbur*, 423 F.3d at 1112.

28  "The terms 'necessary' and 'indispensable' are terms of art in

1  Rule 19 jurisprudence: 'Necessary' refers to a party who should
2  be "[j]oined if [f]easible." *Disabled Rights Action Comm. v. Las*
3  *Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (9th Cir. 2004).
4  "'Indispensable' refers to a party whose participation is so
5  important to the resolution of the case that, if the joinder of
6  the party is not feasible, the suit must be dismissed." *Id.*

7               a.    Necessity of Absent Contractors.

8       The first inquiry is whether the absent water contractors
9  are "necessary" parties to this lawsuit.  This inquiry proceeds
10 in two steps.  "First, the court must decide if *complete relief*
11 is possible among those already parties to the suit." *Id.*
12 (emphasis in original).  *Makah Indian Tribe v. Verity*, 910 F.2d
13 555, 558 (9th Cir. 1990).  "This analysis is independent of the
14 question whether relief is available to the absent party." *Id.*
15 "Next, the court must determine whether the absent party has a
16 *legally protected interest* in the suit." *Id.* (emphasis in
17 original).  "If a legally protected interest exists, the court
18 must further determine whether that interest will be *impaired or*
19 *impeded* by the suit." *Id.* (emphasis in original).  "Impairment
20 may be minimized if the absent party is adequately represented in
21 the suit." *Id.*  "The court must also determine whether *risk of*
22 *inconsistent rulings* will affect the parties present in the
23 suit.*"  Id.* at 558-59 (emphasis in original).  Accordingly, the
24 inquiry is: (1) can the court award complete relief among
25 Plaintiffs, Federal Defendants, and defendant-intervenors in the
26 absence of water contractors not already parties to this suit, or
27 (2) do the absent water contractors claim an interest relating to
28 the subject matter of the action, and (A) are they so situated

                              51

1  that disposing of this action in their absence may impair or

2  impede their ability to protect such interest, or (B) leave the

3  Bureau subject to a substantial risk of incurring double,

4  multiple, or otherwise inconsistent obligations.

5                    (1)   Is Complete Relief Possible Among Those
                           Already Parties To This Lawsuit Under
6                          Rule 19(a)(1)(A).

7       Plaintiffs can obtain complete relief under the SSC against

8  those already parties to this lawsuit.  The SSC, and the relief

9  sought under the third claim for relief in particular, seeks to

10 enjoin the Federal Defendants and defendant-intervenors from

11 making any irreversible or irretrievable commitment of resources

12 that could foreclose the implementation of reasonable and prudent

13 alternatives to protect the smelt and its critical habitat until

14 a new biological opinion is completed.  Plaintiffs also seek to

15 enjoin the Federal Defendants and defendant-intervenors from

16 taking any action in reliance on the now invalidated OCAP BO.

17 The SSC alleges the contracts appropriate water that adversely

18 impacts the species, for which Plaintiffs seek to enjoin the

19 Bureau from performing its obligations under executed water

20 contracts and to rescind or otherwise invalidate water contracts

21 executed between the Bureau and contracting entities after the

22 issuance of the OCAP BO on February 16, 2005, and before the

23 reinitiation of consultation on July 6, 2006.

24      Under the existing SSC, Plaintiffs can seek to enjoin the

25 Bureau from performing its obligations under contracts executed

26 between the Bureau and the contracting entities that are

27 currently parties to this lawsuit or rescind these contracts.

28 The inquiry under Rule 19(a)(1)(A) focuses on the relief sought

52

between those that are presently parties to the lawsuit, rather than between a party and a nonparty.  *See Altmann v. Republic of Austria*, 142 F. Supp. 2d. 1187, 1211 (C.D. Cal. 2001) (noting that the Rule 19(a)(1)(A) inquiry "is concerned only with relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." (citing *Eldredge v. Carpenters 46 N. Cal. County Joint Apprenticeship and Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981))).

