UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL,<br><br>        Plaintiffs,<br><br>  v.<br><br>DIRK KEMPTHORNE, *et al.*,<br><br>        Defendants,<br><br>  and<br><br>SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, *et al.*,<br><br>        Defendant-Intervenors. | 1:05-CV-01207 OWW GSA<br><br>ORDER RE PLAINTIFFS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL OR, IN THE ALTERNATIVE, FOR RECONSIDERATION OF THE NOVEMBER 19, 2008 MEMORANDUM DECISION RE CROSS MOTIONS FOR SUMMARY JUDGMENT RE CVP CONTRACT RESCISSION (DOC. 770). |

Plaintiffs have filed a motion for certification for interlocutory appeal or, in the alternative, for reconsideration of the November 19, 2008 Memorandum Decision Re: Cross-Motions for Summary Judgment Re CVP Contract Rescission ("Contract Decision"). Doc. 770. This motion is currently set for hearing on March 2, 2009. The district court has reviewed this motion in light of the Contract Decision and subsequent orders. For the reasons set forth below, Plaintiffs' motion is premature. The motion is ordered off calendar and may be renewed after proceedings related to the still-pending motion for summary

1

judgment are completed.

On July 16, 2008, Plaintiffs filed a motion for summary judgment on their claim that the Bureau of Reclamation ("Bureau" or "Reclamation") violated and is violating section 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), by executing and implementing the 28 Sacramento River Settlement Renewal Contracts ("SRS Contracts" or "Settlement Contracts"), on the grounds that the Bureau did not adequately consult with the United States Fish and Wildlife Service ("FWS") concerning the SRS Contracts and did not otherwise satisfy its affirmative duty to ensure that the contracts' execution and implementation will not likely jeopardize the continued existence of the threatened delta smelt or adversely modify its critical habitat.  Doc. 680. Plaintiffs also raised similar challenges to the Bureau's execution and implementation of contracts between the Bureau and thirteen Delta Mendota Canal Unit ("DMCU") contractors.  *Id*.

The Contract Decision denied Plaintiffs' motion as to the DMCU Contracts on the ground that Plaintiffs lack standing due to the DMCU Contracts' shortage provisions.  Contract Decision, Doc. 761, at 39-40.  With respect to the SRS Contracts, however, the court ruled in Plaintiffs' favor on a number of threshold/ jurisdictional issues, holding that: (1) Plaintiffs have standing to pursue their claims against the Bureau; and (2) implementation of the SRS Contracts constituted final agency action within the scope of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704.  The district court also found that, assuming a third threshold issue did not bar Plaintiffs' claims, federal defendants' ESA § 7 consultation was unlawful and the Bureau did

2

not otherwise satisfy its section 7(a)(2) obligations.  *Id*. at 91.

A final ruling on the third threshold issue, whether and to what extent Plaintiffs' claims under ESA section 7(a)(2) are barred by the recent Supreme Court decision in *National Association of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2526 (2006), was withheld pending a complete analysis. *Home Builders* stands for the proposition that ESA section 7(a)(2) only applies to actions over which a federal agency exercises discretion.  *Id*.  The SRS Contractors maintain that the Bureau lacks discretion to operate the CVP in any manner that would interfere with their senior water rights, which, according to the SRS Contractors "emanate not from their contracts with [the Bureau], but from their own water rights, which are senior to Reclamation's."  Doc. 707 at 14.  Federal Defendants appear to concur with this assertion, at least in part, having argued:  "It is not the settlement contracts that constrain Reclamation's CVP operations, but the senior water rights claimed by the settlement contractors."  Doc. 742 at 4.

The inchoate Decision found that "the SRS Contracts were formed only after negotiation reflecting compromise over terms [such as] quantity of water to be delivered and timing of deliveries, over which the Bureau exercised some degree of discretion."  Contract Decision at 69.  The Decision also reviewed other authorities, some of which supported the SRS Contractors' view that the Bureau exercises no discretion over at least some portion of the water delivered under their contracts. *Id*. at 57-68.

Plaintiffs assert in their motion for certification for interlocutory appeal that:

> [T]his Court has already made all necessary determinations to warrant summary judgment on [the] ESA § 7(a)(2) claim against the [SRS Contracts], by concluding that: (1) Plaintiffs have standing to challenge these contracts' execution and implementation, which constitute final agency actions; (2) [the Bureau] has discretion -- which it has exercised here -- to modify, among other terms, the base and project supply quantity terms in the settlement renewal contracts and to implement these contracts in a manner consistent with Federal and state environmental laws; and (3) [the Bureau] has not complied with ESA § 7(a)(2)'s procedural and substantive mandates applicable to contract renewal and implementation.

