UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL,<br><br>Plaintiffs,<br><br>v.<br><br>DIRK KEMPTHORNE, *et al.*,<br><br>Defendants,<br><br>and<br><br>SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, *et al.*,<br><br>Defendant-Intervenors. | 1:05-CV-01207 OWW GSA<br><br>MEMORANDUM DECISION RE RECLAMATION DISTRICT 108, ET AL. AND GLENN-COLUSA IRRIGATION DISTRICT, ET AL.'S JOINT OBJECTION TO PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE (DOC. 825) |

## I. INTRODUCTION

Before the court for decision are objections to evidence filed by Reclamation District 108, *et al.*, and Glenn-Colusa Irrigation District, *et al.*, (collectively, Sacramento River Settlement ("SRS") Contractors), objecting to certain documents attached to Plaintiffs' Request for Judicial Notice ("RJN"), Doc. 818, filed in connection with the March 13, 2009 hearing concerning the application of *National Association of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518 (2008), to Plaintiffs' request for rescission of a number of the SRS Contracts. Doc. 825, filed Mar. 9, 2009. Specifically, the SRS

Contractors object to the following documents:

- Letter from Rodney R. McInnis, NMFS Regional Administrator, to Mr. Donald Glaser, BOR Regional Director, dated February 20, 2009 and attached as Exhibit 1 to Declaration of Katherine S. Poole in Support of Plaintiffs' Response to Sacramento River Settlement Contractors' Supplemental Memoranda in Support of Motion for Summary Adjudication of Plaintiffs' Second Claim and Request for Judicial Notice ("Poole Decl.") ("Exhibit 1")

- Letter from Virginia A. Cahill, Deputy Attorney General, State of California Department of Justice, to John J. Kirlin, Executive Director, Delta Vision, dated July 9, 2008 and attached as Exhibit 2 to Poole Decl. ("Exhibit 2")

- Letter from Michael J. Ryan, BOR Area Manager, to Basin-Wide Water Management Plan Steering Committee, dated August 2, 1999 and attached as Exhibit 5 to Poole Decl. ("Exhibit 5")

- Answer of Federal Defendants to First Set of Interrogatories, GCID et al. v United States et al., No. S-01-1816 GEB JFM, dated May 6, 2002 and attached to Poole Decl. as Exhibit 8 ("Exhibit 8")

- Plaintiffs' Responses to Intervenors' First Set of Requests for Admission, GCID et al. v. United States et al., No. S-01-1816 GEB JFM, dated August 5, 2002 and attached as Exhibit 9 to Poole Decl. ("Exhibit 9")

- Plaintiffs' Responses to Intervenors' First Set of Interrogatories, GCID et al. v. United States et al., No. S-01-1816 GEB JFM, dated August 5, 2002 and attached as Exhibit 10 to Poole Decl. ("Exhibit 10")

- Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Intervene of Proposed Intervenors, GCID et al. v. United States et al, No. S-01-1816 GEB JFM, dated May 13, 2002 and attached as Exhibit 11 to Poole Decl. ("Exhibit 11")

- Status Report of the Federal Defendants, *GCID et al. v. United States et al.*, No. S096-942 EJG GGH, dated September 17, 1996 and attached as Exhibit 12 to Poole Decl. ("Exhibit 12")

- Excerpts of the Final Sacramento Valley Regional Water Management Plan, prepared by the Sacramento River Settlement Contractors in cooperation with BOR, dated January 2006 and attached as Exhibit 13 to Poole Decl. ("Exhibit 13")

- Letter from Virginia A. Cahill, Deputy Attorney General, State of California Department of Justice, to John J. Kirlin, Executive Director, Delta Vision, dated July 2, 2008 and attached as Exhibit 14 to Poole Decl. ("Exhibit 14")

Plaintiffs offer these documents "not to prove the truth of the matters asserted therein, but to demonstrate the fact that various public agencies made the findings or statements asserted therein." RJN at 1. The SRS Contractors object to the documents on various grounds.

