# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, *et al.,* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:05-cv-01207 OWW SMS |
| DIRK KEMPTHORNE, Secretary, United States Department of the Interior, *et al.*, | ) ) ) ) | **Order re Cross Motions for Summary Judgment** |
| Defendants. | ) ) | |
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, *et al.*, | ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |
| ANDERSON-COTTONWOOD IRRIGATION DISTRICT, *et al.*, | ) ) ) ) | |
| Joined Parties. | ) ) | |

Plaintiffs' Third Amended Complaint, Docket No. 575 (Apr. 8, 2008), alleges that Federal Defendants acted unlawfully by executing 41 long-term Central Valley Project ("CVP") contracts without performing adequate reviews under the Endangered Species Act ("ESA") and that, by executing and implementing those contracts in reliance on what it knew or should have known to be a faulty ESA review, the Bureau of Reclamation ("Reclamation") failed to comply with the ESA.  In reviewing these claims, the Court has read and fully considered the memoranda of points and authorities submitted by the parties in support and opposition to summary judgment, including supplemental memoranda on the application of the Supreme

Court's decision in *National Association of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 1518 (2008), relevant excerpts of the administrative record, and additional supplemental evidence on the nature of the Sacramento River Settlement Contractors' claimed senior water rights, and has heard and considered the argument of counsel at hearings on this matter held on September 12, 2008, Docket No. 751 and March 13, 2009, Docket No. 826.

For the reasons set out in full in the Court's memorandum decisions on this issue, Memorandum Decision re Cross Motions for Summary Judgment re CVP Contract Rescission, Docket No. 761 (Nov. 19, 2008), Supplemental Memorandum Decision re Cross Motions for Summary Judgment Addressing Applicability of *National Association of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518 (2007), to Plaintiffs' Request for Rescission of the Sacramento River Settlement Contracts, Docket No. 834 (Apr. 27, 2009), Clarifying Memorandum Re Decisions Interpreting the Term "Project Water," Docket No. 851 (June 3, 2009), and Order re Motion for Reconsideration re Project Water, Docket No. 862 (Aug. 6, 2009) ("August 6, 2009 Order"), Federal Defendants, Defendant-Intervenors, and Joined Parties' motions for summary judgment on these claims are GRANTED, and Plaintiffs' motion for summary judgment is DENIED, on the following grounds:

(1)  Plaintiffs lack standing to challenge Reclamation's execution and implementation of the Delta-Mendota Canal Unit Water Service Contracts ("DMC Contracts").  To have standing, Plaintiffs must establish a causal connection between these contracts and harm to the delta smelt. But while the administrative record establishes such a connection between water deliveries and harm to the delta smelt, the terms of the DMC Contracts expressly allow Reclamation to take actions to protect the delta smelt, including not delivering any water to DMC Contractors if required "to meet legal obligations" such as Section 7(a)(2) of the ESA.  These shortage provisions break any chain of causal connection between the execution and ongoing performance of the DMC Contracts and harm to the delta smelt.  Moreover, further ESA consultation would not make the DMC Contracts more protective of the delta smelt because these contracts are already entirely defeasible if the ESA so requires.

(2)  Plaintiffs' claims also fail as to the Sacramento River Settlement Contracts ("SRS Contracts").  The SRS Contracts are held by holders of senior water rights in the Sacramento River and distinguish between "Base Supply" and "Project Water."  Plaintiffs' claims fail, as they relate to Base Supply, because Reclamation's discretion is substantially constrained by prior contracts.  Following the Supreme Court's decision in *Home Builders*, 127 S. Ct. 2518 (2008), Section 7(a)(2) of the ESA does not apply to the SRS Contract renewal process.  Specifically, Article 9(a) of the SRS Contracts requires Reclamation to renew these contracts for the same quantity of water, the same allocation of water between Base Supply and Project Water, and the same place of use on specifically designated land as the original contracts.  By executing the original SRS Contracts, Reclamation surrendered its power to change these terms.  Article 9(a) of the SRS Contracts provides for the exact definition of water rights achieved in the original SRS Contracts to be preserved upon renewal.  This substantially constrains Reclamation's discretion to reduce diversions of Base Supply water for the benefit of the Delta smelt or any other reason, by fixing SRS Contractor quantities, allocations, and places of use upon renewal.

With respect to Project Water, however, SRS Renewal Contract Article 3(i) was added by mutual agreement during the renewal process, giving the United States the additional authority to reduce Project Water supplies when required "to meet legal obligations."  This absolving language is only distinguished from that found in the contracts considered in *O'Neill v. United States*, 50 F.3d 677 (9th Cir. 1995) and the DMC Contracts, discussed above, by its limitation to only satisfying legal obligations.  While the *O'Neill* and DMC Contracts contain additional, specific language reserving to the United States the power to allocate Project Water and describing the procedures for allocating available Project Water, SRS Renewal Contract Article 3(i) specifically and unmistakably reserves to the United States the right to reduce Project Water diversions by SRS Contractors and operates as a *force majeure* shortage provision with respect to Project Water when Project Water must be used to meet legal obligations.  Nonetheless, because supplies of Project Water may only be reduced when Project Water is necessary to meet legal obligations, this does not create a level of discretion in the Contracting Officer or the Bureau that satisfies the *Home Builders* standard, and does not change the overall conclusion of the April 27,

2009 Decision.  This is not a grant of discretion to the Bureau that triggers application of ESA §
7 consultation requirements, and the Plaintiffs' claims also fail with respect to Project Water.

Having resolved the remaining claims presented in this matter, Federal Defendants shall
submit a form of final judgment consistent with this and previous orders within ten (10) days of
electronic service of this order.

The following orders on miscellaneous evidentiary issues, set out in the previous
memorandum decisions and in the Memorandum Decision re Reclamation District 108, *et al.* and
Glenn-Colusa Irrigation District, *et al.'s* Joint Objection to Plaintiffs' Request for Judicial
Notice, Docket No. 835 (Apr. 27, 2009) are also entered:

(1)  The motions to augment the administrative record by the DMC Contractors, Docket
No. 684, and Plaintiffs, Docket No. 682-2 are GRANTED.

(2)  The Declaration of Marc E. Van Camp, Docket No. 775 (Jan. 30, 2009), is admitted,
except for any legal conclusions contained within that declaration (including Mr. Van Camp's
use of the term "senior" in connection with his analysis of water rights), which are inadmissible.

(3)  Glenn-Colusa Irrigation District *et al.'s* request for judicial notice, Docket No. 774
(Jan. 30, 2009) is GRANTED but the documents identified in that request are admissible only for
the limited purpose of ascertaining whether the SRS Contractors hold definite and certain senior
water rights.

(4) The objections by the SRS Contractors, Docket No. 825 (Mar. 9, 2009), to Plaintiffs'
request for judicial notice, Docket No. 818 (Feb. 27, 2009), are sustained, and Plaintiffs' request
DENIED, except that the documents set out as Exhibits 2 and 14 to Plaintiffs' request are
admitted only for notice of the non-binding legal opinions of the California Attorney General's
Office with respect to the interpretation of disputed legal doctrines.

**SO ORDERED**

**Dated: September 1, 2009**            **_____/s/ Oliver W. Wanger_____**
                                        **OLIVER W. WANGER**
                                        **UNITED STATES DISTRICT JUDG**E