KATHERINE POOLE (SBN 195010)
DOUGLAS ANDREW OBEGI (SBN 246127)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter Street, 21st Floor
San Francisco, CA 94104
Telephone:  (415) 875-6100
Facsimile:  (415) 875-6161
kpoole@nrdc.org; dobegi@nrdc.org

Attorneys for Plaintiff NRDC

HAMILTON CANDEE (SBN 111376)
BARBARA JANE CHISHOLM (SBN 224656)
TONY LOPRESTI (SBN 289269)
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064
hcandee@altber.com; bchisholm@altber.com; tlopresti@altber.com

Attorneys for Plaintiff NRDC

TRENT W. ORR (SBN 77656)
EARTHJUSTICE
50 California St. Suite 500
San Francisco, CA 94111
Telephone:  (415) 217-2000
Facsimile:  (415) 217-2040
torr@earthjustice.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SALLY JEWELL, in her official capacity as Secretary of the Interior, *et al.*,<br><br>Defendants. | Case No. 1:05-cv-01207 LJO-EPG<br><br>**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST, SECOND, THIRD, FIFTH, AND SIXTH CLAIMS FOR RELIEF IN THE FOURTH SUPPLEMENTAL COMPLAINT**<br><br>Date:    TBD<br>Time:    TBD<br>Ctrm:    4<br>Judge:   Lawrence J. O'Neill |

1
2
3

SAN LUIS & DELTA MENDOTA
WATER AUTHORITY, *et al.*,

                    Defendants-Intervenors.

4
5
6

ANDERSON-COTTONWOOD
IRRIGATION DISTRICT, *et al.*,

                    Joined Parties.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF CONTENTS

2

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 3

ARGUMENT ...................................................................................................... 7

    I.    Legal Standard ...................................................................................... 7

    II.    There Is No Basis for Defendants' Motion to Dismiss Plaintiffs'
        Fifth Claim for Failure to Reinitiate Consultation .................................... 8

        A.    Plaintiffs adequately allege that Reclamation maintains
             discretionary federal involvement or control over the SRS contracts ........ 8

        B.    Plaintiffs adequately allege that new information triggered
             Reclamation's duty to reinitiate consultation ..................................... 11

            1.    The NMFS OCAP BiOp triggered Reclamation's duty to
                reinitiate consultation .................................................................. 12

            2.    The 2014 and 2015 amendments to the NMFS OCAP BiOp
                triggered Reclamation's duty to reinitiate consultation ............... 13

            3.    The loss of temperature control and near-total mortality of
                the 2014 and 2015 generations of listed Chinook triggered
                Reclamation's duty to reinitiate consultation.............................. 15

        C.    Plaintiffs adequately allege that the statute of limitations does not
             bar Plaintiffs' Fifth Claim for failure to reinitiate consultation ............... 17

            1.    The statute of limitations does not bar Plaintiffs' claim that
                 the loss of temperature control and mortality data in 2014
                 and 2015 triggered Reclamation's duty to reinitiate
                 consultation ............................................................................. 17

            2.    The statute of limitations does not bar Plaintiffs' claim that
                 the 2014 and 2015 amendments to the NMFS OCAP BiOp
                 triggered Reclamation's duty to reinitiate consultation ............... 17

            3.    The statute of limitations does not bar Plaintiffs' claim that
                 the NMFS OCAP BiOp triggered Reclamation's duty to
                 reinitiate consultation ............................................................... 17

                 a.    Reclamation is in continuous violation of its
                       ongoing statutory obligation to reinitiate
                       consultation ...................................................... 18

                 b.    Each day Reclamation fails to reinitiate consultation
                       is a discrete violation that renews the statute of
                       limitations.......................................................... 21

1

III.    There Is No Basis for Defendants' Motion to Dismiss Plaintiffs' Sixth
        Claim for Unlawful Take of Winter-Run and Spring-Run Chinook .................. 24

        A.      Plaintiffs adequately allege that Reclamation and the SRS
                Contractors cause the take of winter-run and spring-run Chinook .......... 24

        B.      Plaintiffs adequately allege that the Court has subject matter
                jurisdiction over Plaintiffs' Sixth Claim .................................................... 28

                1.      The ESA's citizen suit provision does not require that
                        Plaintiffs allege a likelihood of future violation and harm
                        at the pleading stage ......................................................... 28

                2.      Even if the ESA's citizen suit provision requires that
                        Plaintiffs allege a likelihood of future violation and harm,
                        Plaintiffs meet that standard ............................................ 30

                3.      Plaintiffs adequately allege that Reclamation and the SRS
                        Contractors are committing continuous and intermittent
                        violations ........................................................................... 32

        C.      Plaintiffs adequately allege that Reclamation had no take authority
                for causing the near-total mortality of two generations of listed
                Chinook ............................................................................................. 33

IV.     There Is No Basis for Dismissing Plaintiffs' First, Second, or
        Third Claim ...................................................................................................... 35

        A.      Plaintiffs' Second Claim is not moot ..................................................... 35

        B.      Plaintiffs' 60-Day notice was adequate ................................................... 38

CONCLUSION ............................................................................................................. 40

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alliance for the Wild Rockies v. U.S. Dep't of Agric.*,
   772 F.3d 592 (9th Cir. 2014) .................................................................... 18

*Am. Canoe Ass'n v. Envtl. Prot. Agency*,
   30 F.Supp.2d 908 (E.D. Va. 1998) ............................................................ 18

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*,
   273 F.3d 1229 (9th Cir. 2001) .............................................................. 33, 34

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................... 7, 29, 30

*Avery v. Dep't of Army*,
   14-cv-01077, 2015 WL 4451591 (N.D. Cal. July 20, 2015) ...................... 20

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Ore.*,
   515 U.S. 687 (1995) .............................................................................. 24, 27

*Bank Melli Iran v. Pahlavi*,
   58 F.3d 1406 (9th Cir. 1995) ................................................................ 10, 28

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. 29

*Brem-Air Disposal v. Cohen*,
   156 F.3d 1002 (9th Cir.1998) ................................................................... 20

*Cal. Sportfishing Alliance v. Fed. Energy Regulatory Comm'n*,
   472 F.3d 593 (9th Cir. 2006) .................................................................... 10

*Cascadia Wildlands v. Kitzhaber*,
   911 F.Supp.2d 1075 (D. Or. 2012) ...................................................... 24, 25

*Cedars-Sinai Med. Ctr. v. Shalala*,
   125 F.3d 765 (9th Cir. 1997) .................................................................... 20

*Cold Mountain v. Garber*,
   375 F.3d 884 (9th Cir. 2004) .................................................................... 27

*Conner v. Burford*,
   848 F.2d 1441 (9th Cir. 1988) .................................................................. 13

*Cook v. Brewer*,
   637 F.3d 1002 (9th Cir. 2011) .................................................................... 7

iii

*Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*,
    531 F.3d 792 (9th Cir. 2008)..................................................................................... 20

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*,
    789 F.3d 1075 (9th Cir. 2015)..................................................................................... 9

*Ctr. for Biological Diversity v. Hamilton*,
    453 F.3d 1331 (11th Cir. 2006)................................................................................... 20

*Ctr. for Biological Diversity v. Marina Point Dev. Assocs.*,
    434 F.Supp.2d 789 (C.D. Cal. 2006) ......................................................................... 31

*Ctr. for Biological Diversity v. Marina Point Dev. Co.*,
    566 F.3d 794 (9th Cir. 2008)................................................................................. 29, 30

*Defenders of Wildlife v. Envtl. Prot. Agency*,
    882 F.2d 1294 (8th Cir. 1989)..................................................................................... 33

*Defenders of Wildlife v. Martin*,
    454 F.Supp.2d 1085 (E.D. Wash. 2006) ................................................................... 31

*Dep't of Transp. v. Public Citizen*,
    541 U.S. 752 (2004) ....................................................................................... 26, 27, 28

*Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*,
    255 F.3d 1073 (9th Cir. 2001)..................................................................................... 10

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995)....................................................................................... 13

*Forest Conservation Council v. Rosboro Lumber Co.*,
    50 F.3d 781 (9th Cir. 1995)......................................................................................... 29

*Garcia v. Lawn*,
    805 F.2d 1400 (9th Cir. 1986)......................................................................... 29, 36, 38

*Gros Ventre Tribe v. U.S.*,
    344 F.Supp.2d 1221 (D. Mont. 2004) ....................................................................... 20

*Gutowski v. Cnty. of Placer*,
    108 F.3d 256 (9th Cir. 1997)....................................................................................... 18

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
    484 U.S. 49 (1987) ......................................................................................... 32, 36, 37

*Hall v. Reg'l Transp. Comm'n of S. Nev.*,
    362 Fed. Appx. 694 (9th Cir. 2010) .......................................................................... 20

*Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*,
    No. 07-CV-358, 2007 WL 4117978 (D. Ore. Nov. 16, 2007) .............................. 22, 23

*Izaak Walton League of Am., Inc. v. Kimbell*,
  558 F.3d 751 (8th Cir. 2009)............................................................................................ 21

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
  681 F.3d 1006 (9th Cir. 2012) (en banc)......................................................................... 19

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001)............................................................................. 7, 10, 13, 28

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014)................................................................................ 7, 8, 29, 30

*Marbled Murrelet v. Babbitt*,
  83 F.3d 1060 (9th Cir. 1996)............................................................................... 27, 38, 39

*Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*,
  480 F.3d 410 (6th Cir. 2007).................................................................................... 22, 23

*Nat'l Wildlife Fed'n v. Burlington N. R.R.*,
  23 F.3d 1508 (9th Cir. 1994)...................................................................... 28, 29, 31, 32

*Natural Res. Def. Council v. Jewell*,
  749 F.3d 776 (9th Cir. 2014)............................................................................... *passim*

*Natural Res. Def. Council v. Fox*,
  909 F.Supp. 153 (S.D.N.Y. 1995)..................................................................................... 18

*Natural Res. Def. Council v. Houston*,
  146 F.3d 1118 (9th Cir. 1999).............................................................................................. 9

*Natural Res. Def. Council v. Kempthorne*,
  506 F.Supp.2d 322 (E.D. Cal. 2007)....................................................................... 4, 9, 28

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*,
  606 F.Supp.2d 1122 (E.D. Cal. 2008).............................................................................. 6

*Padres Hacia Una Vida Mejor v. Jackson*,
  No. 1:11-CV-1094, 2012 WL 1158753 (E.D. Cal. Apr. 6, 2012) ........................................ 23

*Preminger v. Sec'y of Veterans Affairs*,
  517 F.3d 1299 (Fed. Cir. 2008).......................................................................................... 21

*S. Appalachian Biodiversity Project v. U.S. Fish & Wildlife Serv.*,
  181 F.Supp.2d 883 (E.D. Tenn. 2001) ........................................................................ 18, 19

*Save the Valley, Inc. v. U.S. Envtl. Prot. Agency*,
  223 F.Supp.2d 997 (D. Ind. 2002) ................................................................................... 18

*Schoeffler v. Kempthorne*,
  493 F.Supp.2d 805 (W.D. La. 2007) ............................................................................... 18

*Seattle Audubon Soc'y v. Sutherland*,
    No. C06-1608, 2007 WL 1577756 (W.D. Wash. May 30, 2007) ........................................ 27

*Sierra Club v. Johnson*,
    No. C 08-01409, 2009 WL 482248 (N.D. Cal. Feb. 25, 2009) ................................. 18, 19, 20

*Sierra Club v. Union Oil of Cal.*,
    853 F.2d 667 (9th Cir. 1988) ........................................................................................... 32

*Smith v. Jackson*,
    84 F.3d 1213 (9th Cir. 1996) ............................................................................................. 7

*Stout v. U.S. Forest Serv.*,
    869 F.Supp.2d 1271 (D. Or. 2012) ............................................................................. 29, 30

*Strahan v. Linnon*,
    967 F.Supp. 581 (D. Mass. 1997) ..................................................................................... 27

*Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't of Energy*,
    232 F.3d 1300 (9th Cir. 2000) ..................................................................................... 36, 38

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*,
    340 F.3d 969 (9th Cir. 2003) ........................................................................................... 10

*U.S. v. Estate of Hage*,
    810 F.3d 712 (9th Cir. Jan. 15, 2016) .............................................................................. 19

*U.S. v. Glenn-Colusa Irr. Dist.*,
    788 F.Supp. 1126 (E.D. Cal. 1992) .................................................................................. 26

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
    718 F.3d 1006 (9th Cir. 2013) ......................................................................................... 24

*Volks Constructors v. Sec'y of Labor*,
    675 F.3d 752 (D.C. Cir. 2012) ......................................................................................... 21

*W. Watersheds Project v. Kraayenbrink*,
    632 F.3d 472 (9th Cir. 2010) ........................................................................................... 19

*Water Keeper Alliance v. U.S. Dep't of Defense*,
    152 F.Supp.2d 163 (D.P.R. 2001) ................................................................................... 39

*Water Keeper Alliance v. U.S. Dep't of Defense*,
    271 F.3d 21 (1st Cir. 2001) ............................................................................................. 39

*Wilderness Soc'y v. Norton*,
    434 F.3d 584 (D.C. Cir. 2006) ......................................................................................... 18

*Williams v. Cnty. of Alameda*,
    26 F.Supp.3d 925 (N.D. Cal. 2014) ................................................................................... 8

*Williams v. Owens-Illinois, Inc.,*
    665 F.2d 918 (9th Cir. 1982) ............................................................................................. 18

*Winter v. Natural Res. Def. Council,*
    555 U.S. 7 (2008) ............................................................................................................. 29

## STATUTES

5 U.S.C. §§701, *et seq.* ........................................................................................................... 1

16 U.S.C. §1536 .......................................................................................................... *passim*

16 U.S.C. §1538 .......................................................................................................... *passim*

16 U.S.C. §1539 ................................................................................................................. 28

16 U.S.C. §1540 .......................................................................................................... *passim*

28 U.S.C. §2401(a) ...................................................................................................... *passim*

42 U.S.C. §9608(b)(1) ....................................................................................................... 19

42 U.S.C. §§4321-4370 ..................................................................................................... 27

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. Proc. 8(a) ............................................................................................... 7, 8, 31

Fed. R. Civ. Proc. 10(c) ..................................................................................................... 36

Fed. R. Civ. Proc. 12(b)(1) ....................................................................................... 7, 8, 29

Fed. R. Civ. Proc. 12(b)(6) ....................................................................................... 7, 8, 10

Fed. R. Civ. Proc. 12(d) .................................................................................................. 8, 28

Fed. R. Civ. Proc. 12(f) ...................................................................................................... 28

Fed. R. Civ. Proc. 56 ............................................................................................................ 7

Fed. R. Civ. Proc. 56(d) ....................................................................................................... 8

50 C.F.R. §17.3 ................................................................................................................... 24

50 C.F.R. §17.21(c) ............................................................................................................ 26

50 C.F.R. §402.03 ........................................................................................................... 9, 26

50 C.F.R. §402.16 ........................................................................................................ *passim*

1

**OTHER AUTHORITIES**

2

Charles A. Wright, *et al.*, *Adoption by Reference Permitted*, 5A Fed. Prac. & Proc. Civ. § 1326

3
    (3d ed.) ................................................................................................................... 36

4

*Final Rule, Interagency Cooperation—Endangered Species Act of 1973, as Amended; Incidental*

    *Take Statements*, 80 Fed. Reg. 26832 (May 11, 2015) .......................................... 33

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                       **INTRODUCTION**

2        Following the Court's April 22, 2016 order granting Plaintiffs' Motion for Leave to File a

3    Fourth Supplemental Complaint ("4SC"), Doc. 1018, Defendants have filed several motions that

4    collectively seek to dismiss five of Plaintiffs' six claims.  The Court should deny Defendants'

5    motions because they rely on invalid legal theories, factual disputes that must be resolved in

6    Plaintiffs' favor on a motion to dismiss, and arguments repeatedly rejected in this litigation.

7        The 4SC added three new claims to this case, each of which is supported by numerous,

8    specific allegations that are more than sufficient to withstand Defendants' motions to dismiss.

