JOHN C. CRUDEN, Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
BRADLEY H. OLIPHANT, Senior Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
999 18th St., South Terrace, Ste. 370
Denver, CO 80202
(303) 844-1381 (tel)
(303) 844-1350 (fax)

Attorneys for Federal Defendants

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>S.M.R. JEWELL, U.S. Department of the Interior, *et al.*,<br><br>Defendants. | Case No. 1:05-cv-01207 LJO-EPG<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIFTH AND SIXTH CLAIMS**<br><br>Judge: Lawrence J. O'Neill<br>Hearing Date: TBD<br>Time: TBD<br>Courtroom: 4 |
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, *et al.*,<br><br>Defendants-Intervenors. | |
| ANDERSON-COTTONWOOD IRRIGATION DISTRICT, *et al.*,<br><br>Joined Parties. | |

**INTRODUCTION**

In resolving this motion, the Court need address four straightforward issues—all which support dismissing the Fifth and Sixth Claims. First, under the Endangered Species Act ("ESA"), there is no duty to reinitiate consultation on a completed action unless the agency retains continuing discretion to amend its action at any time to address the needs of listed species. Here, the Bureau of Reclamation ("Reclamation") executed the Sacramento River Settlement ("SRS") Contracts once, and retained no power to unilaterally amend them. Plaintiffs thus cannot state a claim against Reclamation for failure to reinitiate consultation on the SRS Contracts.

Second, the ESA only required Reclamation to consult in a manner necessary to "insure" that operational activities carried out under the SRS Contracts were not likely to jeopardize the continued existence of listed salmon. Reclamation did so by consulting with the National Marine Fisheries Service ("NMFS") on the coordinated long-term operations of the State Water Project ("SWP") and federal Central Valley Project ("CVP") (the "OCAP consultation"). The agencies expressly considered Reclamation's "administration" of the SRS Contracts in that consultation. Plaintiffs defended the OCAP consultation, do not contend that reinitiation is required there, and the Ninth Circuit upheld it as satisfying Reclamation's ESA obligations. Thus, Plaintiffs cannot state a claim here for failure to reinitiate consultation on the SRS Contracts, which were the subject of a separate consultation, based on Reclamation's administration of the SRS Contracts, which the agencies addressed in the OCAP consultation.

Third, under the ESA, an agency cannot be liable for "<u>any</u> taking" where it consulted on its proposed action and is operating consistent with the terms and conditions of an incidental take statement ("ITS"). Here, Reclamation consulted with NMFS on its operation of the CVP, and NMFS issued an ITS in 2009 that covered "<u>all activities</u> related to the long-term operations of the CVP and SWP," including Reclamation's "administration of water contracts." Plaintiffs do not allege Reclamation is violating any term and condition of that ITS. They therefore cannot state a claim against Reclamation for "unauthorized take."

Fourth, causation under ESA section 9 requires both proximate and actual causation. The Supreme Court has held that an agency cannot be the legally relevant, or proximate, cause of an

effect that it has no ability to prevent. Here, Plaintiffs assert that "take" of salmon in 2014 and 2015 resulted from water releases that they allege Reclamation was required to make. Plaintiffs thus cannot state a section 9 claim against Reclamation, because the agency cannot be the legally relevant cause of alleged take that it had no legal ability to prevent.

## ARGUMENT

**I.     The Court should dismiss Plaintiffs' Fifth Claim for relief.**

Reclamation consulted with NMFS under ESA section 7 when it affirmatively executed the SRS Contracts in 2004 and 2005. Plaintiffs' passing footnote notwithstanding, Doc. 1039 at 9, their Fifth Claim is not about that original consultation,[1] but the alleged duty to reinitiate consultation. 4SC ¶ 108; Doc. 1018 at 7. Thus, the issue is whether Plaintiffs can credibly allege that Reclamation, after lawfully executing the SRS Contracts, retained continuing discretion to "amend them at any time" to address the needs of listed species. *EPIC v. Simpson Timber Co.*, 255 F.3d 1073, 1082 (9th Cir. 2001). As we showed, Plaintiffs cannot. Doc. 1032-1 at 8-10.

