SOMACH SIMMONS & DUNN
A Professional Corporation
STUART L. SOMACH, ESQ. (SBN 090959)
ANDREW M. HITCHINGS, ESQ. (SBN 154554)
BRITTANY LEWIS-ROBERTS, ESQ. (SBN 282001)
500 Capitol Mall, Suite 1000
Sacramento, CA  95814
Telephone: (916) 446-7979
Facsimile: (916) 446-8199
Email: Ahitchings@somachlaw.com

Attorneys for Defendant-Intervenor
GLENN-COLUSA IRRIGATION DISTRICT, et al.

[*Additional parties and counsel on signature page*]

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, *et al.*,<br><br>                    Plaintiffs,<br><br>vs.<br><br>SALLY JEWELL, Secretary, U.S. Department of the Interior, *et al.*,<br><br>                    Defendants.<br>SAN LUIS & DELTA MENDOTA WATER AUTHORITY; et al.,<br><br>                    Defendant-Intervenors.<br>ANDERSON-COTTONWOOD IRRIGATION DISTRICT; et al.,<br><br>                    Joined Parties. | Case No. 1:05-CV-01207 LJO-EPG<br><br>**SACRAMENTO RIVER SETTLEMENT CONTRACTORS' REPLY TO PLAINTIFFS' CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS FIRST, SECOND, THIRD, FIFTH, AND SIXTH CLAIMS FOR RELIEF IN THE FOURTH SUPPLEMENTAL COMPLAINT**<br><br>Date:     TBD<br>Time:    TBD<br>Courtroom 4<br>Judge:   Honorable Lawrence J. O'Neill |

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND FRAMEWORK ................................................................... 1

II. THE FIFTH CLAIM FOR RELIEF MUST BE DISMISSED ......................................... 3

    A. The 4SC Does Not Allege Any New Information About the Effects of the SRS Contracts That Has Not Been Previously Considered ....................... 3

    B. The Continuing Violation Doctrine Does Not Apply Because the Obligation to Reinitiate Consultation Is Not an Ongoing Duty, But Rather Arises on the Date of a Qualifying Triggering Event ......................... 5

    C. The Court Should Not Apply the Discrete Violation Theory .............................. 7

III. THE SIXTH CLAIM FAILS AGAINST THE SRS CONTRACTORS ........................... 8

    A. Plaintiffs' Claims Regarding the SRS Contractors Are Conclusory .................... 8

    B. Plaintiffs' Claim Rests on Wholly Past Actions That Are Insufficient to Establish Jurisdiction ....................................................................................... 9

IV. CONCLUSION ............................................................................................................ 10

SOMACH SIMMONS & DUNN
A Professional Corporation

# TABLE OF AUTHORITIES

## Cases

Pages

*AKM LLC v. Sec'y of Labor*,
   675 F.3d 752 (D.C. Cir. 2012) .................................................................................................7

*Alliance for the Wild Rockies v. U.S. Dep't of Agric.*,
   772 F.3d 592 (9th Cir. 2014) ....................................................................................................5

*Aloe Vera of Am., Inc. v. United States*,
   580 F.3d 867 (9th Cir. 2009) ....................................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................8

*Cascadia Wildlands v. Kitzhaber*,
   911 F. Supp. 2d 1075 (D. Or. 2012) .........................................................................................8

*Cedars-Sinai Med. Ctr. v. Shalala*,
   125 F.3d 765 (9th Cir. 1997) ....................................................................................................6

*Cherosky v. Henderson*,
   330 F.3d 1243 (9th Cir. 2003) ..................................................................................................6

*Conservation Cong. v. Finley*,
   No. 11-4752-SC, 2012 U.S. Dist. LEXIS 104377 (N.D. Cal. July 2, 2012),
   *aff'd*, 774 F.3d 611 (9th Cir. 2014) ..........................................................................................5

*Coppola v. Smith*,
   935 F. Supp. 2d 993 (E.D. Cal. 2013) ......................................................................................8

*Ctr. for Biological Diversity v. Hamilton*,
   453 F.3d 1331 (11th Cir. 2006) .........................................................................................5, 6, 7

*Ctr. for Biological Diversity v. Marina Point Dev. Assocs.*,
   434 F. Supp. 2d 789 (C.D. Cal. 2006), *amended by* 566 F.3d 794 ................................10

