KATHERINE POOLE (SBN 195010)
DOUGLAS ANDREW OBEGI (SBN 246127)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter Street, 21st Floor
San Francisco, CA 94104
Telephone: (415) 875-6100
Facsimile: (415) 875-6161
kpoole@nrdc.org; dobegi@nrdc.org

Attorneys for Plaintiff Natural Resources Defense Council

HAMILTON CANDEE (SBN 111376)
BARBARA JANE CHISHOLM (SBN 224656)
TONY LOPRESTI (SBN 289269)
CORINNE JOHNSON (SBN 287385)
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
hcandee@altber.com; bchisholm@altber.com;
tlopresti@altber.com; cjohnson@altber.com

Attorneys for Plaintiff Natural Resources Defense Council

TRENT W. ORR (SBN 77656)
EARTHJUSTICE
50 California St. Suite 500
San Francisco, CA 94111
Telephone: (415) 217-2000
Facsimile: (415) 217-2040
torr@earthjustice.org

Attorneys for All Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, *et al.*,<br><br>          Plaintiffs,<br><br>    v.<br><br>RYAN ZINKE, U.S. Department of the Interior, *et al.*,<br><br>          Defendants. | Case No. 1:05-cv-01207-LJO-EPG<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**<br><br>Date: August 3, 2017<br>Time: 8:30 a.m.<br>Ctrm: 4<br>Judge: Lawrence J. O'Neill |

1

SAN LUIS & DELTA MENDOTA
2   WATER AUTHORITY, *et al.*,

3                    Defendants-Intervenors.

4

ANDERSON-COTTONWOOD
5   IRRIGATION DISTRICT, *et al.*,

6                    Joined Parties.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ........................................................................................................ ii

3    I.     INTRODUCTION ............................................................................................................1

4    II.    BACKGROUND ..............................................................................................................1

5    III.   ARGUMENT ...................................................................................................................2

6           A.     Legal Standard  .....................................................................................................2

7           B.     Documents authored or provided to FWS and BOR regarding the status of Delta
                    smelt and the effects of the long-term contracts on Delta smelt should be in the
8                  administrative records for the Second and Fourth Claims ......................................3

9           C.     Post-2015-consultation documents regarding the status of Delta smelt and the
                   effects of the long-term contracts on Delta smelt should be in the administrative
10                 record for the Second Claim .................................................................................10

11   IV.    CONCLUSION ..............................................................................................................15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Ctr. for Food Safety v. Vilsack,*
No. 15CV01590HSGKAW, 2017 WL 1709318 (N.D. Cal. May 3, 2017) ...................... 3, 11

4

*Lands Council v. Powell,*
395 F.3d 1019 (9th Cir. 2005) ................................................................................ 1

5

*Oregon Nat. Desert Association v. Kimbell,*
593 F. Supp. 2d 1217 (D. Or. 2009) ...................................................................... 2

6

*Portland Audubon Social v. Endangered Species Comm.,*
984 F.2d 1534 (9th Cir. 1993) ............................................................ 2, 3, 5, 10, 11

7

*Pyramid Lake Paiute Tribe of Indians v. U.S. Department of Navy,*
898 F.2d 1410 (9th Cir. 1990) ................................................................... 1, 2, 10

8

*San Luis Delta-Mendota Water Authority v. Jewell,*
747 F.3d 581 (9th Cir. 2014) ................................................................................ 6

9

*Thompson v. U.S. Department of Labor,*
885 F.2d 551 (9th Cir. 1989) ..................................................................... 3, 11

10

11

12

### STATUTES

13

16 U.S.C. §1536(a)(2) .................................................................................... 1

14

### ADDITIONAL AUTHORITIES

15

80 Fed. Reg. 39797, 39798 (2015) ................................................................ 10

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES ISO
MOTION TO COMPLETE THE ADMINSTRATIVE RECORD
CASE NO.  1:05-CV-01207-LJO-EPG

## I.    INTRODUCTION

The administrative records lodged by Federal Defendants are incomplete because they omit key documents that were before the relevant federal agencies at the time of their challenged actions.  This Endangered Species Act ("ESA") case concerns, among other things, the obligations of the U.S. Bureau of Reclamation ("BOR") and U.S. Fish and Wildlife Service ("FWS") to evaluate and mitigate the impacts of the renewal of certain BOR long-term water supply contracts on the threatened Delta smelt.  Plaintiffs' Second and Fourth Claims assert that (1) the agencies have not satisfied the ESA's requirements to consult over the contracts' impacts on Delta smelt, and (2) BOR continues to violate its ESA obligation to insure its contract operations do not jeopardize the continued existence of Delta smelt.  And yet the current administrative records exclude critical information that was directly or indirectly considered by the agencies when evaluating and/or implementing the contracts.

