# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, et al.,<br><br>                    Plaintiffs,<br><br>vs.<br><br>RYAN ZINKE, Secretary, U.S. Department of the Interior, et al.,<br><br>                    Defendants. | Case No. 1:05-cv-01207 LJO-EPG<br><br>MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPLETE THE ADMINISTRATIVE RECORD (ECF NO. 1096). |
| SAN LUIS & DELTA MENDOTA WATER AUTHORITY, et al.,<br><br>                    Defendant-Intervenors. | |
| ANDERSON-COTTONWOOD IRRIGATION DISTRICT, et al.,<br><br>                    Joined Parties. | |

## I. INTRODUCTION

On March 1, 2017, Plaintiffs, a coalition of environmental interest groups led by the Natural Resources Defense Council, filed the currently operative Fifth Supplemental Amended Complaint ("5SC"), which includes numerous claims brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, against the U.S. Bureau of Reclamation ("Bureau" or "Reclamation"), the U.S. Fish and Wildlife Service ("FWS" or "Service"), and various Joined Defendants and Defendant Intervenors. *See generally* ECF No. 1071. The remaining claims in the case[1] allege that the renewal, implementation, and approval of renewal and implementation of certain long-term water contracts violate the ESA and/or APA. *Id.*

---

[1] Final judgment has been entered on the First and Third Claims for Relief. ECF No. 873. Plaintiffs have included the First Claim for Relief in the 5SC for informational purposes only. *See* ECF No. 1045 at 19.

The Court has reviewed the factual and procedural history of this case in painstaking detail in prior orders. *See* ECF No. 1069 at 5-15. Certain events are of particular importance to the present motion. On July 30, 2015, Reclamation re-initiated consultation with FWS on the execution of two sets of long-term water delivery contracts: the Sacramento River Settlement ("SRS") contracts and the Delta-Mendota Canal Unit ("DMC") contracts. Second Declaration of Anastasia T. Leigh ("Second Leigh Decl.") ¶ 3. On December 14, 2015, FWS sent reclamation a Letter of Concurrence ("2015 LOC"), in which FWS concluded that the effects of full SRS and DMC contract deliveries on the threatened delta smelt and its critical habitat were analyzed in FWS's 2008 Biological Opinion on the Long-Term Operations of the Central Valley Project and State Water Project ("2008 FWS OCAP BiOp"). *Id.* at ¶¶ 4-5.

The present motion concerns only the Second and Fourth Claims in the 5SC. The Fourth Claim for Relief alleges FWS's 2015 LOC was the culmination of an inadequate ESA consultation regarding the effects of the SRS and DMC Contract renewals on delta smelt. 5SC at ¶¶ 179-184. The Second Claim for Relief alleges that Reclamation acted unlawfully by accepting the 2015 LOC and implementing the long-term water supply contracts in reliance on the 2015 LOC. *Id.* at ¶¶ 173-178.

Federal Defendants have submitted separate administrative records for the Second and Fourth Claims ("2CAR" and "4CAR", respectively). *See* ECF No. 1084, 1086. Prior to this motion, the 2CAR incorporated the documents included in the 4CAR in full. *See* ECF No. 1097 at 2. Plaintiffs now move for inclusion of certain additional documents in the 2CAR and 4CAR. ECF No. 1096.

## II. LEGAL BACKGROUND

"Under the ESA, the Secretary of the Interior and the Secretary of Commerce are charged with identifying threatened and endangered species and designating critical habitats for those species." *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 779 (9th Cir. 2014) ("*NRDC v. Jewell*") (citing 16 U.S.C. § 1533). FWS and the National Marine Fisheries Service ("NMFS") administer the ESA on behalf of the

Departments of the Interior and Commerce, respectively[2]. *See* 50 C.F.R. §§ 17.11, 222.101(a), 223.102, 402.01(b). Section 7 of the ESA requires federal agencies to ensure that their activities do not jeopardize the continued existence of listed endangered or threatened species or adversely modify those species' critical habitats. 16 U.S.C. § 1536(a)(2); *see also Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1020 (9th Cir. 2012).

Section 7's implementing regulations provide that "[e]ach Federal agency shall review its actions at the earliest possible time to determine whether any action may affect listed species or critical habitat[s]." 50 C.F.R. § 402.14(a). "Once an agency has determined that its action 'may affect' a listed species or critical habitat, the agency must consult, either formally or informally, with the appropriate expert wildlife agency." 681 F.3d at 1027 (internal citation omitted). An agency may avoid the consultation requirement only if it determines that its action will have 'no effect' on a listed species or critical habitat." *Id.* (internal citation omitted). If the wildlife agency determines during informal consultation that the proposed action is "not likely to adversely affect any listed species or critical habitat," formal consultation is not required and the process ends. *Id.* (citing 50 C.F.R. § 402.14(b)(1)). "Thus, actions that have any chance of affecting listed species or critical habitat—even if it is later determined that the actions are 'not likely' to do so—require at least some consultation under the ESA." *Id.* (internal citation omitted).

Formal consultation results in the issuance of a "biological opinion" ("BiOp") by FWS. *See* 16 U.S.C. § 1536(b). If the BiOp concludes that the proposed action would jeopardize the species or destroy or adversely modify critical habitat, *see id.* § 1536(a)(2), then the action may not go forward

---

[2] Generally, FWS has jurisdiction over species of fish that either (1) spend the major portion of their life in fresh water, or (2) spend part of their lives in estuarine waters, if the remaining time is spent in fresh water. *See Cal. State Grange v. Nat'l Marine Fisheries Serv.*, 620 F. Supp. 2d 1111, 1120 n.1 (E.D. Cal. 2008), as corrected (Oct. 31, 2008). NMFS is granted jurisdiction over fish species that (1) spend the major portion of their life in ocean water, or (2) spend part of their lives in estuarine waters, if the remaining portion is spent in ocean water. *Id.* FWS exercises jurisdiction over the delta smelt; NMFS exercises jurisdiction over the winter-run and spring-run Chinook salmon, the latter of which are the subjects of other claims in this case not at issue in the present motion.

unless FWS can suggest a "reasonable and prudent alternative[]" ("RPA") that avoids jeopardy, destruction, or adverse modification. *Id*. § 1536(b)(3)(A). If the BiOp concludes that jeopardy is not likely and that there will not be adverse modification of critical habitat, or that there is a RPA to the agency action that avoids jeopardy and adverse modification, and that the incidental taking of endangered or threatened species will not violate Section 7(a)(2), the consulting agency shall issue an "Incidental Take Statement" ("ITS") which, if followed, exempts the action agency from the prohibition on takings found in Section 9 of the ESA. 16 U.S.C. § 1536(b)(4); *Aluminum Co. of Am. v. Administrator, Bonneville Power Admin.*, 175 F.3d 1156, 1159 (9th Cir. 1999).

