**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> RYAN ZINKE, *et al.*, <br><br> Defendants. | **Case No. 1:05-cv-01207-LJO-EPG** <br><br> **ORDER DENYING UNITED STATES' MOTION TO QUASH** <br><br> (ECF No. 1153) <br><br> **ORDER GRANTING PLAINTIFF NRDC'S MOTION TO COMPEL** <br><br> (ECF No. 1154) |

## I.    INTRODUCTION

Plaintiff Natural Resources Defense Council ("NRDC") has subpoenaed the deposition testimony of two employees of the National Marine Fisheries Service ("NMFS"). NMFS is a component of the National Oceanic and Atmospheric Administration ("NOAA"), which is an agency of the U.S. Department of Commerce ("USDOC"). Plaintiffs are seeking the deposition testimony in connection with their Sixth Claim for Relief, asserted against Defendants Sacramento River Settlement ("SRS") Contractors and the U.S. Bureau of Reclamation ("BOR") for the unlawful take of endangered Sacramento River winter-run Chinook salmon and threatened Central Valley spring-run Chinook salmon in violation of Section 9 of the Endangered Species Act ("ESA").

Under the ESA, NMFS is the federal agency charged with overseeing the protection of winter-run and spring-run Chinook salmon. NMFS wrote the ESA-mandated Biological

Opinion ("BiOp") analyzing the effects of the BOR's Central Valley Project ("CVP") operations on Chinook salmon and establishing the reasonable and prudent alternatives ("RPA") that the BOR must perform to avoid jeopardizing the survival and recovery of Chinook salmon. The BiOp also establishes the limit of "incidental take" authorized under the ESA, and requires the BOR to update NMFS periodically on the take caused by CVP operations.

NOAA's Acting General Counsel has refused to permit the two NMFS employees to testify and has moved to quash the subpoenas, claiming that the employees cannot be compelled to obey a subpoena contrary to USDOC's "*Touhy*" regulations. NRDC has filed a motion to compel compliance with the subpoenas, arguing that USDOC's decision to refuse compliance is improper, and the testimony is permitted under the Federal Rules of Civil Procedure.

For the following reasons, the Court denies USDOC's motion to quash, grants NRDC's motion to compel, and imposes certain limitations on the scope of the depositions.

## II.    BACKGROUND

### A.  Subpoenas to Ms. Rea and Dr. Danner

On November 20, 2017, NRDC issued subpoenas for depositions to two NMFS employees, Ms. Maria Rea and Dr. Eric Danner (Ms. Rea and Dr. Danner). (ECF No. 1153-2 at 4-21.) The depositions were noticed for December 11, 2017 (Dr. Danner) and December 13, 2017 (Ms. Rea) in San Francisco, California.[1] (*Id*. at 6, 14.)

Ms. Rea is the Assistant Regional Administrator in the Central Valley Office of the West Coast Region of the NMFS, and Dr. Danner is a Supervisory Research Ecologist

---

[1] The subpoenas for depositions have been re-noticed several times prior to the current noticed depositions scheduled to occur on March 20-21, 2018 in Sacramento, California. (ECF No. 1169.) On December 11, 2017, NRDC re-issued subpoenas for depositions for January 10, 2018 (Ms. Rea) and January 12, 2018 (Dr. Danner) in San Francisco. (ECF Nos. 1160-4 at 2; 1160-5 at 2.) On January 5, 2018, NRDC re-issued subpoenas for depositions for February 13, 2018 (Ms. Rea) and February 15, 2018 (Dr. Danner) in San Francisco. (ECF No. 1153-1 at 23-26.) On January 25, 2018, NRDC re-issued subpoenas for depositions for February 27, 2018 (Ms. Rea) and March 1, 2018 (Dr. Danner) in San Francisco. (ECF Nos. 1160-8 at 2; 1160-9 at 2.)

employed by the NMFS Southwest Fishery Science Center.  The subpoenas directed to Ms. Rea and Dr. Danner sought their deposition testimony as follows:

> NRDC seeks deposition testimony from NMFS employee Maria Rea because, as Assistant Regional Manager in the Central Valley Office of the West Coast Region of NOAA fisheries from at least 2014 until present, she has personal knowledge of and expertise relating to the events underlying NRDC's take claims, including protective Shasta operations in 2014 and 2015, as well as NMFS's analysis of the effects of those events on Chinook salmon. NRDC expects Ms. Rea will testify on topics relevant to these claims, including but not limited to: (1) the condition of endangered winter-run and spring-run Chinook salmon in 2014 and 2015, as compared to other years; (2) the effects of Central Valley Project management and operations on endangered winter-run and spring-run Chinook salmon; (3) the effects of water operations and diversions made by and for SRS contractors on endangered winter-run and spring-run Chinook salmon; (4) the requirements and scope of the 2009 NMFS Biological Opinion on Central Valley Project operations.

***

> NRDC seeks deposition testimony from NMFS employee Eric Danner because, as a fisheries ecologist at the NMFS Southwest Fisheries Science Center, he has personal knowledge of and expertise relating to the biological needs of Chinook salmon, as well as the events underlying NRDC's take claims and NMFS's analysis of those events. For instance, Mr. Danner was a co-author of the Southwest Fisheries Science Center's River Assessment for Forecasting Temperatures ("RAFT") model of temperature-dependent mortality, and a co-author of a peer-reviewed scientific journal publication validating NOAA's estimates of temperature dependent mortality in 2014 and 2015, see Martin et al., Modeling Temperature Dependent Mortality of Winter-Run Sacramento River Chinook Salmon (2016). NRDC expects Mr. Danner will testify on topics relevant to NRDC's take claims, including but not limited to: (1) the water temperature and other biological needs of winter-run and spring-run Chinook salmon spawning, egg incubation, and rearing; (2) temperature dependent mortality, egg-to-fry survival, and other indicators of survival and abundance of winter-run and spring-run Chinook salmon in 2014 and 2015, as compared to other years; (3) the effects of Central Valley Project management and operations on endangered winter-run and spring-run Chinook salmon; (4) the development and results of NMFS's temperature models for Central Valley Project operations in the upper Sacramento River and evaluation of flaws with other existing temperature models.

(ECF No. 1153-2 at 12 ¶ 8, 20-21 ¶ 8.)

