# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> RYAN ZINKE, Secretary, U.S. Department of the Interior, et al., <br><br> Defendants. <br><br> SAN LUIS & DELTA MENDOTA WATER AUTHORITY, et al., <br><br> Defendant-Intervenors. <br> ANDERSON-COTTONWOOD IRRIGATION DISTRICT, et al., <br><br> Joined Parties. | Case No. 1:05-cv-01207 LJO-EPG <br><br> ORDER ADOPTING APRIL 20, 2018 ORDER DENYING THE UNITED STATES' MOTION TO QUASH CONSTRUED PREVIOUSLY AS FINDINGS AND RECOMMENDATIONS |

On April 20, 2018, the assigned magistrate judge issued an order denying the United States Department of Commerce's ("DOC") motion to quash and granting Plaintiff Natural Resources Defense Council's ("NRDC") motion to compel. ECF Nos. 1204 ("April 20, 2018 Order"). On May 18, 2018, the Court issued an order indicating formally its intent to treat the April 20, 2018 Order as findings and recommendations ("F&Rs"), because adopting the F&Rs would either dispose of entirely or moot in part or in full the Seventh Claim for Relief. ECF No. 1239. The parties were given an opportunity to lodge objections thereto. *Id*. Joined/Intervenor Defendants filed objections. ECF No. 1240.

Because discovery deadlines are forthcoming, the Court will not belabor its analysis, so incorporates by reference and adopts the background provided in the F&Rs at pages one, line 18 through nine, line 11. The Court has reviewed with care all of the papers filed in connection with the underlying discovery dispute, the relevant hearing transcripts, the F&Rs (i.e., the April 20, 2018 Order), the

documents filed in connection with Joined/Intervenor Defendants' motion for reconsideration, and the objections to the F&Rs. In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), the undersigned has conducted a *de novo* review of the matters joined in the F&Rs, which, as noted, resolve a discovery dispute but also arguably resolve (or at least moot) the Seventh Claim for Relief.

Joined/Intervenor Defendants first object that the F&Rs fail to apply the proper standard of review for resolution of the Seventh Claim for Relief. They insist that the appropriate path is to review the Seventh Claim under the Administrative Procedure Act's ("APA") arbitrary and capricious standard. The Court begins by clarifying what the Seventh Claim for Relief is and is not. Filed on March 12, 2018 as part of the Sixth Amended Complaint at the behest of the magistrate judge, the Seventh Claim is for "Injunctive Relief" and seeks a "direct order compelling authorization of testimony." ECF No. 1187 at 67. It relies on the waiver of sovereign immunity contained in the APA, 5 U.S.C. § 702, and alleges that pursuant to various cases, including *Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994), "a party seeking to compel an agency to authorize its employee to comply with a subpoena may seek a direct order and prospective injunctive relief requiring the responsible agency or agency official to allow the employee to testify." ECF No. 1187 at ¶ 209. The Seventh Claim incorporates by reference, *id.* at ¶ 206, factual allegations located at paragraphs 166 through 175. As explained therein, pursuant to DOC "housekeeping" regulations, 15 C.F.R. § 15.14(b), DOC officials refused to permit Plaintiffs to take the noticed depositions of Maria Rea, in her official capacity as Assistant Regional Administrator at the NMFS California Central Valley Area Office, and Dr. Eric Danner, in his official capacity as fisheries ecologist at the NMFS Southwest Fisheries Science Center. Plaintiffs sought their testimony in Sacramento, California on topics pertaining Plaintiffs' Sixth Claim for Relief brought under the Endangered Species Act ("ESA") against the Bureau and the Joined Defendants (elsewhere referred to in the pleadings as the "Sacramento River Settlement Contractors" or "SRS Contractors"), which alleges "the Bureau's excessive releases, and the SRS Contractors' diversions, of water during the temperature management season in 2014 and 2015 caused massive take of winter-run and spring-run Chinook."

