# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, *et al*.,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID BERHNARDT, in his official capacity as Acting Secretary of the Interior, *et al.*,<br><br>Defendants. | Case No. 1:05-cv-01207-LJO-EPG<br><br>**ORDER DENYING IN PART AND TAKING UNDER ADVISEMENT IN PART UNITED STATES' MOTION TO QUASH THE SUBPOENA OF MR. SMITH, AND TAKING UNDER ADVISEMENT THE MOTION TO QUASH THE TRIAL SUBPOENAS FOR MARIA REA AND ERIC DANNER**<br><br>(ECF Nos. 1289, 1291) |

On February 15, 2019, the Court held a hearing on the motion to quash the subpoena of James Smith. (ECF No. 1289) and the motion to quash the trial subpoenas for Maria Rea and Eric Danner (ECF No. 1291). For the reasons discussed below and on the record, the Court denies in part and takes under advisement in part the motion to quash the subpoena of Mr. Smith, and takes under advisement the motion to quash the trial subpoena of Ms. Rea and Dr. Danner.

The subpoenas were issued by Plaintiffs and relate to Plaintiffs' Sixth Claim for Relief, asserted against Defendants Sacramento River Settlement Contractors ("SRS") and the United States Bureau of Reclamation ("BOR") for the alleged unlawful take of endangered Sacramento River winter-run Chinook salmon and threatened Central Valley spring-run

1

Chinook salmon in violation of Section 9 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1538(a)(1)(B). Plaintiffs' claims involve long-term contracts between the BOR and SRS. The BOR releases water into the Sacramento River from the Shasta and Keswick Dams. Pursuant to the contracts between BOR and SRS, SRS diverts water from the Sacramento River and, if approved by BOR, SRS may also transfer water to other users.

In the Sixth Claim, Plaintiffs allege that in 2014 and 2015, releases and operations to implement the SRS contracts (including transfers) depleted the amount of cold water behind Shasta Dam available during critical salmon reproductive season, thereby raising river temperatures to levels lethal to listed salmonids during the egg-to-fry life stage.

> Factual issues implicated by Plaintiffs' Sixth Claim include, among others: the effects that water temperature in the upper Sacramento River has on listed salmonids during the egg-to-fry life stage; the extent of harm that listed salmonids during the egg-to-fry life stage suffered in 2014 and 2015; the extent to which that harm was caused by Sacramento River water temperatures; and the extent to which the Sacramento River water temperatures were caused by the Bureau's reservoir releases and/or the SRS Contractors' diversions and transfers pursuant to the SRS Contracts.

(ECF No. 1307 at 8-9.)

### A. *Touhy* Challenge

Plaintiffs issued trial subpoenas for Ms. Rea and Dr. Danner, and a combined trial, deposition, and document subpoena for Mr. Smith. The Federal Defendants have refused permission for Ms. Rea, Dr. Danner, and Mr. Smith to testify and have moved to quash the subpoenas, claiming that these three witnesses cannot be compelled to obey a subpoena contrary to Federal Defendants' "*Touhy*" regulations, promulgated under *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

The Court previously rejected Federal Defendants' reliance on *Touhy* in relation to the motions to quash the deposition testimony of Ms. Rea and Dr. Danner. (*See* ECF No. 1204 at 11.) In rejecting the *Touhy* argument, the Court relied on *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994), which held that "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action. Under the balancing test authorized by the rules, courts can ensure that the unique interests of the government are

adequately considered." *Id.* at 780. (*See* ECF No. 1204 at 11.) This Court's rejection of Federal Defendants' *Touhy* argument was affirmed by Chief District Judge Lawrence J. O'Neill. (ECF No. 1244 at 6.)

The Court is sensitive to Federal Defendants' concerns regarding the burden of having the public call on government employees for testimony, and the reasoning behind *Touhy*. However, Plaintiffs are not seeking to call Ms. Rea, Dr. Danner, and Mr. Smith to testify about unrelated opinions; to the contrary, Plaintiffs are seeking to call these witnesses to talk about their own work. The Court declines to revisit the *Touhy* issue and will, instead, rely on the federal discovery rules, as required under the *Exxon* decision, in deciding this discovery dispute.

**B. Subpoena for Deposition of Mr. Smith**

Mr. Smith is a Project Leader at the Red Bluff Office for the Fish and Wildlife Service ("FWS"). FWS is a party to this litigation but is not a party to the Sixth Claim, which is the claim to be tried. Plaintiffs seek Mr. Smith's testimony to describe the methodology, accuracy, and reliability of FWS's fish population estimates underlying the National Marine Fisheries Service ("NMFS") Chinook salmon mortality estimates in 2014 and 2015. Specifically, Plaintiffs seek to use Mr. Smith's testimony as rebuttal to the expert testimony of Bradley Cavallo, an expert hired by SRS, that critiques the FWS methodology and analysis regarding salmon mortality.

Under Federal Rule of Civil Procedure 45, a court *must* quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). A court *may* quash or modify a subpoena if the subpoena requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute. . . ." Fed. R. Civ. P. 45(d)(3)(B)(ii).