The critical distinction here is that the Bureau entered into and executed water contracts with numerous entities.  Each water service contract between the Bureau and a contracting party is a stand-alone and separate contract, the validity of which does not depend on whether other water service contracts are rescinded, invalidated, or the subject of injunctive relief. Plaintiffs are the masters of their complaint and may choose to join such parties and claims as are permitted by the Federal Rules of Civil Procedure and applicable substantive law. Plaintiffs are presently limited to such relief only against those who are already parties to this lawsuit.

This lawsuit can address only those contracts between the Bureau and contracting entities that are already parties to this lawsuit, not other contracts between the Bureau and absent contracting parties.  Complete relief can only be afforded to existing parties under the SSC, not absent contracting parties over whom the court has no personal or subject matter jurisdiction, to the extent the contracts are between different parties.

53

1
2

> **(2)  Do the Absent Contractors Claim an
> Interest Relating to the Subject of the
> Action Under Rule 19(a)(1)(B).**

3     The next inquiry is under Rule 19(a)(1)(B) to determine if
4  the absent contractors claim an interest in the subject of the
5  action and are so situated that disposing of the action in their
6  absence may impede or impair their ability to protect that
7  interest or may leave the Bureau subject to a substantial risk of
8  incurring double, multiple, or inconsistent obligations.

9     The Bureau entered into or renewed numerous long-term
10  contracts regarding water deliveries and water rights settlements
11  after issuance of the OCAP BO on February 16, 2005, and before
12  reinitiation of consultation on July 6, 2006.  Each water service
13  contractor has an interest relating to the subject matter of this
14  action to the extent Plaintiffs seek to invalidate or enjoin the
15  Bureau's performance under <u>all</u> contracts entered into in reliance
16  on the OCAP BO.  By entering into a contract with the Bureau,
17  each contracting entity received the right to the receipt of or
18  to use water, a valuable property right.  The right to the
19  receipt of, or continued use of water affects the livelihood of
20  communities and those who use their land for agricultural
21  purposes.

22     It is well-settled that in an action to set aside a
23  contract, all parties to the contract must be present.  *See*
24  *Wilbur*, 423 F.3d at 1113 (stating "it is a 'fundamental
25  principle' that a party to a contract is necessary, and if not
26  susceptible to joinder, indispensable to litigation seeking to
27  decimate that contract." (citing *Dawavendewa v. Salt River*
28  *Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1156-57

**54**

1   (9th Cir. 2002); *Manybeads v. United States*, 209 F.3d 1164, 1166
2   (9th Cir. 2000) (where plaintiff sought to "undo[ ]" agreements
3   to which tribe was a party, tribe "qualifie[d] as a necessary
4   party under both parts of Rule 19(a)"); *Kescoli v. Babbitt*, 101
5   F.3d 1304, 1310 (9th Cir. 1996) (where plaintiff's action would
6   affect agreements to which tribes were parties, tribes were
7   necessary pursuant to Rule 19(a)(2)(i)); *Northrop Corp. v.*
8   *McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983)
9   ("[A]ll parties who may be affected by a suit to set aside a
10  contract must be present"); *Lomayaktewa v. Hathaway*, 520 F.2d
11  1324, 1325 (9th Cir. 1975) ("No procedural principle is more
12  deeply imbedded in the common law than that, in an action to set
13  aside a lease or a contract, all parties who may be affected by
14  the determination of the action are indispensable"); 4 James Wm.
15  Moore et al., Moore's Federal Practice § 19.06 [4] (3d ed. 2005)
16  ("As a general rule, all parties to a contract will be necessary
17  in an action to set aside the contract").