Doc. 770-2 at 3.

Plaintiffs oversimplify the Contract Decision and the complexity of applying *Home Builders* to the intricate contractual relationship between the Bureau and the SRS Contracts, a relationship which is defined by a complex mosaic of federal and state statutory commands.  The Decision is in the process of resolving these issues:

> This scenario does not allow for the straightforward application of Home Builders' relatively bright-line rule.  Here, in contrast to Home Builders, there are no enumerated statutory criteria (either federal or state) guiding the Bureau's negotiation and execution of the Settlement Contracts.  On the one hand, the Bureau is legally bound to comply with non- conflicting state law, *see* CVPIA § 3406(b), including SWRCB Decision 990, which directed the United States to reach a settlement agreement with the Sacramento River water users and precludes the Bureau from operating the projects in the absence of mutually agreed-upon Settlement Contracts.  On the other hand, the Bureau negotiated settlements that contain[] shortage provisions which compromise the SRS Contractors' claimed senior rights.
>
> If the SRS Contractors held adjudicated senior rights to divert water in a finite quantity from the Sacramento River, and the SRS Contracts simply embodied the Bureau's obligations to ensure that its operation of the CVP did not impede the SRS Contractors'

> specifically quantified senior rights, the Bureau would lack discretion under Home Builders and any section 7(a)(2) challenge to the SRS Contracts would be barred. However, the SRS Contracts were formed only after negotiation reflecting compromise over terms as to quantity of water to be delivered and timing of deliveries, over which the Bureau exercised some degree of discretion.
>
> It would be arbitrary and capricious for the court to ignore the existence of the SRS Contractors' substantial senior rights, which have been recognized and are real under federal and state law, although not definitely quantified. These senior rights are beyond the reach of the ESA. If the Base Supply is used as a proxy for the senior rights, it is an imperfect one, because: (a) the Base Supply is defined by the contracts themselves and was the product of negotiation; and (b) the Shasta Critical Year shortage provision affords the Bureau discretion over a quarter of the Base Supply under certain circumstances.
>
> To resolve the applicability of Home Builders to the Settlement Contracts and to narrow the issues in this case, it is necessary for the Federal Defendants and/or the Settlement Contractors to present evidence on the nature and extent of their claimed senior water rights. If, arguendo, this evidence establishes that the Settlement Contractors hold senior rights to a certain volume of water, it is appropriate to determine as a matter of law that the Bureau lacks any discretion under Home Builders over that volume of SRS Contract water.

Contract Decision at 68-71.

The SRS Contractors have been laboring under the assumption that they will be given an opportunity to present evidence relevant to the extent of the United States' discretion over the renewal of the settlement contracts. *See* Reporter's Transcript of Proceedings held on Dec. 3, 2008, at 28. Until the district court has an opportunity to fully complete the *Home Builders* analysis, based in part on facts which will be presented in the ongoing proceedings, there is nothing for Plaintiffs to appeal. No final order has yet been entered on the summary judgment motion regarding the SRS Contracts.

1 | Plaintiffs are free to contribute their legal views and analysis in opposition to the SRS Contractors' evidence before the *Home Builder's* analysis is completed.  Whether Plaintiffs are correct in their contention that *Home Builders* does not exempt the Bureau's compliance with the ESA because the agency exercised discretion to negotiate supply and quantity terms in the settlement renewal contracts must be fully heard and decided.

Hearing Plaintiffs' premature motion on March 2, 2009 will substantially interfere with the ongoing summary judgment proceedings and will impede the decision-making process now in progress.  Accordingly, Plaintiffs' motion for certification for interlocutory appeal or in the alternative for reconsideration of the November 19, 2008 memorandum decision is DENIED WITHOUT PREJUDICE.  Plaintiffs may offer their legal arguments and any evidence as opposition to the SRS Contractors' evidence and argument.  Until a final decision on the pending summary judgment motion is entered, Plaintiffs' motion is premature.

SO ORDERED

DATED:  February 12, 2009

/s/ Oliver W. Wanger
Oliver W. Wanger
United States District Judge