## II. ANALYSIS

### A. Exhibit 1 - Letter from Rodney McInnis.

Plaintiffs offer Exhibit 1, a letter from NMFS Regional Administrator to Mr. Donald Glaser, Reclamation's Regional Director, dated February 20, 2009, reviewing Reclamation's initial February forecast and water supply allocation for 2009.

The SRS Contractors first object that any such evidence is irrelevant to the issues in this case. *See* Federal Rule of Evidence 402 ("[e]vidence which is not relevant is not admissible"). The issues presently before the court concern the nature and extent of the SRS Contractors' underlying water rights, and whether Reclamation had discretion under *Home Builders*, 127 S. Ct. 2518, to reduce deliveries or contract amounts, or otherwise modify the SRS Contracts to benefit Delta smelt. Memorandum Decision Re Cross Motions for Summary Judgment Re CVP Contract Rescission, Doc. 761 at 70, dated Nov. 19, 2008 ("Memorandum Decision"). In Exhibit 1, Mr. McInnis discusses NMFS's concerns with Reclamation's initial water supply allocation for 2009. This is arguably relevant to one of the

legal questions presented in this case: whether there is a conflict between the ESA and Section 8 of the Reclamation Act.

However, Exhibit 1 is extra-record evidence for which Plaintiffs seek judicial notice on the ground that it is a public record.[1] Plaintiffs maintain that the document is not being offered to prove the truth of the matters asserted therein. RJN at 1. Despite this representation, Plaintiffs cite Exhibit 1 as evidence that the SRS Contracts are interfering with the cold-water habitat for salmonids and, as a consequence, that delivery of water to the SRS Contractors is inconsistent with the public trust doctrine. *See* Doc. 820-2, at 12, 25. Plaintiffs may not use judicial notice to admit public records into evidence for the truth of the matters asserted therein, where the subject matter is in dispute. *See Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1157 (D. Nev. 2009)(citing *Lee v. City*

---

[1] It is undisputed that Exhibit 1 is a "public record" obtained from the files or downloaded from the website of a federal administrative agency. Plaintiffs also suggest that Exhibits 1, 2, 4, and 14 are subject to judicial notice because they are "opinion letters" issued by a federal or state agencies, citing *Louis v. McCormick & Schick Rest. Corp.*, 460 F. Supp. 2d 1153, 1156 n.4 (C.D. Cal. 2006), and *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma*, 65 F. Supp. 2d 1129, 1145 (E.D. Wash 1999). It is unclear whether all of these Exhibits constitute the type of "opinion letters" referenced in *Louis* and *Bosma*, which concerned official Opinions of federal regulators or State Attorneys General regarding the legality of certain activities. It is not necessary to resolve this dispute here, as the evidence is inadmissible for the truth of the matters asserted therein, which are disputed, regardless if their existence may be judicially noticed.

*of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001)).[2] Exhibit 1 is otherwise inadmissible hearsay. *See* Fed. R. Evid. 801(c). The objection is SUSTAINED as to Plaintiffs' reliance on Exhibit 1 for the truth of the matters asserted therein.

B. Exhibit 2 - Letter from Virginia Cahill (dated July 9, 2008).

Exhibit 2 is a letter from Deputy Attorney General Virginia Cahill to John Kirlin, Executive Director of Delta Vision, regarding what legal tools are available to the State of California to reduce and/or reallocate water among users. The SRS Contractors first object that this evidence has no relevance to determining whether the Bureau had discretion under *Home Builders*. It is true that Plaintiffs have not argued that Reclamation possesses the same (or even similar) powers as the State of California to reduce and/or reallocate water resources. However, the interpretations contained within this letter are arguably relevant insofar as they represent a recent articulation, including legal opinions, of relevant water law doctrines by the California Attorney General's Office.

Nevertheless, the letter is inadmissible for the truth (or in this case the legal validity) of the matters asserted therein.

---

[2] Alternatively, a fact may be subject to judicial notice under Federal Rule of Evidence 201(b) if it is "not subject to reasonable dispute" in that it is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Neither of these conditions apply here.