9    The 4SC added new allegations regarding the Bureau of Reclamation's ("Reclamation" or "the

10    Bureau") ongoing failure to ensure that the long-term Sacramento River Settlement ("SRS") and

11    Delta-Mendota Canal Unit ("DMC") contracts do not jeopardize the delta smelt or adversely

12    impact its habitat, and a related Fourth Claim alleging that the U.S. Fish and Wildlife Service

13    ("FWS") violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§701, *et seq.*, by

14    conducting an unlawful "reinitiated" consultation on Reclamation's renewal of those contracts.

15    Plaintiffs allege that FWS failed to adequately consider the contracts' effects on the delta smelt

16    and its critical habitat.

17        The Fifth Claim alleges that Reclamation violated Section 7(a)(2) of the Endangered

18    Species Act ("ESA"), 16 U.S.C. §1536(a)(2), and its implementing regulations, 50 C.F.R.

19    §402.16, by failing to reinitiate consultation with the National Marine Fisheries Service

20    ("NMFS") on the SRS contracts' effects on the Sacramento River winter-run Chinook salmon

21    ("winter-run Chinook") and the Central Valley spring-run Chinook salmon ("spring-run

22    Chinook") (collectively, "listed Chinook").  This claim identifies several grounds for this

23    violation.  First, Reclamation has yet to reinitiate consultation on the impacts of the SRS contracts

24    to address NMFS's biological opinion on the Long-Term Central Valley Project Operations

25    Criteria and Plan ("OCAP") ("NMFS OCAP BiOp") in 2009, which determined that OCAP

26    operations would cause jeopardy to listed Chinook; second, Reclamation has not reinitiated

27    consultation with NMFS on the SRS contracts to address the 2014 and 2015 amendments to the

28    NMFS OCAP BiOp that weakened species protections and revealed the SRS contracts' adverse

1

1    effects on listed Chinook; and, third, Reclamation has not reinitiated consultation following its

2    failure to control Sacramento River temperatures in 2014 and 2015, and the resultant near-total

3    mortality of two consecutive generations of winter-run and spring-run Chinook in the Sacramento

4    River, a repeated catastrophe that has pushed winter-run Chinook to the brink of extinction.[1]

5           Relatedly, Plaintiffs' Sixth Claim alleges that Reclamation and the SRS Contractors

6    violated Section 9 of the ESA, 16 U.S.C. §1538, by making excessive deliveries and diversions

7    that caused, and are causing, unlawful take of listed Chinook.

8           No Defendant has moved to dismiss Plaintiffs' Fourth Claim.  Defendants' motions to

9    dismiss Plaintiffs' other claims are meritless.  In seeking to dismiss the Fifth Claim, Defendants

10   repeatedly rely on arguments rejected by a unanimous Ninth Circuit en banc panel in this

11   litigation.  *See Natural Res. Def. Council ("NRDC") v. Jewell*, 749 F.3d 776 (9th Cir. 2014).  For

12   instance, in challenging Plaintiffs' Fifth Claim, Federal Defendants argue that Reclamation is not

13   required to reinitiate consultation because it has no discretion over the SRS contracts, even

14   though *Jewell* concluded that Reclamation *does* have discretion over these contracts.  *Id.* at 785.

15   Similarly, Federal Defendants and the SRS Contractors argue that Reclamation does not need to

16   reinitiate consultation because the system-wide NMFS OCAP BiOp analyzed the effects of the

17   SRS contracts, even though *Jewell* held that system-wide consultation on the OCAP *does not*

18   constitute a consultation on the SRS contracts.  *Id.* at 782.  Indeed, the NMFS OCAP BiOp

19   explicitly states that it is *not* a consultation on the contracts and advises Reclamation to separately

20   consult on the contracts.  Decl. of Tony LoPresti ("LoPresti Decl.") Ex. A at 35, 729.

21          Defendants' statute of limitations defenses to Plaintiffs' Fifth Claim are also not well

22   taken.  There is no dispute that the recent amendments to the NMFS OCAP BiOp and the

23   mortality of listed Chinook in 2014 and 2015, which Plaintiffs allege triggered a duty to consult,

24   occurred within the limitations period.  Plaintiffs' claim that Reclamation should also have

25   reinitiated consultation in light of the NMFS OCAP BiOp is not time-barred because the failure to

26   _____

27   [1] Winter-run Chinook depend exclusively on the Sacramento River for spawning, incubation, and rearing habitat, whereas spring-run Chinook rely on the Sacramento River and other rivers.  Thus, the fatal temperatures in the Sacramento River in 2014 and 2015 caused near-total mortality to

28   two generations of winter-run Chinook.  The impacts to spring-run Chinook, while also severe, were limited to those that depend on the Sacramento River for habitat.  *See* 4SC ¶¶64-77.

1   consult is a continuing violation and because Reclamation's ongoing implementation of the SRS

2   contracts without valid consultation renews the limitations period.

3       Defendants' challenges to the Sixth Claim also fail.  First, Defendants assert a purportedly

4   "facial" challenge to Plaintiffs' Sixth Claim under Section 9 of the ESA, but that challenge is

5   meritless.  Although Defendants contend that Plaintiffs have not pleaded causation, the 4SC is

6   replete with allegations that Reclamation and the SRS Contractors caused take by making

7   deliveries and diversions, respectively, which resulted in the collapse of two generations of listed

8   Chinook.  Federal Defendants also assert that Reclamation has no discretion to avoid take and

9   thus is not liable under Section 9.  Not only is this argument wrong on the law, but *Jewell*

10  concluded, Plaintiffs fully allege, and Federal Defendants themselves present evidence

11  demonstrating that Reclamation does have discretion over the SRS contracts.

12      Next, Defendants argue that the Court has no jurisdiction over the Sixth Claim, an

13  argument based on a misreading of the law and mischaracterization of Plaintiffs' allegations.

14  Defendants seek to apply the standard for obtaining injunctive relief, arguing that Plaintiffs must

15  demonstrate a likelihood of future violations to survive a motion to dismiss.  That is clearly

16  wrong.  Defendants also err by characterizing Plaintiffs' allegations as involving wholly past

17  violations: Yet the 4SC repeatedly alleges ongoing harm and the likelihood of future take.

18      Federal Defendants' final argument that Reclamation's take of listed Chinook was

19  somehow authorized by the NMFS OCAP BiOp also fails.  The NMFS OCAP BiOp expressly

20  provides that it does not provide authority for incidental take under the SRS contracts.

21      Finally, there is no merit to the DMC and SRS Contractors' argument that the Court must

22  dismiss the First through Third Claims as moot.  Final judgment has issued on the First and Third

23  Claims and there is no need to dismiss them.  Plaintiffs' Second Claim against Reclamation for its

24  continued failure to comply with its duty to ensure that the SRS and DMC contracts do not cause

25  jeopardy to the delta smelt or adversely impact its habitat certainly has not been resolved.  Both

26  the claim and the applicable 60-day notice allege that Reclamation is engaged in an ongoing

27  Section 7 violation for which the Court may still grant effective relief.

28      Defendants' motions to dismiss should be denied and Plaintiffs permitted to litigate their

3

1    well-pleaded claims.

2                              **BACKGROUND**

3           Plaintiffs originally filed this lawsuit in response to Reclamation's 2005 consultation with

4    FWS regarding the effects on the delta smelt of the OCAP, which guides the coordinated operation

5    of the Central Valley Project ("CVP") and State Water Project ("SWP"), and actions based on that

6    consultation.  First Supp. Compl. (May 20, 2005) (Doc. 40-1).  Although not the subject of this

7    lawsuit, during the same timeframe, Reclamation also consulted with NMFS on the OCAP's

8    impacts to listed Chinook.  4SC ¶¶2-11, 107.  NMFS issued its biological opinion in 2004 ("2004

9    NMFS OCAP BiOp"), and FWS issued its biological opinion in 2005 ("2005 FWS OCAP BiOp"),

10   both concluding that the OCAP would not cause jeopardy or adversely impact habitat.  *NRDC v.*

11   *Kempthorne*, 506 F.Supp.2d 322, 333 (E.D. Cal. 2007) (Doc. 323); 4SC ¶18.[2]

12          Reclamation also consulted with NMFS and FWS on its renewal of the SRS and DMC

13   contracts.  4SC ¶¶87-89, 108.  In 2005, NMFS and FWS each sent "letters of concurrence"

14   concluding that the renewals would not cause jeopardy or adversely impact habitat.  *Id.*  The letters

15   relied exclusively upon the 2004 NMFS OCAP BiOp and 2005 FWS OCAP BiOp.  *Id.*

16          In this lawsuit, Plaintiffs challenged the 2005 FWS OCAP BiOp and actions taken in

17   reliance upon it, including the renewal of the SRS and DMC contracts.  Doc. 40-1.  In 2007, this

18   Court's predecessor invalidated the FWS 2005 OCAP BiOp and ordered FWS to complete a new

19   biological opinion.  *Kempthorne*, 506 F.Supp.2d at 387-88.  The Court directed Plaintiffs to file

20   the Third Supplemental Complaint, which joined 33 high-volume contractors as defendants and

21   parties necessary for injunctive relief.  *Kempthorne*, 539 F.Supp.2d 1155, 1191-92 (E.D. Cal.

22   2008) (Doc. 567); Doc. 575 (Third Supp. Compl.).

23          The Court later held that the ESA's consultation requirements did not apply to the SRS

24   contract renewals because Reclamation did not have discretion to negotiate new species-protective

25   terms in the renewals.  *Kempthorne*, 621 F.Supp.2d 954, 1000-01 (E.D. Cal. 2009) (Doc. 834).

26   Sitting en banc, the Ninth Circuit reversed.  *Jewell*, 749 F.3d 776.  The en ban panel rejected

27

28   [2] Plaintiffs' recent filings include additional factual and procedural background. *See, e.g.*, Doc.
     965 at 10-18 (Opp. to Mot. to Stay); Doc. 1000 at 10-14 (Mem. ISO Leave to File 4SC).  The
     background provided here is relevant to the arguments in Defendants' motions to dismiss.

                                              4

1   Defendants' argument that FWS's new biological opinion ("FWS OCAP BiOp") analyzed the

2   contracts' impacts and thus rendered Plaintiffs' claim moot, explaining that the FWS OCAP BiOp

3   "merely assesses the general effects of the [OCAP], and it does not represent a consultation with

4   FWS regarding the impact of the Bureau's decision to renew the specific contracts before us." *Id.*

5   at 782.  As relevant here, the court further held that Reclamation has "some discretion" over the

6   SRS contracts, concluding that, at minimum, Reclamation can negotiate species-protective

7   contract terms such as the "pricing scheme or the timing of water distribution." *Id.* at 785.  The

8   Ninth Circuit remanded to this Court for "further proceedings consistent with [its] opinion." *Id.*

9        On remand, Defendants sought to avoid further adverse rulings by requesting a stay of

10   litigation while Reclamation "reinitiated" consultation on the contracts pursuant to 50 C.F.R.

11   §402.16.  Doc. 955, 962.  The Court granted a six-month stay until December 15, 2015.  Doc. 979

12   at 21.[3]  During the stay, Reclamation requested reinitiation with FWS regarding the contracts'

13   effects on delta smelt, *see* Doc. 993-1 (FWS Letter of Concurrence ("2015 LOC")), but not with

14   NMFS on the impacts to listed Chinook.  Reclamation submitted documents with its reinitiation

15   request denying that it has any discretion to modify the contracts to benefit the delta smelt, 4SC

16   ¶103, despite *Jewell*'s holding to the contrary.  *See* 749 F.3d at 785.  Reclamation also informed

17   FWS that it only sought clarification that the FWS OCAP BiOp considered the contracts' effects,

18   4SC ¶104, even though the en banc panel had ruled that the FWS OCAP BiOp was not a

19   consultation on the contracts.  *See* 749 F.3d at 782.  On December 14, 2015, FWS issued a letter

20   concurring with Reclamation's conclusion that "all of the possible effects to delta smelt and its

21   critical habitat by operating the CVP to deliver water under the SRS and DMC contracts were

22   addressed in the [FWS OCAP BiOp]."  Doc. 993-1 at 4.

23        On April 22, 2016, the Court granted Plaintiffs' motion to file the 4SC, which adds

24   allegations regarding Reclamation's ongoing failure to ensure that the contracts do not jeopardize

25   the delta smelt or adversely impact habitat, 4SC ¶¶13-17, 53-63, 100-06, 132-46, and an

26   additional claim against FWS pertaining to the delta smelt, the Fourth Claim for Relief, alleging

27   

28   [3] All pincites to docket entries use CM/ECF pagination, not the documents' internal pagination.

5

1   that the 2015 LOC violated the APA because it was arbitrary and capricious and not in

2   accordance with the ESA.  4SC ¶¶183-88.  No Defendant has moved to dismiss this claim.

3       The 4SC includes two additional claims, the Fifth and Sixth Claims, regarding winter-run

4   and spring-run Chinook.  The Fifth Claim alleges that Reclamation violated Section 7(a)(2) of the

5   ESA, 16 U.S.C. §1536(a)(2), and its implementing regulations, 50 C.F.R. §402.16, by failing to

6   reinitiate consultation on the SRS contracts' impacts on listed Chinook.  4SC ¶¶183-88.  The 4SC

7   includes several bases for the claim.  First, Reclamation failed to reinitiate consultation when the

8   current NMFS OCAP BiOp was issued, even though it superseded the 2004 BiOp, upon which

9   the only NMFS consultation regarding the contracts was based.  4SC ¶¶108-10, 150; *see also*

10   *Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 606 F.Supp.2d 1122, 1193 (E.D. Cal.

11   2008).  Unlike the 2004 BiOp, the current NMFS OCAP BiOp concluded that the OCAP would

12   jeopardize listed Chinook.  4SC ¶110.  The 4SC thus alleges that the NMFS OCAP BiOp

13   constituted new information triggering Reclamation's duty to reinitiate consultation.  *Id.* ¶150; 50

14   C.F.R. §402.16(b).

15       Second, Reclamation secured amendments to the NMFS OCAP BiOp in 2014 and 2015

16   that weakened water quality standards and key provisions in the BiOp's Reasonable and Prudent

17   Alternative ("RPA") designed to protect listed Chinook.  4SC ¶¶113, 151.  Reclamation sought

18   these amendments because it could not meet species-protective standards while satisfying the

19   terms of the SRS contracts.  *Id.*  The 4SC alleges that these 2014 and 2015 amendments were new

20   information that required Reclamation to reinitiate consultation.  *Id.*; 50 C.F.R. §402.16(b).