**A.     Plaintiffs' arguments about ongoing involvement or control are unavailing.**

Plaintiffs' assertion that the Ninth Circuit "ruled that Reclamation has such discretion" in *NRDC v. Jewell*, 749 F.3d 776 (9th Cir. 2014), Doc. 1039 at 8, misreads that holding. In *Jewell*, the panel considered the narrow question before it: whether Article 9(a) of the original SRS Contracts "strip[ped] the Bureau of all discretion" to benefit delta smelt and its critical habitat. *Jewell*, 749 F.3d at 785; *see id.* at 784. The panel found that because that provision did not bar Reclamation from offering different terms during negotiations that could possibly benefit smelt, section 7(a)(2) discretion existed. *NRDC v. Jewell*, 749 F.3d 776, 785 (9th Cir. 2014).[2]

The present question, however, is whether Reclamation, after executing the SRS Contracts, had the continuing power to unilaterally amend the contracts. *EPIC*, 255 F.3d at 1082As we showed, it did not. Doc. 1032-1 at 8-10. Plaintiffs' suggestion that *Jewell* is "law of the case," on the issue of Reclamation's discretion, Doc. 1039 at 8, is of no consequence to this

---

[1] Plaintiffs did not challenge the initial ESA consultation between Reclamation and NMFS in *PCFFA v. Gutierrez*, 606 F. Supp. 2d 1195 (E.D. Cal. 2008), and bring no such claim here.

[2] This holding is of no import here, however, because Reclamation consulted with NMFS prior to executing the SRS Contracts. 4SC ¶ 108; Doc. 1018 at 7.

FED. DEFS.' REPLY ISO MOTION TO DISMISS                                                                 2

showing. While *Jewell* related to the narrow question of the interpretation of Article 9(a), it explicitly "express[ed] no view" as to whether other legal obligations, including Federal Reclamation law and state water law, eliminated Reclamation's discretion. *Jewell*, 749 F.3d at 785 n. 1. As this Court recognized, however, *PCFFA v. Gutierrez*, which "[e]ncompassed Plaintiffs' salmon-related claims," Doc. 1018 at 19, held that Reclamation had a "mandatory (*i.e.* non-discretionary) legal obligation to make releases from Shasta Reservoir for delivery to the [SRS] Contractors" under Federal law and state law. *See* Doc. 1018 at 9; *quoting PCFFA*, 606 F. Supp. 2d at 1201; *see also PCFFA*, 606 F. Supp. 2d at 1226. Plaintiffs never appealed or challenged that holding, and *Jewell*, which "express[ed] no view" on these legal obligations, 749 F.3d at 785 n. 1, does not alter its applicability. Thus, while Plaintiffs ignore *PCFFA*'s holding, under their reasoning, this undisturbed conclusion of law should not be re-litigated. *See Robi v. Five Platter, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) ("[t]he doctrine of issue preclusion prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding").

Plaintiffs also insist that they adequately alleged Reclamation maintained discretionary involvement over contract "implementation." Doc. 1039 at 10. This does not withstand scrutiny. The first six their allegations (those at 4SC ¶¶ 58-59, 73, 104, 136) do not even involve salmon, and thus do not allege that Reclamation retained discretion to implement measures that inure to the benefit of the relevant "listed species" (salmon). *EPIC*, 255 F.3d at 1080. Nor do any of their allegations assert that Reclamation had the power to amend the terms of SRS Contracts "to implement measures that inure to the benefit" of salmonids. *Id*. Plaintiffs' allegations also confuse the purpose of Reclamation's contract-focused consultation on the execution of the long-term contract renewals with its OCAP consultation. There, Reclamation lawfully consulted with NMFS on "all activities" related to the long-term operations of the CVP and SWP, including Reclamation's "administration of water contracts," including delivery and shortage of water under the "terms of individual contracts":

> This ITS is applicable to <u>all activities</u> related to the long-term operations of the CVP and SWP … including … <u>administration of water contracts</u> …. The volume

> of water delivered may be reduced from full contract amounts, <u>consistent with the terms of individual contracts</u>.

Doc. 1031-5, Ex. A at 728-729. Accordingly, Reclamation's annual contract implementation, along with its myriad other CVP operations, performed in compliance with the 2009 NMFS OCAP BiOp, satisfied Reclamation's legal obligations under section 7(a)(2) to winter-run and spring-run Chinook as a matter of law. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 1009-10 (9th Cir. 2014) (dismissing ESA claim against Reclamation).