*Ctr. for Biological Diversity v. Marina Point Dev. Co.*,
   566 F.3d 794 (9th Cir. 2009) ....................................................................................................9

*Defenders of Wildlife v. Martin*,
   454 F. Supp. 2d 1085 (E.D. Wash. 2006) ...............................................................................10

*Envtl. Info. Prot. Ctr. v. Simpson Timber Co.*,
   255 F.3d 1073 (9th Cir. 2001) ..................................................................................................2

*Forest Conservation Council v. Rosboro Lumber Co.*,
   50 F.3d at 783 .....................................................................................................................9, 10

*Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*,
   No. 07-CV-358, 2007 U.S. Dist. LEXIS 85197 (D. Or., Nov. 16, 2007) ................................7

**SOMACH SIMMONS & DUNN**
A Professional Corporation

*Izaak Walton League of Am., Inc. v. Kimbell*,
 558 F.3d 751 (8th Cir. 2009) ........................................................................................... 6

*John R. Sand & Gravel Co. v. United States*,
 552 U.S. 130 (2008) ........................................................................................................ 6

*Kwai Fun Wong v. Beebe*,
 732 F.3d 1030 (9th Cir. 2013),
 *cert. granted sub nom.*, *United States v. Kwai Fun Wong*, 134 S. Ct. 2873 (2014) ........... 6

*Nat'l Parks & Conservation Ass'n v. Tenn. Valley Auth.*,
 502 F.3d 1316 (11th Cir. 2007) ....................................................................................... 7

*Nat'l Parks Conservation Ass'n. v. Tenn. Valley Auth.*,
 480 F.3d 410 (6th Cir. 2007) ........................................................................................... 7

*Nat'l Wildlife Fed'n v. Burlington Northern R.R., Inc.*,
 23 F.3d 1508 (9th Cir. 1994) ........................................................................................... 9

*NRDC v. Jewell*,
 749 F.3d 776 (9th Cir. 2014) ........................................................................................... 2

*NRDC, et al. v. Salazar, et al.*,
 No. 09-17661 (9th Cir., Doc. 75, filed Jan. 14, 2011) ..................................................... 2

*Pacific Rivers Council v. Thomas*,
 30 F.3d 1050 (9th Cir. 1994) ........................................................................................... 2

*Preminger v. Sec'y of Veterans Affairs*,
 517 F.3d 1299 (Fed. Cir. 2008) ....................................................................................... 6

*Protect Our Water v. Flowers*,
 377 F. Supp. 2d 844 (E.D. Cal. 2004) ............................................................................. 4

*Sierra Club v. Marsh*,
 816 F.2d 1376 (9th Cir. 1987) ......................................................................................... 4

*Sierra Club v. Otter Tail Power Co.*,
 615 F.3d 1008 (8th Cir. 2010) ......................................................................................... 7

*Sierra Club v. Union Oil Co.*,
 853 F.2d 667 (9th Cir. 1988) ........................................................................................... 9

*Soriano v. United States*,
 352 U.S. 270 (1957) ........................................................................................................ 6

*U.S. v. Glenn-Colusa Irrigation Dist.*,
 788 F. Supp. 1126 (E.D. Cal. 1992) ................................................................................ 8

*Wild Fish Conservancy v. Salazar*,
 688 F. Supp. 2d 1225 (E.D. Wash. 2010) ................................................................... 6, 7

*Williams v. Owens-Illinois, Inc.*,
 665 F.2d 918 (9th Cir. 1982) ........................................................................................... 7

SOMACH SIMMONS & DUNN
A Professional Corporation

SRSC'S REPLY TO PLTFS' CONSOL. OPP. TO MTNS TO DISMISS 1st, 2nd, 3rd, 5th, & 6th CLAIMS FOR RELIEF IN THE 4th SUPPL COMPLAINT                                                                                                                                -iii-

<u>Statutes</u>

28 U.S.C. section
    2401 ............................................................................................................................. 7
    2401(a) ..................................................................................................................... 6, 7
    2501 ............................................................................................................................. 6

<u>Regulations</u>

50 C.F.R. section
    401.16 ..................................................................................................................... 4, 5
    402.16(b) .................................................................................................................... 3
    402.16(c) .................................................................................................................... 4