Specifically, the records omit information, data, and analysis regarding the imperiled status of the Delta smelt species and the effects of the contracts' renewal and implementation on Delta smelt, primarily by reducing Delta flows critical to maintaining suitable Delta smelt habitat. The exclusion of this essential information from the records would severely undercut meaningful judicial review of the contracts' effects on the imperiled Delta smelt and the agencies' understanding of those effects.  The omitted documents were either authored by the agencies themselves or submitted to or otherwise before them during the time of their challenged actions, and, as such, are properly part of the administrative records.  Therefore, to ensure full and informed review, Plaintiffs respectfully request that the Court order that the administrative records be completed with the documents presented by Plaintiffs with this motion.[1]

## II.    BACKGROUND

The ESA requires federal agencies to consult with the Secretary of Interior (here, FWS) on agency action that affects listed species and to "insure" that action does not jeopardize the continued existence of listed species or their critical habitat.  16 U.S.C. §1536(a)(2); *Pyramid*

---

[1] The instant motion seeks to ensure the administrative records lodged with the Court are complete.  To the extent the documents identified in this motion, however, are not included in the records, Plaintiffs reserve the right to request that the Court consider them as appropriate and necessary extra-record evidence. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES ISO
MOTION TO COMPLETE THE ADMINSTRATIVE RECORD
CASE NO.  1:05-CV-01207-LJO-EPG

*Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1415 (9th Cir. 1990).  In the summer of 2015, BOR requested consultation with FWS regarding the effects of BOR's renewal of certain long-term water supply contracts on Delta smelt.  Dkt. 1071 (5SC) ¶¶16-17.  In December 2015, FWS issued a letter concurring with BOR's assessment that the contracts do not jeopardize Delta smelt, subject to certain assumptions and caveats.  *Id.*

FWS and BOR reached that conclusion despite the facts that upstream water deliveries and diversions pursuant to the long-term contracts cause the degradation and loss of Delta smelt habitat and the indirect deaths of Delta smelt, including by reducing Delta flows, which in turn diminishes suitable spawning and rearing habitat and causes Delta smelt to be entrained in pumping facilities.  *Id.* ¶¶55-58.  Plaintiffs' Fourth Claim, asserted against FWS, contends that the agency's purported consultation was invalid and inadequate under the ESA.  *Id.*  ¶¶179-84.  Plaintiffs' Second Claim, asserted against BOR, contends the same, as well as that BOR continues to violate the ESA by failing to insure that its ongoing contract operations do not jeopardize the continued existence of Delta smelt and by continuing to fail to engage in a valid consultation regarding the contracts.  *Id.* ¶¶16-17, 105-08, 173-78.

Federal Defendants have submitted to the Court administrative records for the Fourth and Second Claims ("4th Claim AR" and "2nd Claim AR," respectively).[2]  Dkt. 1084, 1086.  The administrative record for the Second Claim incorporates the record submitted for the Fourth Claim in full.  Plaintiffs identified the documents described herein to Federal Defendants and requested that Federal Defendants supplement both records with those documents.  Poole Dec. ¶2.  The parties, however, were unable to reach agreement on the addition of these documents.  *Id.*

### III.   ARGUMENT

#### A.  Legal Standard

Judicial review of agency action "shall be based on the *whole* record."  *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (quotation omitted, emphasis added).  "The whole administrative record … is not necessarily those documents that

---

[2] Although Plaintiffs' Sixth Claim is not limited to an administrative record, *see* Dkt. 1018 at 29 (citing *Oregon Nat. Desert Ass'n v. Kimbell*, 593 F. Supp. 2d 1217, 1220 (D. Or. 2009)), BOR has also submitted an "administrative record" to the Court for the Sixth Claim ("6th Claim AR").  *See* Dkt. 1084.

the agency has compiled and submitted as 'the' administrative record." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (quotation omitted).  Rather, "'[t]he whole record' includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc.*, 984 F.2d at 1548.  It "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555 (quotation omitted, emphasis in original).

A plaintiff can establish that an agency's proffered record is incomplete by identifying (1) the materials omitted from the record with sufficient specificity, and (2) reasonable grounds for belief that documents were before the agency and pertinent to its challenged action.  *Ctr. for Food Safety v. Vilsack*, No. 15CV01590HSGKAW, 2017 WL 1709318, at *3 (N.D. Cal. May 3, 2017). "If the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless." *Portland Audubon Soc.*, 984 F.2d at 1548 (quotation omitted).  "An incomplete record must be viewed as a fictional account of the actual decisionmaking process." *Id.* (quotation omitted).  Therefore, "[w]hen it appears the agency has relied on documents or materials not included in the record, supplementation is appropriate." *Id.*

**B. Documents authored or provided to FWS and BOR regarding the status of Delta smelt and the effects of the long-term contracts on Delta smelt should be in the administrative records for the Second and Fourth Claims**