Even after consultation is complete, an agency has a duty to reinitiate formal consultation under certain circumstances, including if: "the amount or extent of taking specified in the incidental take statement is exceeded"; "new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered"; or "the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion." 50 C.F.R. § 402.16.

### III. <u>APA RECORD REVIEW RULE</u>

In the context of claims arising under the APA, the scope of judicial review is limited to "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142 (1973). The administrative record is "not necessarily those documents that the agency has compiled and submitted as 'the' administrative record." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal citation omitted). Rather, "'[t]he whole record' includes everything that was before the agency pertaining to the merits of the decision." *Portland Audubon Soc'y v. Endangered Species Comm*., 984 F.2d 1534, 1548 (9th Cir. 1993) (internal citation omitted). "The 'whole' administrative record, therefore, consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.3d at 555 (emphasis added).

> An incomplete record must be viewed as a fictional account of the actual decisionmaking process. When it appears the agency has relied on documents or materials not included in the record, supplementation is appropriate.

*Portland Audubon*, 984 F.2d at 1548 (internal quotations and citations omitted). "A satisfactory explanation of agency action is essential for adequate judicial review, because the focus of judicial review is not on the wisdom of the agency's decision, but on whether the process employed by the agency to reach its decision took into consideration all the relevant facts." *Asarco, Inc. v. U.S. Environmental Protection Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980)."

However, the record does not include "every scrap of paper that could or might have been created" on a subject. *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002).

> A broad application of the phrase "before the agency" would undermine the value of judicial review: Interpreting the word "before" so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless. Thus, to ensure fair review of an agency decision, a reviewing court should have before it neither more nor less information than did the agency when it made its decision.

*Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (internal citations and quotations omitted). The record certainly need not include documents that became available after the agency's decision had already been made ("post-decisional" documents). *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 555 (1978) (judicial review is "limited [] by the time at which the decision was made").

An agency's designation and certification of the administrative record is entitled to a "presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007). This presumption requires courts to presume that public officials have properly discharged their official duties. *Id*. It is the burden of the party seeking to supplement the record to overcome this presumption by producing clear evidence to the contrary. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *McCrary*, 495 F. Supp. 2d at 1041.

**IV. DISCUSSION**

**A.      Document Organization and Documents Not In Dispute.**

The manner by which the parties have presented the documents at issue in this motion has created some confusion for the parties and the Court. The Declaration of Kate S. Poole ("Poole Decl.") lists a number of Documents and/or Document Groups, and attaches them as Exhibits that bear different numbers than the Documents/Document Groups. ECF 1097-1. In addition, some Exhibits are flagged as belonging to multiple document groups. In turn, and with some good reason, Federal Defendants and Defendant Intervenors have responded to the motion by using predominantly the Exhibit numbers, rather than the Document/Document Group numbers. In addition, Federal Defendants have agreed to add certain Exhibits and Documents to the record.

Based on the Court's review of the filings in connection with this motion, the following table explains the relationship between the Documents/Document Groups and the Exhibits attached to the Poole Declaration and lists those documents Federal Defendants have agreed to include in the administrative records: Plaintiffs' Exhibits 1, 2, 4, 6, and 9, as well as Plaintiffs' Document 5. ECF No. 1104 at 6 n.2.

| Document # | Exhibit # | Description | Status |
|---|---|---|---|
| Document 1 | Exhibit 1 | Letter from FWS Field Supervisor to BOR's Central Valley Office Operations Manager responding to BOR's proposed drought response actions (April 8, 2014) | Federal Defendants agree to add to AR. |
| Document 2 | Exhibit 2 | An Updated Conceptual Model of Delta Smelt Biology: Our Evolving Understanding of an Estuarine Fish (January 2015) ("MAST Report"), authored by the Interagency Ecological Program ("IPE"), Management, Analysis, and Synthesis Team ("MAST") | Federal Defendants agree to add to AR. |
| Document Group 3 | Exhibits 3-4, 6[3] | 2014 and 2015 survey results from the Delta Smelt spring Kodiak trawl survey, fall midwater trawl survey, and summer townet survey. | Federal Defendants agree to add Exhibits 4 & 6 to AR; Exhibit 3 |

[3] The Poole Declaration indicates that Document Groups 3 and 13 are represented by Exhibits 4-6. Poole Decl. at ¶¶ 5-7. Because Document Group 3 is described in Plaintiffs' Motion as including only smelt survey data from 2014 and 2015, ECF No. 1097 at 5, the Court assumes that it corresponds to Exhibit 3 (dated December 19, 2015), Exhibit 4 (dated May 19, 2015), and exhibit 6 (dated June 6 2015), but not Exhibit 5 (dated June 2, 2016), which the Court assumes corresponds to Document Group 13.

| | | | is disputed. |
|---|---|---|---|
| Document Group 4 | 2CAR 30170-30622[4] | 2014 and 2015 Smelt Working Group notes and determination memos | Federal Defendants have added these to the 2CAR. *See* 2CAR 30170-30622. Plaintiffs still seek to add these to 4CAR. |
| Document 5 | n/a | State Water Resources Control Board's ("SWRCB") April 6, 2015 Order Modifying an Order That Approved In Part and Denied In Part a Petition For Temporary Urgency Changes to License and Permit Terms and Conditions Requiring Compliance with Delta Water Quality Objectives in Response to Drought Conditions | Federal Defendants agree to add to AR. |
| Document 6 | Exhibit 9 | FWS, et al. presentation at the SWRCB May 20, 2015 Workshop on Drought Activities in the Bay-Delta | Federal Defendants agree to add to AR |
| Document 7 | Exhibit 10 | SWRCB presentation from the May 20, 2015 Public Workshop on Drought Activities in the Bay-Delta | |
| Document 8 | Exhibit 13 | U.S. Department of Interior's ("DOI") Comments Regarding the California SWRCB's Notice of Public Informational Proceeding to Develop Delta Flow Criteria for the Delta Ecosystem Necessary to Protect Public Trust Resources (February 12, 2010) | |
| Document 9 | Exhibit 14 | SWRCB's report on Development of Flow Criteria for the Sacramento-San Joaquin Delta Ecosystem (August 3, 2010) | |
| Document 10 | Exhibit 15 | FWS's First Draft of ESA Biological Opinion on OCAP (Dec. 14, 2011) | |
| Document 11 | Exhibits 16-17 | Draft Five Agency Bay Delta Conservation Plan ("BDCP") Combined Species Scenario Evaluations and Proposed Project Operations (Nov. 12, 2012), and Revised Fish Agency Scenarios for BDCP Operations Development presentation for November 14, 2012 NGO Meeting | |
| Document 12 | Exhibit 18 | BOR and CDWR's Central Valley Project and State Water Project 2016 Drought Contingency Plan for Water Project Operations February-November 2016 (January 6, 2015) ("Drought Contingency Plan") | |
| Document Group 13 | Exhibit 5[5] | 2016 and 2017 survey results from the Delta Smelt spring Kodiak trawl survey, fall midwater trawl survey, and summer townet survey. | |
| Document Group 14 | Exhibits 19-20 | FWS and BOR correspondence regarding BOR's 2016 reinitiation of consultation on OCAP | |
| Document 15 | Exhibit 21 | June 1, 2016, Letter from FWS Pacific Southwest | |