\\\

3

## B. Correspondence Between NRDC and NOAA

On November 30, 2017, Kristen L. Gustafson, Acting General Counsel for NOAA in Washington, D.C., responded by letter to NRDC's deposition subpoenas as follows:

> The Department of Commerce, National Oceanic and Atmospheric Administration's (NOAA) Office of General Counsel represents the National Marine Fisheries Service (NMFS). It has been brought to my attention that on November 21, 2017 you transmitted to Judson Feder, Southwest Section, NOAA Office of General Counsel, an electronic mail message which attached subpoenas for the testimony of Maria Rea and Eric Danner, two declarations in support of those subpoenas, and a cover letter. I am respectfully notifying you that the Department of Commerce *Touhy* regulations under 15 C.F.R. Part 15, subpart B, govern demands for the testimony of Department employees. These regulations prohibit Maria Rea and Eric Danner from testifying in the above-referenced litigation on behalf of NRDC.
>
> In each of the two Declarations you provided, there is a description of the subject matter testimony you intend to elicit from Ms. Rea and Mr. Danner. Please note that 15 C.F.R. § 15.18(a) prohibits a Department employee from testifying as an expert or opinion witness for any party other than the United States in legal proceedings in which the United States is a party.

(ECF No. 1153-2 at 23.)

Counsel for NRDC responded to Ms. Gustafson's letter on December 4, 2017, contending that the subpoenas issued to Ms. Rea and Dr. Danner were enforceable under controlling law in the U.S. Court of Appeals for the Ninth Circuit. (ECF No. 1160-10 at 2-3, citing *Exxon Shipping v. U.S. Dept. of Interior*, 34 F.3d 774 (9th Cir. 1994)). In subsequent letters to NRDC counsel dated December 12 and 18, 2017, Ms. Gustafson reiterated that the requested opinion or expert testimony from Ms. Rea and Dr. Danner is "specifically disallowed by the *Touhy* regulations of the Department of Commerce, 15 CFR 15.18(a), in a proceeding involving the United States' response to a request by a party other than the United States." (ECF No. 1153-2 at 24-25.) To the extent that the subpoenas sought factual testimony, Ms. Gustafson stated that she was "not convinced that-such information is not readily available to you from other persons or sources." (*Id.* at 24.) Ms. Gustafson elaborated as follows:

Ms. Rea and Dr. Danner are familiar with NMFS' work to conserve and recover listed marine species, including salmonids, under the Endangered Species Act, but do not possess unique first-person experience with Shasta Dam operations or the recent effects of those operations as would the California Department of Fish and Wildlife employees identified as potential witnesses in your Initial Disclosures.

(*Id.*)

### C. USDOC and NOAA Specially Appear to Quash Subpoenas and Oppose the Motion to Compel

On January 5, 2018, NRDC and the United States participated in an informal telephonic discovery conference with the Court wherein the discovery dispute regarding the subpoenas to Ms. Rea and Dr. Danner were discussed. (ECF No. 1150.) Leave was granted to file discovery motions related to the dispute. (*Id.*)

On January 11, 2018, Bradley H. Oliphant filed a "special appearance of the United States on behalf of the Department of [Commerce] to contest jurisdiction and move to quash employee subpoenas." (ECF No. 1152.) The special appearance provided:

The United States, by and through non-party the United States Department of Commerce, respectfully makes this appearance for the sole purpose of contesting the jurisdiction over the Department in this lawsuit and moving to quash the subpoenas of Department employees Maria Rea and Eric Danner.

(*Id.* at 2.)

On the same day, the "United States, on behalf of non-party the U.S. Department of Commerce, move[d] to quash the subpoenas of Department employees Maria Rea and Eric Danner." (ECF No. 1153.) The motion to quash argued that Ms. Rea and Dr. Danner could not be compelled to testify because the USDOC has not granted permission, and NRDC had not followed the appropriate procedure to challenge USDOC's decision to refuse to allow Ms. Rea and Dr. Danner to testify.

On January 12, 2018, NRDC filed a motion to compel NOAA Acting General Counsel, Ms. Gustafson, in her official capacity, and the USDOC to allow Ms. Rea and Dr. Danner to comply with their deposition subpoenas, and, to the extent necessary, Ms. Rea and Dr. Danner

5

to comply with their deposition subpoenas. (ECF No. 1154.) Pursuant to this Court's Local Rules regarding discovery disputes,[2] NRDC and USDOC filed a joint statement of discovery dispute on February 8, 2018. (ECF No. 1160.) USDOC addressed the merits of its refusal to permit Ms. Rea and Dr. Danner to testify in the joint statement.[3] (*Id.* at 20-25.)

### D. Motion Hearing

A motion hearing was held on February 15, 2018, and the Court heard oral argument concerning USDOC's motion to quash, (ECF No. 1153), and NRDC's motion to compel, (ECF No. 1154). (ECF No. 1165.) Attorneys Oliphant and Nicole Smith appeared in person at oral argument on behalf of USDOC, in addition to Chris Keifer with NOAA's Office of General Counsel. The Court expressed concern as to whether the USDOC or Ms. Gustafson had sufficiently appeared in order for the Court to reach the merits of the agency decision to refuse to allow Ms. Rea and Dr. Danner to testify, and stated that its preferred course of action was for NRDC to file an amended complaint naming the appropriate USDOC official or the agency itself. NRDC expressed a willingness to amend the complaint if it could get assurances that Ms. Gustafson and/or USDOC would file a response to the amended complaint within a timeframe that would permit the depositions to go forward reasonably promptly. The parties were further directed to make written submissions as follows:

> Non-party Department of Commerce, specially appearing solely to contest Plaintiffs' subpoenas of Maria Rea and Eric Danner, agreed to make a written submission by close of business 2/22/2018 concerning how soon it would be able to answer a Third-Party complaint against it and appear before the Court for a hearing. The Department of Commerce shall also state whether it would object to amendment of the complaint in this case. Both parties are further directed to make a submission, jointly or separately, by close of business on 2/22/2018 regarding the proposed scope of testimony of the deponents.

(ECF No. 1166.)

---

[2] CAED-LR 251.

[3] USDOC also maintained an objection to jurisdiction pursuant to Rule 45(c) in the event that NRDC's motion to compel could read to compel NOAA Acting General Counsel, Ms. Gustafson, to act. (ECF No. 1160 at 20 n.14.)

### E. Post-Hearing Developments

On February 16, 2018, NRDC filed a notice indicating that it had served revised deposition subpoenas on Ms. Rea and Dr. Danner. (ECF No. 1169.)  The attached subpoenas noticed the depositions for March 20, 2018 (Ms. Rea) and March 21, 2018 (Dr. Danner) in Sacramento, California. (*Id*. at 9, 15.)