Although the factual allegations relevant to the Seventh Claim mention that DOC refused to permit the depositions pursuant to internal regulations, nowhere does Seventh Claim seek to challenge the DOC's internal decision as "arbitrary" or "capricious" under the APA. Rather, the claim seeks relief based upon the allegation that the refusal "is contrary to federal law and the federal rules of civil procedure."

The F&Rs properly apply *Exxon*, which plainly held that "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action." 34 F.3d at 780. *Exxon* concerned a collateral complaint brought by Exxon against five federal agencies and their employees seeking to compel discovery requested as part of its defense in the underlying damages action arising out of the Exxon Valdez oil spill. 34 F.3d at 775. The agencies instructed eight federal employees not to submit to deposition and restricted the testimony of two others. *Id*. Exxon contended that these decisions violated the Federal Housekeeping Statute, 5 U.S.C. § 301,[1] and the APA, 5 U.S.C. § 706(2)(A). *Id*. The district court found that § 301 authorized the agencies actions and that the actions were not arbitrary and capricious under the APA. *Id*.

The Ninth Circuit reversed, beginning its analysis with an explanation of why *United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951), did not support the district court's conclusion. The Ninth Circuit explained that in *Touhy*, the Supreme Court held "that an FBI agent could not be held in contempt for refusing to obey a subpoena *duces tecum* when the Attorney General, acting pursuant to valid federal regulations governing the release of official documents, had ordered him to refuse to comply." *Exxon,* 34 F.3d at 776 (citing *Touhy*, 340 U.S. at 469). *Touhy* specifically left open the question of whether an agency head had the power to withhold evidence from a court without a specific claim of privilege. *Touhy*, 340 U.S. at 467; *see also In re Recalcitrant Witness Richard Boeh v. Daryl Gates*, 25 F.3d 761, 764 & n.4 (9th Cir. 1994) (noting that *Touhy* did not decide the legality of agency

---

[1] The internal regulations at issue in this case, 15 C.F.R. § 15.14(b), were also promulgated pursuant to the Federal Housekeeping Statute.

heads' executive privilege claim).

The Ninth Circuit answered that open question in *Exxon*, at least with sufficient clarity to bind lower courts within this Circuit under the circumstances presented here. The Ninth Circuit reasoned that § 301 "does not, by its own force, authorize federal agency heads to withhold evidence sought under a valid federal court subpoena." 34 F.3d at 777. This conclusion was based upon an extensive evaluation of § 301's legislative history, *id*. at 777-78, as well as reference to prominent commentators on the issue, *id*. at 778 n.6 (quoting one commentator who reasoned that "[t]he proposition for which *Touhy* is often cited—that a government agency may withhold documents or testimony at its discretion—simply is not good law and hasn't been since 1958").

The Ninth Circuit next rejected the government's argument that principles of sovereign immunity granted to agency heads the authority to determine whether agency employees may testify. The Ninth Circuit concluded that all of the cases cited for that proposition involved the power of a state court to subpoena federal officials, which does implicate sovereign immunity. The Ninth Circuit refused to extend that logic to federal courts:

> Moreover, under the government's argument, sovereign immunity would authorize the executive branch to make conclusive determinations on whether federal employees may comply with a valid federal court subpoena. Such a broad definition would raise serious separation of powers questions. As the Supreme Court has said, "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953).

*Id*. at 778. In addition, the Ninth Circuit concluded that "[t]he government's argument would also violate the fundamental principle that the public has a right to every man's evidence." *Id*. at 779 (internal quotation and alteration omitted).