Federal Defendants argue that the subpoena should be quashed because it imposes an undue burden on Mr. Smith. For the reasons stated on the record, the Court disagrees and finds that the deposition of Mr. Smith would not impose an undue burden when balanced against the relevance of his testimony. First, the information Plaintiffs seek through the deposition is

3

highly relevant. Plaintiffs seek to use Mr. Smith's expert opinion to rebut the expert opinion of Mr. Cavallo, which critiques Mr. Smith's own work regarding FWS methodology and analysis regarding salmon mortality. That this information is highly relevant and crucial to Plaintiffs' case is demonstrated by Federal Defendants' admission during the February 15, 2019, hearing that Plaintiff must rebut Mr. Cavallo's expert opinion to prevail on Plaintiffs' case against Federal Defendants.

Second, the burden on Mr. Smith can be limited. Plaintiffs state that they will go to Mr. Smith's place of employment to conduct the deposition. Further, as far as preparation for the deposition, Mr. Smith is not required by the subpoena to spend any time preparing. Although Mr. Smith is free to prepare if he wants to, he does not have to prepare and can, instead, be deposed based solely on his memory and his knowledge.

Third, the Court does not find, as Federal Defendants argue, that the information sought through the deposition is publicly available. Although the results of the FWS testing may be publicly available, rebutting an attack on the methodology and analysis used to get those results is not something that is publicly available. Expert Cavallo specifically criticized Mr. Smith's own work, and Mr. Smith is uniquely suited to respond to that criticism.

Finally, the deposition of Mr. Smith is to be limited to rebutting Mr. Cavallo's expert opinion.

Federal Defendants argue that limiting Mr. Smith's deposition to rebutting Mr. Cavallo's expert opinion demonstrates that Mr. Smith will be required to provide new opinions and not merely provide an opinion that he has already formed. Federal Defendants argue that this violates the Rule 45 provisions on unretained experts. The Court disagrees. Under Rule 45, the Court *may*, but is not required, to quash a subpoena for an unretained expert if the subpoena requires the unretained expert to disclose her or his "opinion or information that *does not describe specific occurrences in dispute . . . .*" Fed. R. Civ. P. 45(d)(3)(B)(ii) (emphasis added). Here, Mr. Cavallo's expert opinion, and hence Mr. Smith's opinion in rebuttal to that opinion, describe the specific occurrences in dispute—the mortality estimates in 2014 and 2015. Furthermore, just because Mr. Smith has not expressed his opinions publicly does not mean

4

that he has not already formed such opinions. Presumably, Mr. Smith chose his data and methodology based on some reasoning. He may be able to explain those already formed opinions in response to Mr. Cavallo's criticism of Mr. Smith's methodology.

Mr. Smith's testimony is relevant, is not readily available through another source, and the deposition will not unfairly impinge upon Mr. Smith's time because the deposition will take place at Mr. Smith's place of employment, Mr. Smith is not required to prepare for the deposition, and the scope of the deposition will be limited to rebutting Mr. Cavallo's expert opinion. Accordingly, the deposition will not impose an undue burden and does not violate Rule 45's limitations for unretained experts. The motion to quash the deposition subpoena for Mr. Smith is therefore denied.

During the conference, the parties set certain restrictions on time for questioning at deposition. Plaintiffs may depose Mr. Smith for up to four and one-half hours on the record; SRS may then depose Mr. Smith for up to two hours on the record; Plaintiff may then depose Mr. Smith for up to one-half hour on the record; Federal Defendants are granted leave to engage in further questioning of Mr. Smith as needed for rehabilitation purposes, being sensitive to any additional burden on Mr. Smith. The parties may contact the Court for assistance with any issues that arise during the deposition.

### C. Trial Subpoenas of Ms. Rea, Dr. Danner, and Mr. Smith

As discussed during the February 15, 2019, hearing, the Court takes under advisement Federal Defendants' motion to quash the trial subpoenas of Ms. Rea and Dr. Danner, and that portion of the motion to quash the subpoena of Mr. Smith that requires Mr. Smith to appear to testify at trial. Plaintiffs are directed to submit brief proffers as to all three of these witnesses, setting forth what each witness's trial testimony would entail.

**IT IS ORDERED**:

1. Federal Defendants' motion to quash the subpoena of James Smith (ECF No 1289) is denied in part and taken under advisement in part. The motion to quash is DENIED to the extent it seeks to quash the portion of the subpoena that requires Mr. Smith to appear for a

deposition. The motion to quash is taken under advisement to the extent it seeks to quash the portion of the subpoena that requires Mr. Smith to appear as a witness at trial.

2. The deposition of Mr. Smith shall promptly proceed, subject to the following limitations:

    a. The deposition of Mr. Smith is limited in scope to rebutting Mr. Cavallo's expert opinion.

    b. The deposition shall take place at Mr. Smith's place of employment.

    c. The deposition shall be allocated as follows:

        i. Plaintiffs may depose Mr. Smith for up to four and one-half (4 ½) hours on the record;

        ii. SRS may then depose Mr. Smith for up to two (2) hours on the record;

        iii. Plaintiff may then depose Mr. Smith for up to one-half (½) hour on the record; and

        iv. Federal Defendants are granted leave to engage in further questioning of Mr. Smith as needed for rehabilitation purposes.

3. The motion to quash the trial subpoenas for Maria Rea and Eric Danner (ECF No. 1291) is taken under advisement.

4. Plaintiffs are directed to submit, no later than **March 1, 2019**, brief proffers as to Ms. Rea, Dr. Danner, and Mr. Smith setting forth what each witness's trial testimony would entail.

IT IS SO ORDERED.

Dated: **February 19, 2019**             /s/ Eric P. Grosjean
                                                           UNITED STATES MAGISTRATE JUDGE