18       "There is no precise formula for determining whether a
19  particular non-party is necessary to an action." *Confederated*
20  *Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496,
21  1498 (9th Cir. 1991). "The determination is heavily influenced
22  by the facts and circumstances of each case." *Id.*  A case
23  arising out of the Second Circuit is instructive in determining
24  whether an absent party to a contract should be joined in a
25  lawsuit.  The case, *Crouse Hinds Co. v. InterNorth, Inc.*, 634
26  F.2d 690 (2d Cir. 1980), concerned enjoining a party to a lawsuit
27  from performing under a contract to the detriment of a non-party
28  to such contract.

1      In *Crouse Hinds*, three corporations were involved in a
2  merger and a tender offer, the plaintiff, Crouse-Hinds, the
3  defendant InterNorth, and Belden, a non-party.  *Id.*  As a result
4  of negotiations, the boards of Crouse-Hinds and Belden approved
5  an agreement by which Belden would be merged into a Crouse-Hinds
6  subsidiary.  *Id.* at 692.  Unknown to both Crouse-Hinds and
7  Belden, a management committee at InterNorth had recommended to
8  its board that InterNorth acquire Crouse-Hinds.  *Id.*  The
9  InterNorth board accepted the recommendation and decided to
10  commence a tender offer for Crouse-Hinds stock.  *Id.*  The
11  InterNorth tender offer, however, was conditional on the
12  abandonment or rejection of the proposed merger between Crouse-
13  Hinds and Belden.  *Id.*

14      Both Crouse-Hinds and Belden resisted InterNorth's tender
15  offer.  *Id.*  After the announcement of the tender offer, Crouse-
16  Hinds and Belden modified their original merger agreement.  *Id.*
17  at 695.  The modified agreement required, among other things,
18  Crouse-Hinds to offer to exchange shares of its stock for shares
19  of approximately 49% of Belden's common stock.  *Id.*  The boards
20  of both Crouse-Hinds and Belden recommended rejection of the
21  InterNorth tender offer to their shareholders.  *Id.*

22      Litigation surrounding these transactions commenced when
23  Crouse-Hinds filed suit against InterNorth alleging InterNorth's
24  tender offer for Crouse-Hinds' shares violated federal securities
25  law and New York corporate law.  *Id.* at 697.  Crouse-Hinds sought
26  to enjoin InterNorth from acquiring its stock.  *Id.*  InterNorth
27  filed a counterclaim alleging Crouse-Hinds's offer to exchange
28  its shares for Belden shares lacked a valid business purpose and

56

was unfair to Crouse-Hinds's shareholders.  *Id.*  InterNorth's
counterclaim sought an injunction to prevent Crouse-Hinds from
acquiring any Belden stock.  *Id.*  The district court granted
InterNorth's motion for a preliminary injunction barring Crouse-
Hinds from acquiring any Belden stock.  *Id.* at 697-98.  The
district court also disagreed with Crouse-Hinds's contention that
Belden was an indispensable party.

     The Second Circuit reversed finding that Belden's presence
was necessary.  *Id.* at 700-01.  The court noted that InterNorth's
counterclaim sought to enjoin performance of the modified
agreement between Crouse-Hinds and Belden, on which Belden relied
and materially altered its financial structure.  Relying on two
Supreme Court cases, *Provident Tradesmens Bank & Trust Co. v.
Patterson*, 390 U.S. 102, 110 (1968), and *Shields v. Barrow*, 58
U.S. 130, 139-40 (1854), and the Ninth Circuit's decision in
*Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975),[4]
the court concluded that Belden's (a non-party) presence was
required because its rights would be prejudiced if the relief
InterNorth sought was granted.  *Id.*

     *Crouse Hinds* stands for the proposition that if two parties
enter into a contract, and a third party sues one of the
contracting parties to enjoin that contracting party from
performing under its contract, the presence of the other party to

_____

     [4] The court cited *Lomayaktewa* for the proposition "No
procedural principle is more deeply imbedded in the common law
than that, in an action to set aside a lease or contract, all
parties who may be affected by the determination of the action
are indispensable."  *Crouse Hinds*, 634 F.2d at 701.