The SRS Contractors, and others, dispute the legal opinions expressed by Deputy Attorney General Cahill in Exhibit 2. The letter does not represent a binding statement of the law and cannot be accepted as authoritative. The objection is SUSTAINED, except that Exhibit 2 is admissible as a notice of the non-binding legal views of the Attorney General's Office.

C. Exhibit 14 - Letter from Virginia Cahill (dated July 2, 2008).

Exhibit 14 is another Letter from Deputy Attorney General Cahill to Kirlin, dated July 2, 2008, which presents a detailed analysis of the "Area of Origin" laws. The SRS Contractors object to Exhibit 14 for the same reasons they object to Exhibit 2. The ruling is the same as that applicable to Exhibit 2. The letter does not represent a binding statement of the law. The objection is SUSTAINED, except that Exhibit 14 can be considered as reflecting the legal opinions of the Attorney General's Office on these legal issues.

D. Exhibit 5 - Letter from Michael Ryan.

Exhibit 5 is a Letter from Michael J. Ryan, Reclamation's Area Manager, to the Basin-Wide Water Management Plan Steering Committee, dated August 2, 1999, in which Ryan asserts that Reclamation could allow the SRS Contracts to expire. The SRS Contractors object to taking judicial notice of this document for its truth. Specifically, the SRS Contractors object to Plaintiffs' assertion that:

> If ACID and Sutter Mutual had failed to agree to BOR's demand to reduce contract quantities, those parties

> would likely have failed to execute any renewal contracts at all, an option that was clearly available to BOR under the terms of the contracts and under law. See Poole Dec., Ex. 5.

Doc. 820-2, 22. Although Exhibit 5 can be considered an expression of Reclamation's position on the extent of its authority to decline to renew the SRS Contracts, the document is not admissible to establish that non-renewal was a "clearly available" and "lawful" option, which is a conclusion of law.

Plaintiffs argue, in the alternative, that Document 5 constitutes an admission of a party-opponent. RJN 2. But, the admissibility of party-opponent admissions as an exception to the hearsay rule is not an independent ground upon which a court may take judicial notice. Exhibit 5 is extra-record evidence, representing the litigation position of the Bureau. Plaintiffs offer no basis, other than judicial notice, for its admissibility under any established exception to the bar against extra-record evidence. Even if it is an admission of a party opponent, an issue that need not be resolved, the objection is SUSTAINED.[3]

E. <u>Exhibits 8, 9, and 10 - Discovery Responses from *GCID et al. v. United States et al.*</u>

Included as Exhibit 8 are Federal Defendants' answers to the first set of interrogatories propounded in *GCID et al. v United States et al.*, No. S-01-1816 GEB JFM, dated May 6, 2002. Here, Plaintiffs rely upon Exhibit 8 in the following argument:

---

[3] Plaintiffs offer the same argument with respect to Exhibits 6 through 12. The same ruling applies to those documents.

> Prior to the original contracts' expiration, in [] *Glenn-Colusa Irrigation District et al. v. United States*, No. S-01-1816 GEB JFM (E.D. Cal.), BOR took the "final position on the interpretation of Article 9(a) ... 'that for any renewals of the Settlement Contracts, the quantities of water, and the allocation thereof between base supply and Project water, which may be diverted by the Settlement Contractors from their sources of supply, may be adjusted.'" Poole Dec., Ex. 8 at 3 (Rog. 5, quoting Fed. Defs.' Answer, ¶ 41); see also id. at 4 ("'[The] quantities of water specified in the Settlement Contracts are subject to adjustment by the United States.'" (Rog. 7, quoting Fed. Defs.' Answer, ¶ 43)). Responding to interrogatories posed by the plaintiff Settlement Contractors, BOR stated that it was "aware of no law, rule, regulation, contract, executive order or any other basis that precludes Reclamation in its renewal contract negotiations from" negotiating adjusted quantity and allocation terms. *Id.* at 3-4 (Responses to Rogs. 5 and 7). An identical position appears in an explanatory recital in the newly executed renewal contracts, which expressly references the parties' "disagree[ment] with respect to the authority of the United States to change the quantities of Base Supply and/or Project Water specified as available for diversion in this Settlement Contract from the quantity specified in the Existing Contract...." SAR 2698-99

Doc. 820-2 at 20.