21       Third, Reclamation made excessive deliveries to the SRS Contractors that killed almost

22   the entire 2014 and 2015 generations of winter-run Chinook.  4SC ¶¶73-77.  Listed Chinook

23   depend on Reclamation to retain sufficient cold-water reserves in Shasta Reservoir to make

24   releases that maintain Sacramento River temperatures suitable for spawning, egg incubation, and

25   rearing in the hot summer and fall months.  *Id.* ¶¶64-72.  In 2014, Reclamation depleted the cold-

26   water reserves to satisfy the SRS contracts, causing temperature increases that resulted in a

27   catastrophic 95% mortality of that year's generation of winter-run Chinook and similar mortality

28   of spring-run Chinook.  *Id.* ¶73.  In 2015, after assuring wildlife agencies that it would better

1    control temperatures, Reclamation again depleted the cold-water pool to satisfy the SRS

2    contracts, causing fatal temperatures and an even higher 97.9% mortality to winter-run Chinook.

3    *Id.* ¶¶74-76.  The 4SC alleges that Reclamation's failure to control temperatures and the massive

4    mortality to listed Chinook was new information that triggered its duty to reinitiate consultation.

5    *Id.* ¶¶151; 50 C.F.R. §402.16(b).

6         Related to the loss of temperature control and massive mortality of listed Chinook,

7    Plaintiffs added a Sixth Claim against Reclamation and the SRS Contractors for causing the

8    "take" of these species in violation of Section 9 of the ESA, 16 U.S.C. §1538(a)(1)(B).  4SC

9    ¶¶189-93.  The 4SC alleges that Reclamation's deliveries and the SRS Contractors' diversions

10   killed almost the entire generation of winter-run Chinook in 2014 and 2015, a devastating impact

11   likely to recur during the SRS contracts' 40-year terms.  4SC ¶¶21-23, 29, 45-46, 73-77, 134,

12   159-63.  As the NMFS OCAP BiOp makes clear, neither Reclamation nor the SRS Contractors

13   have authority to take these species in implementing the SRS contracts.  *Id.* ¶¶159-63.  Thus, the

14   4SC alleges that Reclamation and the SRS Contractors are in violation of Section 9 of the ESA.

**ARGUMENT**

16   **I.     Legal Standard**

17        Defendants collectively seek to dismiss Plaintiffs' First through Third, Fifth and Sixth

18   Claims for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

19   Federal Defendants and the SRS Contractors additionally challenge the Court's subject matter

20   jurisdiction over Plaintiffs' First through Third and Sixth Claims pursuant to Rule 12(b)(1).

21        It is well settled that a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a

22   complaint, and that "all allegations of material fact" in the complaint "are taken as true and

23   construed in the light most favorable to the non-moving party."  *Smith v. Jackson*, 84 F.3d 1213,

24   1217 (9th Cir. 1996).  "A claim may be dismissed only if it appears beyond all doubt that a

25   plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook*

26   *v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (internal quotations omitted).  Under *Ashcroft v.*

27   *Iqbal*, 556 U.S. 662, 678 (2009), so long as a plaintiff has pleaded sufficient factual content to

28   "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

1   alleged[,]" a motion to dismiss should be denied.  *Id.* at 678 (internal quotations omitted).

2            *Iqbal*'s pleading standard also applies to motions to dismiss for lack of subject matter

3   jurisdiction under Rule 12(b)(1).  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

4   A plaintiff need only provide "a short and plain statement of the grounds for the court's

5   jurisdiction" and sufficient supporting factual allegations.  Rule 8(a); *Leite*, 749 F.3d at 1121.

6            Generally, the "court may not consider any material beyond the pleadings in ruling on a

7   Rule 12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  If a party

8   moving to dismiss submits evidence outside the pleadings, and the court considers that evidence,

9   the "motion must be treated as one for summary judgment under Rule 56" and the parties must be

10  provided notice and an opportunity to supplement the record.  *Williams v. Cnty. of Alameda*, 26

11  F.Supp.3d 925, 935 (N.D. Cal. 2014); *see also* Rule 12(d); Rule 56(d).  As discussed in footnotes

12  5, 11, and 14, *infra*, Federal Defendants proffer a factual declaration and attachments in support

13  of their Rule 12(b)(6) motion.  The Court should not convert the motion to one for summary

14  judgment, especially when the administrative record has yet to be produced and the Court has

15  already set a summary judgment schedule.  *See* Doc. 1027 (Scheduling Order).  The evidence

16  proffered by Federal Defendants is not relevant to jurisdictional challenge, and thus may not

17  be considered under the guise of Rule 12(b)(1).

18  **II.    There Is No Basis for Defendants' Motion to Dismiss Plaintiffs' Fifth Claim for**
19  **        Failure to Reinitiate Consultation**

20          **A.    Plaintiffs adequately allege that Reclamation maintains discretionary federal
                    involvement or control over the SRS contracts**

21          There is no basis for Federal Defendants' stunning assertion – in conflict with the Ninth

22  Circuit's en banc decision – that Reclamation does not have a duty to reinitiate consultation with

23  NMFS because it lacks discretionary involvement or control over the SRS contracts.  Fed. Defs'

24  Op. Br. ("Fed. Br.") (Doc. 1032-1) 14.  The Ninth Circuit's ruling that Reclamation has such

25  discretion is the law of the case.  *Jewell*, 749 F.3d at 785.  Further, Reclamation could not have

26  reinitiated consultation with FWS on the contracts in 2015 if it lacked discretion.  *See* Doc. 993-1.

27  But, even if *Jewell* and Reclamation's conduct were not enough to establish discretion, Plaintiffs'

28  thorough allegations of Reclamation's discretion over the SRS contracts must be construed as true

1    in reviewing a motion to dismiss.  4SC ¶¶58-59, 73, 75-76, 104, 136; *Jackson*, 84 F.3d at 1217.

2          The ESA's implementing regulations specify that an agency's obligation under Section 7

3    of the ESA to consult and to reinitiate consultation on a federal action only apply when the

4    agency has "discretionary Federal involvement or control" over the action.  50 C.F.R. §§402.03;

5    402.16.  This Court's predecessor ruled that Reclamation was not required to comply with

6    Section 7 because the original SRS contracts "substantially constrain" Reclamation's discretion to

7    modify the terms when renewing the contracts.  *Kempthorne*, 621 F.Supp.2d at 1000.  The Ninth

8    Circuit reversed, ruling that Reclamation is subject to Section 7 because it has discretion to

9    negotiate species-protective contract terms.  *Jewell*, 749 F.3d at 785.  That ruling is the law of the

10    case, and the Court should reject Federal Defendants' attempt to reopen the issue.

11          Since the en banc panel's ruling, the Court granted Reclamation's motion to stay

12    proceedings to allow it to reinitiate consultation with FWS under 50 C.F.R. §402.16 to reevaluate

13    the SRS contracts' impacts on the delta smelt.  Doc. 979.  Reclamation could not have reinitiated

14    consultation with FWS if it did not maintain discretionary involvement or control over the SRS

15    contracts.  *See* 50 C.F.R. §402.16.  Reclamation cannot legitimately claim it has discretion to

16    reinitiate consultation on the SRS contracts' effects to delta smelt, yet lacks discretion to take the

17    same action with regards to the same contracts' effects on listed Chinook.

18          For this same reason, Federal Defendants' argument that Reclamation cannot reinitiate

19    consultation because the SRS contracts are "completed final agency action," Fed Br. 14, is not

20    well taken.  Plaintiffs' Fifth Claim concerns the exact same contracts on which Reclamation just

21    reinitiated consultation with respect to the delta smelt.  Moreover, even if the SRS contracts were

22    completed final agency action, that in no way eliminates Reclamation's ongoing duty to reinitiate

23    consultation.  As the Ninth Circuit recently held, "an agency's responsibility to reinitiate

24    consultation *does not terminate* when the underlying action is complete."  *Cottonwood Envtl. Law*

25    *Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1086 (9th Cir. 2015) (emphasis added) (*cert. pet.*

26    *pending*).  "The determinative question" is whether the agency maintains "discretionary Federal

27    involvement or control" over the action after it is complete.[4]  *Id.*

28

---

[4] Because a valid consultation is a prerequisite for a final agency action, the SRS contracts are not

PLS.' OPP. TO DEFS.' MOTIONS TO DISMISS
CASE NO.  1:05-CV-01207 LJO-EPG

Here, contrary to Federal Defendants' contention, *see* Fed. Br. 15, the 4SC is rife with allegations that Reclamation retains ongoing discretionary involvement with and control over the implementation of the SRS contracts. *See, e.g.*, 4SC ¶136 (Reclamation has discretion to alter "timing of water distribution to the SRS Contractors" and "pricing scheme" to benefit delta smelt); *id.* ¶104 (Reclamation "exercise[d] . . . discretion on the timing of diversions under the SRS contracts"); *id.* ¶¶58-59 (Reclamation sought changes to flow requirements and export limits); *id.* ¶73 (Reclamation must conduct temperature modeling to determine quantity and timing of releases to SRS Contractors); *id.* (Reclamation schedules releases to SRS Contractors to maintain adequate temperatures for salmon spawning); *id.* ¶75 (Reclamation ignored NMFS's warnings and made excessive releases to SRS Contractors); *id.* ¶76 (Reclamation issued temperature management plan for Shasta releases to SRS Contractors); *id.* ¶153 (Reclamation "makes real-time determinations regarding the timing and volume of releases").

The two principal cases upon which Federal Defendants rely, *Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1082 (9th Cir. 2001) ("*EPIC*"), and *Cal. Sportfishing Alliance v. Fed. Energy Regulatory Comm'n*, 472 F.3d 593, 598-99 (9th Cir. 2006) ("*CSA*"), affirm Plaintiffs' position. *See* Fed. Br. 14. Those cases stand for the proposition that an agency has a duty to reinitiate consultation if the agency can take affirmative species-protective action. *EPIC*, 255 F.3d at 1082; *CSA*, 472 F.3d at 598-99. As the allegations cited above show, Reclamation maintains and utilizes such ability with regard to the SRS contracts. Reclamation may disagree with the allegations, but that is not a proper basis for a motion to dismiss where the Court views the allegations in a light most favorable to Plaintiffs. *Jackson*, 84 F.3d at 1217.

Federal Defendants' own proffered documentation further demonstrates Reclamation's ongoing discretion over the SRS contracts' implementation.[5] For instance, Federal Defendants

---

final. *See Turtle Island Restoration Network v. NMFS*, 340 F.3d 969, 974 (9th Cir. 2003) (explaining that agencies must finish consultation "before engaging in a discretionary action[] which may affect listed species"); *see also NRDC v. Houston*, 146 F.3d 1118, 1129 (9th Cir. 1999) ("The failure to respect the [Section 7] process mandated by law cannot be corrected with post-hoc assessments of a done deal."). The Court need not even reach this issue, however, given the allegations and evidence of discretion retained by Reclamation over the contracts.

[5] Because Federal Defendants' evidence only confirms Reclamation's discretion, Plaintiffs discuss it briefly. Plaintiffs, however, object to the submission of a declaration and attachments in support of Federal Defendants' Rule 12(b)(6) motion to dismiss. *See Lee*, 250 F.3d at 688

1   submit a February 21, 2014 letter in which the SRS Contractors' counsel objects to Reclamation's

2   preliminary decision to allocate 40% of the SRS contract total that year.  Decl. of Natalie Wolder

3   (Doc. 1032-2) at 8.  This confirms that Reclamation has discretion to decrease allocations to the

4   SRS Contractors and is not limited to providing either 75% or 100% of the contract total.  *See id.*

5        Reclamation's April 19, 2014 response to the SRS Contractors' letter, submitted by

6   Federal Defendants, further confirms Reclamation's discretion.  *See* Doc. 1032-2 at 13-14.

7   Reclamation did not agree that it could not reduce allocations below 75%, and instead explained

8   that, due to improved hydrological conditions, it would be able to provide a 75% allocation, "*but*

9   *only if* the SRS Contractors defer diversion of Base Supply in April and May 2014, to later in the

10  water year."  *Id.* at 13 (emphasis added).  Similarly, in April 2015, Reclamation informed the SRS

11  Contractors that their 75% allocation for 2015 was "contingent" on their agreement to five

12  measures designed to protect winter-run Chinook, including an alteration in the SRS contracts'

13  diversion schedule.  Doc. 1032-2 at 26.  Even though the SRS Contractors may have agreed to

14  these changes, Federal Defendants' evidence illustrates Reclamation's discretion both to negotiate

15  changes and to provide less than a 75% allocation if the SRS Contractors did not agree to

16  Reclamation's conditions.  *Id.* at 8, 13, 26.  In light of *Jewell*, Federal Defendants' reinitiation of

17  consultation with FWS on these same contracts, the allegations in the 4SC and Defendants' own

18  submitted evidence, Federal Defendants' repeated contention that Reclamation has no discretion

19  to take species-protective measures should be rejected.

20        **B.    Plaintiffs adequately allege that new information triggered Reclamation's**
21            **duty to reinitiate consultation**

22        An agency with discretion over a federal action must reinitiate consultation "if new

23  information reveals effects of the action that may affect listed species or critical habitat in a

24  manner or to an extent not previously considered."  50 C.F.R. §402.16(b).  Plaintiffs adequately

25  allege that three different types of information triggered Reclamation's duty to reinitiate

26  (evidence outside the pleadings should generally not be considered in ruling on 12(b)(6) motion).
    Federal Defendants' reliance on correspondence that should properly be included in the full
27  administrative record underscores that these claims are not ones for resolution on motions to
    dismiss.  To the extent the Court deems it appropriate to convert the pending motions to dismiss
28  to summary judgment motions, the Court must provide an adequate opportunity to supplement the
    record.  *See Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1408 (9th Cir. 1995); LoPresti Decl. ¶¶2-4.

11                                                          PLS.' OPP. TO DEFS.' MOTIONS TO DISMISS

1   consultation on the SRS contracts' effects on listed Chinook and their habitat: the NMFS OCAP

2   BiOp and its jeopardy finding; the 2014 and 2015 amendments to the NMFS OCAP BiOp; and

3   the loss of temperature control and the resultant listed Chinook mortality rates in 2014 and 2015.

**1.      The NMFS OCAP BiOp triggered Reclamation's duty to reinitiate consultation**

6       Reclamation's sole consultation with NMFS on the SRS contracts is reflected in NMFS's

7   2005 letter of concurrence on the contracts, which relies exclusively on the superseded 2004

8   NMFS OCAP BiOp.  4SC ¶¶108-11, 150.  Unlike the 2004 BiOp, the current NMFS OCAP BiOp

9   determined that the OCAP would cause jeopardy.  *Id.* ¶110.  The 4SC thus alleges that the NMFS

10  OCAP BiOp is "new information" that "reveals effects" to listed Chinook that were not

11  previously considered.  *See* 4SC ¶¶18-20, 107-12, 150 (citing 50 C.F.R. §402.16(b)).

12      Federal Defendants and the SRS Contractors argue that the NMFS OCAP BiOp is not new

13  information that revealed effects of the SRS contracts because the BiOp itself considered all the

14  effects of water deliveries under the SRS contracts.  Fed. Br. 19-21; SRS Contractors Op. Br.

15  ("SRS Br.") 16.  The fact that the NMFS OCAP BiOp considered water allocations under the

16  SRS contracts and concluded that the OCAP would cause jeopardy reinforces Plaintiffs'

17  argument that the NMFS OCAP BiOp revealed effects of the SRS contracts not previously

18  considered, and which should be considered in a consultation on the contracts.  Further, any

19  argument that the NMFS OCAP BiOp constituted consultation on the SRS contracts, or obviated

20  the need for one, is flatly wrong.  NMFS could not have been clearer:

> This consultation addresses the long-term operations of the CVP and SWP, including the overall impacts of the total volume of water diverted from the Central Valley.... However, *this consultation does not address ESA section 7(a)(2) compliance for individual water supply contracts.  Reclamation and DWR should consult with NMFS separately on their issuance of individual water supply contracts*, including analysis of the effects of reduced water quality from agricultural and municipal return flows, contaminants, pesticides, altered aquatic ecosystems leading to the proliferation of non-native introduced species (*i.e.*, warm-water species), or the facilities or activities of parties to agreements with the U.S. that recognize a previous vested water right.