Plaintiffs' suggestion that the letters attached to Ms. Wolder's declaration "only confirm" that Reclamation retained discretion to administer the SRS contracts, Doc. 1039 at 10, n.5, is also incorrect. The referenced letters do not show that Reclamation had discretion to short Base Supply in 2014 or 2015 for "the benefit of the listed species." *EPIC*, 255 F.3d at 1080. In fact, no such discretion exists. *See NRDC v. Salazar*, Case No. 09-17661, Dkt. Entry 49-1 (Response Brief of the Federal Defendants) (Dec. 10, 2010) at 53-58; *see also PCFFA*, 606 F. Supp. 2d at 1201, 1226. In truth, the letters show that, because of the continued "drought and extreme hydrology" in water years 2014 and 2015, Reclamation struggled to physically deliver enough water to meet contractual demands, and *asked* the SRS contractors to agree to reschedule Base Supply water in April and May of 2014 and 2015. *See* Doc. 1032-2 ¶ 6 (Attachs. 1-5).[3] Notably, Reclamation did not (and could not) unilaterally mandate that rescheduling. Doc. 1032-1 at 17.

Nor can Plaintiffs overcome the bedrock fact that NMFS and Reclamation "previously considered," the effects of the drought measures taken during 2014 and 2015, *see* 50 C.F.R. § 402.16(b), including the effects of releases to the SRS contractors during April and May. Doc. 1032-1 at 17. The fact that the agencies addressed any new information in the context of the OCAP consultation was reasonable, because that consultation covered all CVP activities, including "administration," or "implementation," of the SRS contracts. The agencies' approach also satisfied the ESA, which only required Reclamation to consult in a manner that ensured that an action was not likely to jeopardize a listed species. 16 U.S.C. § 1536(a)(2). As relevant here,

---

[3] Federal Defendants believe that this issue can be resolved on a motion to dismiss. If the Court considers this issue better addressed through summary judgment, however, Federal Defendants do not object to the parties' request for additional time and briefing.

NMFS concurred that the effects of Reclamation's emergency drought operations were within the effects disclosed in its 2009 NMFS OCAP BiOp. Doc. 1032-1 at 17. Plaintiffs cannot allege a duty to perform a redundant consultation under a different label.

### B. Plaintiffs fail to allege any new information about the effects of the SRS Contracts that was not previously considered.

The plain language of 50 C.F.R. section 402.16(b) requires reinitiation on effects that have "not been previously considered." As we showed, the 2009 NMFS BiOp was the lawful "consider[ation]" of the effects of Reclamation's CVP activities, expressly including "administration" of the SRS contracts. Doc. 1032-1 at 13-15. In other words, in the OCAP consultation, Reclamation and NMFS "previously considered" and addressed the effects of CVP operations related to the SRS Contracts, including during drought conditions. *See* Doc. 1031-8 at 47 (acknowledging that "despite Reclamation's best efforts, severe temperature-related effects cannot be avoided in some years;" explaining that "[t]he RPA includes exception procedures to deal with this reality."); *id.* at 53 ("CALSIM modeling shows that during a severe or extended drought" called for storage "may not be achievable;" discussing effects of extended drought). Consequently, Plaintiffs' allegation that issuance of the 2009 NMFS BiOp could trigger a duty to reinitiate consultation on the SRS Contracts fails. Doc. 1032-1 at 13-15.

Plaintiffs' opposition does not show otherwise. They emphasize one sentence from the 560-page 2009 NMFS OCAP BiOp that states: "this consultation does not address ESA section 7(a)(2) compliance for individual water supply contracts." Doc. 1039 at 12. But Plaintiffs overstate the meaning of this single sentence. Plaintiffs ignore, for example, that Reclamation's 2008 BA and the 2009 NMFS OCAP BiOp indisputably analyzed the impacts of full water deliveries in the SRS Contracts. Doc. 1032-1 at 14. Plaintiffs ignore NMFS's express recognition that its incidental take statement covered "<u>all activities</u> related to the long-term operations of the CVP and SWP," including Reclamation's "administration of water contracts." Doc. 1031-5, Ex. A at 728. Nor do Plaintiffs acknowledge that NMFS considered that the "volume of water delivered may be reduced from full contract amounts, consistent with the terms of individual contracts." *Id*. at 729. These excerpts show that NMFS considered the administration of the SRS

Contracts, including the terms of individual contracts, in its OCAP consultation. Plaintiffs' suggestion to the contrary is without merit.