**SOMACH SIMMONS & DUNN**
**A Professional Corporation**

The undersigned Sacramento River Settlement (SRS) Contractor parties submit this reply to Plaintiffs Natural Resources Defense Council, et al. (Plaintiffs), Consolidated Opposition to Defendants' Motions to Dismiss.[1]

## I. INTRODUCTION AND FRAMEWORK

In opposition to the Defendants' motions to dismiss, Plaintiffs inflate the scope of the Fifth and Sixth Claims, and expand the universe of information they ask the Court to evaluate as new information beyond the four corners of the Fourth Supplemental Complaint (4SC). Further, Plaintiffs slide back and forth between delta smelt and salmon, contract execution and ongoing performance, and Endangered Species Act (ESA) consultations on specific contract renewals versus consultation on long-term operations of the Central Valley Project (CVP), confusing the relationships between the issues. However, the distinctions are critically important to the legal analysis necessary for resolving the motions to dismiss.

Contract negotiation and execution are very different from contract performance. Leading up to 2005, the SRS Contractors and the Bureau of Reclamation (Reclamation) negotiated and executed renewal contracts, continuing the half century-long settlement between the senior and junior appropriators on the river. In this case during 2008, Plaintiffs supplemented their complaint to specifically challenge the consultation with the U.S. Fish and Wildlife Service (FWS) regarding the execution of those SRS renewal contracts with respect to delta smelt. In this case, there was never any legal challenge to the execution of SRS renewal contracts with respect to salmonids.[2] Plaintiffs have not pled any challenge to the execution of the SRS renewal contracts with respect to salmonids. Rather, Plaintiffs challenge the "implementation" of those contracts. Doc. 1020 ¶¶ 150-53; Doc. 1039 at 13, 29.

In its en banc opinion, the Ninth Circuit only addressed the specific challenge that was before it at the time: whether there was ESA Section 7(a)(2) discretion when Reclamation

---

[1] To avoid duplicative argument, the SRS Contractors join in the arguments submitted in the Delta-Mendota Canal Contractors' Reply to Plaintiffs' Consolidated Opposition regarding the First, Second, and Third Claims for Relief.

[2] *See* Doc. 1009 at 3-5 (explaining the procedural history of the *PCFFA* case); Doc. 1007 at 8-10 (same). Docket citations refer to the ECF pagination, not internal document pagination.

negotiated and executed the SRS contract renewals. The Ninth Circuit found that because Reclamation could suggest different terms to the SRS Contractors (other than quantity and allocation) during the negotiation process that could possibly benefit delta smelt, Section 7(a)(2) discretion exists. *NRDC v. Jewell*, 749 F.3d 776, 785 (9th Cir. 2014). That holding does not stand for the proposition, as Plaintiffs suggest,[3] that after the SRS renewal contracts were executed, there is an ongoing Section 7(a)(2) obligation to consult as the parties continue to perform contractual obligations during the contract term.[4] In fact, another Ninth Circuit case suggests the contrary is true. *See Envtl. Info. Prot. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1082 (9th Cir. 2001) (explaining that the court "did not suggest in *Houston* that once the renewed contracts were executed, the agency had continuing discretion to amend them at any time to address the needs of endangered or threatened species").

The framework for ESA consultations for the CVP is worth noting. Plaintiffs repeatedly argue that because "new information" shows that Reclamation cannot both meet contract demands and provide adequate habitat for winter-run Chinook, Reclamation must reinitiate consultation with the National Marine Fisheries Service (NMFS) on the effects of the contract renewals. Doc. 1039 at 24-25, 43-44. However, Plaintiffs are confusing the purpose of the system-wide consultation, known as "OCAP," and the contract-specific consultation for long-term contract renewals (LTCR). The OCAP consultation is the process for analyzing how the

---

[3] The Ninth Circuit's ruling on Section 7(a)(2) discretion during contract negotiation is undoubtedly law of the case and controls the proceedings before the Court. However, Plaintiffs' interpretation that the Ninth Circuit's holding somehow addressed ongoing "agency action" under *Pacific Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir. 1994), and its progeny, is incorrect and is not law of the case.