The submitted administrative records for the Second and Fourth Claims wrongly exclude contemporaneous documents authored by and/or shared between or with FWS and BOR regarding (1) the status of the Delta smelt species at the time of the agencies' consultation and (2) the effects of upstream uses and diversions of water and resulting low Delta flows on Delta smelt habitat and abundance.  That information was indisputably pertinent to BOR's and FWS's consultation on the contracts' effects on Delta smelt and to BOR's continued execution of the contracts.  Moreover, as agency documents and/or documents otherwise provided to the agencies, that information was either directly or indirectly considered by the agencies at the time of the consultation.  For those reasons alone, those documents belong in the administrative records.  *See Portland Audubon Soc.*, 984 F.2d at 1548 ("'The whole record' includes everything that was before the agency pertaining to the merits of its decision"); *Ctr. for Food Safety*, 2017 WL

1709318, at *3.  Not only that, but the information in those documents is critical to the Court's ability to meaningfully review Plaintiffs' claims that FWS and BOR's purported 2015 consultation failed to adequately evaluate the long-term contracts' impacts on Delta smelt and that BOR continues to violate its obligation to ensure its contract operations do not jeopardize Delta smelt.  The documents reflect fundamental ecological concepts (such as the degradation of smelt habitat due to low Delta flows) known and understood by BOR and FWS and necessary to assessing the reasonableness of the agencies' no-jeopardy assessments.  Plaintiffs accordingly request that the Court supplement the records for the Second and Fourth Claims with the following list of specific documents.[3]

- **Document 1:**  Letter from FWS Field Supervisor to BOR's Central Valley Office Operations Manager responding to BOR's proposed drought response actions (April 8, 2014)

In this 2014 letter, FWS disagreed with BOR's assessment that BOR's proposed drought actions, which included reducing Delta outflows, would not adversely affect Delta smelt.  Poole Dec. Ex. 1 at 5-8 ("The Service cannot, however, concur at this time with Reclamation's determination that the proposed Plan will have no additional effects on delta smelt or its critical habitat ….").  That predication that was borne out as the drought wore on.  *See, e.g.*, Poole Dec. Ex. 28 (Document 20) at 4, 9-11, 39 (January 19, 2016 order acknowledging drastic declines in Delta smelt population in recent years).  This interagency communication was directly before both FWS and BOR during the 2015 consultation and after, and therefore is properly part of the administrative records for the Second and Fourth Claims.

- **Document 2:**  An Updated Conceptual Model of Delta Smelt Biology:  Our Evolving Understanding of an Estuarine Fish (January 2015) ("MAST Report"), authored by the Interagency Ecological Program ("IPE"), Management, Analysis, and Synthesis Team ("MAST")

The MAST report is an "up-to-date assessment and conceptual model of the factors affecting Delta smelt" throughout its lifecycle, and specifically identifies low Delta flows as having a detrimental impact on Delta smelt habitat and abundance.  Poole Dec. Ex. 2 at 1, 39-49

---

[3] Where Plaintiffs request the inclusion of an individual document, this motion identifies the document as, e.g., "Document 1."  Where Plaintiffs request inclusion of two or more related documents from the same source, that group of documents is identified as, e.g., "Document Group 1."

(describing the effect of Delta outflows on the low salinity zone, which is primary smelt habitat), 91-99 (statistics showing the decline of the Delta smelt population).  The MAST report was authored by a "cooperative program" which members include FWS and BOR scientists.  *Id.* (cover page).  BOR employees relied upon the MAST report to prepare BOR's July 2015 report on the Status of the Species and Status of Critical Habitat for Delta Smelt (Hypomesus transpacificus) ("Status of the Species Report"), which BOR in turn provided to FWS along with BOR's request for reinitiation of consultation.  *See* 4th Claim AR FWS13175 (BOR's Status of the Species Report) at FWS13212 (listing the MAST Report in the index); 4th Claim AR FWS13127 (July 30, 2015 email from BOR to FWS attaching BOR's request for reinitiation and the final draft of BOR's Status of the Species Report); *see also* Poole Dec. Ex. 31 (June 3, 2015 email among BOR employees planning to rely on IPE reports to prepare BOR's request for reinitiation).

Moreover, Plaintiff Natural Resources Defense Council ("NRDC") cited the MAST report in its October 20, 2015 letter to FWS regional office staff that identified deficiencies in BOR's request for reinitiation and other concerns about the reinitiation.  *See* 4th Claim AR FWS13831 (NRDC's October 20, 2015 letter to the Acting Field Supervisor of FWS's Bay-Delta Fish and Wildlife Office) at FWS13835 (citing the MAST report and incorporating by reference all cited materials and offering to provide copies of the materials to FWS).  FWS included that October 20, 2015 letter in its administrative record for the Fourth Claim.  *Id.*  The MAST report was thus clearly before both agencies at the time of their purported 2015 consultation.  Omitting this report would result in a "fictional account of the actual decisionmaking process," *Portland Audubon Soc.*, 984 F.2d at 1548, that would frustrate judicial review.  The Court should order the administrative records supplemented with this document.

- **Document Group 3:** 2014 and 2015 survey results from the Delta Smelt spring Kodiak trawl survey, fall midwater trawl survey, and summer townet survey.