---

[4] The Poole Declaration indicates that Document Groups 4 and 16 are represented by Exhibits 7-8. Poole Decl. at ¶ 8. However, Document Group 4 is described in Plaintiffs' Motion (ECF No. 1097 at 6) as including 2014 and 2015 Smelt Working Group notes and determination memos, but neither Exhibit 7 nor Exhibit 8 bear dates in 2014 or 2015. Elsewhere in the record, Plaintiffs point out that Document Group 4 has already been included in the 2CAR and that, therefore, Plaintiffs only seek to add that Document Group to the 4CAR. Document Group 16 is described as including 2016 and 2017 Smelt Working Group notes and determination memos. ECF No. 1097 at 13. This appears to correspond at least in part to Exhibits 7 and 8, which are dated January 4, 2016 and December 26, 2016 respectively.

[5] *See supra* note 2.

| | | Regional Director to BOR Pacific Southwest Regional Director regarding flows for Delta smelt | |
| Document Group 16 | Exhibits 7-8[6] | 2016 and 2017 Smelt Working Group notes and determination memos | |
| Document 17 | Exhibit 22 | SWRCB presentation, 2006 Bay-Delta Plan Phase II Update: Working Draft Scientific Basis Report (December 7, 2016) | |
| Document 18 | Exhibit 24 | California Natural Resources Agency, Delta Smelt Resiliency Strategy (July 8, 2016) | |
| Document 19 | Exhibit 25 | California Natural Resources Agency, Delta Smelt Resiliency Strategy (July 8, 2016) | |
| Document 20 | Exhibit 28 | SWRCB's Order WR 2015-0043 (January 19, 2016) | |

**B.      Documents/Exhibits that Post-Date the 2015 LOC.**

Plaintiffs move to "complete"[7] the 2CAR with certain documents that post-date the issuance of the 2015 LOC. ECF No. 1097 at 10-15. Federal Defendants and Defendant Intervenors object to their inclusion on numerous, generic grounds. ECF Nos. 1104 at 9-11; 1105 at 9-11; 1106 at 6-7. Defendant Intervenors also raise some specific objections to the documents falling within this category. ECF No. 1105 at 7-9. Unpacking these arguments is not a straightforward process.

As mentioned, the Second Claim for Relief alleges that Reclamation acted unlawfully by accepting the 2015 LOC and implementing the long-term water supply contracts in reliance on the 2015 LOC. *Id.* at ¶¶ 173-178. As Plaintiffs correctly point out, albeit in a footnote in their reply brief,[8] this claim arises directly under the ESA's citizen suit provision and is therefore not limited by the APA's record review rule.[9] The APA provides a right to judicial review for "final agency action for which there

_____

[6] *See supra* note 3.

[7] The Court finds it more appropriate to refer to this as a motion to "supplement" the record, as that is the term utilized by the most relevant authorities.

[8] The notion that the Second Claim arises directly under the ESA's citizen suit provision should not be a mystery to any party to this case. The issue has been discussed. *See* ECF No. 1045 at 21 (dismissing Second Claim for Relief from prior complaint for failure to comply with the ESA citizen suit provision's 60-day notice requirement); 5SC at ¶ 1 (adding jurisdictional allegations explaining that a new 60-day notice letter was sent to Federal Defendants regarding the Second Claim for Relief).

[9] While the Parties stipulated that the Second and Fourth claims will be "resolved on the administrative record," *see* ECF No. 1076 at 2 (the "Parties agree that Plaintiffs' Second and Fourth Claims will be resolved based on the administrative record, and, therefore, discovery is not appropriate as to those claims"), the Court interprets this stipulation as a waiver of the right to discovery, not of the right to assert that the scope of the record should be expanded beyond the date of the final agency action.

is no other adequate remedy in a court." 5 U.S.C. § 704. However, the ESA's citizen suit provision

creates a private right of action allowing individuals to bring suit "to enjoin any person, including the

United States and any other governmental instrumentality or agency . . . who is alleged to be in violation

of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. §

1540(g)(1)(A). In this way, the ESA's citizen suit provision provides "a means by which private parties

may enforce the substantive provisions of the ESA against" federal agencies. *Bennett v. Spear*, 520 U.S.

154, 173 (1997). A suit "to compel agencies to comply with the substantive provisions of the ESA

arise[s] under the ESA citizen suit provision, and not the APA." *Washington Toxics Coal. v. EPA*, 413

F.3d 1024, 1034 (9th Cir. 2005); *see also W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 481

(9th Cir. 2011) ("We review claims brought under the ESA under the citizen-suit provision of the ESA

or, when the citizen-suit provision is unavailable, under the APA."). For claims that arise directly under

the ESA, the APA's record review provision does not apply and "evidence outside the administrative

record [may be considered] for the limited purposes of reviewing Plaintiffs' ESA claim." *Kraayenbrink*,

632 F.3d at 497; *Yurok Tribe v. United States Bureau of Reclamation*, 231 F. Supp. 3d 450, 467 (N.D.

Cal. 2017).[10]

    The Second Claim alleges that "by executing and implementing the long-term water supply

renewal contracts described above, in reliance on what it knew or should have known to be faulty

analysis by the FWS," 5SC at ¶ 177, the Bureau is failing to comply with ESA § 7(a)(2)'s command to

"insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize

---

[10] There has been some debate over whether post-*Kraayenbrink* Ninth Circuit authority overrules *Washington Toxics* and *Kraayenbrink. See Yurok Tribe*, 231 F. Supp. 3d at 469; *Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv*., 230 F. Supp. 3d 1106, 1123-25 (N.D. Cal. 2017); *see also Ellis v. Housenger*, No. C-13-1266 MMC, 2015 WL 3660079, at *3 (N.D. Cal. June 12, 2015). This Court agrees with the reasoning provided by the district courts in *Yurok Tribe* and *Hoopa Valley Tribe* both of which held that while the APA's <u>standard of review</u> applies to claims arising directly under the ESA because the ESA provides no standard of review, the APA's <u>record review limitations do not apply</u>, so evidence outside the administrative record may be considered. *Yurok Tribe*, 231 F. Supp. 3d at 469; *Hoopa Valley Tribe*, 230 F. Supp. 3d at 1123-25; *see also Oregon Nat. Desert Ass'n v. Kimbell*, 593 F. Supp. 2d 1217, 1220 (D. Or. 2009); *but see Wildwest Inst., v. Ashe*, No. CV 13-6-M-DLC, 2013 WL 12134034, at *2 (D. Mont. Oct. 18, 2013) (refusing to interpret *Kraayenbrink* as precluding application of APA record review principles to ESA claims and requiring Plaintiffs demonstrate proposed supplemental documents fall under one of the four exceptions articulated by the court in *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)).

the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2). This obligation to insure avoidance of jeopardy is a substantive obligation under the ESA. *See Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1415 (9th Cir. 1990) (explaining that "while consultation with the FWS may have satisfied the [action agency's] procedural obligations under the ESA, the [action agency] may not rely solely on a FWS biological opinion to establish conclusively its compliance with its substantive obligations under section 7(a)(2)"). As mentioned, under *Washington Toxics*, a suit to enforce a substantive obligation under the ESA arises under the ESA's citizen suit provision. *Washington Toxics*, 413 F.3d at 1034.

With respect to the request to augment the record in connection with the Second Claim for Relief in the 5SC, however, the analysis does not end there. The evidence for which supplementation is requested still must be relevant to the claim. *See Wildearth Guardians v. U.S. Fed. Emergency Mgmt. Agency*, No. CV 10-863-PHX-MHM, 2011 WL 905656, at *3 (D. Ariz. Mar. 15, 2011) (limiting requests to supplement the record to evidence that is "relevant to the question of whether relief should be granted"). Plaintiffs correctly point out that review of the Second Claim for Relief is governed by the standards set forth in *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1415 (9th Cir. 1990), and its progeny. After ESA consultation concludes, the "action agency" (in this case, Reclamation), must determine whether and in what manner it may proceed with its proposed action (in this case, continued implementation of the SRS and DMC contracts). *See* 50 C.F.R. § 402.15(a) ("Following the issuance of a biological opinion, the Federal agency shall determine whether and in what manner to proceed with the action in light of its section 7 obligations and the Service's biological opinion."). In making its determination, the action agency "may not rely solely on a FWS biological opinion to establish conclusively its compliance with its substantive obligations under [ESA] section 7(a)(2)." *Pyramid Lake*, 898 F.2d at 1415. In *City of Tacoma v. Fed. Energy Regulatory Comm'n*, 460 F.3d 53, 76 (D.C. Cir. 2006), the D.C. Circuit summarized succinctly the relevant caselaw, relying on

Ninth Circuit authority including *Pyramid Lake*:

> [The] interagency consultation process reflects Congress's awareness that expert agencies (such as the [NMFS] and [FWS]) are far more knowledgeable than other federal agencies about the precise conditions that pose a threat to listed species, and that those expert agencies are in the best position to make discretionary factual determinations about whether a proposed agency action will create a problem for a listed species and what measures might be appropriate to protect the species. Congress's recognition of this expertise suggests that Congress intended the action agency to defer, at least to some extent, to the determinations of the consultant agency, a point the Supreme Court recognized in *Bennett v. Spear*, 520 U.S. 154, 169-170 (1997).

> Accordingly, when we are reviewing the decision of an action agency to rely on a [consultation opinion], the focus of our review is quite different than when we are reviewing a [consultation opinion] directly. In the former case, the critical question is whether the action agency's reliance was arbitrary and capricious, not whether the [consultation opinion] itself is somehow flawed. *Aluminum Co. of Am. v. Adm'r, Bonneville Power Admin.*, 175 F.3d 1156, 1160 (9th Cir. 1999); *Pyramid Lake* [], 898 F.2d [at] 1415 []; *Stop H-3 Ass'n v. Dole*, 740 F.2d 1442, 1460 (9th Cir. 1984); *cf. Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 790 (9th Cir. 2005) (direct review of a BiOp). Of course, the two inquiries overlap to some extent, because reliance on a facially flawed BiOp would likely be arbitrary and capricious, but the action agency "need not undertake a separate, independent analysis" of the issues addressed in the BiOp. *Aluminum Co.*, 175 F.3d at 1161. In fact, if the law required the action agency to undertake an independent analysis, then the expertise of the consultant agency would be seriously undermined. Yet the action agency must not blindly adopt the conclusions of the consultant agency, citing that agency's expertise. *Id*. Rather, the ultimate responsibility for compliance with the ESA falls on the action agency. 16 U.S.C. § 1536(a)(1)-(2). In *Pyramid Lake*, the Ninth Circuit balanced these two somewhat inconsistent principles and articulated the following rule:

>> [E]ven when the [consultant agency's] opinion is based on "admittedly weak" information, another agency's reliance on that opinion will satisfy its obligations under the Act if a challenging party can point to no "new" information—i.e., information the [consultant agency] did not take into account—which challenges the opinion's conclusions.

> 898 F.2d at 1415; *see also Defenders of Wildlife v. U.S. EPA*, 420 F.3d 946, 959, 976 (9th Cir. 2005); *Stop H–3 Ass'n*, 740 F.2d at 1459-60.

*City of Tacoma*, 460 F.3d at 75-76. In *City of Tacoma*, the D.C. Circuit rejected the claim that the action

agency in that case, FERC, was liable under the ESA, finding that the City had not "presented FERC

with new information that was unavailable to [NMFS] or [FWS] and that would give FERC a basis for doubting the expert conclusions in the BiOps those agencies prepared." *Id.* at 76.