Pursuant to the Court's February 15, 2018 Order, (ECF No. 1166), USDOC filed a statement on February 22, 2018, indicating that it "would not object to amendment of the complaint in this case for the sole purpose of adding a claim which challenges the Department's denial of Plaintiffs' request to depose Ms. Rea and Dr. Danner." (ECF No. 1172 at 2.)  USDOC further stated that it "could file an answer in response to such a limited complaint within two weeks of service of the amended complaint on the Department." (*Id*.)

On the same day, NRDC and USDOC filed a joint statement regarding the scope of potential deposition testimony for Ms. Rea and Dr. Danner. (ECF No. 1173.)   Although USDOC continues to object to the depositions, the parties agreed on certain minimum limitations on the scope of the depositions if they were to proceed. (*Id*. at 3.)  USDOC proposed additional scope limitations, to which NRDC has not agreed. (*Id*.)  USDOC also proposed alternative, written discovery in lieu of depositions, to which NRDC has not agreed. (*Id*. at 8-9.)

### F. Plaintiffs Amend Complaint to Add USDOC, Wilbur Ross, and Kristin L. Gustafon as Defendants

On March 12, 2018, Plaintiffs filed a Sixth Supplemental Complaint adding a Seventh Claim for Injunctive Relief seeking an order requiring USDOC and NOAA Acting General Counsel to allow Ms. Rea and Dr. Danner to testify in compliance with NRDC's subpoenas. (ECF No. 1187, 6th Supp. Compl.)

On March 13, 2018, Defendants USDOC, Wilbur Ross (in his official capacity as Secretary of the U.S. Department of Commerce), and Kristin L. Gustafson (in her official

capacity as Acting General Counsel of NOAA) were served with process in this case. (ECF No. 1189.)

On March 26, 2018, Wilbur Ross and Kristen L. Gustafson filed an answer to the Sixth Supplemental Complaint and the newly-added Seventh claim. (ECF No. 1195.)

On April 6, 2018, USDOC filed a statement regarding the deposition subpoenas. (ECF No. 1199.) The statement provided a detailed explanation for NOAA's decision to refuse to permit the deposition testimony of Ms. Rea and Dr. Danner. (*See id.*) Specifically, USDOC asserted that NOAA reasonably concluded that: 1) topics of the proposed depositions fell within the ambit of unretained expert or opinion testimony or sought factual information that was publicly available; and 2) Plaintiffs seek testimony from NMFS on the same subject matter that is currently under consideration in the on-going consultation on long-term operations of the CVP. (*Id.* 7-11)

Plaintiffs filed a response to the Department of Commerce's Statement Regarding Depositions on April 17, 2018. (ECF No. 1203)

### III.    ALLEGATIONS IN SIXTH CLAIM FOR RELIEF

The instant discovery dispute relates to Plaintiffs' Sixth Claim for Relief, asserted against Defendants Sacramento River Settlement ("SRS") Contractors and the U.S. Bureau of Reclamation ("BOR") for the unlawful take of endangered Sacramento River winter-run Chinook salmon and threatened Central Valley spring-run Chinook salmon in violation of Section 9 of the Endangered Species Act ("ESA"), 16 U.S.C. §1538(a)(1)(B). (ECF No. 1187, 6th Supp. Compl., ¶¶ 66-79, 156-65, 185-95). NRDC's claims arise from long-term water contracts between Defendants BOR and SRS contractors that allow the contractors to divert water from the Sacramento River. (*Id.* ¶¶ 81, 93). Pursuant to the contracts, the SRS contractors divert water from the Sacramento River that has been released by the BOR from the BOR-managed Shasta and Keswick Dams upstream. (*Id.* ¶161).

Chinook salmon require cold water at specific times during the year in order to

successfully reproduce. (*Id*. ¶ 69). The National Marine Fisheries Service Biological Opinion ("BiOp") for BOR's Central Valley water operations mandates that a sufficient volume of cold water be maintained behind Shasta Dam to allow for adequate downstream temperatures for salmonid spawning, egg incubation, and rearing in the summer and fall. (*Id*.)

Plaintiffs allege that BOR's and the SRS contractors' implementation of the long-term contracts in 2014 and 2015 depleted the amount of cold water behind Shasta Dam available during the critical salmon reproductive season in June through October, thereby raising river temperatures to levels lethal to juvenile salmon and eggs and harming juvenile winter-run and spring-run Chinook salmon in violation of the ESA. (*Id*. ¶¶ 22, 75-79,161-65). State and federal agencies estimate that the loss of temperature control led to 95% mortality of the 2014 brood year of winter-run Chinook and 97.9% mortality of the 2015 brood year. (*Id*. ¶¶ 75-79).

## IV. DISCUSSION

### A. USDOC's Objection Regarding Compliance with *Touhy* Regulations

The United States contends that the depositions of its employees should be quashed because the USDOC's *Touhy* regulations govern whether and how the agency's employees may give work-related testimony. It further claims that since the Supreme Court of the United States' decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), ("*Touhy*"), "an unbroken line of authority … directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations." (ECF No. 1153-1 at 5-6, USDOC Mot. to Quash, quoting *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989)).

Under the general "housekeeping" statute, Congress has authorized the head of federal agencies to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301.[4] The regulations promulgated by the USDOC provide for whether and how its employees may give work-related

---

[4] The same statute also provides that it "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301.

testimony or documents. *See* 15 C.F.R. Part 15.11-.18.  Specifically, the pertinent regulation provides that:

> No employee shall in response to a demand, produce any documents, or provide testimony regarding any information relating to, or based upon Department of Commerce documents, or disclose any information or produce materials acquired as part of the performance of that employee's official duties, or because of that employee's official status without the prior authorization of the General Counsel, or the Solicitor, or the appropriate agency counsel.

15 C.F.R. § 15.13.  The regulations further provide that a USDOC employee "may not testify as an expert or opinion witness for any other party other than the United States … in legal proceedings in which the United States is a party." 15 C.F.R. § 15.18.

The United States argues that *Touhy* and its progeny have upheld the validity of these types of regulations and prohibit courts from compelling testimony of agency employees, such as Ms. Rea and Dr. Danner, to testify where they have not been authorized by the agency. Because Ms. Rea and Dr. Danner cannot be compelled to disobey the USDOC's decision and the USDOC's decision to deny authorization is not properly before the court, the United States maintains that the subpoenas for depositions are unenforceable and should be quashed.