Finally, the Ninth Circuit acknowledged the government's "serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations," but concluded "that district courts can, and will, balance the government's concerns under the general rules of discovery." *Id* at 779. The Ninth Circuit expanded

upon this reasoning by pointing to the numerous protections within the federal rules for <u>litigants and nonparties</u>:

> The Federal Rules of Civil Procedure explicitly provide for limitations on discovery in cases such as this. Rule 26(c) and Rule 45(c)(3) give ample discretion to district courts to quash or modify subpoenas causing "undue burden." The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). In addition, the Rules can prevent private parties from exploiting government employees as tax-supported pools of experts. *See* Fed. R. Civ. P. 45(c)(3)(B)(ii), (iii) (a court may in its discretion disallow the taking of a non-retained expert's testimony unless the proponent makes a showing of "*substantial need*" that "cannot be otherwise met without undue hardship" and payment of reasonable compensation) (emphasis added). The Rules also recognize and protect privileged information. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii).
>
> In ruling on discovery requests, Rule 26(b)(2) instructs district courts to consider a number of factors relevant to the government's expressed interests. For example, a court may use Rule 26(b) to limit discovery of agency documents or testimony of agency officials if the desired discovery is relatively unimportant when compared to the government interests in conserving scarce government resources. *See, e.g., Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1198 (11th Cir.1991) (considering the "cumulative impact" of repeated requests for the testimony of Center for Disease Control researchers working on a cure for the AIDS virus in upholding a decision to quash a subpoena under Rule 45).

*Id*. at 779- 80 (footnote omitted). In sum, the Ninth Circuit issued a broad holding:

> Section 301 does not create an independent privilege to withhold government information or shield federal employees from valid subpoenas. <u>Rather, district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action</u>. Under the balancing test authorized by the rules, courts can ensure that the unique interests of the government are adequately considered.

*Id*. at 780 (emphasis added).[2]

Joined/Intervenor Defendants first attempt to distinguish *Exxon* on the ground that "the holding in *Exxon* was decided under a claim that was not brought under the [APA}, and the court declined to

---

[2] Even though the agency defendants were joined as parties to the *Exxon* matter, the *Exxon* panel clearly held that the rule it announced was to be applied even when an agency was <u>not</u> a defendant. This Court is bound by this holding.

5

reach the APA claim that the 'agencies' actions were arbitrary and capricious under § 706(2)(A) until after further district court review, and, if necessary, fact-finding." ECF No. 1240 at 2 (quoting *Exxon*, 34 F.3d at 780). It is true that immediately after the broad holding quoted above regarding the housekeeping statute, the Ninth Circuit declined to reach Exxon's APA claim as follows:

> Because of our disposition, we decline to reach Exxon's claim that the agencies' actions were arbitrary and capricious under § 706(2)(A) until after further district court review, and, if necessary, fact-finding. Thus, we remand for the court to exercise its discretion on Exxon's discovery requests.

The implication of this language is not entirely clear, but a related discussion in footnote 11 sheds some light on what the Ninth Circuit was getting at:

> The APA also authorizes judicial review of agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise unlawful." 5 U.S.C. § 706(2)(A) (1982). Because § 301 provides authority for agency heads to issue rules of procedure in dealing with requests for information and testimony, an agency head will still be making the decisions on whether to comply with such requests in the first instance. Thus, review under § 706(2)(A) will be available. However, we acknowledge that collateral APA proceedings can be costly, time-consuming, inconvenient to litigants, and may "effectively eviscerate [ ]" any right to the requested testimony. *In re Recalcitrant Witness Boeh*, 25 F.3d at 770 n. 4 (Norris, J., dissenting) (if the plaintiff had a right to obtain the witness' testimony, "he had a right to obtain it when he needed it, which in this case was immediately, when the trial was still going on"). Therefore, the need for district court review in such instances is all the more compelling.