the contract is required in the lawsuit.  This proposition
applies with equal force to this case.  Here, the Bureau and
numerous third party contracting entities entered into various
water service or settlement contracts after issuance of the OCAP
BO.  Plaintiffs have sued the Bureau and now seek to invalidate,
rescind, or enjoin the Bureau from performing under contracts
with numerous water contractors, some of which are not parties to
this lawsuit.  The prayer for relief in the SSC at paragraphs C,
D, and E seeks to enjoin the Bureau from "taking <u>any</u> action in
reliance on the "invalid Biological Opinion[,]" to enjoin the
Bureau from "taking <u>any</u> action that would jeopardize the
continued existence of the delta smelt or adversely modify its
critical habitat[,]" and to enjoin the Bureau from "making any
irreversible or irretrievable commitment of resources that could
foreclose the implementation of reasonable and prudent
alternatives to protect the smelt and its critical habitat until
a new Biological Opinion is completed[,]" respectively.
(Emphasis added).  The relief sought is broad and encompasses the
Bureau's performance under water service contracts with both
parties and non-parties.  Plaintiffs argue that whether or not
the court orders the Bureau to invalidate the contracts that were
unlawfully entered into, or to permanently enjoin the Bureau from
performing under such contracts, its order would run against the
Bureau, as opposed to the absent contractors.  This argument does
not account for the effects on the absent contractors.  As in
*Crouse Hinds*, the district court's order enjoining Crouse-Hinds
from purchasing Belden stock ran against Crouse-Hinds.
Plaintiffs' argument failed there, and it fails here also.  There

1  Belden, the absent party, would be injured by an injunction, as

2  would the absent water service contractors here.  The absent

3  contractors, like Belden in *Crouse Hinds*, have relied on their

4  contracts with the Bureau in arranging their business affairs and

5  would be materially prejudiced if their contracts were

6  invalidated, rescinded, or the Bureau was enjoined from

7  performing its obligations.

8      The absent holders of these water contracts have an interest

9  in the subject matter of this lawsuit only to the extent

10  Plaintiffs seek to invalidate or enjoin the performance of a

11  given contract.  If Plaintiffs only seek to enjoin the Bureau

12  from performing under or rescinding contracts that the present

13  defendant-intervenors hold, the absent water service contract

14  holders cannot claim an interest in this lawsuit because any

15  action taken in their absence would not directly affect their

16  respective contract rights.  If, however, Plaintiffs seek to

17  enjoin the Bureau from performing under all water contracts

18  executed after issuance of the OCAP BO and prior to reinitiation

19  of consultation, such absent contracts do have an interest in the

20  subject matter of this lawsuit.[5]

21                              **(a)  Will Disposing of This Action in**
                                **the Absence of Contractors Not**
22                              **Already Parties to This Lawsuit**
                                **Impair or Impede Their Ability to**
23                              **Protect Their Interest.**

24

25      The San Luis Parties contend the absent contractors have an

26  _____

27      [5] **Plaintiffs must file a third supplemental complaint**
**clarifying how they intend to proceed as to the water service**
28  **contracts held by the absent contractors.**

59

1  interest relating to the subject matter of this action and
2  disposing of it without their presence would, as a practical
3  matter, impair or impede their ability to protect such interest.
4  They argue that all parties who may be affected by a suit to set
5  aside a contract must be present.

6      Plaintiffs contend that the existing parties, i.e., the
7  Federal Defendants and defendant-intervenors, will adequately
8  defend the absent contractors interests.  They argue that the
9  absent contractors' interests will not be impaired or impeded,
10 and the existing parties have adequately represented the absent
11 parties' interests throughout this lawsuit and will continue to
12 do so.