Exhibit 9 includes the SRS Contractors' responses to environmental intervenors' first set of requests for admission, in *GCID*, dated August 5, 2002. Plaintiffs rely upon Exhibit 9 in the following manner:

> ...[M]any of the current Settlement Contractors previously admitted, as plaintiffs in *GCID v. United States*, that BOR's action to renew the settlement contracts was subject to ESA § 7(a)(2), and the scope of that consultation was dependent only on the extent of the impact of the final contract terms on listed species. Poole Dec., Ex. 9 at 5-7 (Pls.' Responses to Ints.' Request for Admission Nos. 8 and 9).

Doc. 820-2 at 21.

Exhibit 10 is the SRS Contractors' responses to environmental intervenors' first set of interrogatories in *GCID*, dated August 5, 2002, on which Plaintiffs rely for the following

contention:

> [SRS Contractor] plaintiffs admitted that "their diversion of Project water ... is subject to section 3404(c)(2) of the CVPIA and the applicable requirements stated therein." Poole Dec., Ex. 10 at 7-8 (Pls.' Response to Ints.' Rog. 10).

Doc. 820-2 at 21.

The SRS Contractors first argue that Exhibits 8, 9, and 10 are irrelevant because "[t]he fact that the Federal Defendants and a subset of the SRS Contractors responded to discovery request[s] in [*GCID*], has no bearing on the issues in this case." Doc. 825 at 8. Positions taken by the parties with respect to Reclamation's ability to adjust contract quantities and the applicability of ESA § 7(a)(2) and/or the CVPIA to the SRS Contracts are arguably relevant here. However, Exhibits 8, 9, and 10 predate the Supreme Court's decision in *Home Builders*. In light of *Home Builders*, the parties are entitled to change their legal positions on these issues. This makes their pre-*Home Builders* positions irrelevant.

Moreover, the SRS Contractors represent that they strenuously objected to the discovery requests in *GCID*, and that the parties in *GCID* stipulated to dismissal of the case, without prejudice, before the objections were ruled upon. SAR 2699.

Finally, Plaintiffs offer no basis upon which these documents may be judicially noticed. The existence of a document entered into the official court docket is a public record subject to judicial notice, *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980), because such documents are publicly available in the court's records and are "capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned," Fed. R. Evid. 201(b)(2). In contrast, the substance of discovery responses cannot be confirmed by readily available records, because discovery responses are not filed with the court, nor are the matters asserted therein undisputable and subject to universal acceptance. *See Garber v. Heilman*, 2009 WL 409957 at *1, 8 (C.D. Cal. Feb. 18, 2009).

The objections to Exhibits 8 through 10 are SUSTAINED.

F. Exhibit 11 - Prior Briefing from *GCID*.

Exhibit 11 is the SRS Contractors' memorandum of points and authorities in opposition to environmental plaintiffs' motion to intervene in GCID, dated May 13, 2002. Plaintiffs cite Exhibit 11 in support of their contention that the SRS Contractors have previously admitted that the ESA applies to their contracts with Reclamation:

> [I]n opposing NRDC's motion to intervene, the plaintiff Settlement Contractors assured the court that they did not seek an order immunizing their renewal contracts "from the potential constraints of the ESA and NEPA." Poole Dec., Ex. 11 at 6. As they explained:
>
> > [T]he only direct result of a favorable ruling for Plaintiffs in this case will be that the Federal Defendants are required to renew the Settlement Contracts for the same quantities of water currently set forth therein. . . . NEPA, ESA and the CVPIA requirements operate independently of any potential construction of the contract provisions at issue. . . . [T]here is no relationship between [NRDC's legally protected interests under these statutes] and the claims at issue.
>
> *Id.* at 6, 8.