27  LoPresti Decl. Ex. A at 729 (emphasis added); *see also id.* at 35.  Despite this, no consultation

28  with NMFS on individual water contracts, including the SRS contracts, occurred.  4SC ¶¶20, 150.

1    Moreover, the NMFS OCAP BiOp could not have adequately analyzed the effects of the

2   SRS contracts because the BiOp, and the modeling in the underlying biological assessment

3   ("BA"), only considered the effects of water allocations to the SRS Contractors through 2030.

4   LoPresti Decl. Ex. A at 61; *see also id.* at 72 (describing proposed action as ending in 2030).[6]

5   Yet the SRS contracts do not expire until 2045.  4SC ¶16.  It is axiomatic that a consultation must

6   consider the "*entire* agency action" in a consultation that is "coextensive" with the action at issue.

7   *Conner v. Burford*, 848 F.2d 1441, 1453, 1458 (9th Cir. 1988).  The NMFS OCAP BiOp fails to

8   consider any effects of the final fifteen years – nearly half the term – of the SRS contracts.  There

9   can be no doubt that that the NMFS OCAP BiOp did not include consultation on the effects of the

10  SRS contracts, and that such a consultation has yet to occur.

11   **2.    The 2014 and 2015 amendments to the NMFS OCAP BiOp triggered
          Reclamation's duty to reinitiate consultation**

12

13    In 2014 and 2015, Reclamation secured amendments to the NMFS OCAP BiOp that

14  triggered its duty to reinitiate consultation because the amendments revealed that, particularly in

15  drought conditions, Reclamation cannot satisfy the SRS contracts without adversely affecting

16  listed Chinook and their critical habitat.  4SC ¶¶20, 113; 50 C.F.R. §402.16(b).

17    In April 2014, Reclamation proposed to make "adjustments in the implementation of

18  several operating criteria in the NMFS BiOp and RPA," as well as modifications to D-1641,

19  which establishes baseline flow requirements for the OCAP.  LoPresti Decl. Ex. B (Letter from

20  W. Stelle, NMFS, to D. Murillo, Reclamation, and M. Cowin, DWR (undated, posted April 8,

21  2014) at 7; 4SC ¶¶57-59, 113, 153.[7]  In approving the amendments, NMFS recognized that the

22  SRS contract demands directly affect Reclamation's ability to control temperatures in the

23  Sacramento River.  LoPresti Decl. Ex. B at 2.  Reclamation, however, failed to reinitiate

24

25  [6] There are numerous references establishing that the BiOp's analysis does not extend beyond
    2030.  *See, e.g.*, LoPresti Decl. Ex. A at 69, 172-73, 243, 250, 447, 464, 467-71, 496-98, 505,
    585, 633.  Further, the studies in the BA, upon which the NMFS OCAP BiOp relies, do not
26  extend beyond the 2030 "consultation horizon."  *See, e.g., id.* Ex. F at 2-1 – 2-2, 9-1, 9-33 – 9-36,
    9-53, R-2, R-4, R-13, R-15, R-19, R-32 – R-33, R-47, D-4, D-31, D-46 – D-47.

27  [7] Plaintiffs submit documents referenced in the 4SC.  *See* LoPresti Decl. A-F; *Lee*, 250 F.3d at
    688 (documents referenced in complaint may be considered in 12(b)(6) motions); *see also Fecht*
28  *v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (court may consider the full texts of
    documents which the complaint quotes only in part).

PLS.' OPP. TO DEFS.' MOTIONS TO DISMISS
CASE NO.  1:05-CV-01207 LJO-EPG

1    consultation regarding the SRS contracts.  Reclamation subsequently lost control of temperatures,

2    killing 95% of that year's generation of winter-run Chinook.  4SC ¶¶73-74, 151.

3         In March 2015, Reclamation proposed, and NMFS approved, new amendments to the

4    NMFS OCAP BiOp and D-1641.  LoPresti Decl. Ex. C (Letter from W. Stelle, NMFS, to D.

5    Murillo, Reclamation, and M. Cowin, DWR (Mar. 27, 2015)).  Reclamation again failed to

6    reinitiate consultation despite NMFS's recognition that the amendments would harm species to

7    benefit contractors, including the SRS Contractors.  *Id.* at 4.  In June 2015, after it became clear

8    that Reclamation's deliveries to the SRS Contractors in April through early June had caused

9    Reclamation to lose temperature control for a second year, Reclamation returned to NMFS with

10   more amendments.  4SC ¶¶75-76; LoPresti Decl. Ex. D (Letter from W. Stelle, NMFS, to D.

11   Murillo, Reclamation, and M. Cowin, DWR (July 1, 2015)) at 3.  Reclamation reported that it had

12   depleted the cold water pool and could not meet the NMFS OCAP BiOp RPA Action 1.2.4

13   requirement to maintain adequate temperatures for the rest of the year.  4SC ¶75; LoPresti Decl.

14   Ex. D at 3; *id.* Ex. A at 601.  Reclamation proposed, and NMFS approved, managing Shasta

15   operations at temperatures that are fatally high to listed Chinook.  LoPresti Decl. Ex. D at 3; 4SC

16   ¶¶67, 151.  Yet again, Reclamation failed to reinitiate consultation with NMFS regarding the SRS

17   contracts' effects on listed Chinook.  NMFS recognized, however, that due to the releases needed

18   to satisfy the contracts, "the quantity and quality of the cold water pool[] will not provide for

19   suitable winter-run [Chinook] habitat needs throughout their egg and alevin incubation and fry

20   rearing periods" and that these "conditions . . . could have been largely prevented" if Reclamation

21   had not made excessive releases in April and May.  4SC ¶76; LoPresti Decl. Ex. D at 9.

22   Ultimately, only 2.1% of winter-run Chinook survived – a 97.9% mortality rate.  4SC ¶77.

23        The 2014 and 2015 amendments to the NMFS OCAP BiOp constituted "new information"

24   that triggered Reclamation's duty to reinitiate consultation.  50 C.F.R. §402.16(b).  The

25   amendments, and NMFS's responses to the amendments, unambiguously revealed that

26   Reclamation cannot satisfy the SRS contracts while also providing for the survival and recovery

27   of listed salmonids, an effect not "previously considered" in a consultation on the contracts.  50

28   C.F.R. §402.16(b); 4SC ¶¶20, 73-77, 113, 150.

14

1    Federal Defendants' and the SRS Contractors' argument that the amendments to the

2  NMFS OCAP BiOp did not constitute new information because they were considered in NMFS's

3  consultation on the amendments themselves, Fed. Br. 23-24; SRS Br. 18-19, misses the point and

4  again confuses system-wide consultation on the OCAP with the unmet need for consultation on

5  the SRS contracts.  Reclamation *never* asked NMFS to consult on the effects of the SRS

6  contracts.  Plaintiffs have more than adequately alleged that the amendments, and the conditions

7  that led to them, constituted new information revealing the SRS contracts' effects: namely, that

8  Reclamation, particularly in drought years, cannot meet the demands of the SRS contracts while

9  providing adequate habitat for listed Chinook.  4SC ¶¶20, 73-77, 113, 150, 161-62.

10          **3.      The loss of temperature control and near-total mortality of the 2014
                     and 2015 generations of listed Chinook triggered Reclamation's duty
11                     to reinitiate consultation**

12    Reclamation's loss of temperature control and massive mortality to listed Chinook in 2014

13  and 2015 also triggered Reclamation's duty to reinitiate consultation because it revealed effects of

14  the SRS contracts that had not been previously considered.  *See* 50 C.F.R. §402.16(b).

15    After Reclamation disclosed in June 2015 that it had again lost temperature control,

16  NMFS commented that, "[i]t is *now very clear through evaluating operations in both 2014 and

17  2015* that the volume of cold water available for real-time management in June through October

18  is highly dependent on Keswick releases in April through early June."  LoPresti Decl. Ex. D at 9

19  (emphasis added); 4SC ¶¶76.  NMFS concluded that Reclamation could have "largely prevented"

20  the loss of temperature control if it had "reduced Keswick releases" in April and May.  *Id.*  The

21  Keswick releases to which NMFS was referring were principally made to satisfy the SRS

22  contracts.  4SC ¶77.  NMFS's letter thus reflects that the 2014 and 2015 information revealed

23  what was previously unknown: that the SRS contracts would cause a 95% and 97.9% loss to

24  consecutive generations of winter-run Chinook.  Indeed, the NMFS OCAP BiOp had predicted

25  that in worst-case scenarios associated with critically dry years, mortality rates could "range up to

26  65%."  LoPresti Decl. Ex. A at 467.  The significantly higher mortality numbers in 2014 and 2015

27  represented new information that triggered Reclamation's duty to reinitiate consultation on the

28  effects of the SRS contracts.  Reclamation did not do so.  4SC ¶¶23, 73-77, 113, 151.

1    The SRS Contractors argue that the loss of temperature control and mortality of listed

2    Chinook in 2014 and 2015 was not "new information" because Reclamation complied with RPA

3    Actions 1.2.3 and 1.2.3.C, which require Reclamation to submit drought contingency plans to

4    NMFS when drought conditions exist.  SRS Br. 18-19.  But this misses the point.  Plaintiffs'

5    claim is not concerned with whether Reclamation submitted these plans, or whether NMFS

6    approved them.  Rather, Plaintiffs allege that, even after submitting and implementing these

7    plans, Reclamation lost temperature control and caused near-total mortality to two generations of

8    listed Chinook because of its deliveries to the SRS Contractors.  4SC ¶¶73-77.  This information

9    regarding the profound effects of the SRS contracts on listed Chinook is what Plaintiffs allege

10   requires Section 7 consultation.  *Id.* ¶¶23, 73-77, 113, 151.  Plaintiffs' allegations regarding the

11   new information from 2014 and 2015 are more than sufficient to state a claim.

12   This Court, in ruling on Plaintiffs' motion to file the 4SC, considered and rejected an

13   argument similar to the one Defendants make now.  Federal Defendants and the SRS Contractors

14   previously argued that, because Reclamation had reinitiated consultation with NMFS on 2014 and

15   2015 drought operations (but not the contracts' effects), Plaintiffs' claim that the loss of

16   temperature control and mortality data triggered a duty to reinitiate consultation on the SRS

17   contracts was moot.  Doc. 1007 at 21-22; Doc. 1009 at 11.  In rejecting this argument, the Court

18   explained that "the Ninth Circuit has made abundantly clear [that] system wide consultation (such

19   as consultation over the OCAP that produced the 2009 NMFS OCAP Salmonid BiOp) does not

20   obviate the need for contract-specific consultation.  This logic would also seem to mean that

21   system-wide re-consultation does not obviate the need for contract-specific re-consultation."

22   Doc. 1018 at 21 (internal citations omitted).  That analysis applies here.  Reclamation's purported

23   compliance with RPA provisions and its re-consultation on the system-wide OCAP during the

24   2014 and 2015 seasons does not negate the fact that there was new information regarding the SRS

25   contracts' effects, nor does it "obviate the need for contract-specific re-consultation."  *See id.*

26   Finally, the SRS Contractors make the illogical argument that because the agencies

27   considered and responded to the temperature management failures and mortality data as it

28   emerged between 2014 and 2016, the data is not new information.  SRS Br. 18-19 (referring to

16

1    correspondence between Reclamation and NMFS).  Plaintiffs, however, do not allege that the

2    agencies did not attempt to implement system-wide measures to mitigate harm.  Plaintiffs allege

3    that, in spite of those measures, there were two consecutive years of catastrophic loss because

4    Reclamation made its deliveries to the SRS Contractors and that this information surely triggered

5    a need for contract-specific consultation.  4SC ¶¶23, 73-77, 113, 150.

6        **C.**    **Plaintiffs adequately allege that the statute of limitations does not bar**

7                      **Plaintiffs' Fifth Claim for failure to reinitiate consultation**

8              **1.**    **The statute of limitations does not bar Plaintiffs' claim that the loss of**

9                      **temperature control and mortality data in 2014 and 2015 triggered**
                  **Reclamation's duty to reinitiate consultation**

10       Defendants do not, and could not, argue that the six-year statute of limitations applicable

11   to the ESA, 28 U.S.C. §2401(a), bars Plaintiffs' Fifth Claim for failure to reinitiate consultation

12   on the basis of Reclamation's loss of temperature control in 2014 and 2015, and the near-total

13   mortality to winter-run and spring-run Chinook in those years.  On this basis alone, the Court

14   should reject Defendants' argument that the Fifth Claim is time-barred.

15             **2.**    **The statute of limitations does not bar Plaintiffs' claim that the 2014**

16                     **and 2015 amendments to the NMFS OCAP BiOp triggered**
                  **Reclamation's duty to reinitiate consultation**

17       Nor is there any basis for the SRS Contractors' contention that Plaintiffs' claim that

18   Reclamation failed to reinitiate consultation on the basis of the 2014 and 2015 amendments to the

19   NMFS OCAP BiOp is time-barred.  The SRS Contractors mischaracterize Plaintiffs' claim,

20   suggesting that Plaintiffs rely only on the 2009 NMFS OCAP BiOp as new information requiring

21   consultation, while wholly ignoring Plaintiffs' allegations that the 2014 and 2015 amendments

22   each independently also triggered an obligation to reinitiate consultation on the contracts' effects

23   on listed Chinook.  *See* 4SC ¶¶23, 73-77, 113, 150.  There can be no dispute that these

24   amendments occurred within the six-year limitations period.

25             **3.**    **The statute of limitations does not bar Plaintiffs' claim that the NMFS**

26                     **OCAP BiOp triggered Reclamation's duty to reinitiate consultation**

27       Although the NMFS OCAP BiOp was issued in June 2009, Plaintiffs allege that

28   Reclamation is in continuing violation of its duty to reinitiate consultation on the SRS contracts.

1    Further, each day Reclamation implements the SRS contracts without reinitiating consultation on

2    the basis of the NMFS OCAP BiOp constitutes a discrete violation of Section 7(a)(2) of the ESA

3    and its implementing regulations, 50 C.F.R. §402.16.  For these two separate reasons, Plaintiffs'

4    claim that the 2009 NMFS OCAP BiOp constituted new information requiring reinitiated

5    consultation is not time-barred.

6                          **a.    Reclamation is in continuous violation of its ongoing statutory**
                                  **obligation to reinitiate consultation**
7

8           Reclamation has an ongoing, non-discretionary statutory duty to reinitiate consultation

9    under Section 7(a)(2) of the ESA, 16 U.S.C. §1536(a)(2), and its implementing regulations, 50

10   C.F.R. §402.16, to ensure that its actions do not jeopardize listed species.  *See Alliance for the*

11   *Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 599 (9th Cir. 2014).  Plaintiffs allege that

12   Reclamation has been in continuous violation of that duty since the 2009 NMFS OCAP BiOp was

13   issued, as Reclamation – despite the jeopardy finding of the BiOp – has implemented the SRS

14   contracts without ever reinitiating consultation on them.  4SC ¶¶20, 23, 107-11, 150.