Plaintiffs next collaterally attack the 2009 NMFS OCAP BiOp as having not adequately analyzed the effects of the SRS Contracts, because the contract term exceeds the BiOp term, which ends in 2030. Doc. 1039 at 13. The OCAP consultation is not at issue here. Moreover, Plaintiffs defended that consultation, and the Ninth Circuit upheld it as legally valid. Nonetheless, the term of the 2009 NMFS OCAP BiOp is not new information about the effects of executing the SRS Contracts that was not previously considered. It shows instead that NMFS considered the effects of administering the contracts, including water deliveries, until 2030.

Moreover, as we showed, Plaintiffs' claim is time barred. Indeed, the duty to reinitiate consultation arises upon the occurrence of an event specifically enumerated in 50 C.F.R. section 402.16. Here, Plaintiffs allege that that duty arose with the issuance of the 2009 NMFS OCAP BiOp. Because Plaintiffs' claim accrued more than six years before the 4SC, it is time barred. Plaintiffs respond that under the "continuing violations doctrine," a claim alleging an agency's failure to act can never be barred by the statute of limitations. Doc. 1039 at 18. As they concede, however, the Ninth Circuit has never extended this narrow doctrine to ESA or APA claims. *Id*. It has instead made clear that the continuing violations doctrine is an "exception, rather than the rule," *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir.2003), and recently reiterated that it "almost certainly does not apply to APA claims." *United States v. Estate of Hage*, 810 F.3d 712, 721 (9th Cir. 2016). Indeed, in a recent case concerning the CVP, a court in this district rejected plaintiffs' attempt to extend the doctrine to save a stale claim reviewed under the APA:

> Plaintiffs suggest that the § 2401(a) six-year limitations period should not bar their claims because … the violations alleged are continuing …. As a general rule in the Ninth Circuit, § 2401(a)'s limitations period is not jurisdictional and is subject to traditional exceptions …. The continuing violation doctrine has been [*sic*] extended the § 2401(a) statute of limitations in federal employment and civil-rights litigation. However, the Ninth Circuit recently refused to extend the continuing violation doctrine to APA claims.

*San Luis Unit Food Producers v. United States*, 772 F. Supp. 2d 1210, 1228 (E.D. Cal. 2011), aff'd, 709 F.3d 798 (9th Cir. 2013) (internal citations omitted); *Hall v. Reg'l Transp. Comm'n of*

*S. Nevada,* 362 Fed. Appx. 694, 695 (9th Cir. 2010) ("the 'continuing violations' doctrine 'is not applicable in the context of an APA claim for judicial review'") (citations omitted).

Plaintiffs argue the Court should nonetheless expand the doctrine here, because they challenge an alleged failure to act. Doc. 1039 at 18. Their request is without merit. It rests largely on a 15-year-old Eastern District of Tennessee case, *South Appalachian Biodiversity Project v. U.S. Fish & Wildlife Service*, 181 F. Supp. 2d 883 (E.D. Tenn. 2001). Doc. 1039 at 18-19. Yet Plaintiffs ignore recent district court case law from this Circuit, which considered and rejected *South Appalachian Biodiversity*, and the sweeping contention that the statute of limitations cannot bar a claim alleging an agency's failure to act. In *Wild Fish Conservancy v. Salazar*, plaintiffs challenged operation of a fish hatchery, arguing that the agency's alleged failure to apply for a permit was an "ongoing violation" of law that cannot be time-barred. 688 F. Supp. 2d 1225, 1233 (E.D. Wash. 2010). The court rejected the theory that "the defendants' alleged inaction tolled the statute of limitations," *id.* at 1236, explaining:

> In *Center for Biological Diversity v. Hamilton*, 385 F. Supp. 2d 1330 (N.D. Ga. 2005) the court framed the issue as "not whether Congress intended for Defendants to comply with their statutory duty to designate critical habit for endangered species-it clearly did-but whether Congress intended to allow private parties to enforce this duty at any time after it is violated;" and declined to "ignore the ESA's plain text ... and imply a continuing duty."