[4] The Federal Defendants have raised the argument that with respect to the Fifth Claim, there is no "agency action" under Section 7(a)(2) because Reclamation does not have discretionary involvement or control over the executed SRS Contracts. Doc. 1032-1 at 14-16. While the SRS Contractors agree with that position, the issue has some nuances that would be better left for summary judgment briefing if the Fifth Claim survives the motions to dismiss. For example, the SRS Contractors do not agree with the Federal Defendants' suggestion that there may be a different level of discretion over Project Water under the SRS Contracts. *NRDC, et al. v. Salazar, et al.*, No. 09-17661 (9th Cir., Doc. 75, filed Jan. 14, 2011). Accordingly, if the Fifth Claim survives the motions to dismiss, the parties should be provided an additional opportunity to supplement the record and brief the discretionary involvement or control issue.

SOMACH SIMMONS & DUNN
A Professional Corporation

CVP is operated to meet all competing demands on the system and the effects of operations on protected species. This tradeoff between water supply demands and environmental demands along with specific operational details like coordination with the State Water Project (SWP), Delta exports and outflow, and preservation of the Shasta cold water pool, is exactly the project description upon which the 2009 consultation with NMFS was based.[5] The long-term coordinated operations of the CVP and SWP, as set forth in the project description, constitute the comprehensive agency action which Plaintiffs target in their allegations. The LTCR consultation regarding the effects of diversion of water at specific diversion points and in contractors' service territories is not the context in which Reclamation, FWS, and NMFS analyze the competing demands on the system and the in-river effects of operating the CVP to meet those demands.[6]

These foundational distinctions between the procedural context for delta smelt and salmon claims, between contract execution and contract implementation (i.e., operations), and between the OCAP consultation and LTCR consultations are essential to evaluating the legal arguments submitted in the motions to dismiss.

## II. THE FIFTH CLAIM FOR RELIEF MUST BE DISMISSED

### A. The 4SC Does Not Allege Any New Information About the Effects of the SRS Contracts That Has Not Been Previously Considered

Plaintiffs misconstrue what is required under 50 C.F.R. § 402.16(b). First, Plaintiffs' opposition brief picks apart the information that has been developed since 2009. Plaintiffs go as far as arguing that because the mortality estimate for the worst drought year in decades, 2015, is higher than the mortality estimate for worst-case scenarios in the 2009 NMFS Biological Opinion (BiOp), reinitiation is required. *See* Doc. 1039 at 25. This level of scrutiny ignores Ninth Circuit

---

[5] *See, e.g.*, Doc. 1031-6 (Appendix D to the 2008 OCAP Biological Assessment) (explaining the operational demands and regulatory standards that affect operations and that were modeled for the OCAP consultation).

[6] The structure of the CVP consultations is repeated throughout the consultation documents since 2003, which are included in the administrative records lodged with the Court. FWS 784, 795 (2004 OCAP Biological Assessment); SAR 3204 (2003 Biological Assessment for SRS Contractors; Long-Term Contract Renewal); SAR 3344, 3345 (2005 FWS Letter of Concurrence Regarding Informal Consultation on SRS Contract Renewals).

SOMACH SIMMONS & DUNN
A Professional Corporation

case law that 50 C.F.R. § 402.16 does not require agencies to stop and reinitiate consultation for "[E]very modification of or uncertainty in a complex and lengthy project." *Protect Our Water v. Flowers*, 377 F. Supp. 2d 844, 876 (E.D. Cal. 2004) (quoting *Sierra Club v. Marsh*, 816 F.2d 1376, 1388 (9th Cir. 1987)).  Indeed, courts have previously rejected arguments where specific information or statistics are not included in a biological opinion but the agency is generally aware of and took into account the risk. *See Protect Our Water v. Flowers*; *Conservation Cong. v. Finley*, No. 11-4752-SC, 2012 U.S. Dist. LEXIS 104377 at **27-28 (N.D. Cal. July 2, 2012) (finding the regulation at issue does not require agencies to perform a particular type of analysis"), *aff'd*, 774 F.3d 611 (9th Cir. 2014).