The California Department of Fish and Wildlife ("CDFW") conducts three different surveys to determine the distribution and relative abundance of Delta smelt throughout the year, and publishes the results of those surveys online.  Poole Dec. ¶¶ 5-7 (listing websites for the spring Kodiak trawl ("SKT"), fall midwater trawl ("FMWT"), and summer townet ("STN")

surveys).  Both FWS and BOR rely on these long-term abundance surveys as a management tool for the delta smelt.  *See, e.g., San Luis Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 615 (9th Cir. 2014) (the fall midwater trawl is "an abundance proxy for the delta smelt's population size—and the proxy for population suggested both by the FWS and … court-appointed experts" used to establish take limits in FWS's 2008 Biological Opinion).  Those surveys show that by 2014 and 2015, Delta smelt abundance had reached record lows.  *See* Poole Dec. Ex. 3 at 1 ("The 2015 abundance index (7) is the lowest in FMWT history."), Ex. 4 at 1 ("The 2015 SKT index is 13.8 and is the lowest on record."), Ex. 6 at 1 ("The … STN[] Delta Smelt abundance index for 2015 is 0.0.  This is the lowest index reported in the history of STN and is consistent with the downward trend in Delta Smelt abundance observed in recent years.").  Those survey results were considered by both BOR and FWS:  The results are discussed and cited in numerous BOR and FWS 2015 documents, including the 2015 Status of the Species report and 2015 MAST Report described in the preceding paragraph, as well as the 2015 FWS presentation to the State Water Resources Control Board ("SWRCB") described below.  *See* 4th Claim AR FWS13175 (Status of the Species Report) at FWS13183-84, FWS13187-88, FWS13207-08, FWS13201; Poole Dec. Ex. 2 (Document 2) at 24-30, Ex. 9 (Document 6) at 12-15.  The survey results are critical to assessing Plaintiffs' claims because they show the imperiled status of the Delta smelt species at the time of the agencies' determination that the long-term contracts did not jeopardize Delta smelt.  They should therefore be included in the administrative records.

- **Document Group 4:**  2014 and 2015 Smelt Working Group notes and determination memos

The Smelt Working Group ("SWG") consists of experts in delta smelt biology from the BOR, FWS, and other state and federal agencies.  Poole Dec. ¶8.  The SWG evaluates up-to-date biological and technical issues regarding delta smelt and develops recommendations for consideration by FWS in its implementation of real-time operations under the Coordinated Operations of the Central Valley Project and State Water Project ("OCAP") Biological Opinions ("BiOps").  *Id.*  The SWG documents evaluate the risks Delta smelt face under current Delta conditions, and consistently show that Delta smelt face higher risk of entrainment at the south Delta pumping facilities at lower Delta outflows.  *See, e.g.*, 2nd Claim AR 30388 (Jan. 12, 2015

notes), 30432 (Feb. 17, 2015 notes). Although BOR included the SWG notes and determination memos in its administrative record for the Second Claim, *see* 2nd Claim AR 30170 through 30622, FWS failed to include them in its administrative record for the Fourth Claim. That failure is inexplicable given that FWS scientists participate in the working group, Poole Dec. ¶8; FWS relies on recommendations from the working group to inform its BiOp operations, *id.*; FWS hosts the website on which the SWG notes and determinations are kept, *id.*; and the Status of the Species Report that BOR provided FWS with its request for reinitiation of consultation relies on the notes and determinations, *see* 4th Claim AR FWS13175 (Status of the Species Report) at FWS13216. The 2014 and 2015 SWG notes and determinations were clearly before and considered by FWS at the time of the consultation, and are therefore properly part of the administrative record for the Fourth Claim.

- **Document 5:** SWRCB's April 6, 2015 Order Modifying an Order That Approved In Part and Denied In Part a Petition For Temporary Urgency Changes to License and Permit Terms and Conditions Requiring Compliance with Delta Water Quality Objectives in Response to Drought Conditions

This temporary urgency change petition ("TUCP") order, which granted BOR's petition to relax the water quality objectives in its operating permits by, among other things, reducing Delta outflow requirements, confirms that reducing Delta outflows adversely impacts Delta smelt in a variety of ways. *See* 6th Claim AR at 13609, 13623-25. BOR included this document in the administrative record that it submitted for Plaintiffs' Sixth Claim, thereby confirming that BOR considered this order in evaluating its contract operations in 2015. *Id.* This order was also before FWS; several documents show that FWS follows and reviews BOR's petitions before the SWRCB closely. *See, e.g.*, 4th Claim AR FWS13467 (March 24, 2015 letter from BOR to FWS) at FWS13468 (alerting FWS to the BOR petition that the SWRCB granted in its April 6, 2015 order); Poole Dec. Ex. 1 (Document 1) (2014 FWS letter responding to BOR's drought operations and petitions). This document is important to Plaintiffs' consultation and jeopardy claims because it shows that low Delta flows—which are a necessary consequence of renewing the long-term contracts that allow upstream water diversions—negatively impact Delta smelt, contrary to FWS's and BOR's conclusions in their consultation and to BOR's subsequent contract operations.