Here, Plaintiffs argue that *Pyramid Lake*, coupled with their theory that the Bureau's substantive violation of the ESA is "ongoing," combine to extend the temporal scope of the administrative record beyond the date on which the 2015 LOC issued. *See* ECF Nos. 1097 at 10-11; 1108 at 6-8. Plaintiffs' theory on this point cannot withstand scrutiny. As mentioned, the Second Claim for Relief alleges that Reclamation acted unlawfully by accepting the 2015 LOC and implementing the long-term water supply contracts in reliance on the 2015 LOC. *Id.* at ¶¶ 173-178. The logical trigger date for such a claim is the issuance of the 2015 LOC itself on December 14, 2015. Under *Pyramid Lake*, Reclamation's reliance on the 2015 LOC would violate the law if either (1) the 2015 LOC is facially flawed or (2) a challenging party can point to new information FWS did not take into account which challenges the opinion's conclusions. *See Pyramid Lake*, 898 F.2d at 1415. Contrary to Plaintiffs unsupported assertion, this type of claim <u>must</u> be temporally limited to the acceptance of the consultation document; to hold otherwise would eviscerate the separate standard that applies to the re-initiation of consultation.

Even after consultation is complete, an agency has a duty to reinitiate formal consultation under certain circumstances, including if: "the amount or extent of taking specified in the incidental take statement is exceeded"; "new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered"; or "the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion." 50 C.F.R. § 402.16. Even assuming, *arguendo*, Plaintiffs Second Claim for Relief qualifies for treatment as an "ongoing action"[11] because Reclamation continues

---

[11] The Court does not find it necessary to fully unpack the "ongoing action" issue here. However, the Court makes the following points to address arguments raised in connection with the pending motion. First, in a Memorandum Decision and Order issued on October 20, 2016, this Court addressed Defendants' motions to dismiss claims in the Fourth Supplemental Complaint ("4SC"). ECF No. 1045 ("October 20, 2016 Order"). The Second Claim for Relief in the 4SC alleged that the Bureau "has failed and is failing to perform its affirmative obligation to insure that its actions will not jeopardize the continued existence of the delta smelt, in violation of ESA § 7(a)(2)," by relying on a 2005 biological opinion issued by FWS

12

to implement the contracts pursuant to the 2015 LOC, absent from the Second Claim for Relief is any

allegation that Reclamation failed to re-initiate consultation with FWS.[12] To allow Plaintiffs to

circumvent the standard set forth in 50 C.F.R. § 402.16 (and the caselaw applying that regulation)

simply because the action in question is "ongoing" would fly in the face of numerous cases applying the

---

regarding impacts of the CVP and SWP on delta smelt ("2005 FWS OCAP BiOp"). ECF No. 1020 ¶¶ 173-174. The Court found, and Plaintiffs did not appear to dispute, that these allegations were moot in light of the fact that FWS issued the 2008 FWS OCAP BiOp, which superseded and in large part rejected the 2005 FWS OCAP BiOp. ECF No. 1045 at 20. However, the Court refused to find the Second Claim for Relief moot in its entirety, pointing to other allegations that addressed issues beyond the issuance by FWS and acceptance by Reclamation of the 2005 FWS OCAP BiOp. For example, in paragraph 175 of the 4SC, Plaintiffs alleged:

> [T]he Bureau has failed and is failing to comply with ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2), by executing and implementing the long-term water supply renewal contracts described above, in reliance on what it knew or should have known to be faulty analysis by the FWS.

Paragraph 15 of the 4SC also alleged that Reclamation unlawfully limited the scope of its 2015 reinitiated consultation with FWS by "requesting only that FWS concur with [Reclamation's] assessment that the effects of the contracts were analyzed in the 2008 FWS [Smelt] OCAP BiOp," even though the Ninth Circuit had ruled that the 2008 FWS Smelt OCAP BiOp "merely assesses the general effects of the [system-wide OCAP]" and did not address Reclamation's "decision to renew the specific contracts" at issue. The 4SC further alleged that Reclamation undermined its 2015 FWS consultation by representing to FWS "that [Reclamation] lacked authority to change the terms in the SRS contracts for the benefit of the delta smelt," despite the Ninth Circuit's directly contrary ruling. 4SC ¶¶15-16, 103-05 (citing *NRDC v. Jewell*, 749 F.3d at 785). The Court found these allegations were not moot, because they "assert[ed] wrongs that have not been corrected." ECF No. 1045 at 21. This finding, however, was limited to the issue of mootness. It does not dispose of the matter at hand: whether and to what extent the "ongoing action" issue influences the scope of the administrative record.

Even earlier in this litigation, in the context of cross motions for summary judgment decided in 2008, the SRS Contractors argued that Plaintiffs' allegation that the Bureau's ongoing performance under the contracts (i.e., delivery of water to the contractors) violates the Bureau's substantive obligations to avoid jeopardy and adverse critical habitat modification, fails to identify an "agency action" reviewable under the ESA or APA. *See* ECF No. 761 at 21. The Court rejected this argument after reviewing a line of cases including *Environmental Protection Information Center v. Simpson Timber Co.*, 255 F.3d 1073, 1082 (9th Cir. 2001) ("*EPIC*"), *Washington Toxics*, 413 F.3d at 1033, and *Pacific Rivers Council v. Thomas*, 30 F.3d 1050, 1053 (9th Cir. 1994). These cases, as well as related cases such as *Natural Resources Defense Council v. Houston*, 146 F.3d 1118, 1126 (9th Cir. 1998), applying the ongoing action concept to executed contracts, were explored in great detail in the Court's October 20, 2016 and February 23, 2017 Orders. ECF Nos. 1045 at 30-34; 1069 at 16-26. The Court does not find it necessary to review that caselaw in detail here. What is important is that all of these cases concern whether and to what extent an action agency has an obligation to consult or re-consult under ESA when implementing an ongoing project, an inquiry that, according to the cases, turns on the extent to which the action agency retains discretion over the action in a manner that permits the action agency to take steps that would inure to the benefit of the listed species. *See Nat. Res. Def. Council v. Norton*, 236 F. Supp. 3d 1198, 1211-1218 (E.D. Cal. 2017). The "ongoing action" cases do not discuss the distinct issue raised by *Pyramid Lake*: whether and to what extent an action agency, such as the Bureau, may rely on a consultation document (*e.g.*, a biological opinion or letter of concurrence) issued by the FWS or NMFS.