In *Exxon Shipping Co. v. U.S. Dep't of Interior*, a federal trial court dismissed a complaint by a company against five federal administrative agencies and their employees seeking to compel discovery in connection to an underlying action arising out of the *Exxon Valdez* oil spill. 34 F.3d at 775 (9th Cir. 1994).  Relying upon the *Touhy* doctrine, the trial court had agreed with the federal government's argument that the Federal Housekeeping Statute, 5 U.S.C. § 301, and accompanying regulations permitted  eight federal employees to refuse to submit to depositions and justified limitations on testimony as to two others. *See id*.  The Ninth Circuit reversed, finding that the *Touhy* doctrine did not support the broad limitations imposed by the trial court.  *Id*. at 776.  The *Exxon* court distinguished its circumstances from those presented in *Touhy*, explaining that the Supreme Court, in *Touhy*, expressly refused to reach the question of the agency head's power to withhold evidence from a court without a specific claim of privilege. *See id*. at 776-77.  In contrast to *Touhy* and Ninth Circuit cases following the

*Touhy* doctrine, the *Exxon* court *could* reach "the ultimate question of federal agencies' authority to withhold discovery, including deposition testimony" because "unlike in *Touhy*, the agencies themselves are named defendants." *Id*. at 777. In other words, because the federal agencies were named defendants in *Exxon*, the merits of the federal agency decisions to withhold deposition testimony were properly before the court and reviewable. *Id*.

Under these circumstances, the Ninth Circuit held in *Exxon* that the Federal Housekeeping Statute, 5 U.S.C. § 301, did not create an executive privilege in litigation, as the trial court had effectively held.[5] *See id*. at 777-78. Acknowledging that the government has a valid interest in conserving its employee resources and in minimizing its involvement in controversial matters unrelated to official business, the *Exxon* court found that the Federal Rules of Civil Procedure are adequate to protect government resources from being misused by private litigants. *See id*. at 779–80 (citing Rules 26(c) and 45(c)(3)). Thus, "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action." *Id*. at 780 ("Under the balancing test authorized by the rules, courts can ensure that the unique interests of the government are adequately considered").

NRDC reads the Ninth Circuit's decision in *Exxon* to mean that a separate APA action is not necessary to challenge an agency's refusal to allow its employees to comply with a federal subpoena. For support that collateral APA proceedings are not necessary, NRDC cites to footnote 11 of *Exxon*, which provides that:

> The APA *also* authorizes judicial review of agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise unlawful." 5 U.S.C. § 706(2)(A) (1982). Because § 301 provides authority for agency heads to issue rules of procedure in dealing with requests for information and testimony, an agency head will still be making the decisions on whether to comply with such requests in the first instance. Thus, review under § 706(2)(A) will be available. However, we acknowledge that collateral APA proceedings can be costly, time-consuming, inconvenient to litigants, and may "effectively eviscerate [ ]" any

---

[5] The *Exxon* court further held limitations on discovery based upon "principles of sovereign immunity" were not applicable "when a federal court exercises its subpoena power against federal officials." *Id*. at 778-79 (citing *In re Boeh*, 25 F.3d at 770).

right to the requested testimony. *In re Recalcitrant Witness Boeh*, 25 F.3d at 770 n. 4 (Norris, J., dissenting) (if the plaintiff had a right to obtain the witness' testimony, "he had a right to obtain it when he needed it, which in this case was immediately, when the trial was still going on"). Therefore, the need for district court review in such instances is all the more compelling.

*Exxon*, 34 F.3d at 780 n.11 (emphasis added).

The Court agrees with NRDC that a collateral APA action is not the only way to obtain review of the agency decision. *See Exxon*, 34 F.3d at 780 n.11 (indicating that review of the agency decision to refuse to produce information under the APA is just one possible method of obtaining judicial review); *In re Boeh*, 25 F.3d 761, 764 n.3 (9th Cir. 1994) (identifying a separate action under the APA or writ of mandamus action as possible vehicles for bringing "Attorney General or the designated 'proper Department official' into court to contest his or her decision not to permit Boeh's testimony"); *Swett v. Schenk*, 792 F.2d 1447, 1452 n.2 (9th Cir. 1986) ("We note, without expressing opinion, that the proper method for challenging NTSB's interpretation of section 835.3(b) and the refusal to testify would seem to be in a direct action against the NTSB pursuant to either 49 U.S.C. § 1903(d) or 5 U.S.C. § 702"). *Exxon* also stands for the principle that, when a federal agency is properly before the Court as a defendant, the Court can review the merits of the agency's decisions to refuse to permit discovery using the Federal Rules of Civil Procedure. *See Exxon*, 34 F.3d at 777 ("Here, unlike in *Touhy*, the agencies themselves are named defendants. Thus, the ultimate question of federal agencies' authority to withhold discovery, including deposition testimony, is squarely at issue.").

NRDC has now filed an amended complaint initiating a direct action against USDOC and the agency officials refusing to permit Ms. Rea and Dr. Danner to testify. Like *Exxon*, the USDOC is now a named defendant in this case. Furthermore, USDOC has filed a motion to quash the subpoenas, opposed NRDC's motion to compel the depositions, advocated in support of the merits of USDOC's decision at oral argument, and has submitted its position regarding the appropriate scope of Ms. Rea and Dr. Danner's depositions should they be permitted to proceed. Under these circumstances, the Court can review the merits of USDOC's decision to refuse to permit the depositions to go forward.

**B. Evaluation of the USDOC'S Reasons for Refusing to Permit the Depositions to Proceed**

The agency has presented two primary objections for why the depositions should not proceed. First, NOAA Acting General Counsel, Ms. Gustafson, stated that applicable agency regulations, 15 C.F.R. § 15.18(a), prohibits its employee from testifying as an expert or opinion witness for any party other than the United States in legal proceedings in which the United States is a party. (ECF No. 1153-2 at 23.) Second, the agency objected that Ms. Rea and Dr. Danner do not possess unique first-person experience (compared to other potential witnesses) with Shasta Dam operations or the recent effects of those operations. (ECF No. 1153-2 at 24.)

i. Expert Opinion Objection

USDOC regulations provide that an agency employee "may not testify as an expert or opinion witness for any other party other than the United States … in legal proceedings in which the United States is a party." 15 C.F.R. § 15.18.

As an initial matter, as explained by the Ninth Circuit in *Exxon*, the federal housekeeping statute, 5 U.S.C. § 301, upon which USDOC's regulation is based, "does not create an independent privilege to withhold government information or shield federal employees from valid subpoenas." *Exxon*, 34 F.3d at at 780 (providing that neither [§ 301]'s text, its legislative history, nor Supreme Court case law supports the government's argument that § 301 authorizes agency heads to withhold documents or testimony from federal courts"). Rather, USDOC's regulations must yield to the federal discovery rules. *See id.* at 779-80.