*Exxon*, 34 F.3d at 780 n.11. The Court believes this language is best interpreted as standing for the proposition that, while an APA collateral action may be available, it is not the only way to obtain review of an agency decision regarding a discovery dispute. As the Ninth Circuit plainly articulated, "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action." *Id*. at 780. At bottom, *Exxon* stands for the proposition that the fact that an APA claim might also be outstanding and worthy of resolution at some point should not stand in the way of a court resolving a discovery dispute in a timely manner pursuant to the Federal Rules of Civil Procedure. What the Ninth Circuit did not

discuss, and from what the Court can tell has yet to discuss anywhere, is what the consequences of the Rules-based discovery decision might be for any outstanding APA claim. Might it not moot that claim? Perhaps, but perhaps not. There might be other aspects to an APA challenge to an agency's housekeeping determination regarding disclosure of evidence that could survive a Rules-based discovery decision. If a discovery ruling required only narrow disclosures, for example, a plaintiff might still want to move forward with a challenge under the APA asserting that the housekeeping determination was arbitrary, capricious or contrary to law. All of this is to say that, while the dual track suggested by *Exxon* is somewhat perplexing, it is not nonsensical. In this Circuit, treating a discovery dispute like the one presented here under the Federal Rules is not only lawful, <u>it is required</u>. The magistrate judge properly concluded that the underlying discovery dispute could and should be resolved pursuant to the Federal Rules.

The magistrate judge also properly and reasonably applied the Federal Rules of Civil Procedure to the dispute. She properly rejected the DOC expert opinion objection as well as DOC's objection that the two disputed witnesses lacked unique, first-person knowledge relevant to the claims in this case. The two witnesses in question are experts with <u>unique</u> in-depth factual knowledge that is likely relevant to Plaintiffs' Sixth Claim. That their expertise is intertwined with their factual knowledge is not a bar to the requested discovery. As the magistrate judge explained, the Advisory Committee Notes to Rule 45 indicate that the district court should consider, among other things, whether an unretained expert is being called because of his or her knowledge of facts relevant to the case, rather than to give expert testimony, keeping in mind the distinction between testifying to a previously formed or expressed opinion and forming a new one, as well as the possibility that the expert is a unique one. *See* ECF No. 1204 at 15-16 (citing Fed. R. Civ. P. 45 (Adv. Comm. N. 1991 Am.)). The Court believes all of these factors weigh in favor of permitting the challenged depositions.

Nor is the Court persuaded by Joined/Intervenor Defendants' objection that the F&Rs erred in concluding that the challenged witnesses possess unique first person experience regarding the events at

issue in the Sixth Claim. ECF No. 1240 at 4. The F&Rs note that these witnesses provided "expert opinion advising Defendant government agencies related to the underlying issues in this case" about which Plaintiffs seek information to better understand those opinions. *See* ECF No. 1204 at 18. Joined/Intervenor Defendants correctly point out that the witnesses did not provide any such expert opinion to the SRS Contractor Defendants, ECF No. 1240 at 4, but this is not dispositive of the discovery dispute presented here. The opinions these witnesses provided to Federal Defendants may be relevant to proving the liability of the SRS Contractor defendants, whether or not those opinions were provided <u>to</u> the SRS Contractor defendants.

Joined/Intervenor Defendants' objection that the magistrate judge did not specifically address proportionality is also without merit. While a Court must "consider" whether discovery is proportional to the needs of the case, the Court can identify no requirement that it be specifically addressed in a discovery order. These witnesses have unique information Plaintiffs cannot get elsewhere, and the Court is comfortable that the proportionality issue has been resolved in an appropriate manner by the limitations imposed.

Finally, the magistrate judge also issued appropriate and reasonable rulings regarding limitations on the disputed depositions, including the rulings regarding the deliberative process privilege. The Court has considered the additional limitation suggested by Joined/Intervenor Defendants, but rejects it for the reasons set forth in Plaintiffs' response to the Court's May 23, 2018 Minute Order. *See* ECF No. 1242.

The Parties are informed that if they have further disputes regarding these depositions, they may direct those disputes to the undersigned, unless all parties consent to have the magistrate judge resolve such disputes.

IT IS SO ORDERED.

Dated: **May 25, 2018**           **/s/ Lawrence J. O'Neill**
                                  UNITED STATES CHIEF DISTRICT JUDGE