13     "In assessing an absent party's necessity under [Rule]
14 19(a), the question whether that party is adequately represented
15 parallels the question whether a party's interests are so
16 inadequately represented by existing parties as to permit
17 intervention of right under [Rule] 24(a).  *Shermoen*, 982 F.2d at
18 1318.  "The requirement of [Rule 24(a)] is satisfied if the
19 applicant shows that representation of his interest 'may be'
20 inadequate; and the burden of making that showing should be
21 treated as minimal."  *Trbovich v. United Mine Workers of Am.*, 404
22 U.S. 528, 538 n.10 (1972).  The Ninth Circuit uses the following
23 three-step inquiry to determine if a non-party is adequately
24 represented by existing parties:

25         A non-party is adequately represented by existing parties
26         if: (1) the interests of the existing parties are such
            that they would undoubtedly make all of the non-party's
            arguments; (2) the existing parties are capable of and
27         willing to make such arguments; and (3) the non-party
            would offer no necessary element to the proceeding that
28         existing parties would neglect.

1  *Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d
2  1152, 1153-54 (9th Cir. 1998) (citing *Shermoen*, 982 F.2d at
3  1318).

4       Here, the Federal Defendants cannot adequately represent the
5  interests of absent contractors because they represent the
6  government and a broad set of interests that are not the same as
7  public or private water contractors.  In this lawsuit, the
8  Federal Defendants must represent the different rights and duties
9  of both the Bureau and FWS.  Additionally, the Bureau and the
10 absent contractors may have different and conflicting interests
11 regarding the water service contracts.  The Bureau is obligated
12 to provide water under the contracts and to comply with the ESA
13 at the same time.  The Bureau may decide that complying with the
14 ESA requires it to not fulfill its obligations under its
15 contracts with the absent contractors.  By doing so, the Bureau's
16 interests would conflict with absent contractors who rely on
17 water deliveries through contracts with the Bureau.  The
18 potential for the Federal Defendants' interests to conflict with
19 the absent contractors interests renders representation by
20 existing parties inadequate.  The Federal Defendants are required
21 to protect the interests of FWS, the Bureau, and the public under
22 the ESA.  At the same time, however, the Federal Defendants would
23 be required to protect the interests of absent water contractors.
24 This conflict is sufficient to satisfy the minimal showing that
25 the Federal Defendants cannot adequately represent the absent
26 contractors interests.  *See National Farm Lines v. Interstate*
27 *Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977) (concluding
28 "[w]e have here also the familiar situation in which the

1  governmental agency is seeking to protect not only the interest
2  of the public but also the private interests of the petitioners
3  in intervention, a task which is on its face impossible. . . .
4  [T]his kind of conflict satisfies the minimal burden of showing
5  inadequacy of representation.").

6       It is unclear based on the Federal Defendants' statement of
7  non-opposition to the San Luis Parties' motion to dismiss if the
8  Federal Defendants are capable of, and are willing to make all of
9  the absent contractors' arguments.  They have only taken the
10 position that the absent contractors should be made parties to
11 this lawsuit because they have significant interests that would
12 be affected if Plaintiffs successfully sought either rescission
13 of their contracts or the Bureau's enjoinment from performing
14 under such contracts.  Implicit in the Federal Defendants'
15 argument is that they are not adequately representing the absent
16 contractors interests.  There is no other need for the Federal
17 Defendants to take the position that the absent contractors
18 should be made parties to this lawsuit.

19      Likewise, neither SLDMWA nor GCID can adequately represent
20 and protect the absent contractors interests.  The members of
21 SLDMWA have competing interests with respect to the availability
22 of and receipt of limited CVP and SWP water.  South-of-Delta CVP
23 contractors are competitors of others holding water service
24 contracts with the Bureau and do not always agree on contract
25 interpretation and allocation issues.  Moreover, even within
26 SLDMWA, individual contracting members have differing individual
27 interests regarding performance of their respective contracts.
28 This is sufficient to establish the minimal required showing that

62

1    SLDMWA would not make all of the absent contractors' arguments or

2    that it is capable of or is willing to do so.