Doc. 820-2 at 21.

The SRS Contractors object to this Exhibit on relevance grounds as well. This objection is well-founded, for the reasons

stated above, as this brief was filed approximately five years before *Home Builders* was decided. The objection is SUSTAINED.

G. Exhibit 12 - Status Report in *GCID*.

Exhibit 12 is a status report filed by Federal Defendants in *GCID*, dated September 17, 1996. Plaintiffs cite Exhibit 12 to support their assertion that the Settlement Contracts conferred considerable benefits upon the SRS Contractors.

> But this argument ignores the substantial benefits that the Settlement Contractors enjoy under their contracts with BOR that exceed the extent of any possible historic rights. These benefits include the ability to divert quantities of water during the summer and fall that the historic, unregulated flow of the Sacramento River could not have supported; these diversions are only possible due to the construction and operation of the CVP's Shasta Dam. *See, e.g.*, Poole Dec., Ex. 12 at 2 (BOR explanation that "[i]n 1944, Shasta Dam was completed and the Bureau of Reclamation ... began regulating the flow of the river. As a result, Sacramento River diverters were able to divert water from the river that was available only because of the operation of Shasta Dam.").

Doc. 820-2 at 23. The SRS Contractors again object to Exhibit 12 on the ground that, despite their representations to the contrary, Plaintiffs rely upon Exhibit 12 for the truth of the matters asserted therein. This objection is well founded and is SUSTAINED.

H. Exhibit 13 - Sacramento Regional Water Management Plan Excerpts.

Exhibit 13 includes excerpts of the Final Sacramento Valley Regional Water Management Plan, prepared by the Sacramento River Settlement Contractors in cooperation with the Bureau, dated January 2006, which the Plaintiffs cite in the following

passages:

> In fact, the claimed rights of just 27 of the 146 Settlement Contractors exceed the average natural flow of the Sacramento River during the period June-October. Compare Van Camp Dec., Ex. E (Doc. 779) (showing claimed water rights for 27 Settlement Contractors of approximately 450,000 acre-feet in the months of June, July and August; greater than 400,000 acre-feet in September; and greater than 350,000 acre-feet in October) with Poole Dec., Ex. 13 (showing average monthly flows on the Sacramento River prior to construction of Shasta Dam of approximately 250,000 acre-feet in July through October).

Doc. 820-2 at 7, n.6.

> A comparison of the diversions and deliveries authorized under the settlement renewal contracts during the peak irrigation months with the natural hydrograph of the River illustrates that enormity of this benefit, made possible only by operation of the CVP. Plaintiffs have summed the monthly contract totals provided to the vast majority of the Settlement Contractors as indicated in Table 3-7 of the Final EIS for the Sacramento River Settlement Renewal Contracts. See Levy Dec., Att. 2. Those totals indicate that the settlement renewal contracts provide for Settlement Contractor diversions and deliveries in the months of June, July, and August (in all but critically dry years) that exceed the corresponding average monthly flow of the Sacramento River prior to construction of Shasta Dam. Compare Levy Dec., Att. 2 at 4 (showing aggregate settlement renewal contract quantities of 406,005 acre-feet in June, 427,009 acre-feet in July, and 337,750 acre-feet in August) with Poole Dec., Ex. 13 (showing average monthly flows on the Sacramento River prior to construction of Shasta Dam of approximately 250,000 acre-feet in June, and less than 250,000 acre-feet in July and August).

*Id.* at 23-24.

The SRS Contractors again object to Exhibit 13, because Plaintiffs' cite Exhibit 13 for the truth of the matters asserted therein. This objection is well founded and is SUSTAINED.

## III. CONCLUSION

For the reasons set forth above, the SRS Contractors' objections are SUSTAINED, except that, with respect to Exhibits 2 and 14, the documents may be considered for the legal opinions of the California Attorney General's Office with respect to the interpretation of disputed legal doctrines.

SO ORDERED

Dated: April 27, 2009

/s/ Oliver W. Wanger
Oliver W. Wanger
United States District Judge