15          The continuing violations doctrine is a well-established exception to the statute of

16   limitations defense.  *See, e.g.*, *Gutowski v. Cnty. of Placer*, 108 F.3d 256, 259-60 (9th Cir. 1997);

17   *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982).  Although the Ninth Circuit

18   has not had occasion to apply the doctrine in an ESA case, other circuits and numerous district

19   courts have concluded that claims against an agency for failure to carry out a non-discretionary

20   statutory duty under environmental statutes, including the ESA, are continuing violations and not

21   subject to statutes of limitations.  *See, e.g.*, *Wilderness Soc'y v. Norton,* 434 F.3d 584, 589 (D.C.

22   Cir. 2006); *Sierra Club v. Johnson*, No. C 08-01409, 2009 WL 482248, at **9-10 (N.D. Cal. Feb.

23   25, 2009); *Schoeffler v. Kempthorne*, 493 F.Supp.2d 805, 818-20 (W.D. La. 2007); *Save the*

24   *Valley, Inc. v. EPA,* 223 F.Supp.2d 997, 1001 n. 1 (D. Ind. 2002); *S. Appalachian Biodiversity*

25   *Project v. FWS*, 181 F.Supp.2d 883, 887 (E.D. Tenn. 2001); *Am. Canoe Ass'n v. EPA,* 30

26   F.Supp.2d 908, 925 (E.D. Va. 1998); *NRDC v. Fox,* 909 F.Supp. 153, 159-160 (S.D.N.Y.1995).

27          In *South Appalachian*, the plaintiff filed an action in October 2000 against FWS for failing

28   to designate critical habitat for species that FWS had placed on the endangered or threatened

1    species list in March 1993. 181 F.Supp.2d at 885-86. The ESA required that FWS designate

2    critical habitat for these species by March 1994. *Id.* at 886 (citing 16 U.S.C. §1533(b)(6)(C)).

3    The court ruled that the statute of limitations did not run six years later because FWS's "*non-*

4    *action* logically can only be construed as a continuing violation" of the ESA, and plaintiff's claim

5    does not become stale until the agency "fulfill[s] the affirmative duty required of it." *Id.* at 887.

6    Barring the claim would remove accountability to comply with congressionally mandated duties:

7    "if [FWS's] failure to designate critical habitat is time-barred, then *no one* may compel the

8    service to" comply with this duty. *Id.*; *see also Johnson*, 2009 WL 482248, at *9 (holding that

9    Environmental Protection Agency ("EPA") was in continuous violation of Comprehensive

10   Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §9608(b)(1),

11   for failing to publish notice of covered facilities and explaining that "applying Section 2401(a)

12   would circumvent defendant's accountability to comply with a statutory obligation").

13          The reasoning in *South Appalachian* applies here. Plaintiffs' claim does not become stale

14   unless and until Reclamation complies with its statutory duty to consider the new information in

15   the NMFS OCAP BiOp and consult on the SRS contracts. *See S. Appalachian*, 181 F.Supp.2d at

16   887. Permitting Reclamation to avoid its obligation to consult would undermine the Section 7

17   protections at "the heart of the ESA." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 495

18   (9th Cir. 2010); *see also Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1020 (9th Cir.

19   2012) (en banc) (explaining that ESA's "consultation requirement reflects a conscious decision

20   by Congress to give endangered species priority over the primary missions of federal agencies")

21   (internal quotations omitted). Reclamation's failure to comply with a statutory obligation –

22   especially one that Congress has given such high priority – must be subject to enforcement.

23          Further, Plaintiffs' claim has not become stale because Reclamation is implementing the

24   SRS contracts without complying with its Section 7 obligations. Thus, Reclamation's initial

25   failure to reinitiate consultation upon the issuance of the NMFS OCAP BiOp is a continuing

26   violation because it is "link[ed] with an act that is within the limitations period" – specifically, the

27   SRS contracts' implementation. *See U.S. v. Estate of Hage*, 810 F.3d 712, 721 (9th Cir. Jan. 15,

28   2016) (*cert. pet. pending*) (citing *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir.

1    1994) (explaining that continuing violations doctrine requires that the time-barred act is

2    connected with an act within the limitations period)).

3        The SRS Contractors mistakenly rely on *Center for Biological Diversity v. Hamilton*, 453

4    F.3d 1331 (11th Cir. 2006), to argue that the continuing violations doctrine does not apply.  *See*

5    SRS Br. 14-15.  As the court in *Sierra Club v. Johnson* explained, however, *Hamilton* runs

6    "against the weight of authority" and is of little value in the Ninth Circuit because it relies on the

7    Eleventh Circuit's view that Section 2401's statute of limitation is jurisdictional and cannot be

8    waived pursuant to the continuing violations doctrine.  2009 WL 482248, at *10; *see Hamilton*,

9    453 F.3d at 1335-36.  Under Ninth Circuit precedent, Section 2401(a) is *not* jurisdictional and *can*

10   be waived.  *See Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997); *Avery v.*

11   *Dep't of Army*, 14-cv-01077, 2015 WL 4451591, at *5 (N.D. Cal. July 20, 2015) (explaining that

12   district courts in Ninth Circuit are "bound to follow the binding precedent in *Cedars-Sinai*").[8]

13       The SRS Contractors also rely on several cases rejecting the application of the continuing

14   violations doctrine to APA claims.  SRS Br. 14-15.  But Plaintiffs bring their Fifth Claim under

15   the ESA citizen suit provision.[9]  Further, several APA cases cited by the SRS Contractors address

16   challenges to government action, not a continuing *failure* to act, which is the basis for the claim

17   here.  *See Estate of Hage*, 810 F.3d at 721 (barring stale counterclaim against agency for denial of

18   grazing permit); *Hall v. Reg'l Transp. Comm'n of S. Nev.*, 362 Fed. Appx. 694, 695 (9th Cir.

19   2010) (unpublished) (barring stale claim challenging agency's approval of project); *Gros Ventre*

20

21   [8] *Hamilton* is also inapplicable because it relies on Eleventh Circuit precedent limiting the
     application of the continuing violation doctrine to cases in which "a reasonably prudent plaintiff

22   would [not] have been aware of the failure" of the violation when it first accrued.  453 F.3d at
     1335.  No such limitation exists in this circuit, nor should it.  As happened here, case-specific

23   circumstances may cause a delay in filing.  As explained in Plaintiffs' motion for leave to file the
     4SC, Plaintiffs did not file this claim until recently because it appeared that the existing claim

24   related to the delta smelt would result in a consultation on the SRS contracts with both FWS and
     NMFS.  *See* Doc. 1000 (Pls. Op. Br.) at 27; Doc. 1013 (Pls. Reply Br.) at 12.  When the Court

25   stayed the case to allow reinitiation, and Reclamation reinitiated consultation with FWS but not
     NMFS, it became necessary to file a claim seeking reinitiation with NMFS.  *Id.*

26   [9] Although Plaintiffs' Fifth Claim cites both the ESA and APA, 4SC ¶¶183-88, it arises pursuant
     to the ESA's citizen suit provision, 16 U.S.C. §1540(g)(1)(A), as acknowledged by Federal

27   Defendants.  Fed. Br. 16; *see also Brem-Air Disposal v. Cohen,* 156 F.3d 1002, 1005 (9th
     Cir.1998) explaining that if a plaintiff can bring suit under a citizen suit provision, the action

28   precludes additional suit under the APA); *Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531
     F.3d 792, 802 (9th Cir. 2008) (applying *Brem-Air* in ESA suit).

1    *Tribe v. U.S.*, 344 F.Supp.2d 1221, 1230 (D. Mont. 2004) (barring stale claim challenging

2  agency's approval of modifications to operating permits).

3        The SRS Contractors also misportray two out-of-circuit APA cases as failure-to-act cases,

4  even though the cases involve instances of specific, time-limited government conduct.  SRS Br.

5  14.  In *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1306-08 (Fed. Cir. 2008), the

6  plaintiff challenged a regulation because of flaws in the notice and comment process, and the

7  Federal Circuit held that the statute of limitations ran from the time the regulation itself was

8  promulgated.  *Id.* at 1307.  Similarly, in *Izaak Walton League of America, Inc. v. Kimbell*, 558

9  F.3d 751 (8th Cir. 2009), the court concluded that plaintiffs challenged agency action –  namely,

10  promulgation of a map and legal boundaries that resulted in two lakes being excluded from a

11  designated wilderness area –  and that plaintiffs' claim that the agency had failed to issue certain

12  quotas for those lakes that would have been required but for their exclusion from the wilderness

13  area was not a continuing violation and was time-barred.  *Id.* at 757, 761-62.

14        Here, unlike in *Preminger* and *Izaak Walton*, Plaintiffs' claim does not challenge any

15  procedural or substantive flaw in action that Reclamation has taken.  Plaintiffs instead allege an

16  ongoing failure by Reclamation to carry out its mandatory duty to consult with NMFS regarding

17  the SRS contracts' effects on listed Chinook after receiving the new information contained in the

18  NMFS OCAP BiOp.  4SC ¶¶20, 23, 107-11, 150.  As the D.C. Circuit has explained, Section

19  2401(a) does not apply when a plaintiff "does not complain about what the agency has done but

20  rather about what the agency has yet to do."  *Wilderness Soc'y*, 434 F.3d at 589; *see also AKM*

21  *LLC dba Volks Constructors v. Sec'y of Labor*, 675 F.3d 752, 763 (D.C. Cir. 2012) (Garland, J.

22  concurring) ("[W]here a regulation (or statute) imposes a continuing obligation to act, a party can

23  continue to violate it until that obligation is satisfied, and the statute of limitations will not begin

24  to run until it does.").  Plaintiffs here do not complain about what Reclamation has done, "but

25  rather about what [it] has yet to do."  *Wilderness Soc'y*, 434 F.3d at 589.

26               **b.**     **Each day Reclamation fails to reinitiate consultation is a**

27                      **discrete violation that renews the statute of limitations**

28        Section 2401(a) also does not bar Plaintiffs' claim that the NMFS OCAP BiOp triggered

1    Reclamation's statutory obligation to reinitiate consultation because each day that Reclamation

2    implements the SRS contracts without reinitiating consultation is a discrete violation of Section

3    7(a)(2) of the ESA, 16 U.S.C. §1536(a)(2), and its implementing regulations, 50 C.F.R. §402.16.

4    Although similar and frequently overlapping, "continuing violations" and "discrete violations"

5    are distinct doctrines.  While continuing violations "toll the applicable statutes of limitations,"

6    discrete violations "constitute independently actionable individual causes of action" that allow

7    plaintiffs to challenge those acts that occur within the limitations period.  *Nat'l Parks*

8    *Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 480 F.3d 410, 417 (6th Cir. 2007) ("*NPCA*").

9         In *NPCA*, plaintiffs brought suit against the Tennessee Valley Authority ("TVA") in 2001

10   for failing to obtain a permit before overhauling a power plant in 1988 and for operating the plant

11   without completing the required analysis, obtaining the proper permit, or using required

12   technology.  *Id.* at 413-14.  The district court held that plaintiffs' claims were time-barred because

13   they first accrued when the plant was overhauled and had run when plaintiffs filed suit.  *Id.* at

14   415-16.  The Sixth Circuit declined to decide whether TVA's conduct was a "continuing

15   violation," and instead held that, because the Clean Air Act and state regulations set forth an

16   "ongoing obligation" to comply with the law, the statute of limitations did not apply.  *Id.* at 417-

17   18.  The court explained that the alleged conduct constituted "a series of discrete violations"

18   because the "alleged violation[s] manifest[] each day the plan[t] operates."  *Id.* at 417, 419.

19        Courts in this circuit have applied the discrete violations theory in environmental contexts.

20   For example, in *Institute for Wildlife Protection v. FWS*, No. 07-CV-358, 2007 WL 4117978 (D.

21   Or. Nov. 16, 2007), plaintiff filed suit against FWS in 2007 for failing to designate critical habitat

22   for a fish listed as endangered in 1993.  Although FWS argued that Section 2401(a) barred the

23   claim, the court explained that the purpose of statutes of limitations – "avoiding stale claims,

24   achieving finality, and protecting those who rely on the law" – would not be served by barring

25   plaintiff's claim and that where an ongoing violation is at issue, "'the staleness concern

26   disappears.'"  *Id.* at **2, 5-6 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380

27   (1982)).  Further, deciding the issue would "promote finality" and protect the parties by

28   "eliminating the uncertainty" resulting from FWS's inaction.  *Id.* at *5.  Turning to the ESA, the

22

1    court found that "there is nothing in the ESA to indicate FWS's duty to designate critical habitat

2    is finite or expires at a certain point." *Id.*  The court declined to consider the continuing

3    violations doctrine and instead concluded that the statute of limitations did not bar plaintiff's

4    claim because "each day that FWS does not designate critical habitat for the Oregon chub as

5    required constitutes a single, discrete violation of the statute." *Id.* at 6; *see also Padres Hacia*

6    *Una Vida Mejor v. Jackson*, No. 1:11-CV-1094, 2012 WL 1158753, at *9 (E.D. Cal. Apr. 6,

7    2012) (holding that plaintiff's 2011 lawsuit against EPA for failing to respond to its

8    administrative complaint before statutory deadline in 1996 was not time barred because when

9    "there is an on-going duty to perform a discrete agency act, coupled with non-action by the

10   federal agency . . . each day's failure to act [i]s a separate violation of an applicable duty to act").

11          As in *NPCA* and *Institute for Wildlife Protection*, each day since the NMFS OCAP BiOp

12   was issued that Reclamation implements the SRS contracts without reinitiating consultation on

13   the contracts constitutes a discrete violation that renews the statute of limitations.  Like the

14   statutes and regulations at issue in those cases, Section 7(a)(2) of the ESA and its implementing

15   regulations, 50 C.F.R. §402.16, establish an ongoing obligation to comply with the law.  *See*

16   *NPCA*, 480 F.3d at 418; *Inst. for Wildlife Protection*, 2007 WL 4117978, at *5.  Just as there is

17   "nothing in the ESA to indicate [that the] duty to designate critical habitat is finite or expires at a

18   certain point," *id.*, nothing in the ESA indicates that Reclamation's duty to reinitiate consultation

19   is finite or expires.  Moreover, like the agency in *NPCA*, Reclamation here is proceeding with

20   actions that carry environmental risk without first complying with the statutory requirements

21   designed to protect against that risk.  Indeed, Reclamation's implementation of the contracts

22   without reinitiating consultation has led to the collapse of two generations of winter-run Chinook

23   that might have been avoided had Reclamation reinitiated consultation.  4SC ¶¶73-77.  Because

24   there is ongoing harm, the underlying purpose of statutes of limitations would not be served by

25   barring Plaintiffs' claim.  *See Inst. for Wildlife Protection*, 2007 WL 4117978, at *5; 4SC ¶¶18-

26   23, 73-77, 107-12, 150.  Further, as explained in this Court's order granting Plaintiffs' motion to

27   file the 4SC, Doc. 1018 at 25, resolving this issue would "promote finality" and protect the

28   parties' interests by "eliminating the uncertainty" stemming from Reclamation's failure properly

1   to consult with NMFS on the SRS contracts.  *See Inst. for Wildlife Protection*, 2007 WL 4117978,

2   at *5.  Each day that Reclamation implements the SRS contracts without reinitiating consultation

3   constitutes a discrete violation of the ESA and renews the statute of limitations, providing an

4   additional basis on which Defendants' motion to dismiss Plaintiffs' Fifth Claim should be denied.