*Id.* at 1235 (citation omitted). The *Wild Fish Conservancy* Court accepted the Eleventh Circuit's reasoning in its holding affirming that ruling, agreeing that "a challenge to [an agency's] failure to [act] amounted to a complaint about the continuing effects of the agency's failure [to act] by the statutory deadline, a one-time violation of the ESA." *Id.*, citing *Ctr. for Biological Diversity v. Hamilton* 453 F.3d 1331, 1335 (11th Cir. 2006); *see Heartwood v. Norton*, No. 1:05-CV-313, 2005 WL 2656733, at *4 (S.D. Ohio Oct. 18, 2005) (continuing violations doctrine applies only with a continuing series of illegal acts, not the continued ill effects of a single violation). Notably, the *Wild Fish Conservancy* Court did not rely on the Eleventh Circuit's reading of section 2401 as jurisdictional. It instead accepted the Circuit's reasoning because it was consistent with the precept that "waivers of sovereign immunity must be interpreted narrowly," 688 F. Supp. 2d at 1235, a principle of universal applicability. *See Ruckelshaus v. Sierra Club*,

463 U.S. 680, 685-86 (1983). The same reasoning bars Plaintiffs' claim here, as they purport to challenge a one-time alleged ESA violation that accrued outside the limitations period; namely, Reclamation's alleged failure to perform a statutory duty that arose in 2009.

Plaintiffs' argument that its stale claim can be "linked with an act within that is the limitations period," Doc. 1039 at 19, falls flat. The relevant "act" must be a viable alleged violation of the law that occurred within the limitations period, not simply the continued "implementation of the SRS contracts." Plaintiffs cannot allege any such act within the limitations period. As we showed, the 2011 amendments have nothing to do with the Sacramento River Division of the CVP or Shasta Operations. Doc. 1032-1 at 16. Plaintiffs appear to concede as much, as the fail to respond to that showing. Nor do they show that they can adequately allege that the purported 2014 and 2015 amendments to the 2009 NMFS OCAP BiOp required reinitiating on the SRS Contracts because, at bottom, Reclamation indisputably consulted on contract administration, including associated water deliveries, in the OCAP consultation. SRS *See* Doc. 1031-5, Ex. A at 728 (considering "administration" of contracts, the delivery of water and shortages "consistent with the terms of individual contract terms"). That was the forum where the agencies ensured Reclamation's CVP operations avoided jeopardy to listed salmon, and where they subsequently confirmed that no additional consultation was needed. Doc. 1032-1 at 13-15, 17-18. The ESA does not require a redundant consultation here.

Nor can Plaintiffs adequately allege that the loss of temperature control and resulting mortality triggered reinitiation of consultation. Doc. 1039 at 15. Plaintiffs argue that the loss of temperature could have been avoided if Reclamation had reduced Keswick releases in April and May of 2015. *Id.* But that assumes that Reclamation could reduce Base Supply amounts for ESA purposes. The 4SC alleges no such discretion and Reclamation lacks discretion to do so. *Supra* at 4. Plaintiffs' suggestion that *NRDC v. Jewell*, shows that Reclamation must reinitiate with NMFS, Doc. 1039 at 16, is unavailing as well. First, *Jewell* concerned a different species, a different consulting agency, and a different claim for relief. Specifically, in *Jewell*, Plaintiffs challenged the adequacy of the ESA consultation that preceded execution of the contracts. Here, in contrast, Plaintiffs never challenged Reclamation's original consultation with NMFS. Instead,

they argue that reinitiation of that consultation was required. Different standards govern the requirement to reinitiate consultation, and *Jewell* had no occasion to address those standards. Moreover, as noted above, NMFS's 2009 ITS shows that NMFS considered the terms of individual water supply contracts, and Reclamation appropriately consulted with NMFS on drought operations in 2014 and 2015 in the context of that consultation.