Here, NMFS and Reclamation acknowledged those uncertainties by building "flexible drought provisions . . . into the NMFS BiOp and RPA." Doc. 1031-9 at 109 (April 8, 2014 Letter from Reclamation to NMFS regarding 2014 Drought Operations Plan).  NMFS expressly acknowledged that "[t]he effects analysis in [the 2009 BiOp], and supplemental information provided by Reclamation, make it clear that despite Reclamation's best efforts, *severe temperature-related effects cannot be avoided in some years.*  The RPA includes exception procedures to deal with this reality." Doc. 1031-8 at 47 (2009 Reasonable and Prudent Alternative Revised with 2011 Amendments) (emphasis added).

Further, Plaintiffs misconstrue what is meant by the phrase "previously considered" in the controlling regulation. Section 402.16(b) does not specifically dictate in which context "new information" must be considered by the agencies.  In contrast to 50 C.F.R. § 402.16(c), which requires reinitiation when an action is modified in a manner that causes an effect "that was not considered in the biological opinion," section 402.16(b) simply requires reinitiation when new effects have not been previously considered – without regard for the original consultation.

Nonetheless, all of the new information identified in the 4SC has been "previously" considered by the agencies, during the 2009 consultation and subsequently.[7] The 2009 BiOp considers the effects of the SRS Contracts in a manner that ensures that any new information

---

[7] Notably, Plaintiffs make no effort to argue that the 2011 amendments to the NMFS 2009 BiOp constitute new information that triggers a duty to reinitiate consultation.

revealed in that Opinion was "previously considered" for purposes of section 402.16(b). Even the jeopardy conclusion does not reveal effects of the SRS Contracts that were not previously considered because the potential jeopardy is considered by the extensive RPAs.

Reclamation and NMFS "previously considered" the effects of CVP operations during extreme drought conditions, like those experienced during 2014 and 2015, in the project description for the 2009 BiOp, and provided for the reasonable, alternative actions that Reclamation must take "to compensate for these periods of unavoidably high temperatures." Doc. 1031-8 at 47. In addition, NMFS and Reclamation "previously considered" the effects of the operational measures taken during 2014 and 2015 in the extensive correspondence exchanged during that time. See generally Doc. 1031-9, Doc. 1031-10, Doc. 1031-11, and Doc. 1031-12, which, contrary to Plaintiffs' unfounded assertion that no contract-specific consideration occurred, addressed the effects of operations related to the SRS Contracts.

NMFS's and Reclamation's thorough consideration of the alleged new information identified in the 4SC eliminates any obligation to reinitiate consultation regarding the SRS Contracts.

### B. The Continuing Violation Doctrine Does Not Apply Because the Obligation to Reinitiate Consultation Is Not an Ongoing Duty, But Rather Arises on the Date of a Qualifying Triggering Event

Plaintiffs' statute of limitations analysis ignores that the duty to reinitiate consultation arises only upon the occurrence of one of four specific circumstances enumerated in 50 C.F.R. § 402.16. *Alliance for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 599 (9th Cir. 2014) (agencies "retain ongoing responsibility to reinitiate consultation *as required*") (emphasis added). The court in *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006) (*Hamilton*) reasoned that "a reasonably prudent plaintiff"[8] would know of a violation of section 402.16 at a fixed point in time, and thus the continuing violation doctrine does not apply. *Id.* Section 402.16 "creates not an ongoing duty but a fixed point in time at which the violation for

---

[8] Plaintiffs' excuse for not filing a claim within the limitation period is unavailing. Doc. 1039 at 3, n.8. That Reclamation chose to reinitiate consultation with respect to delta smelt in response to the Ninth Circuit's opinion has no relationship to the alleged obligation to reinitiate in light of the 2009 BiOp.

SOMACH SIMMONS & DUNN
A Professional Corporation

the failure of the Secretary to act arises." *Id*. As in *Hamilton*, the 2009 BiOp was issued on a date certain,[9] and Plaintiffs should have known of any alleged failure to consult within the limitations period.