- **Document 6:** FWS, et al. presentation at the SWRCB May 20, 2015 Workshop on Drought Activities in the Bay-Delta

- **Document 7:** SWRCB presentation from the May 20, 2015 Public Workshop on Drought Activities in the Bay-Delta

SWRCB held a public drought workshop on May 20, 2015, which was attended by representatives of both FWS and BOR. *See* Poole Dec. ¶9, Ex. 12 (SWRCB Notice of Public Workshop) (showing that both FWS and BOR representatives were scheduled to attend and present at the workshop). FWS, along with CDFW and the National Marine Fisheries Service ("NMFS"), gave a fisheries presentation (Document 6) at that workshop that summarized FWS's understanding of the abundance and distribution of Delta smelt in 2015, and showed how low Delta outflows had shifted Delta smelt farther upstream away from their preferred habitat. Poole Dec. Ex. 9 at slides 12-15. That presentation was directly before FWS for consideration during the 2015 consultation, and was also before BOR, whose employees attended and presented at that conference. *See* Poole Dec. Ex. 11 (presentation given by BOR at the SWRCB May 20, 2015 drought workshop regarding BOR's ongoing petitions to weaken water quality objectives during the drought because of limited water available to meet upstream and downstream uses).

The SWRCB also gave a presentation (Document 7) at that workshop that showed how upstream use and diversions of the Sacramento River resulted in the reduced downstream Delta outflow that harmed smelt during 2014 and 2015. *See* Poole Dec. Ex. 10 at slides 4, 10-13. That presentation was similarly before both FWS and BOR by virtue of their attendance at the workshop. Those two presentations' information on the drought's effects on Delta smelt and the tradeoffs between upstream water uses (such as the challenged long-term contracts) and the Delta flows on which Delta smelt depend, is pertinent to the 2015 consultation and BOR's contract operations. Both presentations should therefore be included in the administrative records.

- **Document 8:** U.S. Department of Interior's ("DOI") Comments Regarding the California SWRCB's Notice of Public Informational Proceeding to Develop Delta Flow Criteria for the Delta Ecosystem Necessary to Protect Public Trust Resources (February 12, 2010)

- **Document 9:** SWRCB's report on Development of Flow Criteria for the Sacramento-San Joaquin Delta Ecosystem (August 3, 2010)

- **Document 10:** FWS's First Draft of ESA Biological Opinion on OCAP (Dec. 14, 2011)

- **Document Group 11:** Draft Five Agency Bay Delta Conservation Plan ("BDCP") Combined Species Scenario Evaluations and Proposed Project Operations (Nov. 12, 2012), and Revised Fish Agency Scenarios for BDCP Operations Development presentation for November 14, 2012 NGO Meeting

Documents 8 through 11 show that FWS and BOR were well aware of the negative effects low Delta outflows caused by existing project operations have on Delta smelt and its habitat for several years leading up to the 2015 consultation, yet approved the contract renewals nonetheless. The DOI's 2010 comments and expert testimony (Document 8) regarding the SWRCB's development of Delta flow requirements explains why Delta flows "must be sufficient to support successful spawning, larval and juvenile transport, rearing, and adult migration of Delta fish," including Delta smelt, and documents the ongoing decline of Delta smelt abundance. *See* Poole Dec. Ex. 13 at 4, 6-8, 31-36. DOI submitted that testimony on behalf of both BOR and FWS, *id.* at 2, so it was available to both agencies for consideration during the consultation.

The SWRCB's 2010 report on the development of Delta flow criteria (Document 9) concluded that "[t]he best available science suggests that current flows are insufficient to protect public trust resources" such as Delta smelt, and identified the necessary Delta flows to protect Delta smelt habitat. Poole Dec. Ex. 14 at 2, 70-77, 98-113. The report was reviewed by FWS, *see id.* (Acknowledgements), and was therefore before that agency. Furthermore, as the federal agency required to meet the existing Delta flow criteria, *see id.* at 5, 18-19, BOR would also have been aware of the SWRCB's report.

FWS's first draft of its OCAP biological opinion (Document 10) is explicit that upstream diversions, such as those required by the renewed contracts, reduce Delta smelt habitat to the detriment of the species. Poole Dec. Ex. 15 at 27, 141, 143, 177, 285-90. BOR was the lead federal agency and applicant for that consultation, and received the draft in a memorandum from FWS. *Id.* at 1. The draft was therefore before both agencies when they considered the renewal of the long-term contracts.

Finally, the BDCP evaluation and update to NGOs (Document Group 11) confirm that FWS and BOR were aware in 2012 of the need for increased Delta flows to protect Delta smelt.