---

[12] Also absent from the Second Claim for Relief is any allegation based upon or invoking APA Section 706(1), which permits a cause of action to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) (when a plaintiff seeks to compel agency action unlawfully withheld or unreasonably delayed "review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record"); *S.F. Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) ("As this case concerns agency inaction, there can be no final agency action that closes the administrative record or explains the agency's actions").

re-initiation standard to ongoing agency actions. *See, e.g.*, *EPIC*, 255 F.3d at 1076. Put another way, under *Pyramid Lake* an action agency may be held to account for its decision to adopt a consultation document based upon the information it had before it at the time of adoption. Under 50 C.F.R. § 402.16, information that comes to light after the time of adoption may trigger the duty to re-initiate consultation. Because the latter form of claim is not alleged in the Second Cause of Action, documents that post-date the 2015 LOC are not relevant to the Second Claim for Relief and supplementation with them will not be permitted.[13] Based on the Court's understanding of the Documents offered for supplementation, this means the motion to supplement the 2CAR with the following Documents/Document Groups is DENIED:

| Document # | Exhibit # | Description |
|---|---|---|
| Document 12 | Exhibit 18 | BOR and CDWR's Central Valley Project and State Water Project 2016 Drought Contingency Plan for Water Project Operations February-November 2016 (January 6, 2015) ("Drought Contingency Plan") |
| Document Group 13 | Exhibit 5 | 2016 and 2017 survey results from the Delta Smelt spring Kodiak trawl survey, fall midwater trawl survey, and summer townet survey. |
| Document Group 14 | Exhibits 19-20 | FWS and BOR correspondence regarding BOR's 2016 reinitiation of consultation on OCAP |
| Document 15 | Exhibit 21 | June 1, 2016, Letter from FWS Pacific Southwest Regional Director to BOR Pacific Southwest Regional Director regarding flows for Delta smelt |
| Document Group 16 | Exhibits 7-8 | 2016 and 2017 Smelt Working Group notes and determination memos |
| Document 17 | Exhibit 22 | SWRCB presentation, 2006 Bay-Delta Plan Phase II Update: Working Draft Scientific Basis Report (December 7, 2016) |
| Document 18 | Exhibit 24 | California Natural Resources Agency, Delta Smelt Resiliency Strategy (July 8, 2016) |
| Document 19 | Exhibit 25 | California Natural Resources Agency, Delta Smelt Resiliency Strategy (July 8, 2016) |
| Document 20 | Exhibit 28 | SWRCB's Order WR 2015-0043 (January 19, 2016) |

## C.   **Remaining Documents/Exhibits in Dispute**

The following Documents/Document Groups remain in dispute:

| Document # | Exhibit # | Description | Status |
|---|---|---|---|
| Document Group 3 | Exhibits 3-4, 6 | 2014 and 2015 survey results from the Delta Smelt spring Kodiak trawl survey, fall midwater trawl survey, and summer townet survey. | Federal Defendants agree to add Exhibits 4 & 6 to AR; Exhibit 3 |

---

[13] This is not an invitation to engage in another round of amendment, which will not be permitted at this stage of the case.

14

| | | | is disputed. |
|---|---|---|---|
| Document Group 4 | 2CAR 30170-30622 | 2014 and 2015 Smelt Working Group notes and determination memos | Federal Defendants have added these to the AR for the Second Claim for Relief. See 2nd Claim AR 30170-30622. Plaintiffs still seek to add these to the AR for the Fourth Claim for Relief. |
| Document 7 | Exhibit 10 | SWRCB presentation from the May 20, 2015 Public Workshop on Drought Activities in the Bay-Delta | |
| Document 8 | Exhibit 13 | U.S. Department of Interior's ("DOI") Comments Regarding the California SWRCB's Notice of Public Informational Proceeding to Develop Delta Flow Criteria for the Delta Ecosystem Necessary to Protect Public Trust Resources (February 12, 2010) | |
| Document 9 | Exhibit 14 | SWRCB's report on Development of Flow Criteria for the Sacramento-San Joaquin Delta Ecosystem (August 3, 2010) | |
| Document 10 | Exhibit 15 | FWS's First Draft of ESA Biological Opinion on OCAP (Dec. 14, 2011) | |
| Document 11 | Exhibits 16-17 | Draft Five Agency Bay Delta Conservation Plan ("BDCP") Combined Species Scenario Evaluations and Proposed Project Operations (Nov. 12, 2012), and Revised Fish Agency Scenarios for BDCP Operations Development presentation for November 14, 2012 NGO Meeting | |

Except as otherwise noted, Plaintiffs seek supplementation of both the 2CAR and 4CAR with each of the Documents listed above. The reasoning set forth in the previous section has consequences for Plaintiffs' motion to supplement the 2CAR. Because the Second Claim for Relief arises under the ESA's citizen suit provision, that claim is not limited by the record review restrictions applicable to APA claims. To the extent the remaining Documents pre-date the 2015 LOC, they may be considered in the context of the Second Claim for Relief so long as they are relevant to that claim.

- **Document Group 3 (Exhibit 3): Fall Midwater Trawl 2015 Annual Fish Abundance Summary (December 18, 2015)**

Plaintiffs seek to have this document added to the 2CAR. Federal Defendants already have agreed to add two documents to the 2CAR from within Document Group 3: Exhibit 4, a document bearing the subject line "2105 Index of Delta Smelt Relative Abundance from the Spring Kodiak Trawl," dated May 19, 2015; and Exhibit 6, a document bearing the subject line "2015 Summer Townet Survey Age-0 Delta Smelt Abundance Index," dated June 25, 2015. Federal Defendants refuse, however

15

to include Exhibit 3, a similar document bearing the subject line "Fall Midwater Trawl 2015 Annual Fish Abundance Summary," dated December 18, 2015, simply because it post-dates the issuance of the LOC by four days. ECF No. 1104 at 10. The Court agrees with Plaintiffs that this is not a reasonable basis to distinguish this survey information from the others Federal Defendants have deemed appropriate for supplementation. While the 2015 LOC issued December 14, 2015, no document in the record precisely outlines when Reclamation "accepted" it and/or acted upon it. While in light of the reasoning in the previous section, documents that post date Reclamation's acceptance of the 2015 LOC are not relevant to the Second Claim for Relief, the Court finds it impossible to justify excluding a document created within days of the issuance of the 2015 LOC simply on Reclamation's unsupported suggestion that Reclamation accepted the LOC on the very same day of its issuance. The motion to supplement the 2CAR with Exhibit 3 is **GRANTED**.