The Federal Rules of Civil Procedure permit the testimony of non-retained expert witnesses. *See* Fed. R. Civ. P. 26(a)(2)(B)-(C) (providing that a retained expert must provide a written report, but a report is not required for a non-retained expert). While the testimony of unretained experts is permitted in federal litigation, the federal rules contain protections to "prevent private parties from exploiting government employees as tax-supported pools of

experts." *Exxon*, 34 F.3d at 779 (citing Fed. R. Civ. P. 45[d](3)(B)).[6] On this issue, Rule 45 states that: "To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii).

By its plain language, the limitation in Rule 45(d)(3)(B)(ii) applies only when the expert's testimony "does not describe specific occurrences in dispute." Fed. R. Civ. P. 45(d)(3)(B)(ii). Here, Plaintiffs' Sixth Claim implicates issues concerning the effects that water temperature in the upper Sacramento River has on juvenile Chinook salmon and eggs; the extent of harm that juvenile Chinook salmon and eggs suffered in 2014 and 2015; the extent to which that harm was caused by Sacramento River water temperatures; and the extent to which the harmful Sacramento River water temperatures were caused by BOR's and SRS Contractors' releases and/or operations pursuant to the SRS contracts. (ECF No. 1160 at 6.) The subpoena to Ms. Rea seeks her deposition testimony on the following topics:

> (1) the condition of endangered winter-run and spring-run Chinook salmon in 2014 and 2015, as compared to other years;
>
> (2) the effects of Central Valley Project management and operations on endangered winter-run and spring-run Chinook salmon;
>
> (3) the effects of water operations and diversions made by and for SRS contractors on endangered winter-run and spring-run Chinook salmon; and
>
> (4) the requirements and scope of the 2009 NMFS Biological Opinion on Central Valley Project operations.

The subpoena to Dr. Danner seeks his deposition testimony on the following topics:

> (1) the water temperature and other biological needs of winter-run and spring-run Chinook salmon spawning, egg incubation, and rearing;

---

[6] In the version of Federal Rule of Civil Procedure 45 in effect at the time *Exxon* was decided, section (c)(3) was the section applicable to quashing a subpoena causing an undue burden. Rule 45 has since been amended, and the applicable undue burden section is now section (d)(3).

(2) temperature dependent mortality, egg-to-fry survival, and other indicators of survival and abundance of winter-run and spring-run Chinook salmon in 2014 and 2015, as compared to other years;

(3) the effects of Central Valley Project management and operations on endangered winter-run and spring-run Chinook salmon; and

(4) the development and results of NMFS's temperature models for Central Valley Project operations in the upper Sacramento River and evaluation of flaws with other existing temperature models.

The Court finds that the proposed testimony concerns the effects of SRS contract and Shasta operations on Chinook salmon eggs and fry in the upper Sacramento River in 2014 and 2015, and thus, describes the specific occurrences in dispute in the Sixth Claim. Accordingly, the United States has not met its burden in demonstrating that the limitation on unretained expert testimony in Rule 45(d)(3)(B)(ii) is applicable. *See* Fed. R. Civ. P. 45(d)(3)(B)(ii) (a subpoena for an unretained expert's testimony may be quashed when disclosure "does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party").

The Notes of Advisory Committee on Rules (1991 Amendment) provide that this rule was enacted to protect the intellectual property of non-party witnesses:

> Clause [(d)](3)(B)(ii) provides appropriate protection for the intellectual property of the non-party witness; it does not apply to the expert retained by a party, whose information is subject to the provisions of Rule 26(b)(4). A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts. Experts are not exempt from the duty to give evidence, even if they cannot be compelled to prepare themselves to give effective testimony, *e.g., Carter-Wallace, Inc. v. Otte*, 474 F.2d 529 (2d Cir. 1972), but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services. *See generally* Maurer, *Compelling the Expert Witness: Fairness and Utility Under the Federal Rules of Civil Procedure*, 19 GA.L.REV. 71 (1984); Note, Discovery and Testimony of Unretained Experts, 1987 DUKE L.J. 140. Arguably the compulsion to testify can be regarded as a "taking" of intellectual property. The rule establishes the right of such persons to withhold their expertise, at least unless the party seeking it makes the kind of showing required for a conditional denial of a motion to quash as provided in the final sentence of subparagraph (c)(3)(B); that requirement is the same as that

necessary to secure work product under Rule 26(b)(3) and gives assurance of reasonable compensation. The Rule thus approves the accommodation of competing interests exemplified in *United States v. Columbia Broadcasting Systems Inc.*, 666 F.2d 364 (9th Cir. 1982). *See also Wright v. Jeep Corporation*, 547 F. Supp. 871 (E.D. Mich. 1982).

      As stated in *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir. 1976), the district court's discretion in these matters should be informed by "the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and the degree to which the witness is able to show that he has been oppressed by having continually to testify. . . ."

Fed. R. Civ. P. 45 (Adv. Comm. N. 1991 Am.).

The concerns addressed by this rule are not apparent here. NRDC is seeking to depose Ms. Rea and Dr. Danner because "their expertise is intertwined with and predicated on their knowledge of facts relevant to Plaintiffs' Sixth Claim, and the testimony NRDC seeks concerns only opinions that Ms. Rea and Dr. Danner previously formed, in their official capacities, regarding Shasta water operations and their effects on Chinook salmon in 2014 and 2015." (ECF No. 1160 at 15.) These opinions are thus directly at issue in Plaintiffs' Sixth Claim. They are being called as witnesses because of their knowledge of the issues in this case and their previously formed opinions given to Defendants in their course of their work. The opinions at issue are already formed opinions—they are not being asked to create new opinions for Plaintiffs unrelated to their work. No other witness understands the basis for their previously formed opinions and facts gathered in preparing those opinions. Furthermore, the government has not made any showing that these witnesses will be oppressed by continually testifying.

Indeed, Dr. Danner and Ms. Rea will be giving testimony about the expert opinions they have already formed and provided to defendants in the course of their work about the subject matter in this litigation. After all they are experts for Defendants whose job is to provide expert advice on the subject relevant to this litigation. Some of these expert opinions are reflected in

the documents that are part of the administrative record and are already at issue in this case, including the BiOp, the BOR's 2015 modeling of various release schedules for April and May Shasta releases, NMFS's model for determining temperature-dependent mortality associated with various Shasta Dam releases works, and the Martin, *et al*. study of temperature dependent and egg-to-fry mortality for Chinook salmon. Plaintiffs seek to question these witnesses about those opinions and related work done in their service as experts on these issues for these defendants. In this way, their deposition testimony is more akin to questioning an expert who has provided an expert report and asking about the bases of their opinions and facts upon which they relied. Put another way, Plaintiffs seek information regarding these witnesses' expert opinion advising Defendant government agencies related to the underlying issues in this case in order to better understand those opinions. Such testimony is relevant, is not available through another source, and does not unfairly impinge upon government employee's time.