3        Similarly, GCID, Princeton-Codora-Glenn Irrigation District,

4    Reclamation District 108, Natomas Central Mutual Water Co.,

5    Provident Irrigation District, Pelger Mutual Water Co., River

6    Garden Farms, and Pleasant Grove-Verona Mutual Water Company

7    (collectively, "8 Settlement Contractor Intervenors") cannot

8    adequately represent the absent settlement contractors.

9    Plaintiffs state that the 8 Settlement Contractor Intervenors

10   represent 62% of all project water contracted for pursuant to the

11   141 Sacramento River settlement contracts, while the 8 Settlement

12   Contractor Intervenors assert they only account for 38% of the

13   CVP project under the settlement contracts.  Regardless of which

14   number is correct, the 8 Settlement Contractor Intervenors do not

15   hold the same contracts as the absent contractors.  The 8

16   Settlement Contractor Intervenors hold what are known as

17   "Standard Form" or "Long Form" District-type contracts, while

18   most of the absent 133 contractors hold different contracts that

19   are referred to as "Short Form" or "Standard Form" Individual-

20   type contracts.  Additionally, a separate consultation was

21   conducted, a separate concurrence memo was prepared, and a

22   separate record of decision was issued for the renewal of the

23   settlement contracts for Anderson-Cottonwood Irrigation District

24   ("ACID") and the City of Redding, two large settlement

25   contractors that are not currently parties to this lawsuit.  None

26   of the 8 Settlement Contractor Intervenors hold contracts that

27   were the subject of the ACID and City of Redding consultation,

28   and are not in a position to address the specifics of that

63

1   consultation.  This is sufficient to establish the minimal

2   required showing that the 8 Settlement Contractor Intervenors

3   would not make all of the absent contractors' arguments or that

4   they are even capable of, or are willing to do so.

5        Plaintiffs' argument that the absent contractors have been

6   adequately represented by the Federal Defendants and defendant-

7   intervenors is inaccurate.  From initiation of this lawsuit

8   almost three years ago to the date of this order, no action had

9   been taken to abridge the water service contracts executed

10  between the Bureau and contracting entities in reliance on the

11  OCAP BO.  These motions to dismiss are the first defense raised

12  to prevent legal abrogation of the water service contracts.

13  Plaintiffs inaccurately describe the purpose of SLDMWA's,

14  Westlands', GCID's, Princeton-Codora-Glenn Irrigation District's,

15  Reclamation District 108's, Natomas Central Mutual Water Co.'s,

16  Provident Irrigation District's, Pelger Mutual Water Co.'s, River

17  Garden Farms', and Pleasant Grove-Verona Mutual Water Company's

18  motions to intervene.  These parties intervened to protect their

19  own unique and identifiable interests, not the interests of

20  others.

21       The defendant-intervenors already parties to this lawsuit do

22  not adequately represent the interests of the absent contractors.

23  The defendant-intervenors and absent contractors hold different

24  water service contracts, and the absent contractors interests may

25  be impaired or impeded by resolution of this action in their

26  absence.

27                    (b)   Will Disposing of This Action in
                            the Absence of Contractors Not
28                          Already Parties to This Lawsuit

**64**

Leave the Bureau Subject to a
Substantial Risk of Incurring
Double, Multiple, or Inconsistent
Obligations.

The San Luis Parties did expand more on Rule 19(a)(1)(B)(ii)
in their reply brief.  The San Luis Parties argue that because a
court order affecting the validity or terms of a particular water
contract would not be binding on an absent contractor, the absent
contractor could initiate a lawsuit against the Bureau to enforce
performance of the contract.  This, according to the San Luis
Parties, could subject the Bureau to multiple or inconsistent
obligations.  Joining the absent contractors they believe, would
avoid such a problem.