**III.    There Is No Basis for Defendants' Motion to Dismiss Plaintiffs' Sixth Claim for Unlawful Take of Winter-Run and Spring-Run Chinook**

**A.    Plaintiffs adequately allege that Reclamation and the SRS Contractors cause the take of winter-run and spring-run Chinook**

8   Contrary to Federal Defendants' and the SRS Contractors' assertions, Plaintiffs' 4SC

9   more than adequately pleads that Reclamation and the SRS Contractors caused the take of listed

10   Chinook.  *See* 4SC ¶¶21-22, 73-77, 104, 136, 159, 161-62.  Section 9 of the ESA provides that "it

11   is unlawful for any person . . . [to] cause to be committed" the take of an endangered or listed

12   species."  16 U.S.C. §1538(g).  Congress defined take broadly to mean "to harass, harm, pursue,

13   hunt, shoot, wound, kill, trap, capture, or collect . . . ."  *Id.* §1532(19).  Section 9's implementing

14   regulations further define "harass" to mean "an intentional or negligent act or omission which

15   creates the likelihood of injury to wildlife by . . . significantly disrupt[ing] . . . breeding, feeding,

16   or sheltering," and "harm" to include "significant habitat modification or degradation where it

17   actually kills or injures wildlife by significantly impairing essential behavioral patterns, including

18   breeding, feeding, or sheltering."  50 C.F.R. §17.3.  The Supreme Court has explained that

19   "Congress intended 'take' to apply broadly to cover indirect as well as purposeful actions."

20   *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Ore.*, 515 U.S. 687, 704 (1995).

21   Causation for purposes of a Section 9 claim includes proximate and actual causation, i.e.,

22   the alleged harm is "fairly traceable" to defendants' actions and, but for the challenged actions,

23   the harm would not have occurred.  *Id.* at 700 n.13; *UMG Recordings, Inc. v. Shelter Capital*

24   *Partners LLC*, 718 F.3d 1006, 1016 n.6 (9th Cir. 2013); *Cascadia Wildlands v. Kitzhaber*, 911

25   F.Supp.2d 1075, 1084 (D. Or. 2012).

26   Plaintiffs' allegations that Reclamation's and the SRS Contractors' actions are the actual

27   and proximate cause of the take at issue are more than sufficient to state their claim.  For instance,

28   Paragraph 21 of the 4SC states:

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In 2014, the Bureau delivered to the SRS Contractors, and the SRS Contractors diverted, excessive amounts of water from Shasta Reservoir to satisfy the terms of the SRS contracts. These releases and diversions caused the Bureau to lose control of water temperatures in the upper Sacramento River during the 'temperature management season' for threatened and endangered Chinook salmon, which generally lasts from June through October. As a result, almost the entire generation of endangered winter-run Chinook that had hatched, or would have hatched, in the upper Sacramento River in 2014 ("2014 brood year") was killed . . . . There were similarly devastating impacts to the 2014 spring-run Chinook brood year in the Sacramento River.

This paragraph provides just one example of Plaintiffs' allegations that Reclamation's deliveries of water from Shasta Reservoir, and the SRS Contractors' diversion of that water, were the actual and proximate cause of the take of listed Chinook. The paragraph alleges actual causation: but for Reclamation's release of excessive amounts of water, it would not have "los[t] control of water temperatures in the upper Sacramento River during the temperature management season," resulting in the death of "almost the entire generation" of winter-run Chinook; and but for the SRS Contractors' diversions pursuant to their contracts, Reclamation would not have made the releases and would not have lost control of water temperatures. 4SC ¶21. Paragraph 21 also alleges a traceable line of proximate causation: Reclamation made excessive releases and the SRS Contractors made excessive diversions; those excessive releases and diversions caused the loss of temperature control; and the loss of temperature control killed almost the entire generation of winter-run Chinook. *Id.* These allegations are more than sufficient to satisfy the requirement that Plaintiffs plead that take is "fairly traceable" to Reclamation's and the SRS Contractors' actions. *See Cascadia Wildlands*, 911 F.Supp.2d at 1084.

The 4SC contains numerous additional allegations that Reclamation and the SRS Contractors actually and proximately cause take. *See, e.g.*, 4SC ¶75 ("In spite of NMFS's clear warnings, the Bureau again made excessive releases in April and May of 2015 to satisfy its contractual obligations to the SRS Contractors. These releases again depleted the cold water pool and severely compromised the spawning, egg incubation, and rearing habitat for the annual brood of winter-run Chinook."); *id.* ¶77 ("Releases to satisfy the SRS contracts are the primary reason why devastating mortality of winter-run occurred again in 2015."); *id.* ¶159 ("The Bureau's excessive releases, and the SRS Contractors' diversions, of water from Shasta Reservoir in 2014

1  and 2015 violated Section 9 of the ESA.  The Bureau's releases depleted the cold water reserves

2  behind Shasta Dam, causing the Bureau to lose temperature control in the upper Sacramento

3  River throughout the temperature management season," which led to the loss of 95% and 97.9%

4  of the winter-run Chinook generations in 2014 and 2015, respectively).

5       There is simply no merit to the SRS Contractors' argument that the "vast majority of

6  Plaintiffs' allegations regarding take do not involve the SRS Contractors at all."  SRS Br. 21.  As

7  the paragraphs cited above illustrate, the 4SC repeatedly alleges that the SRS Contractors'

8  diversions allowed by their contracts caused the take at issue.  *See, e.g.*, 4SC ¶¶21, 159, 192.

9  Even were this not the case, the 4SC also repeatedly alleges that Reclamation's deliveries that

10 caused take were made to the SRS Contractors and pursuant to the SRS contracts.  4SC ¶¶21, 73,

11 75, 77, 151, 161-62; *see also* Doc. 1032-2 at 8-11 (Federal Defendants' evidence that SRS

12 Contractors insisted on receiving water allocations that caused the near mortality of listed

13 Chinook).  As the saying goes, "it takes two to tango."  Here, Reclamation's deliveries and the

14 SRS Contractors' diversions go hand in hand.  *Cf. U.S. v. Glenn-Colusa Irr. Dist.*, 788 F.Supp.

15 1126, 1133 (E.D. Cal. 1992) ("The District's argument that it may shift to the State all

16 responsibility under federal law for any taking is . . . absurd for it is the pumping that creates the

17 taking.").

18      Federal Defendants' argument that Reclamation could not cause take because it lacks

19 discretion over the SRS contracts and "cannot control the action that may result in 'take[,]'" Fed.

20 Br. 27, is legally and factually wrong.  There is no legal basis for importing Section 7's

21 "discretionary action" requirements into Section 9, which does not limit liability to discretionary

22 agency actions.  16 U.S.C. §1538(g).  Nor do Section 9's implementing regulations limit the

23 requirements of that section to discretionary actions.  *Compare* 50 C.F.R. §§402.03, 402.16

24 (applying Section 7 requirements to "discretionary" federal actions) *with* 50 C.F.R. §17.21(c)

25 (defining unlawful take without reference to discretion).

26      None of the cases cited by Federal Defendants support their assertion that "Reclamation

27 cannot be considered the legally relevant cause of 'take'" alleged by Plaintiffs.  In *Department of*

28 *Transportation v. Public Citizen*, 541 U.S. 752, 765 (2004), the Court held that the agency at

26

1    issue, the Federal Motor Carrier Safety Administration ("FMCSA"), did not violate the National

2    Environmental Policy Act ("NEPA"), 42 U.S.C. §§4321-4370, when it failed to analyze the

3    environmental effects of permitting cross-border truck traffic.  The Court explained that FMCSA

4    was statutorily required to allow the trucks to enter the country, and thus an environmental

5    analysis of any alternative (but statutorily prohibited) action would not serve "the underlying

6    policies behind NEPA" to provide information to the public and to inform the decision-making

7    process.  *Pub. Citizen*, 541 U.S. at 768.  Nothing in the Court's analysis and conclusion supports

8    Federal Defendants' novel claim that federal agencies are exempt from Section 9's substantive

9    prohibition against taking listed species.  *See Seattle Audubon Soc'y v. Sutherland*, No. C06-

10   1608, 2007 WL 1577756, at *1 (W.D. Wash. May 30, 2007) ("Although [*Public Citizen*'s]

11   holding makes sense in the context of a procedural, information-forcing statute like NEPA, it is

12   inapplicable under [Section 9 of] the ESA, which serves completely different purposes.").  The

13   other cases cited by Federal Defendants are no more relevant.  The Ninth Circuit's decision in

14   *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir. 1996), addresses whether a plaintiff

15   must show past harm to substantiate an injunction in a Section 9 case.  Similarly, *Cold Mountain*

16   *v. Garber*, 375 F.3d 884, 890 (9th Cir. 2004) and *Sweet Home*, 515 U.S. at 696 n.9 & 700 n.13,

17   simply set forth general principals of causation.  None of these cases address whether an agency

18   without discretion can be the "legally relevant cause of 'take.'"  *See* Fed. Br. 27.

19        Federal Defendants' final case, *Strahan v. Linnon*, 967 F.Supp. 581, 601-602 (D. Mass.

20   1997), is unpersuasive.  It contains a bare, three-sentence statement that the Coast Guard is not

21   liable for issuing Certificates of Documentation to boaters who strike endangered whales because

22   their issuance is "not discretionary and so does not trigger the ESA."  *Id.*  The only authority the

23   court cites is its own analysis in an earlier order in which it had held that the Coast Guard did not

24   have to comply with *Section 7* of the ESA because the agency lacked discretion over whether to

25   issue the certificates.  *Id.* at 621-22.  The court provided no basis or authority for imposing

26   Section 7's discretionary prerequisite on Section 9.  The Court should decline Federal

27   Defendants' invitation to follow an unsubstantiated, two-decade old order.[10]

28

---

[10] This Court's predecessor noted the distinction between the discretionary prerequisite under

PLS.' OPP. TO DEFS.' MOTIONS TO DISMISS
CASE NO.  1:05-CV-01207 LJO-EPG

Even if Federal Defendants were correct that discretion is a prerequisite for Section 9 liability, their argument fails because, as Plaintiffs allege, Reclamation has discretion over the SRS contracts and certainly had and has the "ability to prevent" the take. *Pub. Citizen*, 541 U.S. at 770. As explained, *supra*, section II.A., the Ninth Circuit has ruled that Reclamation has discretion over the contracts, *see Jewell*, 749 F.3d at 785; Reclamation demonstrated its discretion by reinitiating consultation with FWS in 2015, *see* Doc. 993-1; Plaintiffs thoroughly allege that Reclamation has discretion, *see, e.g.*, 4SC ¶¶58-59, 73, 75-76, 104, 136; and Federal Defendants' own proffered evidence illustrates Reclamation's discretion, Doc. 1032-2 at 8-15.[11]

    **B.**    **Plaintiffs adequately allege that the Court has subject matter jurisdiction over Plaintiffs' Sixth Claim**

The SRS Contractors and Federal Defendants argue that the citizen suit provision of the ESA only confers subject matter jurisdiction if Plaintiffs allege facts establishing a likelihood of future violation and harm. SRS Br. 22-25; Fed. Br. 25 n.8. Defendants' argument fails on the law because there is no such requirement, but even if there were, Plaintiffs adequately allege a likelihood of future violation and harm in the 4SC.

    **1.**    **The ESA's citizen suit provision does not require that Plaintiffs allege a likelihood of future violation and harm at the pleading stage**

There is nothing in the ESA's citizen suit provision requiring Plaintiffs to plead facts establishing a likelihood of future violation and harm. *See* 16 U.S.C. §1540. Defendants do not cite a single ESA case setting forth such a requirement.

---

Section 7 and the lack thereof under Section 9. In ruling that Reclamation did not have to engage in a Section 7 consultation on the SRS contracts because it lacked discretion (a ruling later reversed), the Court stated that "it is undisputed that other sections of the ESA may apply, including section 9, 16 U.S.C. § 1539, which prohibits the 'take' of an endangered species by any person without a permit." *Kempthorne*, 621 F.Supp.2d at 970-71.

[11] The Wolder Declaration, which contains numerous factual assertions and calculations, is not properly considered on a motion to dismiss and Plaintiffs respectfully request that the Court strike the declaration and attached documents. *Lee*, 250 F.3d at 688; Rule 12(f). Federal Defendants submit the Wolder Declaration in support of their argument that Plaintiffs' Sixth Claim fails adequately to allege causation because of the purported nature of certain water deliveries made by Reclamation to the SRS Contractors. The Court's consideration of the declaration on this point would convert the motion to dismiss to one for summary judgment before Plaintiffs have had an opportunity to review the full administrative record and respond to summary judgment arguments. *See Bank Melli Iran*, 58 F.3d at 1408; Rule 12(d). If the court does consider the declaration and attached documents, Plaintiffs request an opportunity to supplement the current record. *See id.*; LoPresti Decl. ¶¶2-4.

28

1   The case upon which Defendants principally rely, *National Wildlife Federation v.*

2   *Burlington Northern Railroad*, 23 F.3d 1508 (9th Cir. 1994), demonstrates the error in

3   Defendants' reasoning.  The SRS Contractors quote *Burlington* for the proposition that "[t]he

4   plaintiff must make a showing that a violation of the ESA is at least likely in the future."  SRS Br.

5   22 (citing *Burlington*, 23 F.3d at 1511).  But the *Burlington* court was articulating the standard for

6   obtaining *preliminary injunctive relief*, not the pleading standard for subject matter jurisdiction in

7   ESA citizen suit cases.  It would grossly distort the pleading standard to require that plaintiffs

8   meet the standards for a preliminary injunction to survive a motion to dismiss.[12]

9   The SRS Contractors also rely on a statement in *Center for Biological Diversity v. Marina*

10   *Point Development Co.*, 566 F.3d 794, 804 (9th Cir. 2008), that "[t]he ESA allows a citizen suit

11   for the purpose of obtaining injunctive relief only.  Of course, that is forward looking, and is

12   intended to prevent a defendant from taking an endangered or threatened species."  SRS Br. 22.

13   The SRS Contractors take this statement out of context.  The issue in *Marina Point* was whether

14   plaintiffs' Section 9 claim was moot because the bald eagle was delisted after plaintiffs filed their

15   case.  566 F.3d at 804.[13]  Because the court could not enjoin take of a delisted species, there was

16   no effective relief available, and the court ruled the case moot.  *Id.* at 804-05; *see also Garcia v.*

17   *Lawn*, 805 F.2d 1400, 1403 (9th Cir. 1986) (case is moot if no effective relief available).  But just

18   because injunctive relief is the remedy in an ESA citizen suit claim does not mean that plaintiffs

19   must meet the standard for injunctive relief at the pleading stage.

20   The court in *Stout v. U.S. Forest Service*, 869 F.Supp.2d 1271 (D. Ore. 2012), addressed

21   an argument nearly identical to the one Defendants make here.  Plaintiffs in *Stout* alleged that the

22

23   [12] Indeed, Plaintiffs must also show "a likelihood of success on the merits" to win preliminary
injunctive relief.  *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  But courts do not apply a "likelihood
24   of success" standard in reviewing motions to dismiss.  Courts apply a "plausibility standard" at
the pleading stage, which "is not akin to a probability requirement." *Iqbal*, 556 U.S. at 678; *see*
25   *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may
proceed even if it strikes a savvy judge . . . that a recovery is very remote and unlikely.") (internal
26   quotations omitted); *Leite*, 749 F.3d at 1121 (applying the *Iqbal* standard to motions to dismiss
under Rule 12(b)(1)).