**II.     The Court should dismiss Plaintiffs' Sixth Claim for relief.**

In an effort to save their Sixth Claim, Plaintiffs miscast our position as stating: "federal agencies are exempt from Section 9's substantive prohibition against taking listed species." Doc. 1039 at 27. That is a misrepresentation. We merely showed that Plaintiffs' claim must be dismissed because NMFS's 2009 ITS covered "all activities related to the long-term operations of the CVP and SWP," including Reclamation's "administration of water contracts." Doc. 1031-5, Ex. A at 728. Therefore, so long as Reclamation is complying with the terms and conditions of that ITS, *any taking* is authorized. Doc. 1032-1 at 18-19. Plaintiffs' opposition recognizes that an agency may be subject to section 9 liability if it "fails to comply with the terms [and conditions] of an ITS," Doc. 1039 at 33, but they again fail to allege Reclamation's operation of the CVP in 2014 and 2015 violated the terms and conditions of that ITS. Their claim thus fails.

Moreover, as we showed, even if Plaintiffs could artificially excise one CVP operation—the allegedly non-discretionary delivery of Base Supply water—for examination here, their claim still fails, because it alleges that the government is liable for an effect that it does not legally cause and has no power to stop. Doc. 1032-1 at 19-21. In response, Plaintiffs make clear that is what they are suggesting. But their theory is groundless. For example, Plaintiffs' opposition agrees that "causation for purposes of a Section 9 claim includes proximate … causation." Doc. 1039 at 24. As the Supreme Court has recognized, however, an agency "cannot be considered a legally relevant 'cause' of the effect," *i.e.*, its proximate cause, where the agency "has no ability to prevent" the effect. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767-70 (2004). Critically, the 4SC unequivocally alleges that Reclamation's 2014 and 2015 deliveries were nondiscretionary. 4SC ¶¶ 160, 189-193. Assuming Plaintiffs' allegations are true—that the SRS contractors retain the independent, legal authority to receive Base Supply water—Reclamation

FED. DEFS.' REPLY ISO MOTION TO DISMISS                                                                    9

"cannot" be the "legally relevant," or proximate, cause of take arising from its nondiscretionary legal duty. *Pub. Citizen*, 541 U.S. at 767-70. *See Cold Mountain v. Garber*, 375 F.3d 884, 890 (9th Cir. 2004); *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir. 1996); *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 696 n.9 & 700 n.13 (1995).

Plaintiffs also suggest that an agency is subject to liability if it "fails to acquire an ITS prior to causing take." Doc. 1039 at 33. Perhaps, but they ignore that an ITS is issued under section 7(b)(4), and is available only for an action where there is "<u>discretionary</u> Federal involvement or control." 50 C.F.R. § 402.03 (emphasis added). No similar mechanism exists to exempt "take" that incidentally occurs from fulfilling a non-discretionary legal obligation. Likewise, while private actors can apply for an incidental take permit under section 10, no such permitting option exists for federal action. Accepting Plaintiffs' view, in other words, would leave agencies no way to escape liability for complying with their legal obligations.

That is untenable. Here, Reclamation would at once be legally required to comply with a State Water Quality Control Board Order, for instance, yet face ESA liability for *any* associated incidental take that resulted. That scenario would "produce catastrophic results," as Reclamation could "be compelled to completely stop Project operations" if it "incidentally take[s] <u>one</u> of the endangered species …." *PCFFA*, 606 F. Supp. 2d at 1203 (explaining effect of eliminating all authorized incidental take arising from CVP operations) (emphasis added). Even reinitiating consultation would offer no escape from Plaintiffs' sweeping theory. Indeed, Reclamation could never escape liability for any "take" allegedly caused by releases of Base Supply, or any other legal duty, if Reclamation concluded after reinitiated consultation that those releases were legally required. Notably, no court has ever adopted or suggested that the ESA provides inescapable agency liability for complying with nondiscretionary legal obligations. In short, as we showed, Plaintiffs' extreme theory is legally unsound and cannot support a claim for relief.

## CONCLUSION

Federal Defendants respectfully ask the Court to dismiss the Fifth and Sixth Claims.

Dated: July 22, 2016

Respectfully submitted,

JOHN C. CRUDEN, Assistant Attorney General

*/s/ Bradley H. Oliphant*
BRADLEY H. OLIPHANT, Senior Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
999 18th St., South Terrace, Ste. 370
Denver, CO 80202
Tel: (303) 844-1381
Fax: (303) 844-1350

Attorneys for Federal Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2016, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification to the attorneys of record in this case.

*/s/ Bradley H. Oliphant*
BRADLEY H. OLIPHANT
Senior Trial Attorney