Plaintiffs argue that *Hamilton* should not apply because in the Eleventh Circuit, 28 U.S.C. § 2401(a) is jurisdictional. Doc. 1039 at 30:5-9. The Ninth Circuit held that section 2401(a) is not jurisdictional in *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765 (9th Cir. 1997). This holding, however, is highly doubtful. The Supreme Court in *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 145 (2008) held that the "materially identical" 28 U.S.C. § 2501 *is* jurisdictional. 552 U.S. at 145; *see also Aloe Vera of Am., Inc. v. United States*, 580 F.3d 867, 872 (9th Cir. 2009); *Kwai Fun Wong v. Beebe*, 732 F.3d 1030 (9th Cir. 2013), *cert. granted sub nom.*, *United States v. Kwai Fun Wong*, 134 S. Ct. 2873 (2014). "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276 (1957); *see also Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003) (acknowledging that the "Supreme Court has made clear . . . that the application of the continuing violations doctrine should be the exception, rather than the rule.").

Moreover, *Hamilton's* holding was applied within this circuit under facts similar to the instant case. *See Wild Fish Conservancy v. Salazar*, 688 F. Supp. 2d 1225, 1235 (E.D. Wash. 2010) (rejecting plaintiffs' claims under the APA that diversions of water constituted an ongoing violation of the state water code and fishway laws and holding "defendants' statute of limitations defense and the reasoning of the Eleventh Circuit is persuasive"). For these reasons, the Court

---

[9] It is also for this reason that the cases cited in the SRS Contractors' opening brief are on point. In *Preminger v. Sec'y of Veterans Affairs*, the court rejected the continuing violation doctrine as applied to a claim that the agency *failed* to conduct notice and comment when the triggering event occurred, namely the promulgation of regulations. 517 F.3d 1299, 1306-07 (Fed. Cir. 2008). In *Izaak Walton League of Am., Inc. v. Kimbell*, the court rejected the continuing violation doctrine to a claim for failure to issue quotas when the triggering event occurred, namely the publication of maps under the applicable act. 558 F.3d 751, 761 (8th Cir. 2009).

should apply the reasoning in *Hamilton*, strictly construe section 2401(a), and reject the broad application of the continuing violation doctrine to any instance of failure to act.[10]

### C. The Court Should Not Apply the Discrete Violation Theory

The "discrete violation" theory[11] has not been applied to failure to act in the Ninth Circuit, and the Sixth Circuit case cited by Plaintiffs, *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410 (6th Cir. 2007) (*NPCA*), has suffered significant criticism. *See, e.g., Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1016-17 (8th Cir. 2010).

The dissenting opinion in *NPCA* made the compelling point that the failure to obtain a required permit "constitutes a series of discrete *harms* and not a series of discrete *violations*." *NPCA*, 480 F.3d at 420 (emphasis in original); *see also Nat'l Parks & Conservation Ass'n v. Tennessee Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007); *Hamilton*, 453 F.3d at 1335; *Wild Fish Conservancy v. Salazar*, 688 F. Supp. 2d at 1233 (rejecting plaintiffs' assertion "that FWS's alleged failure to apply for a separate diversion permit . . . is an 'ongoing violation' of the Washington State Water Code and that each insertion of boards at Structure 5 is a separate, discrete violation of the State Fishway Law under [*NCPA*]."). Similarly, here, the failure to reinitiate consultation upon issuance of the 2009 BiOp is a single violation that, if anything, produces continuing alleged harm. According to Plaintiffs' allegations regarding the "collapse of two generations of winter-run Chinook," Doc. 1039 at 33:21-23 (citing Doc. 1020 ¶¶ 73-77), the violation is the failure to reinitiate upon issuance of the 2009 BiOp; the alleged harm to winter-run Chinook is an ongoing effect.[12]

---

[10] The cases Plaintiffs cite are unhelpful. *See, e.g., AKM LLC v. Sec'y of Labor*, 675 F.3d 752, 758 (D.C. Cir. 2012) ("While we held that continued actions may extend the statute of limitations, nothing . . . suggests that *inaction* has the same effect . . . .") (emphasis in original); *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982) (continuing effects of a single act of employment discrimination, as here, are not a continuing violation).

[11] For purposes of analyzing an alleged failure to act, no reason appears to distinguish an ongoing violation from repeating violations. The rationale for strictly construing 28 U.S.C. § 2401 applies equally to both tolling theories, and the Court should reject the application of each to this case.

[12] The district court cases cited by Plaintiffs fail to make this critical same distinction. *See, e.g., Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, No. 07-CV-358, 2007 U.S. Dist. LEXIS 85197 (D. Or., Nov. 16, 2007) (failed to distinguish between the continuing harm of the failure to designate critical habitat and the single violation of the statutory requirement to do so).