9

The evaluation provides technical advice for water operations scenarios targeting specific objectives, including, among others, adequate flows for Delta smelt. *See* Poole Dec. Ex. 16. The update to NGOs explains how those recommended Delta outflows must be balanced with upstream storage and diversions. *See* Poole Dec. Ex. 17 at 11-16. FWS is one of the member agencies of the group that prepared the BDCP evaluation, and BOR was the lead federal agency proposing the BDCP. *See, e.g.*, 80 Fed. Reg. 39797, 39798 (2015). These documents were therefore before FWS and BOR during the consultation.

**C. Post-2015-consultation documents regarding the status of Delta smelt and the effects of the long-term contracts on Delta smelt should be in the administrative record for the Second Claim**

Records post-dating FWS's December 2015 letter of concurrence are properly part of the administrative record for the Second Claim against BOR for two reasons. First, the Second Claim is not limited to the validity of the agencies' inadequate 2015 consultation, but rather also alleges that BOR's subsequent implementation and performance of the contracts is a continuing violation of its ongoing ESA obligations not to jeopardize Delta smelt and to consult with FWS over actions that may affect Delta smelt. *See* 5SC ¶¶16-17, 105-08, 173-77; *Pyramid Lake Paiute Tribe*, 898 F.2d at 1415 (agencies' obligation not to jeopardize listed species is ongoing and continues even after the agency purportedly consults with FWS over its actions). The Court has previously acknowledged that Plaintiffs' Second Claim alleges an ongoing violation of BOR's ESA obligations. *See* Dkt. 1045 at 21 (holding Second Claim was not moot because Plaintiffs "have properly stated a claim that Reclamation has *continuously failed* to carry out its affirmative duty to ensure that the … contracts do not jeopardize the delta smelt, [and] that the 2015 consultation was flawed and, as a result, Reclamation has failed *and is failing* to comply with its obligation to engage in a valid Section 7 consultation on the contracts' effects delta smelt") (emphases added, quotation omitted). As usual, BOR's challenged conduct must be judged based on the information before the agency at the time of that conduct. *See Portland Audubon Soc.*, 984 F.2d at 1548. Because BOR's challenged conduct is ongoing, that information necessarily includes records before the agency that post-date the FWS letter of concurrence. Excluding those documents from the administrative record would effectively prevent the Court from reviewing

1   BOR's challenged actions, and would render the requirement that BOR's decision be supported

2   by the record "almost meaningless." *See id.*

3        Second, the letter of concurrence issued by FWS in December 2015 explicitly leaves open

4   the possibility that the contracts will need to be changed if increased Delta flows are required to

5   avoid jeopardy to Delta smelt. The letter provides, "In future consultations to ensure adequate

6   protection of delta smelt and its critical habitat under the [Endangered Species] Act, we may

7   require greater certainty as to Reclamation's ability to provide needed outflow through the Delta.

8   If increased outflows are needed and cannot be met under the [Sacramento River Settlement]

9   contracts, those contracts may need to be revisited to ensure consistency with the [Endangered

10  Species] Act." 4th Claim AR FWS13625, FWS13628. Many of the documents with which

11  Plaintiffs seek to complete the administrative record demonstrate that FWS and other agencies

12  have concluded that increased Delta outflows are necessary for the continued survival of the

13  Delta smelt species, yet are currently unable to be met, thereby triggering BOR's duty under the

14  ESA to revisit the contracts to provide for augmented flows.

15       For those two reasons, the administrative record for the Second Claim should include the

16  list of documents described below. Those documents were either drafted or directly or indirectly

17  considered by BOR during its 2016 and 2017 contract operations. They pertain to critical

18  scientific information regarding the continuing decline of the Delta smelt species and the

19  importance of Delta outflows to that species' survival—information which continues to be

20  relevant as BOR performs the long-term contracts without a proper consultation. As such, the

21  documents are properly a part of the administrative record. *See Thompson*, 885 F.2d at 555; *Ctr.*

    *for Food Safety*, 2017 WL 1709318, at *3.

22  • **Document 12:** BOR and CDWR's Central Valley Project and State Water Project 2016
23    Drought Contingency Plan for Water Project Operations February-November 2016
      (January 6, 2015) ("Drought Contingency Plan")
24

25  • **Document Group 13:** 2016 and 2017 survey results from the Delta Smelt spring Kodiak
      trawl survey, fall midwater trawl survey, and summer townet survey.
26

27       These documents show that the status of the Delta smelt species has continued to decline

28  in the wake of BOR and FWS's purported 2015 consultation. Just a few weeks after FWS's

concurrence letter, BOR issued its 2016 Drought Contingency plan (Document 12), which acknowledged the "continued declining trend of delta smelt" and historical low abundance of smelt. Poole Dec. Ex. 18 at 7, 14-15. Throughout the next two years, results from CDFW's three annual smelt surveys showed the increasingly imperiled status of the Delta smelt species as BOR continued its harmful contract operations. For instance, the 2016 spring Kodiak trawl survey index was only 1.8, the lowest SKT index on record. *See* Poole Dec. Ex. 5. The survey results and plan were considered by BOR during its contract implementation (in fact, BOR's Drought Contingency Plan cites smelt survey results). *See* Poole Dec. Ex. 18 (Document 12) at 15. Because those documents show the impact of BOR's ongoing failure to insure that its actions do not jeopardize delta smelt or adversely modify its critical habitat, and that BOR continues its contract performance despite being well aware of the increasing decline of Delta smelt, they should be included in the record for the Second Claim.