- **Document Group 4 – 2014 and 2015 Smelt Working Group Notes.**

    The Smelt Working Group ("SWG") consists of experts in delta smelt biology from Reclamation, FWS, and other state and federal agencies. Poole Decl. ¶ 8. These SWG Notes have been included in the 2CAR. *See* 2CAR 30170-30622. Plaintiffs argue that there is no reasonable explanation why they would be included in the 2CAR, which amounts to a concession that the documents were considered by Reclamation, but not in the 4CAR. ECF No. 1108 at 4. Plaintiffs point out that FWS scientists participate in the SWG and FWS relies on the recommendations of the SWG to inform its decision in connection with the various BiOps at issue in this case. Poole Decl. ¶ 8. Defendants offer no response to this argument. The Court finds Plaintiffs' position compelling and agrees that there is no reasonable basis for the inclusion of these documents in the 2CAR but the exclusion of them from the 4CAR. Accordingly, the motion to supplement the 4CAR with Document Group 4 is **GRANTED**.

- **Document 7 (Exhibit 10) - SWRCB presentation from the May 20, 2015 Public Workshop on Drought Activities in the Bay-Delta**

    Plaintiffs seek inclusion of the remaining documents in both the 2CAR and the 4CAR. As

mentioned, the standard for the inclusion of a document in the 2CAR is relevance, which under *Pyramid Lake* boils down to whether or not the document could constitute information FWS did not take into account which challenges the 2015 LOC's conclusions. *See Pyramid Lake*, 898 F.2d at 1415. Document 7/Exhibit 10 satisfies this threshold requirement, at least for purposes of this motion. The Document shows how upstream water use and diversions from the Sacramento River under Temporary Urgency Change Petitions ("TUCP") resulted in reduced downstream Delta outflow during 2014 and 2015. *See* Poole Decl. Ex. 10 at slides 4, 10-13. It is Plaintiffs' position that the reduced outflows occasioned by the TUCPs in 2014 and 2015 harmed delta smelt and that neither FWS nor the Bureau adequately took the TUCPs into consideration in the context of the issuance and acceptance of the 2015 LOC. *See generally* ECF No. 1097 at 8. Document 7/Exhibit 10 is arguably relevant to this theory, so Plaintiffs' motion to supplement the 2CAR with this Document is **GRANTED**. Whether and to what extent the Court finds the Document relevant and/or worthy of weight on summary judgment is a separate question.

Unlike the 2CAR, the 4CAR is limited by the APA's record review rules. As mentioned, "[t]he 'whole' administrative record . . . consists of all documents and materials *directly or indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.3d at 555 (emphasis added). Plaintiffs argue that Document 7/Exhibit 10 should be added to the 4CAR because representatives from both Reclamation and FWS were scheduled to attend the workshop at which SWRCB gave the presentation. ECF No. 1097 at 8; Poole Decl. ¶ 9, Ex. 12. In support of this assertion, Plaintiffs first cite *Southeast Alaska Conservation Council v. Federal Highway Administration*, No. 1:06-CV-00009 JWS, 2007 WL 2988013 (D. Alaska Oct. 10, 2007) ("*SACC*"). In *SACC*, plaintiffs, who were challenging the construction of a highway near Juneau, moved to supplement the administrative record in connection with a claim governed by the APA's record review rules. *Id*. Specifically, plaintiffs sought inclusion of documents that were contained in the Alaska Department of Transportation's file on the highway project and were relied upon by that state agency in

preparing certain environmental documents, but were excluded from the lead federal agency's administrative record on the ground that the documents were not "before" that agency. *Id*. at \*3. The federal defendants "acknowledge that although [the federal agency] did not prepare the environmental documents, [federal agency] staff 'participated extensively in reviewing and commenting on the documents during the preparation process,' which suggests some of the documents were at least indirectly considered by the [federal agency]." *Id*. The Court does not find *SACC* analogous to the circumstances surrounding Document 7/Exhibit 10. All Plaintiffs claim with respect to that Document is that it was presented at a workshop attended by FWS and Reclamation staff. There is no evidence that FWS staff participated in reviewing or commenting on that presentation, let alone the extensive review and comment present in *SACC*.

Plaintiffs next cite *Oceana, Inc. v. Pritzker*, No. 16CV06784LHKSVK, 2017 WL 2670733 (N.D. Cal. June 21, 2017). In that case, plaintiffs challenged a rule setting annual catch limits for a population of anchovy. *Id*. at \*1. Plaintiffs sought supplementation of the record with several sets of information, including anchovy population data collected during before the issuance of the rule and drafts of a paper based upon that data, the final version of which was published after the issuance of the rule. *Id*. at \*1-\*3. The district court granted the motion to supplement as to these documents, finding that staff from the defendant federal agency reported on the underlying data before the final rule was published and that a member of the team that prepared the final rule attended a meeting at which the data was presented. *Id*. at \*3. The district court was not persuaded by defendant's objection that the final report on the data was not presented until several weeks after the final rule was promulgated, finding that agency staff began drafting the final report before the final rule issued. *Id*. Nor was the district court moved by defendant's objection that the agency personnel who prepared the final report on the data "work in a separate office in a different city and are organized as a separate subagency of [defendant federal agency]." *Id*. at \*4. The district court reasoned that "[t]he case law does not consistently articulate who must have considered materials (directly or indirectly) in order to make those materials part of the administrative

record." *Id*. Finding that "a decision-maker can be deemed to have 'constructively considered' materials that, for example, were relied upon by subordinates or materials upon which a report that was considered rely heavily," the district court was "not persuaded that it is sensible to distinguish between materials considered by [the agency's] 'scientific staff' and materials before the individual [agency] employees responsible for developing the Rule." *Id*. Again, however, the Court is not persuaded that the present situation is analogous. In *Oceana* the anchovy population data that was the subject of the motion to augment was obviously central to the agency's decision-making about anchovy catch, rendering it logical to impute constructive consideration on individual agency staffers (even those in offices separate from those responsible for analyzing the population data). The presentation at the SWRCB public workshop is not nearly as obviously pivotal to the consultation that resulted in the issuance of the 2015 LOC. The Court therefore declines to extend *Oceana* to impute consideration of Document 7/Exhibit 10 to FWS. Accordingly, Plaintiffs' motion to augment the 4CAR is **DENIED** as to this Document.