Accordingly, the Court overrules the objection that the depositions should not proceed because USDOC regulations prohibit employees from testifying as an expert or opinion witness for any other party other than the United States in legal proceedings in which the United States is a party.

Additionally, the Court declines to adopt USDOC's proposed limitation on the deposition testimony of Ms. Rea and Dr. Danner that the testimony be limited to factual testimony. Here, the witnesses served as experts gathering facts and rendering opinions to defendants. Questions regarding that work and advice will tread on both the factual research they have done and the expert opinions they have generated in their work.

        **ii.    USDOC's Objection Regarding Ms. Rea and Dr. Danner's First Person Experience with Shasta Dam Operations**

In her correspondence with NRDC, NOAA Acting General Counsel further objected to the depositions proceeding as follows:

> Ms. Rea and Dr. Danner are familiar with NMFS' work to conserve and recover listed marine species, including salmonids, under the Endangered Species Act, but do not possess unique first-person experience with Shasta Dam operations or the recent effects of those operations as would the California Department of Fish and Wildlife employees identified as potential witnesses in your Initial Disclosures.

(ECF No. 1153-2 at 24.)

The Court disagrees that the witnesses' testimony may be precluded for this reason. While the witnesses may not have directly tested the operations, they have gathered information and facts in order to provide expert opinions and advice to Defendants related to the issues in this lawsuit. That information is relevant and discoverable. After all, NMFS is the federal agency charged with overseeing the protection of winter-run and spring-run Chinook salmon. NMFS wrote the ESA-mandated BiOp analyzing the effects of the BOR's Central Valley Project ("CVP") operations on Chinook salmon and establishing the reasonable and prudent alternatives ("RPA") that the BOR must perform to avoid jeopardizing the survival and recovery of Chinook salmon, including limitations on Shasta Reservoir operations to maintain appropriate in-stream temperatures. The BiOp also establishes the limit of "incidental take" authorized under the ESA, and requires the BOR to update NMFS periodically on the take caused by CVP operations. Thus, NMFS has an ongoing role and responsibility to implement the RPA, monitor the status of Chinook salmon, and update protections under the ESA as needed. NFMS is heavily intertwined with this lawsuit.

Again, Ms. Rea is the Assistant Regional Manager in the Central Valley Office of the West Coast Region of NOAA fisheries from at least 2014 until present. Ms. Rea supervised development of the BiOp, and she is currently responsible for overseeing the administration and enforcement of the BiOp. Thus, Ms. Rea has personal knowledge of and expertise relating to the events underlying the Sixth Claim, including protective Shasta operations in 2014 and 2015, as well as NMFS's analysis of the effects of those events on Chinook salmon.

Dr. Danner is a Supervisory Research Ecologist at the NMFS Southwest Fisheries Science Center. Dr. Danner was a co-author of the Southwest Fisheries Science Center's River Assessment for Forecasting Temperatures ("RAFT") model of temperature-dependent

mortality, and a co-author of a peer-reviewed scientific journal publication validating NOAA's estimates of temperature dependent mortality in 2014 and 2015. Therefore, Dr. Danner has personal knowledge of and expertise relating to the biological needs of Chinook salmon, as well as the events underlying the Sixth Claim and NMFS's analysis of those events.

Both witnesses have first hand unique experience regarding their own factual investigation and rendering of expert opinions in their work, expert opinions which are already at issue in this lawsuit. Plaintiffs are entitled to question the witnesses regarding this work and the bases of their findings and opinions. The subpoenaed testimony is relevant to the Plaintiffs' Sixth claim and falls within the permissible scope of discovery in this case.

Accordingly, the Court OVERRULES the agency's objection that Ms. Rea and Dr. Danner do not possess unique first-person experience (compared to other potential witnesses) with Shasta Dam operations or the recent effects of those operations. (ECF No. 1153-2 at 24.)

Because the Court has overruled the two objections advanced by the agency for prohibiting the depositions from proceeding, the Court DENIES the United States' motion to quash (ECF No. 1153). Therefore, the Court GRANTS NRDC's motion to compel and ORDERS the depositions to proceed.

### C. Limitations to Scope of Depositions

Pursuant to the Court's February 15, 2018 order, (ECF No. 1166), NRDC and USDOC have jointly submitted the proposals regarding the scope of deposition testimony of NOAA's NMFS employees Ms. Rea and Dr. Danner.[7] (ECF No. 1173.) USDOC indicates that it agrees to certain limitations on the scope of the depositions proposed by NRDC. However, NRDC and USDOC do not agree on additional limitations proposed by USDOC.

#### i. Stipulated Scope Limitations

NRDC and USDOC agree upon the following limitations, which the Court will hereby adopt and incorporate:

---

[7] In the joint report, USDOC maintains its objection advanced in motion to quash and related filings that NRDC cannot compel Ms. Rea and Dr. Danner to provide testimony because USDOC, pursuant to properly promulgated and otherwise valid *Touhy* regulations, has denied them permission to provide that testimony. The Court overrules this objection for the reasons discussed in this Order.

1. To address NOAA's concerns about intruding on NOAA's ongoing process for developing a new biological opinion on long-term operations of the Central Valley Project and State Water Project, the parties shall not ask Ms. Rea or Dr. Danner questions about the content or status of the reinitiated consultation on the 2009 NMFS Biological Opinion, which reinitiation was requested by the U.S. Bureau of Reclamation ("Reclamation") on August 3, 2016.

2. To address NOAA's concerns about intruding on NOAA's process of evaluating future operations proposed by Reclamation, the parties shall limit questions to operations implemented, and any other operations considered but not implemented, in 2014 and 2015, and how those operations compared to other years.