The San Luis Parties are correct in asserting that an absent
contractor would not be bound by an order or judgment affecting
their water contract.  *See Martin v. Wilks*, 490 U.S. 755, 761
(1989) (noting "it is a principle of general application in
Anglo-American jurisprudence that one is not bound by a judgment
*in personam* in a litigation in which he is not designated as a
party or to which he has not been made a party by service of
process.").  Here, the proper inquiry is whether the Bureau will
be subject to inconsistent obligations if the Plaintiffs succeed
in obtaining an injunction that prevents the Bureau from
performing under an absent party's water service contract, and
that party then succeeds in action against the Bureau for non-
performance of such contract.  The focus of Rule 19(a)(1)(B)(ii)
is on inconsistent obligations, not inconsistent adjudications.
*See Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir.
1998) (explaining "'[i]nconsistent obligations' are not, however,

the same as inconsistent adjudications or results."). "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Id.* "Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Id.* Here, the Bureau would be subject to inconsistent adjudications if it is enjoined from performing under absent parties' water service contracts in this lawsuit and the absent parties then successfully sued for breach of contract in a separate action. "[A] risk of inconsistent adjudications or results . . . does not necessitate joinder of all of the parties into one action pursuant to [Rule 19(a)]." *Id.*

> b.   <u>Feasability of Joining Absent Contractors</u>.

The next step is to determine whether joinder of the absent contractors is feasible. *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). If an absent party is necessary and joinder is feasible, the absent party must be joined. Fed. R. Civ. P. 19(a). Joinder is not feasible where the absent party is not subject to service, joinder would deprive the court of subject matter jurisdiction, or the party sought to be joined is immune from suit. Hon. William W. Schwarzer et al., Federal Civil Procedure Before Trial, 7-36 (The Rutter Group 2007). The burden of persuasion rests upon the San Luis Parties who are moving for dismissal. *See Shermoen*, 982 F.2d at 1317 (holding "[t]he moving party has the burden of persuasion in arguing for dismissal[]" under Rule 19.).

1    Here, subject matter jurisdiction exists under the APA and

2    ESA, two federal statutory schemes that invoke federal question

3    jurisdiction.  Joining the absent contractors will not destroy

4    the court's subject matter jurisdiction.  The contracting

5    entities are in California and are subject to service of process

6    under Rule 4.  Finally, the contracting entities do not have an

7    immunity defense as this lawsuit seeks injunctive relief against

8    the Federal Defendants under the APA and ESA, absent Eleventh

9    Amendment immunity, which is likely waived by state public

10   entities contracting with the United States.  While there may be

11   numerous contracting entities to join, and Plaintiffs may find

12   this burdensome, it is feasible under Rule 19(a) to join the

13   absent contractors.  Moreover, the competing interests in this

14   lawsuit are too important to find otherwise.

15              c.    Indispensability of Absent Contractors.

16   "Only if the absent parties are 'necessary' and cannot be

17   joined must the court determine whether in 'equity and good

18   conscience' the case should be dismissed under [Rule] 19(b)."

19   *Makah*, 910 F.2d at 559.  Here, the absent contractors are not

20   indispensable because they are necessary and can be feasibly

21   joined, to the extent Plaintiffs seek relief against all

22   contracting entities.  "'Indispensable' refers to a party whose

23   participation is so important to the resolution of the case that,

24   if the joinder of the party is not feasible, the suit must be

25   dismissed."  *Disabled Rights Action Comm.*, 375 F.3d at 867 n.5.

26   No further inquiry under Rule 19(b) is necessary.

27   Plaintiffs argue the "public rights exception" to joinder

28   enunciated in *National Licorice Co. v. NLRB*, 309 U.S. 350 (1940),

applies here and that the absent contractors are not indispensable parties. "Under the public rights exception, "absentees who would be affected by a decision in the case and whose joinder is not feasible simply will not be held indispensable." 4 Moore's Federal Practice, § 19.06[6] (Matthew Bender 3d ed.). Here, the absent contractors are not indispensable and the public rights exception is not implicated. Even assuming the public rights exception was implicated, the litigation cannot destroy absent parties' legal entitlements. *See Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) (stating "although the litigation may adversely affect the absent parties' interests, the litigation must not destroy the legal entitlements of the absent parties." (citing *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988), *cert. denied* 489 U.S. 1012 (1989))). Here, rescinding or invalidating water service contracts would destroy absent contractors' legal entitlements. Additionally, permanently enjoining the Bureau from performing under water contracts would have the same practical effect of destroying an absent contractor's entitlement to the receipt or use of CVP water.