27   [13] Similarly, *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781 (9th Cir. 1995)
(cited at SRS Br. 22), *expanded* the ESA citizen suit provision's coverage to allow injunctive
28   relief for a future threat of a Section 9 violation *in addition* to allowing such relief where there are
past and present violations.  *See* 50 F.3d at 783-88.  *Rosboro Lumber* does not *require* that
plaintiffs allege future harm in ESA citizen suits but rather *permits* it.

1   Forest Service had caused a take of listed steelhead by allowing too many wild horses to remain

2   in a portion of a national forest.  *Id.* at 1280.  The court explained that, to obtain relief, "plaintiffs

3   must prove by a preponderance of the evidence that the Forest Service's failure to control the

4   wild horse population has resulted in a violation of the ESA by causing take of listed steelhead."

5   *Id.*  Defendants argued that plaintiffs also had to prove that "take is likely to occur in the future,"

6   relying on the same out-of-context statement from *Marina Point* that the SRS Contractors cite

7   here.  *Id.*; SRS Br. 22.  The court rejected the argument, explaining that "defendants confuse the

8   forward looking nature of the relief offered by the ESA's citizen suit provision and the violation

9   of the Act that justifies the injunction."  *Id.* at 1281.  The ESA's citizen suit provision, the court

10  held, requires only that plaintiffs prove the agency violated a provision of the ESA.  *Id.*  Future

11  harm is a factor to "consider in tailoring the scope of injunctive relief."  *Id.*

12      Here, like the *Stout* defendants, Federal Defendants and the SRS Contractors confuse the

13  forward-looking nature of injunctive relief with the violation Plaintiffs must show to justify that

14  relief.  *See id.*  Plaintiffs have demonstrated subject matter jurisdiction under the ESA citizen suit

15  provision by pleading sufficient facts to establish a plausible claim that Reclamation and the SRS

16  Contractors are "in violation of" Section 9.  4SC ¶¶21-23, 64-77, 154-63; 16 U.S.C.

17  §1540(g)(1)(A); *Iqbal*, 556 U.S. at 678; *Leite*, 749 F.3d at 1121.  If Plaintiffs prevail on their

18  claim, the Court should consider the likelihood of future harm "in tailoring the scope of injunctive

19  relief."  *See Stout*, 869 F.Supp.2d at 1281.  The facts in this case will show that such a likelihood

20  exists, but it would be legal error for the Court to apply that injunctive relief standard now.

21          **2.      Even if the ESA's citizen suit provision requires that Plaintiffs allege a
22                  likelihood of future violation and harm, Plaintiffs meet that standard**

23      Even if Plaintiffs were required to plead a likelihood of future violation and harm, the 4SC

24  does so.  Contrary to the SRS Contractors' argument, Plaintiffs' allegations in support of their

25  Sixth Claim are not "solely based on allegations of past conduct."  SRS Br. 24; *see also* Fed. Br.

26  25 n.8.  The 4SC repeatedly alleges that Reclamation and the SRS Contractors have committed,

27  are committing, and will continue to commit unlawful take by making deliveries and diversions

28  that kill listed Chinook and adversely affect their critical habitat.  *See, e.g.*, 4SC ¶23 ("Plaintiffs

1    further supplement their challenge to the Bureau's ongoing violations of the ESA and allege that

2    the Bureau and the SRS Contractors have violated and are likely to continue to violate Section 9

3    of the ESA"); *id.* ¶29 ("[T]he Bureau and SRS Contractors have taken, and are taking, winter-run

4    and spring-run Chinook in violation of 16 U.S.C. § 1538(a)"); *id.* ¶45 ("Winter-run and spring-

5    run Chinook populations will continue to decline, and the species may soon become extinct,

6    unless the utmost care is taken in protecting their limited remaining critical habitat."); *id.* ¶46

7    (Plaintiffs' interests "have been, are being, and, unless the relief prayed for herein is granted, will

8    continue to be adversely affected"); *id.* ¶76 (discussing NMFS's conclusion that drought

9    conditions would lead to similar mortality of winter-run Chinook if Reclamation continues to

10   make releases as it did in 2014 and 2015).  Further, the 4SC alleges that the "[r]eleases to satisfy

11   the terms of the SRS contracts are the primary reason" for the unlawful take of winter-run and

12   spring-run Chinook and that these contracts do not expire until 2045.[14]  *Id.* ¶¶29, 77, 134.

13        Moreover, Plaintiffs' allegations that Reclamation and the SRS Contractors took winter-

14   run and spring-run Chinook in 2014 and 2015 demonstrate that they are likely to take these

15   species in the future.  Courts recognize that a past history of Section 9 violations constitutes

16   evidence that future violations will occur.  *See, e.g.*, *Defenders of Wildlife v. Martin*, 454

17   F.Supp.2d 1085, 1099 (E.D. Wash. 2006) ("The fact that snowmobile interaction with and

18   harassment of these animals has been observed *even once* indicates to the Court that

19   snowmobiling within the caribou recovery area presents a definitive threat of future harm to the

20   caribou.") (emphasis added); *Ctr. for Biological Diversity v. Marina Point Dev. Assocs.*, 434

21   F.Supp.2d 789, 794, 795-96 (C.D. Cal. 2006) (holding that because defendants had dredged

22   lakebeds in the bald eagle's habitat, the "construction . . . so far ha[d] already caused a 'take,'"

23   and future construction would therefore further disrupt essential living patterns, such as nesting).

---

24

25   [14] Despite Federal Defendants' statement that a court may consider evidence outside the pleadings
     in support of a motion to dismiss for lack of jurisdiction when the moving party "convert[s] the
     motion to dismiss into a factual motion by presenting affidavits or other evidence," Fed. Br. 12

26   (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)), Federal Defendants
     do not rely on the proffered declaration and attachments to support their contention that Plaintiffs

27   must show likelihood of future take to establish jurisdiction.  *See* Fed. Br. 25 n.8.  Nor do the SRS
     Contractors rely on evidence outside the pleadings in making this argument.  Insofar as this

28   jurisdictional attack is clearly facial, Plaintiffs do not submit documents beyond those identified
     in the 4SC.

1    Even *Burlington*, cited by Defendants, recognized that "[p]ast takings are indeed

2   instructive" as to future takings.  23 F.3d at 1510-12.  Although *Burlington* found, in the context

3   of a preliminary injunction, that a future taking was not likely to recur, that holding was based on

4   the case's unique circumstances, which involved a series of freak train derailments that resulted in

5   bears being lured onto the tracks by spilled corn and then being struck by other trains.  *Id.* (noting

6   no similar incident had recurred and concluding recurrence unlikely given major cleanup effort

7   and preventative measures).  *Id.*  Here, Reclamation's releases and the SRS Contractors'

8   diversions are not freak accidents and have decimated the spawning population of listed Chinook

9   for two consecutive years.  4SC ¶¶73-77.  And unlike *Burlington*, where measures were taken to

10  prevent a recurrence, Reclamation and the SRS Contractors caused worse take in 2015 than they

11  did in 2014.  The SRS contracts do not expire until 2045 and, especially when drought conditions

12  occur, Reclamation's deliveries and the SRS Contractors' diversions will cause similar impacts.

13  *See* 4SC ¶¶73-77, 134; *see also* LoPresti Decl. Ex. A at 600-01, 673.

14    Thus, even if the Court were to require Plaintiffs to show a likelihood of future violations

15  and harm at the pleading stage, Plaintiffs meet that standard because they have alleged ongoing

16  and future violations and because Reclamation's and the SRS Contractors' take in 2014 and 2015

17  demonstrates that similar take will occur in the future.

18
   ### 3.    Plaintiffs adequately allege that Reclamation and the SRS Contractors are committing continuous and intermittent violations
19

20    The SRS Contractors argue that *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.,*

21  *Inc.*, 484 U.S. 49 (1987), which held that plaintiffs must make "good-faith allegations of

22  'continuous' or 'intermittent' violations" to establish jurisdiction in Clean Water Act citizen suits,

23  applies also to ESA citizen suits.  SRS Br. 22-23 (citing 484 U.S. at 57).  They cite no case,

24  however, that applies this holding to ESA citizen suits.

25    Even if *Gwaltney*'s holding did apply to the ESA, the 4SC's allegations cited in the

26  previous section are good-faith allegations of continuous and intermittent violations.  *See* 4SC

27  ¶¶23, 29, 45-46, 76-77, 134.  The Ninth Circuit applied *Gwaltney* in *Sierra Club v. Union Oil*

28  *Cal.*, 853 F.2d 667, 670 (9th Cir. 1988), and held that plaintiff's allegation that "the interests of

1    [its] members have been, *are being*, and unless the relief prayed herein is granted, *will be*,

2    adversely affected by the failure of defendants to comply with their permit," satisfied *Gwaltney*'s

3    requirements.  *Id.* at 670.  Plaintiffs here make almost identical allegations: "[The] interests of

4    plaintiffs and their respective members have been, *are being*, and, unless the relief prayed for

5    herein is granted, *will continue to be* adversely affected and irreparably injured by the defendants'

6    failure to comply" with Section 9.  4SC ¶46 (emphasis added); *see also id.* ¶¶23, 29, 45, 76-77,

7    134.

8           In sum, Defendants fail to identify any basis on which the Court could conclude that it

9    does not have subject matter jurisdiction over Plaintiffs' Sixth Claim.

10          **C.     Plaintiffs adequately allege that Reclamation had no take authority for
                    causing the near-total mortality of two generations of listed Chinook**

11

12          Plaintiffs adequately allege that Reclamation did not have authority to take nearly the

13   entire generation of winter-run Chinook and spring-run Chinook in the Sacramento River in 2014

14   and 2015.  *See* 4SC ¶¶23, 112, 158, 160-63.  Section 7 allows a consulting agency to issue an

15   incidental take statement ("ITS") if the agency concludes, after consultation, that an action will

16   not jeopardize a species but may nonetheless cause incidental take, or can be carried out pursuant

17   to a RPA without causing jeopardy.  16 U.S.C. §1536(b)(4)(A)-(B); *Ariz. Cattle Growers' Ass'n*

18   *v. FWS*, 273 F.3d 1229, 1239-40 (9th Cir. 2001).  An ITS exempts federal agencies from liability

19   under Section 9 only for take "caused by Federal agency actions that the [consulting agencies]

20   have found to be consistent with the provisions of Section 7(a)(2)."  *Final Rule, Interagency*

21   *Cooperation—Endangered Species Act of 1973, as Amended; Incidental Take Statements*, 80 Fed.

22   Reg. 26832 (May 11, 2015).  An agency or applicant that fails to comply with the terms of an

23   ITS, or fails to acquire an ITS prior to causing take, is subject to Section 9 liability.  *See Ariz.*

24   *Cattle Growers*, 273 F.3d at 1239 (9th Cir. 2001); *Defenders of Wildlife v. EPA*, 882 F.2d 1294,

25   1301 (8th Cir. 1989).

26          Reclamation's only consultation with NMFS on the SRS contracts, the 2005 Letter of

27   Concurrence, is no longer valid because the sole basis for that consultation was the invalidated

28   2004 NMFS OCAP BiOp.  4SC ¶¶108-109, 150.  Further, as the NMFS OCAP BiOp states, it did

1    not include consultation on the SRS contracts.  4SC ¶111; LoPresti Decl. Ex. A at 35, 729.

2    Because there has been no valid consultation on the SRS contracts, there can be no authority for

3    the take Plaintiffs allege is caused by the SRS contracts.  *See* 4SC ¶¶107-12, 159-63.

4             Federal Defendants' argument that Reclamation did not need take authority specific to the

5    SRS contracts because it had authority under the NMFS OCAP BiOp is baseless.  Fed. Br. 24-25.

6    This argument is merely an extension of the flawed argument that the system-wide OCAP BiOp

7    was an adequate consultation on the SRS contracts.  It was not.  Indeed, the NMFS OCAP BiOp

8    clarifies that it does *not* provide Reclamation with authorization to take listed salmonids to satisfy

9    the terms of the SRS contracts: "In the event that Reclamation determines that delivery of

10   quantities of water to any contractor is nondiscretionary for purposes of the ESA, any incidental

11   take due to delivery of water to that contractor *would not be exempted from the ESA section 9*

12   *take prohibition in this Opinion*."  LoPresti Decl. Ex. A at 729 (emphasis added); *id.* (noting that

13   BiOp consultation "does not address ESA section 7(a)(2) compliance for individual water supply

14   contracts" and that Reclamation "should consult with NMFS separately on . . . issuance of

15   individual water supply contracts"); 4SC ¶111-12.  As the NMFS OCAP BiOp explains, when it

16   was issued, this Court's predecessor had "recently concluded that Reclamation d[id] not have

17   discretion" over the SRS contracts – a ruling later reversed in *Jewell*, 749 F.3d at 785.  LoPresti

18   Decl. Ex. A at 601.  Thus, the NMFS OCAP BiOp's description of the scope of take authority it

19   was providing must be read in this context, and the statement that there was no take authority

20   being granted for "nondiscretionary" deliveries read as reference to the SRS contracts.  This is

21   consistent with the BiOp's explanation that separate Section 7(a)(2) consultations should occur on

22   those contracts.  *Id.* at 729.

23            The purpose of an ITS is to place conditions on an action that has been the subject of a

24   Section 7 consultation when the action may cause an incidental take.  *Ariz. Cattle Growers*, 273

25   F.3d at 1239.  While NMFS placed such conditions on the system-wide OCAP as part of the

26   NMFS OCAP BiOp, it could not and did not do so for the SRS contracts because the contracts

27   have not been the subject of a NMFS consultation.  4SC ¶112, 158-60, 163; LoPresti Decl. Ex.

28   A at 600-01, 673.  Federal Defendants' argument thus fails because regardless of whether

34

Reclamation complied with the ITS for the system-wide OCAP (and Plaintiffs do not concede it did), Reclamation had no authority to commit the take it caused by making deliveries to the SRS Contractors.

## IV.    There Is No Basis for Dismissing Plaintiffs' First, Second, or Third Claim

The SRS and DMC Contractors urge the Court to dismiss Plaintiffs' First through Third Claims for lack of subject matter jurisdiction.  SRS Br. 9-12; DMC Contractors' Op. Br. ("DMC Br.") 3-12. As the DMC Contractors note, this Court's predecessor entered final judgment on the First and Third Claims, DMC Br. 7 (citing Doc. 873), and no appeal was taken.  In opposing Plaintiffs' motion for leave to file the 4SC, the DMC Contractors argued that these allegations should be removed because they involve resolved claims. *See* Doc. 1008 at 10 & n.7.  The Court, however, explained that "[t]o the extent claims have been resolved, the relevant allegations continue to serve as background information regarding the procedural and substantive history of the case." Doc. 1018 at 16 n.5.  These claims are included in the 4SC for informational purposes; there is no basis for dismissing them simply because final judgment has been entered.  Similarly, the DMC Contractors' argument that "the rule of mandate precludes relitigating" the First Claim is inapposite because Plaintiffs make no effort to relitigate the First Claim. *See* DMC Br. 7.

Unlike Plaintiffs' First and Third Claims, Plaintiffs' Second Claim alleging Reclamation's ongoing failure to ensure that the SRS and DMC contracts do not cause jeopardy to the delta smelt has not been resolved and remains at the heart of this litigation.  4SC ¶¶171-76.