**III.   THE SIXTH CLAIM FAILS AGAINST THE SRS CONTRACTORS**

   **A.   Plaintiffs' Claims Regarding the SRS Contractors Are Conclusory**

Plaintiffs' allegations concerning the SRS Contractors are conclusory. Plaintiffs do not argue otherwise. Doc. 1039 at 34:6-38:8. Indeed, Plaintiffs make no attempt to show they pled *any facts* regarding an act or omission by SRS Contractors that caused take, and thus the 4SC fails to plead an adequate causal link between the SRS Contractors and Plaintiffs' theory of take.

Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Cascadia Wildlands v. Kitzhaber*, 911 F. Supp. 2d 1075, 1085 (D. Or. 2012) (dismissing an ESA Section 9 claim because "the Court [could] find no allegations of misconduct specifically attributable to the State Lands in the Complaint"); *Coppola v. Smith*, 935 F. Supp. 2d 993 (E.D. Cal. 2013) (insufficient facts pled regarding the breach of duty of due care despite allegations made that chemicals from neighboring property contaminated plaintiff's property).

Here, Plaintiffs point to paragraphs 22, 73, 74, 75, 76, 77, 104, 136, 161, and 162 of the 4SC to purportedly demonstrate sufficient factual allegations. Doc. 1039 at 24:10, 35:14-36:17. These paragraphs, however, do not contain allegations of *actions or omissions* by the SRS Contractors. The few allegations that purport to involve an act or omission by the SRS Contractors are conclusory. For example, paragraph 159 of the 4SC states "the SRS Contractors' diversions, of water from Shasta Reservoir . . . *violated Section 9* of the ESA" and "the SRS Contractors' diversions *were the predominant and direct cause* of the loss, or 'take' . . . ." Doc. 1020 ¶ 159. Similarly, paragraph 192 claims "the SRS Contractors' diversions, of water during the temperature management season in 2014 and 2015 *caused massive take* . . . ." *Id.* ¶ 192. Paragraph 21 of the 4SC is no better: "the SRS Contractors *diverted, excessive amounts of water* from Shasta Reservoir." *Id.* ¶ 21. As in *Iqbal*, *Cascadia Wildlands*, and *Coppola*, these conclusory allegations are insufficient to state a claim.

Plaintiffs allege that even if they failed to plead sufficient facts, Reclamation's releases "were made to the SRS Contractors and pursuant to the SRS contracts" and "go hand in hand," citing *U.S. v. Glenn-Colusa Irrigation Dist.*, 788 F. Supp. 1126 (E.D. Cal. 1992) in support.

Doc. 1039 at 36:9-14. That case has no application here. The allegations in *Glenn-Colusa* involved direct take allegedly caused by the district's pumping; they did not concern an adverse modification of habitat claim. Plaintiffs must do more to allege sufficiently that the SRS Contractors' diversions are the causal link for the alleged habitat modification described in the 4SC.

### B. Plaintiffs' Claim Rests on Wholly Past Actions That Are Insufficient to Establish Jurisdiction

A claim for injunctive relief under Section 9 of the ESA cannot rest on allegations of wholly past conduct.[13] Plaintiffs attempt to distinguish *Burlington Northern* on the ground that the standards for obtaining injunctive relief and pleading Section 9 are different. Doc. 1039 at 29:5-8, 32:1-13. The SRS Contractors, however, do not argue that Plaintiffs must meet the standard for obtaining injunctive relief now, but rather that Plaintiffs cannot rely on wholly past violations for their claim. Further, and despite Plaintiffs' argument otherwise, merely stating conclusory allegations in the future tense does not convert them into factual allegations that adequately plead future harm. Doc. 1039 at 30:28-33:7. Paragraphs 23, 29, 45, 46, 73-77, and 134 contain *no allegations* of any act or omission regarding the SRS Contractors.[14] Nor can *Sierra Club v. Union Oil Co.*, 853 F.2d 667 (9th Cir. 1988) assist Plaintiffs. In that case "Union Oil concede[d] that Sierra Club satisfied *Gwaltney*'s threshold requirements for jurisdiction," and unlike here, the complaint contained sufficient allegations regarding "an ongoing pattern of frequent and substantial non-compliance." *Id.* at 669, 670. Here, no concessions have been made, and the 4SC is devoid of fundamental, underlying facts regarding alleged take by the SRS Contractors.