- **Document Group 14:** FWS and BOR correspondence regarding BOR's 2016 reinitiation of consultation on OCAP

In August 2016, BOR requested to reinitiate consultation on OCAP due to "multiple years of drought and recent data demonstrating low Delta smelt populations." Poole Dec. Ex. 19 (August 2, 2016 Letter from BOR Regional Director and CDWR Director to FWS Regional Director). FWS agreed, and responded to BOR that "new information is demonstrating the increasingly imperiled state of the Delta Smelt …, *and that emerging science shows the importance of outflows to all life stages of Delta Smelt* …." *Id.* Ex. 20 (August 3, 2016 Letter from FWS Regional Director to BOR Regional Director and DWR Director) (emphasis added). The reinitiation correspondence shows BOR and FWS have acknowledged that the continued existence of Delta smelt is likely in jeopardy, in part due to insufficient outflows, and yet neither agency has taken the necessary steps to modify the long-term contracts to increase outflows at critical time for the species. This 2016 correspondence mirrors many of the findings the agencies made prior to the 2015 consultation about the need to increase outflows for delta smelt survival, *see* Section III.B, *supra*, and thus shows that the agencies consistently held this view both prior to and following the challenged 2015 consultation. There can thus be no doubt that the correspondence should be in the record for the Second Claim.

- **Document 15:**  June 1, 2016, Letter from FWS Pacific Southwest Regional Director to BOR Pacific Southwest Regional Director regarding flows for Delta smelt

FWS's June 2016 letter alerted BOR to FWS's determination that increased Delta flows are necessary to maintain Delta smelt habitat.  *See* Poole Dec. Ex. 21 (requiring BOR to provide additional outflows "critical to maintaining adequate habitat quality for Delta smelt").  The letter is therefore another instance of information that triggered BOR's responsibility to revisit the contract renewal to provide additional outflows, as required by FWS's concurrence letter.  *See* 4th Claim AR FWS13625, FWS13628.

- **Document Group 16:**  2016 and 2017 Smelt Working Group notes and determination memos

The 2016 and 2017 SWG documents consistently conclude that higher Delta flows are necessary to protect Delta smelt—in stark contrast to BOR's continued contract implementation.  *See, e.g.*, Poole Dec. Ex. 7 at 1, 6-7 (January 4, 2016 SWG notes explaining the heightened risk that Delta smelt face at lower flow rates), Ex. 8 at 1, 5-6 (Dec. 27, 2016 SWG notes) (same).  BOR has included SWG notes and determinations from 2014 and 2015 in the administrative record for the Second Claim, thereby conceding that it considers those documents during contract operations.  *See, e.g.*, 2nd Claim AR 30170, 30175, 30182, *et seq.*; *see also* Poole Dec. Ex. 32 (May 26, 2015 email stating that BOR employees would rely on SWG notes to draft BOR's request for reinitiation); 4th Claim AR FWS13175 (BOR's Status of the Species Report) at FWS13216 (citing SWG notes).  There is no reason to omit the 2016 and 2017 notes and determinations.  Particularly given that BOR's own scientists serve in the SWG, those documents continue to be before BOR during its ongoing contract operations, and therefore are appropriately part of the Second Claim's administrative record.

- **Document 17:**  SWRCB presentation, 2006 Bay-Delta Plan Phase II Update:  Working Draft Scientific Basis Report (December 7, 2016)

- **Document 18:**  California Natural Resources Agency, Delta Smelt Resiliency Strategy (July 8, 2016)

- **Document 19:**  CDFW, Rationale for Summer Delta Flow Augmentation (July 8, 2016)

These documents show that BOR has received information regarding state oversight

agencies' calls for increased Delta flows to protect smelt.  The SWRCB's presentation on the scientific basis for its update to the Bay-Delta water quality standards (Document 17) shows the ongoing "dramatic decline of estuarine species," including Delta smelt; presents data showing that Delta smelt abundance increases markedly with higher outflows; and makes recommendations for increased Delta outflow requirements to benefit Delta smelt.  Poole Dec. Ex. 22 at slides 19, 28, 38.  That document was before BOR for consideration:  BOR has been actively participating in the SWRCB's process to update to water quality standards.  *See, e.g.*, Poole Dec. Ex. 23 (BOR's March 16, 2017 comments on the SWRCB's proposed updates). Similarly, the Delta Smelt Resiliency Strategy (Document 18), which is a science-based document by the California Natural Resources Agency identifying actions to address the current needs of Delta smelt and promote their resiliency to drought, emphasizes the need for BOR to provide augmented flows to protect Delta smelt habitat.  Poole Dec. Ex. 24 at 1, 7.  BOR has directly considered the strategy, as evidenced by the direct reference to it in BOR's August 2016 letter to FWS requesting reinitiation of consultation on OCAP.  *See* Poole Dec. Ex. 19 at 1.