- **Document 9 (Exhibit 14) -SWRCB's report on Development of Flow Criteria for the Sacramento-San Joaquin Delta Ecosystem (August 3, 2010)**

Plaintiffs point out, correctly, that the acknowledgements section of this Document indicates that at least portions of the Document were reviewed by Reclamation and FWS staff. *See* Poole Decl. Ex. 14 at ECF p. 5.

With respect to the addition of this document to the 2CAR, the question is again one of relevance. Among other things, the Document concludes that "[t]he best available science suggests that current flows are insufficient to protect public trust resources." *Id*. at 2. The delta smelt is specifically referenced as a public trust resource. *See id*. at 8, 43. The Court cannot at this time find this Documents irrelevant, so Plaintiffs' motion to augment the 2CAR with Document 9/Exhibit 14 is **GRANTED**. Again, whether and to what extent it is worthy of weight on summary judgment is a separate question.

With respect to the addition of this Document to the 4CAR, Plaintiffs again rely on *SACC* and *Oceana*. While the acknowledgements section of the Document indicates Reclamation and FWS staff

reviewed some sections of the report, there is no information indicating which agency staff reviewed the report or which sections were reviewed. Absent that information, Plaintiffs have not met their burden to justify supplementation. Accordingly, the motion to supplement the 4CAR with Document 9/Exhibit 14 is **DENIED**.

- **Document 8 (Exhibit 13) - U.S. Department of Interior's ("DOI") Comments Regarding the California SWRCB's Notice of Public Informational Proceeding to Develop Delta Flow Criteria for the Delta Ecosystem Necessary to Protect Public Trust Resources (February 12, 2010)**

This Document consists of comments sent to the State Water Resources Control Board on that state agency's development of flow criteria designed to protect public trust resources (which include delta smelt). Poole Decl. Ex 13 at 4, 6-8, 31-36. The comments were submitted on behalf of both Reclamation and FWS. *Id*.

This Document is appropriate for addition to the 2CAR because it is arguably relevant to Plaintiffs' claim. It demonstrates why Delta flows "must be sufficient to support successful spawning, larval and juvenile transport, rearing, and adult migration of Delta fish," and documents the ongoing decline of delta smelt abundance. *See id*. The Court cannot at this time find this Document irrelevant, so Plaintiffs' motion to supplement the 2CAR with Document 8/Exhibit 13 is **GRANTED**.

With respect to its addition to the 4CAR, Plaintiffs again cite *Oceana* to argue that there is "no basis for distinguishing between the staff who worked on and considered those documents and other employees who worked on the consultation." ECF No. 1108 at 5. In this instance, the Court agrees with Plaintiffs. This Document contains information that bears directly on the impact of flow conditions on delta smelt. Although its exact authorship is unclear, it was submitted by the parent agency of both FWS and Reclamation on behalf of both. Under these circumstances, the Court is "not persuaded that it is sensible to distinguish between materials" ostensibly authored by the parent agency "and materials before the individual [agency] employees responsible for developing" the consultation documents. *See Oceana*, 2017 WL 2670733 at *4. The motion to supplement the 4CAR is **GRANTED** as to this

Document.

- **Document 10 (Exhibit 15) - FWS's First Draft of ESA Biological Opinion on OCAP (Dec. 14, 2011)**

This Document is a public draft of a biological opinion (dated December 14, 2011), authored by FWS for Reclamation's attention, addressing the impacts CVP and SWP operations on delta smelt. The Document is at least arguably relevant to Plaintiffs' Second Claim for Relief because it indicates that upstream diversions reduce Delta smelt habitat to the detriment of the species. Poole Decl. Ex. 15 at 27, 141, 143, 177, 285-90. Accordingly, Plaintiffs request to add this Document to the 2CAR is **GRANTED**.

With respect to the 4CAR, the Court finds Federal Defendants' general contention that the document was not considered by FWS in the context of the consultation that led to the 2015 LOC to be beyond credulity. The 2015 LOC makes reference to the then-operative Biological Opinion that the draft would have updated. The draft is just too closely related to the issues presented by the challenged consultation to exclude from the 4CAR. Accordingly, Plaintiffs request to add this document to the 4CAR is **GRANTED**.

- **Document 11 (Exhibits 16-17) - Draft Five Agency Bay Delta Conservation Plan ("BDCP") Combined Species Scenario Evaluations and Proposed Project Operations (Nov. 12, 2012), and Revised Fish Agency Scenarios for BDCP Operations Development presentation for November 14, 2012 NGO Meeting**

Document 11/Exhibits 16-17 were created in the context of the Bay Delta Conservation Plan process, one purpose of which was to examine alternative means of water conveyance of through the delta. *See* 73 Fed. Reg. 4178, 4178-79 (Jan. 24, 2008). Both FWS and BOR were members of the planning committee that participated in drafting the Documents in question. Plaintiffs claim that the Documents show FWS and BOR were aware in 2012 of the need for increased Delta flows to protect Delta smelt. Exhibit 16 provides technical information about water operations scenarios, including information about providing adequate flows for delta smelt. *See* Poole Decl. Ex 16. Exhibit 17 explains how those delta outflow recommendations must be balanced with upstream storage and diversion. *See*

Poole Decl. Ex 17.

As with the other Documents discussed above, the Court finds it appropriate to permit supplementation of the 2CAR with these documents because they are at least arguably relevant to that claim insofar as they may constitute information FWS did not take into account which challenges the 2015 LOC's conclusions. Accordingly, Plaintiffs request to add these Documents to the 2CAR is **GRANTED**.

However, the Court does not find these Documents appropriate for addition to the 4CAR. Although FWS was one of the member agencies that prepared the BDCP evaluation, the connection between the BDCP process and the preparation of the 2015 LOC is not direct enough to warrant supplementation under *Oceana* and/or *SACC*. While certainly related to the ongoing management of the CVP and SWP as it is presently configured, the BDCP is a forward-looking process designed to explore new ways of handling issues in the delta region. The motion to supplement the 4CAR with these Documents is **DENIED**.

## V. <u>CONCLUSION AND ORDER</u>

For the reasons set forth above, Plaintiffs' motion to supplement the record is **GRANTED IN PART AND DENIED IN PART.**

IT IS SO ORDERED.

Dated: __**August 28, 2017**__          _____**/s/ Lawrence J. O'Neill**_____
                                                    UNITED STATES CHIEF DISTRICT JUDGE