### ii.    Disputed Scope Limitations

USDOC has also proposed the following additional limitations:

1. Testimony should be limited to factual information, and may not include expert or opinion testimony;

2. The parties shall not ask questions which would require the deponent to form a legal conclusion or provide a legal conclusion, including: whether there was harm or take of salmon in the Sacramento River in 2014 or 2015; whether the incidental take statement limit was exceeded in 2014 or 2015; any alleged causes of such harm or take; the scope of the 2009 Biological Opinion and incidental take statement; the effectiveness of the RPA at avoiding jeopardy; whether any operational scenarios considered but not implemented would have avoided jeopardy; or whether operation of Shasta Dam or water diversions causes take or harm to salmon in the Sacramento River;

3. The parties should be limited to asking which operational scenarios were considered but not implemented in 2014 and 2015, but the parties shall not ask about why specific operational scenarios were not implemented or if any operational scenario not implemented would have been more effective at avoiding jeopardy, or any other questions regarding Ms. Rea's thought process;

4. The parties shall not seek testimony whether the incidental take statement limit was exceeded in 2014 or 2015 or the effectiveness of the RPA at avoiding jeopardy;

5. The parties shall not seek testimony about Dr. Danner's responses to criticisms of the RAFT and Martin models, except to the extent that such responses have already been made available to the public;

20

6. The parties shall not seek testimony from Ms. Rea the regarding the reasons for and manner in which she relied on the models on which the Bureau based its 2014 and 2015 Shasta operations at predicting Sacramento River temperatures;

7. The parties shall limit questions to the time period between when the first allocation letters were sent, February 20, 2014, and when the United States Bureau of Reclamation reinitiated consultation on the Biological Opinion, August 2, 2016; and

8. Plaintiffs should submit further questions in the form of interrogatories to the agency in lieu of requiring deposition testimony.

NRDC has not agreed to these limitations. The Court will now consider USDOC's additional proposed limitations.[8]

### 1. *Limitations Nos. 3 – 7: Deliberative Process Privilege*

USDOC has proposed several limitations intended to protect information protected by the deliberative process privilege. Under Rule 45, "the court for the district where compliance is required must quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(iii).

The deliberative process privilege permits the government to withhold discovery that "reflect advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated." *Hongsermeier v. C.I.R.*, 621 F.3d 890, 904 (9th Cir. 2010) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). To qualify for protection under the deliberative process privilege, the requested discovery "must be both (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988) (quoting *Jordan v. United States Department of Justice*, 591 F.2d 753, 774 (D.C. Cir.1978)). "These twin requirements recognize that the underlying purpose of

---

[8] As to USDOC proposed limitation 1-- that the testimony should be limited to factual information, the Court has already overruled this objection, above.

this privilege is to 'protect the consultative functions of government by maintaining the confidentiality of advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Id.* (quoting *Jordan*, 591 F.2d at 772). The deliberative process privilege "encourages frank and open discussions of ideas, and, hence, improves the decisionmaking process." *Id.* (citing *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 802-03, 104 S.Ct. 1488, 1494, 79 L.Ed.2d 814 (1984)). Factual material that does not reveal the deliberative process is not protected by the privilege. *Id.* (citing *Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir.1983); *Kowack v. U.S. Forest Serv.*, 766 F.3d 1130, 1135 (9th Cir. 2014); *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).

USDOC asserts that the proposed testimony of Ms. Rea and Dr. Danner will implicate the deliberative process privilege because "NMFS is currently in the process of analyzing the biological effects of CVP operations in accordance with 16 U.S.C. § 1536(a)(2), and plans to issue a biological opinion on this subject." (ECF No. 1173 at 6-7, citing declaration of Barry Thom ("Thom Decl."), ECF No. 1160-29 at 2-4 ¶¶ 7, 8, 9). USDOC argues that NRDC is seeking testimony from Ms. Rea and Dr. Danner on the same subject matter that is currently under consideration in the ongoing reconsultation of the biological opinion regarding the coordinated longterm operations of the CVP.

With regard to the reconsultation, NRDC and USDOC have agreed to a limitation that "the parties shall not ask Ms. Rea or Dr. Danner questions about the content or status of the reinitiated consultation on the 2009 NMFS Biological Opinion, which reinitiation was requested by the U.S. Bureau of Reclamation ("Reclamation") on August 3, 2016." Deposition testimony concerning the timeframe prior to the time of initiation of reconsultation logically would not implicate the application of the privilege to the reconsultation. Thus, the limitation already agreed-to by NRDC and the United States is sufficient to address this concern.

Next, USDOC requests that pre-deposition limitations be imposed preventing the parties asking about:

1. Why specific operational scenarios were not implemented or if any operational scenario not implemented would have been more effective at avoiding jeopardy or any other questions regarding Ms. Rea's thought process.

2. Whether the incidental take statement limit was exceeded in 2014 or 2015 or the effectiveness of the RPA at avoiding jeopardy.

3. Dr. Danner's responses to criticisms of the RAFT and Martin models, except to the extent that such responses have already been made available to the public.

4. The reasons for and manner in which Ms. Rea relied on the models on which the Bureau based its 2014 and 2015 Shasta operations at predicting Sacramento River temperatures.

USDOC further proposes a time restriction limiting questions to the time period between when the first allocation letters were sent, February 20, 2014, and when BOR reinitiated consultation on the BiOp, August 3, 2016.

To the extent NRDC is inquiring about NOAA's thought process in reaching particular policy decisions in 2014 and 2015, USDOC states:

> Plaintiffs are also seeking Ms. Rea's testimony regarding the Bureau of Reclamation's 2015 modeling of various release schedules from Shasta Dam that the Bureau of Reclamation submitted to the State Water Resources Control Board, testimony about how those different schedules would have affected salmon and "Ms. Rea's reasons for and manner in which she relied on the models on which the Bureau based its 2014 and 2015 Shasta operations at predicting Sacramento River temperatures." Doc. 1160 at 12.

(ECF No. 1173 at 7.) USDOC argues that "[r]equiring agency employees to opine on the thought process behind selecting a particular policy outcome and other scenarios considered but rejected would have a chilling effect on future deliberations." (ECF No. 1173 at 7-8.)

While it could very well be true that the information sought is deliberative in nature, the information must also be predecisional as to a specific deliberative process in order to be afforded protection under the deliberative process privilege. *See N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) ("The burden of establishing application of the privilege is on the party asserting it. *See* [*Newport Pacific, Inc. v. County of San Diego*,

200 F.R.D. 628, 636 (S.D.Cal. 2001)]"); *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1098 (C.D. Cal. 2005) (requiring an agency to identify role of document in specific deliberative process in order to establish that a document is predecisional for purpose of satisfying deliberative process). In order for the information to qualify as predecisional, "it must have been generated before the adoption of an agency's policy or decision." *F.T.C. v. Warner Commc'ns Inc*., 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir. 1980)); *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 152 (1975) (noting that courts have "uniformly drawn a distinction between predecisional communications, which are privileged, … and communications made after the decision and designed to explain it, which are not"). Furthermore, "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Nat'l Res. Def. Council*, 388 F. Supp. 2d at1098 (quoting *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D.Cal.1998)).