To the extent Plaintiffs only seek to enjoin the Bureau from performing under or rescinding the present defendant-intervenors' water contracts, the San Luis Parties' Rule 12(b)(7) motion is denied. If Plaintiffs seek to enjoin the Bureau from performing under or rescinding contracts held by absent water contractors, the San Luis Parties' Rule 12(b)(7) motion must be granted with leave to amend so Plaintiffs can join the absent contractors. Nevertheless, as it is possible for Plaintiffs to obtain complete

68

1  relief under the former scenario, the San Luis Parties' motion to

2  dismiss under Rule 12(b)(7) is DENIED WITHOUT PREJUDICE.

3  Plaintiffs, however, shall file a third supplemental complaint

4  clarifying whether they seek to take action against affected

5  water service contracts held by all contracting entities or

6  whether they seek to take action against contracts held only by

7  contractors already parties to this lawsuit.  If Plaintiffs seek

8  to take action against all water service contracts, then the

9  absent contractors shall be joined as parties as required under

10 Rule 19(a).

11              3.   Motion for a More Definite Statement Under Rule

12                   12(e).

13      The San Luis Parties alternatively sought a more definite

14 statement under Rule 12(e).  In their third supplemental

15 complaint, Plaintiffs must clarify whether or not they seek

16 relief against the absent contractors' water service contracts.

17 If the third supplemental complaint seeks relief against all

18 water service contracts, Plaintiffs shall provide a list

19 designating each contract and the contracting party.  Plaintiffs

20 will also need to clarify whether they are going to proceed under

21 § 7(d) for violations occurring after reinitiation of

22 consultation.

23                      V.   Conclusion.

24      For the foregoing reasons,

25      SWC's motion to dismiss is DENIED, and its motion to strike

26 "and defendant-intervenors" from paragraph "D" of the prayer for

27 relief in the SSC is DENIED;

28      DWR's motion to dismiss is DENIED, and its motion to strike

                              69

1  "and defendant-intervenors" from paragraphs "D" and "E" of the

2  prayer for relief in the SSC is DENIED;

3      The San Luis Parties' request for judicial notice is

4  GRANTED; and

5      The San Luis Parties' motion to dismiss Plaintiffs' third

6  claim for relief for failure to state a claim under Rule 12(b)(6)

7  is GRANTED, their motion to dismiss under Rule 12(b)(7) for

8  failure to join a party under Rule 19 is DENIED WITHOUT

9  PREJUDICE, and their motion for a more definite statement under

10  Rule 12(e) regarding Plaintiffs' third claim for relief is

11  GRANTED.

12      Plaintiffs shall file a third supplemental complaint within

13  thirty days (30) days from the date of service of this order.

14  Plaintiffs shall join as parties all absent contractors if they

15  seek to invalidate, rescind, or enjoin the Bureau's performance

16  under water service contracts entered into between February 16,

17  2005, through July 6, 2006.  If Plaintiffs also seek to proceed

18  under ESA § 7(d) for violations occurring since reinitiation of

19  consultation, they must send a new sixty-day notice of intent to

20  sue to the proper parties.  Plaintiffs will be permitted to

21  supplement their complaint after expiration of the time period

22  required by 16 U.S.C. § 1540(g).

23  IT IS SO ORDERED.

24  Dated:   __January 23, 2008__           ___/s/ Oliver W. Wanger___
                                            **UNITED STATES DISTRICT JUDGE**

25

26

27

28