### A.    Plaintiffs' Second Claim is not moot

The SRS and DMC Contractors attempt to limit the scope of the Second Claim to Plaintiffs' allegations regarding Reclamation's unlawful reliance upon the 2005 FWS OCAP BiOp. SRS Br. 10-11.  The claim, however, is clearly broader and challenges Reclamation's failure to fulfill its affirmative duty under Section 7(a)(2) of the ESA, 16 U.S.C. §1536(a)(2), to ensure that its "actions," including the execution and implementation of the contracts, "avoid jeopardy" to the delta smelt, and  Reclamation's ongoing "reliance on . . . faulty analysis by FWS." 4SC ¶¶172, 175.  Because Reclamation has failed to fulfill its duty under Section 7(a)(2) to ensure that its actions in executing and implementing the contracts do not cause jeopardy, and

1   the Court can still grant effective relief, Plaintiffs' Second Claim is not moot.

2          The Supreme Court has explained that, "[i]n seeking to have a case dismissed as moot . . .

3   the defendant's burden is a heavy one." *Gwaltney*, 484 U.S. at 66 (internal quotations omitted).

4   "The defendant must demonstrate that it is *absolutely clear* that the allegedly wrongful behavior

5   could not reasonably be expected to recur." *Id.* (internal quotations omitted).  Courts will not

6   dismiss a case as moot if "there can be any effective relief." *Garcia*, 805 F.2d at 1403; *see also*

7   *Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't of Energy*, 232

8   F.3d 1300, 1305 (9th Cir. 2000) (claim not moot because court still "retains broad discretion to

9   fashion equitable remedies").

10         Paragraph 172 of the 4SC, part of Plaintiffs' Second Claim, alleges that Reclamation "has

11  an independent duty to insure that its actions avoid jeopardy.  The Bureau cannot satisfy this duty

12  by relying on what it knows or should know to be an inadequate consultation with the FWS." *Id.*

13  ¶172.  Paragraph 175, also in the Second Claim, alleges that:

14         [Reclamation] has failed and is failing to comply with ESA § 7(a)(2), 16 U.S.C.
           § 1536(a)(2), by executing and implementing the long-term water supply renewal
15         contracts described above, in reliance on what it knew or should have known to be
           faulty analysis by the FWS.  The execution and continued performance of these
16         renewal contracts has short-term and long-term adverse impacts on the threatened
           delta smelt that jeopardize the species' continued existence and adversely modify its
17         critical habitat.

18         First, contrary to the SRS and DMC Contractors' argument, DMC Br. 9-10, SRS Br. 10,

19  the allegations in Paragraph 175 are not limited to consultations superseded during the course of

20  this litigation.  The Second Claim "re-allege[s], as if fully set forth herein," the allegations of the

21  "preceding paragraphs," 4SC ¶171, which explain Reclamation's repeated, ongoing failure to

22  consult and to ensure that the contracts do not jeopardize the delta smelt or adversely impact its

23  critical habitat, including Reclamation's conduct in limiting and relying upon the obviously

24  flawed 2015 LOC from FWS.  *Id.* ¶¶2-17, 47-63, 78-106, 114-46.[15]  For example, the 4SC alleges

25  that Reclamation limited the scope of its 2015 reinitiated consultation with FWS by "requesting

26

27  ─────────────────────

28  [15] Rule 10(c) permits a complaint to incorporate prior allegations by reference, a practice that
    encourages concise pleadings. *See* Charles A. Wright, *et al.*, *Adoption by Reference Permitted*,
    5A Fed. Prac. & Proc. Civ. §1326 (3d ed.).

1    only that FWS concur with [Reclamation's] assessment that the effects of the contracts were

2    analyzed in the 2008 FWS OCAP BiOp," *id.* ¶15, even though the Ninth Circuit had ruled that the

3    2008 FWS OCAP BiOp "merely assesses the general effects of the [system-wide OCAP]" and

4    did not address Reclamation's "decision to renew the specific contracts" at issue. *Jewell*, 749

5    F.3d at 782; 4SC ¶133. The 4SC further alleges that Reclamation undermined its 2015 FWS

6    consultation by representing to FWS "that [Reclamation] lacked authority to change the terms in

7    the SRS contracts for the benefit of the delta smelt," despite the Ninth Circuit's directly contrary

8    ruling. 4SC ¶¶15-16, 103-05; *see Jewell*, 749 F.3d at 785. Given these allegations, the

9    Contractors cannot legitimately complain that there was inadequate notice of Plaintiffs' claim that

10    Reclamation has continuously failed to carry out its affirmative duty to ensure that the SRS and

11    DMC contracts do not jeopardize the delta smelt, or that the 2015 consultation was flawed and, as

12    a result, Reclamation "has failed and is failing to comply" with its obligation to engage in a valid

13    Section 7 consultation on the contracts' effects delta smelt and its critical habitat. 4SC ¶175.

14        Even reading the Second Claim (incorrectly) in isolation from all of the preceding,

15    incorporated paragraphs regarding the inadequacy of the 2015 consultation, nothing in the claim

16    limits Plaintiffs' challenge to Reclamation's earlier failures to engage in a valid Section 7

17    consultation, while precluding a challenge to recent failures. Certainly nothing in the Second

18    Claim asserts, as the DMC Contractors suggest, that it is constrained to Reclamation's reliance on

19    the "now superseded 2005 OCAP BiOp." DMC Br. 10. Rather, the claim challenges

20    Reclamation's unlawful reliance on "faulty analysis by FWS," and states that Reclamation "has

21    failed *and is failing* to comply" with Section 7(a)(2) of the ESA. 4SC ¶175 (emphasis added).

22    Plaintiffs' Second Claim thus alleges an ongoing violation based on a continuing failure to

23    comply with Section 7. The Contractors fail to demonstrate that relief is unavailable for this

24    violation, much less made it "absolutely clear." *See Gwaltney*, 484 U.S. at 66.

25        As *Jewell* explained, the remedies available to Plaintiffs include "an injunction requiring

26    reconsultation with the FWS" on the contracts and "renegotiation of the challenged contracts

27    based on the FWS' assessment." 749 F.3d at 782. That relief "remains available" because

28    Reclamation still has not completed a valid consultation on the contracts themselves. *See id*; *see*

1  *also* 4SC ¶¶13-17, 100-06, 132-43 (Reclamation improperly limited 2015 consultation and did

2  not seek consultation on contracts themselves).  Given the Court's "broad discretion to fashion

3  equitable remedies," there can be no question that "effective relief" remains available on

4  Plaintiffs' Second Claim.  *Garcia*, 805 F.2d at 1403; *Tinoqui-Chalola*, 232 F.3d at 1305.

5        **B.**    **Plaintiffs' 60-Day notice was adequate**

6       Plaintiffs satisfied the requirement under the ESA citizen suit provision that they provide

7  60 days' notice of their Second Claim against Reclamation.  *See* 16 U.S.C. §1540(g)(2)(B)(i).  On

8  February 7, 2008, more than 60 days prior to filing the Third Supplemental Complaint on April 8,

9  2008 (Doc. 575), Plaintiffs sent a 60-day notice to the Secretary of the Interior.  4SC, Ex. 1.  The

10  letter notified the Secretary that Reclamation executed and implemented the SRS and DMC

11  contracts without first completing a valid consultation and that Reclamation was failing to ensure

12  that the contracts do not jeopardize delta smelt or adversely impact critical habitat.  *Id.* at 6-10.

13  The letter includes a section devoted to Reclamation's ongoing violation of Section 7(a)(2):

14      The Bureau has continued to implement the unlawfully-executed long-term contracts
   and has failed to re-open and re-examine them to ensure compliance with ESA section
15      7(a)(2).  The Bureau has taken this action in spite of the continuing and alarming
   decline in the status and condition of the Delta smelt and worsening habitat conditions,
16      information of which the Bureau is fully aware.  The Bureau's continuing performance
   of the contracts therefore *constitutes an ongoing violation of the ESA* for this reason as
17      well.

18  *Id.* at 11 (emphasis added).

19

20       Plaintiffs' February 7, 2008 letter provided adequate notice of Plaintiffs' intent to sue

21  Reclamation for failing to ensure that the contracts do not jeopardize delta smelt or adversely

22  impact the species' critical habitat and for relying on obviously flawed analysis.  Further, the

23  letter provides clear notice that Reclamation is committing an ongoing violation of the ESA by

24  implementing the contracts without a valid Section 7 consultation.  Reclamation's present

25  implementation of the contracts is part of that ongoing violation.  Similarly, Reclamation's

26  conduct in limiting the scope of FWS's 2015 consultation and improperly relying upon that

27  consultation is part of the ongoing violation.  Thus, Plaintiffs' claim continues to fall within the

28  scope of the February 7, 2008 letter.

1      The Ninth Circuit has explained that the test for an ESA notice is whether it "afford[s] the

2   opportunity to rectify the asserted ESA violations." *Marbled Murrelet*, 83 F.3d at 1073.

3   Plaintiffs' February 7, 2008 letter certainly afforded Reclamation an adequate opportunity to

4   rectify its ongoing violation. *See id.* Moreover, recent events demonstrate that Reclamation has

5   had additional opportunities to take corrective measures. For example, on October 20, 2015,

6   after Reclamation sent a request for reinitiation to FWS claiming that it lacked discretion to

7   make any species-protective changes to the SRS contracts, NRDC notified FWS that

8   Reclamation's assertions regarding discretion directly contradicted the ruling in *Jewell*, 749 F.3d

9   776. 4SC ¶¶104; Doc. 1001-9 (Ex. 4 to Decl. of K. Poole ISO Motion for Leave to File 4SC

10  ("Poole Decl.")). On December 11, 2015, Reclamation sent FWS a letter responding to NRDC's

11  letter. 4SC ¶105; Doc. 1002-3 (Poole Decl. Ex. 8). Reclamation did not change its position

12  regarding discretion. *Id.* at 5-7. Moreover, Reclamation clarified that it was not seeking

13  reinitiation of consultation on the status of the delta smelt but only sought FWS's "concurrence

14  that the potential effects of the renewed SRS contracts and DMC contracts are adequately

15  covered in the analysis of the [2008 FWS OCAP BiOp]," *id.* at 2, even though the *Jewell* court

16  ruled that the 2008 FWS OCAP BiOp was not a consultation on the contracts. *See* 749 F.3d at

17  782. Reclamation's correspondence with FWS in response to NRDC's letter illustrates that

18  Reclamation remained on notice of its ongoing failure to properly consult on the contracts and

19  protect the delta smelt and had sufficient "opportunit[ies] to rectify" its violation. *See Marbled

20  Murrelet*, 83 F.3d at 1073.

21      This case presents a situation similar to that in *Water Keeper Alliance v. U.S. Dep't of

22  Defense*, 271 F.3d 21 (1st Cir. 2001). There, plaintiffs sent a 60-day notice of their intent to sue

23  the Navy for conducting operations at Vieques Island in reliance on biological assessments and

24  biological opinions from the early 1980s, in spite of new scientific information that plaintiffs

25  alleged required the Navy to reinitiate consultation. *Water Keeper Alliance v. U.S. Dep't of

26  Defense*, 152 F.Supp.2d 163, 172-74 (D. P.R. 2001). After plaintiffs sent the notice, the Navy

27  consulted with FWS regarding interim exercises it planned to conduct. *Id.* at 174. Plaintiffs filed

28  suit alleging that the Navy's consultation with FWS regarding the interim exercises was flawed

1    because the Navy did not submit a biological assessment for the consultation.  *Water Keeper*

2    *Alliance*, 271 F.3d at 28.  The Navy argued, and the district court agreed, that plaintiffs' 60-day

3    notice was inadequate because it "did not (indeed could not have, since it predated it) reference

4    the . . . biological opinion[] which was the culmination of the formal consultation for the interim

5    exercises, as the basis for its grievance."  *Id.* at 29.  Reversing, the First Circuit explained that

6    although the letter did not reference the specific consultation plaintiffs challenged, it "d[id] take

7    issue with the fact that the Navy has been conducting military activities on Vieques for some

8    years without the benefit of a biological assessment incorporating new scientific evidence."  *Id.* at

9    30.  The court reasoned that, "to say that the Navy was not on notice that Water Keeper would

10   object to the failure to prepare a biological assessment for its interim activities, when the Notice

11   makes it clear that Water Keeper intended to challenge an ongoing delinquency in the preparation

12   of a biological assessment, would be setting the bar for adequacy of notice too high."  *Id.* at 30.

13          Defendants' argument that Plaintiffs were required to send a new notice to Reclamation

14   specifically referencing FWS's 2015 consultation fails for the same reason that defendants'

15   argument failed in *Water Keeper Alliance*.  Like plaintiffs' letter in that case, Plaintiffs' February

16   7, 2008 letter notified Reclamation that it was implementing the contracts without a lawful

17   consultation and "makes it clear that [Plaintiffs] intended to challenge an ongoing delinquency" to

18   properly consult on the contracts and ensure the contracts do not cause jeopardy.  *See id.*  Thus,

19   there is no basis for concluding that Reclamation was not on notice that Plaintiffs would

20   challenge Reclamation's ongoing violation of the ESA, including its most recent conduct in

21   limiting the scope of the 2015 consultation with FWS and unreasonably relying upon the flawed

22   analysis produced by that consultation.

**CONCLUSION**

23

24          For the foregoing reasons, the Court should deny Defendants' motions to dismiss.

25

26                                                    Respectfully submitted,

27   Dated:  July 12, 2016                            */s/ Barbara Jane Chisholm*

28

1          Barbara Jane Chisholm

2
           KATHERINE POOLE (SBN 195010)
3          DOUGLAS ANDREW OBEGI (SBN 246127)
           NATURAL RESOURCES DEFENSE COUNCIL
4          111 Sutter Street, 21st Floor
           San Francisco, CA 94104
5          Telephone:  (415) 875-6100
           Facsimile:  (415) 875-6161
6
           *Attorneys for Plaintiff NRDC*
7

8          HAMILTON CANDEE (SBN 111376)
           BARBARA JANE CHISHOLM (SBN 224656)
9          TONY LOPRESTI (SBN 289269)
           ALTSHULER BERZON LLP
10         177 Post St., Suite 300
           San Francisco, CA 94108
11         Telephone:  (415) 421-7151
           Facsimile:   (415) 362-8064
12
           *Attorneys for Plaintiff NRDC*
13

14         TRENT W. ORR (SBN 77656)
           EARTHJUSTICE
15         50 California St. Suite 500
           San Francisco, CA 94111
16         Telephone:  (415) 217-2000
           Facsimile:  (415) 217-2040
17
           *Attorneys for Plaintiffs*
18

19

20

21

22

23

24

25

26

27

28

PLS.' OPP. TO DEFS.' MOTIONS TO DISMISS
CASE NO.  1:05-CV-01207 LJO-EPG

1

**PROOF OF SERVICE**

2

CASE:        *NRDC v. Jewell, et al.*

3

CASE NO:     U.S. Dist. Ct., E.D. Cal., Case No. 1:05-cv-01207 LJO-EPG

4

       I am employed in the City and County of San Francisco, California.  I am over the age of eighteen years and not a party to the within action; my business address is 177 Post Street, Suite

5

300, San Francisco, California 94108.  I hereby certify that on July 12, 2016, I electronically filed the following with the Clerk of the Court for the United States District Court for the Eastern

6

District by using the CM/ECF system:

7

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST, SECOND, THIRD, FIFTH, AND SIXTH CLAIMS FOR**

8

**RELIEF IN THE FOURTH SUPPLEMENTAL COMPLAINT**

9

       All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

10

       I declare under penalty of perjury under the laws of the State of California that the

11

foregoing is true and correct.  Executed this July 12, 2016, at San Francisco, California.

12

                        /s/ *Barbara Jane Chisholm*

13

                       Barbara Jane Chisholm

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28