---

[13] As outlined in the SRS Contractors' moving papers, *Nat'l Wildlife Fed'n v. Burlington Northern R.R., Inc.*, 23 F.3d 1508 (9th Cir. 1994), *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794 (9th Cir. 2009), and *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781 (9th Cir. 1995), are all controlling and clear on this point.

[14] While paragraph 23 at least references the SRS Contractors, it could not be more conclusory: "the SRS Contractors have violated and are likely to continue to violate Section 9 of the ESA by unlawfully and without required authorization taking winter-run and spring-run Chinook and by impairing these species' critical habitat." Doc. 1020 ¶ 23.

SOMACH SIMMONS & DUNN
A Professional Corporation

Similarly, Plaintiffs misread the cases cited by SRS Contractors on this issue. Doc. 1039 at 39 n.13, 41:16-23. In those cases—unlike here—plaintiff's allegations are not based on wholly past conduct, and the courts affirm that such conduct is insufficient for a Section 9 claim. *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d at 783, 785 (explaining that plaintiff sufficiently "alleged a future injury" and acknowledged that "the injunctive relief authorized by the citizen suit provision . . . is by its very nature directed at future actions"); *Defenders of Wildlife v. Martin*, 454 F. Supp. 2d 1085, 1094, 1098 (E.D. Wash. 2006) (Section 9 violation is based on future conduct that "will likely both 'harm' and 'harass' " species, and that "[w]hat is required is 'a definitive threat of future harm to protected species, not mere speculation' "); *Ctr. for Biological Diversity v. Marina Point Dev. Assocs.*, 434 F. Supp. 2d 789, 797 (C.D. Cal. 2006), amended by 566 F.3d 794 (the violation relied on allegations and evidence of future harm, and "no private action lies for wholly past violations").

## IV. CONCLUSION

For all these reasons, in addition to the reasons explained in the motions to dismiss, the Court should dismiss the First, Second, Third, Fifth, and Sixth Claims in the 4SC.

SOMACH SIMMONS & DUNN
A Professional Corporation

DATED: July 22, 2016      By */s/ Andrew M. Hitchings*
ANDREW M. HITCHINGS
Attorneys for Intervenors and Joined Party
Defendants GLENN-COLUSA IRRIGATION
DISTRICT, PRINCETON-CODORA-GLENN
IRRIGATION DISTRICT, PROVIDENT
IRRIGATION DISTRICT, ANDERSON-
COTTONWOOD IRRIGATION DISTRICT, CITY
OF REDDING, M & T CHICO RANCH (PACIFIC
REALTY ASSOCIATES), RECLAMATION
DISTRICT NO. 1004, CONAWAY
PRESERVATION GROUP, LLC, and DAVID
AND ALICE teVELDE FAMILY TRUST

| | |
|---|---|
| | DOWNEY BRAND LLP |
| DATED: July 22, 2016 | By */s/ Steven P. Saxton (as authorized on 7/22/16)* <br> STEVEN P. SAXTON <br> Attorneys for Intervenors and Joined Party Defendants RECLAMATION DISTRICT NO. 108, SUTTER MUTUAL WATER COMPANY, NATOMAS CENTRAL MUTUAL WATER COMPANY, RIVER GARDEN FARMS COMPANY, PLEASANT GROVE-VERONA MUTUAL WATER COMPANY, PELGER MUTUAL WATER COMPANY, MERIDIAN FARMS WANTER COMPANY, HENRY D. RICHTER, et al., HOWALD FARMS, INC., OJI BROTHERS FARM, INC., OJI FAMILY PARTNERSHIP, CARTER MUTUAL WATER COMPANY, WINDSWEPT LAND AND LIVESTOCK COMPANY, MAXWELL IRRIGATION DISTRICT, and TISDALE IRRIGATION AND DRAINAGE COMPANY |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be e-filed on July 22, 2016, and will be automatically served upon counsel of record, all of whom appear to be subscribed to receive notice from the ECF system.

/s/ Andrew M. Hitchings
Andrew M. Hitchings