The CDFW's Rationale for Delta Flow Augmentation (Document 19) also advocates for increased summer outflows to boost the decimated Delta smelt population, and explains the scientific basis for increasing outflows to benefit Delta smelt.  Poole Dec. Ex. 25 at 1, 7-9.  This document was before BOR because it was provided to the members of the Collaborative Science and Adaptive Management Program ("CSAMP"), a group of state and federal agencies (including BOR), public water agencies, and nongovernmental organizations that collaborates to review and assess adaptive management to inform the development and implementation of Bay-Delta biological opinions and other programs.  *See* Poole Dec. ¶¶20-21, Ex. 26 (draft June 24, 2016 memorandum of understanding showing BOR is one of the members of CSAMP).  In general, BOR's parent agency, DOI, has accepted the state agencies' findings that additional summer outflow is necessary for Delta smelt, and has committed and directed BOR to meet those additional outflows.  Poole Dec. Ex. 27 at 4-5, 8 (January 3, 2017 order by the Secretary of the Interior requiring BOR to augment Delta outflows).  These three documents are pertinent to showing that BOR is aware that FWS's caveat that the contracts must be "revisited" if additional Delta flows are required to protect Delta smelt has been triggered.  They therefore belong in the

record for the Second Claim.

- **Document 20:** SWRCB's Order WR 2015-0043 (January 19, 2016)

The SWRCB's order evaluates the consequences of its 2014 and 2015 TUCP orders changing water quality objectives—including Delta outflow requirements—in BOR's permits. Poole Dec. Ex. 28 at 1. The order highlights how upstream water diversions and uses come at the expense of downstream flows, acknowledging that the SWRCB's attempts to reserve water for upstream uses, including maintaining water supply to Sacramento River settlement contractors and cold-water storage for Chinook salmon, necessarily resulted in lower Delta outflows and less favorable downstream habitat conditions for Delta smelt. *Id.* at 3, 27. The order concludes that "nearly no Delta smelt have been caught [in recent surveys], leading to real concern that these species may be at the brink of extinction." *Id.* at 4. The order was before BOR for consideration because it addressed challenges to changes in BOR's operating permits. *Id.* at 1. It is part of the record relevant to Plaintiffs' Second Claim because it shows how upstream diversions to satisfy the long-term contracts contribute to lower Delta outflows, thereby harming Delta smelt.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant their motion to complete the administrative records with the documents submitted with and identified in this motion.

Respectfully submitted,

/s/ *Katherine S. Poole*
Katherine S. Poole

KATHERINE POOLE (SBN 195010)
DOUGLAS ANDREW OBEGI (SBN 246127)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter Street, 21st Floor
San Francisco, CA 94104
Telephone:  (415) 875-6100
Facsimile:  (415) 875-6161
kpoole@nrdc.org; dobegi@nrdc.org

Attorneys for Plaintiff Natural Resources Defense Council

HAMILTON CANDEE (SBN 111376)
BARBARA JANE CHISHOLM (SBN 224656)

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES ISO
MOTION TO COMPLETE THE ADMINSTRATIVE RECORD
CASE NO.  1:05-CV-01207-LJO-EPG

1   TONY LOPRESTI (SBN 289269)
CORINNE JOHNSON (SBN 287385)
2   ALTSHULER BERZON LLP
177 Post St., Suite 300
3   San Francisco, CA 94108
Telephone:  (415) 421-7151
4   Facsimile:  (415) 362-8064
hcandee@altber.com; bchisholm@altber.com;
5   tlopresti@altber.com; cjohnson@altber.com

6   Attorneys for Plaintiff Natural Resources Defense
Council
7
TRENT W. ORR (SBN 77656)
8   EARTHJUSTICE
50 California St. Suite 500
9   San Francisco, CA 94111
Telephone:  (415) 217-2000
10  Facsimile:  (415) 217-2040
torr@earthjustice.org
11
Attorneys for All Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES ISO
MOTION TO COMPLETE THE ADMINSTRATIVE RECORD
CASE NO.  1:05-CV-01207-LJO-EPG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

CASE:          *NRDC, et al. v. Zinke, et al.*

CASE NO:     U.S. Dist. Ct., E.D. Cal., Case No. 1:05-cv-01207 LJO-EPG

     I am employed in the City and County of San Francisco, California.  I am over the age of eighteen years and not a party to the within action; my business address is 111 Sutter Street, 21st Floor, San Francisco, CA 94104.  I hereby certify that on July 5, 2017 I electronically filed the following with the Clerk of the Court for the United States District Court for the Eastern District by using the CM/ECF system:

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**

     All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this July 5, 2017 at Frankfort, Michigan.

/s/ *Katherine S. Poole*
Katherine S. Poole