Here, NRDC points out that NMFS has made public communications regarding its review and analysis of 2014 and 2015 operational scenarios and models. NRDC cites to the administrative record in this case, which includes April 15, 2015 draft correspondence from NMFS to BOR titled "Evaluation of Alternatives for Sacramento River Water Temperature Compliance for Winter-Run Chinook Salmon." (ECF No. 1173-1.)

With regard to proposed limitations 3-7, USDOC has not met its burden of showing that these proposed limitations would protect information that is predecisional. As discussed above, NRDC and USDOC have agreed to a limitation that will protect the reconsultation initiated in 2016.[9] Proposed limitations 3-7 appear to be intended to protect information primarily in 2014 and 2015, but NRDC would also like to compare the 2014-2015 to other years. While USDOC has indicated that information it seeks to protect may be deliberative in nature, it has not met its

---

[9] NRDC and USDOC have further agreed to a restriction that will "limit questions to operations implemented, and any other operations considered but not implemented, in 2014 and 2015, and how those operations compared to other years." The purpose of this limitation is to "address NOAA's concerns about intruding on NOAA's process of evaluating future operations proposed by [BOR]."

burden of explaining which specific deliberative process is at issue so as to establish that the information sought is predecisional.

The Court thus overrules the objection based upon the deliberative process privilege to the extent the questions predate August 3, 2016. (*See* Parties' Stipulated Limitation #1.)

### *2.  Limitation No. 2 - Legal Conclusions*

USDOC requests a limitation on questions which would require the deponent to form a legal conclusion or provide a legal conclusion, including:

1. whether there was harm or take of salmon in the Sacramento River in 2014 or 2015;
2. whether the incidental take statement limit was exceeded in 2014 or 2015;
3. any alleged causes of such harm or take;
4. the scope of the 2009 Biological Opinion and incidental take statement;
5. the effectiveness of the RPA at avoiding jeopardy;
6. whether any operational scenarios considered but not implemented would have avoided jeopardy; and
7. whether operation of Shasta Dam or water diversions causes take or harm to salmon in the Sacramento River.

USDOC points out that "take" is a term of art in the ESA, 16 U.S.C. § 1532(19), and the alleged cause of "take" is a legal conclusion central to the Sixth Claim.  Additionally, it is the role of the agency implementing the ESA (here, NMFS) to determine if "take" has occurred.  Thus, USDOC contends that it would be inappropriate to ask Ms. Rea and Dr. Danner, individual NMFS employees, to draw such legal conclusions.

While the Court generally agrees that Ms. Rea and Dr. Danner should not be required to give testimony that would constitute a legal conclusion on the ultimate issue in the Sixth Claim, the limitations proposed by USDOC are overboard.

To address these concerns and other concerns voiced by the United States, the Court will limit the scope of the depositions as follows:

1. Ms. Rea and Dr. Danner shall not be required to give testimony that would constitute a legal conclusion on the ultimate issue in the Sixth Claim, unless they have given such an opinion previously and the opinion has been made public.  In no

case shall they be required to give testimony as to who should prevail on the Sixth Claim, unless they have publicly given such an opinion.[10]

2. Ms. Rea and Dr. Danner shall not be required to provide expert opinions based on hypothetical facts, unless they have already been considered in the course of their work.

### 3. *Limitation No. 8 – Discovery In Lieu of Deposition Testimony*

Finally, in lieu of requiring deposition testimony, USDOC requests that NRDC be required to submit further questions in the form of interrogatories to the agency. USDOC claims that NRDC has not adequately explained how the requested deposition testimony will "fill the gaps" in the voluminous documents it received in this case. NRDC points out that there is a dispute as to the extent of harm that juvenile Chinook salmon and eggs suffered in 2014 and 2015 and the extent to which that harm was caused by the BOR's and SRS Contractors operations and/or releases made pursuant to the SRS contracts. (ECF No. 1160 at 16-17.)

As explained above, the Court agrees with NRDC that Ms. Rea's and Dr. Danner's testimony on these issues is not available elsewhere. No other sources have NMFS's experience, expertise, resources, or statutory mandate when it comes to monitoring, evaluating, and analyzing water operations' effects on endangered winter-run and spring-run Chinook salmon, and no other sources have Dr. Danner's and Ms. Rea's personal experience and expertise on these topics.

Moreover, deposition testimony is superior to interrogatories in the ability to ask follow-up questions and clarifications. There is no requirement to pose those questions in advance or in the form of interrogatories. These witnesses have relevant knowledge and have issued relevant opinions on behalf of government agencies. A deposition is an appropriate way to understand those opinions and factual analysis to the extent relevant to the issues in this case.

---

[10] In U.S. Chief District Judge Lawrence J. O'Neill's February 23, 2017 Order on the defendants' motion to dismiss, the scope of the Sixth Claim against the federal defendants was limited to take caused by the BOR's discretion to (i) require Glenn-Colusa Irrigation District to divert water from Stony Creek and (ii) approve transfers of water by SRS Contractors. (ECF No. 1069 at 57). These limits do not apply to Plaintiffs' claim against the SRS Contractors.

Accordingly, the limitation is not required by the Federal Rules of Civil Procedure and the Court declines to adopt the requested limitation.

## V.  CONCLUSION AND ORDER

Accordingly, the Court ORDERS that U.S. Department of Commerce's motion to quash (ECF No. 1153) is DENIED, and Natural Resources Defense Council's motion to compel (ECF No. 1154) is GRANTED.

The depositions of Ms. Rea and Dr. Danner shall promptly proceed, subject to the following limitations:

1. The parties shall not ask Ms. Rea or Dr. Danner questions about the content or status of the reinitiated consultation on the 2009 NMFS Biological Opinion, which reinitiation was requested by the U.S. Bureau of Reclamation ("Reclamation") on August 3, 2016.

2. The parties shall limit questions to operations implemented, and any other operations considered but not implemented, in 2014 and 2015, and how those operations compared to other years.

3. Ms. Rea and Dr. Danner shall not be required to give testimony that would constitute a legal conclusion on the ultimate issue in the Sixth Claim, unless they have given such an opinion previously and the opinion has been made public.  In no case shall they be required to give testimony as to who should prevail on the Sixth Claim, unless they have publicly given such an opinion.

IT IS SO ORDERED.

Dated:  __April 20, 2018__          _/s/ Erica P. Grosjean_
                                    UNITED STATES MAGISTRATE JUDGE