# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NATURAL RESOURCES DEFENSE COUNCIL, et al.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**DAVID BERNHARDT, Acting Secretary, U.S. Department of the Interior, et al.,**<br><br>**Defendants.** | Case No. 1:05-cv-01207 LJO-EPG<br><br>**ORDER RE STATUS OF REMAINING CLAIMS AND MOTIONS IN THIS CASE** |
| **SAN LUIS & DELTA MENDOTA WATER AUTHORITY, et al.,**<br><br>**Defendant-Intervenors.** | |
| **ANDERSON-COTTONWOOD IRRIGATION DISTRICT, et al.,**<br><br>**Joined Parties.** | |

Before the Court for decision are numerous motions related to the bench trial currently scheduled for July 10, 2019, including two motions to dismiss the remaining aspects of the sixth claim for relief set for trial, ECF Nos. 1232 & 1234, numerous motions *in limine* pertaining to those claims, ECF Nos. 1318-19, 1321-22, and a motion for reconsideration concerning, among other things, previously dismissed aspects of the sixth claim for relief. ECF No. 1335. For reasons that undoubtedly are obvious to the parties, the Court has focused its attention on the pending motions to dismiss, as they raise significant jurisdictional and efficiency issues related to the scheduled bench trial.

Two branches of the sixth claim for relief arising under Section 9 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1538, presently are set to be heard at the bench trial. First are Plaintiffs'

1

allegations against the Sacramento River Settlement ("SRS") Contractor Defendants. Generally, Plaintiffs allege that water diversions and transfers from the Sacramento River made by the SRS Contractors Defendants caused temperature related mortality to ESA-listed winter-run and spring-run Chinook salmon eggs and fry (young fish) in 2014 and 2015 in violation of Section 9. Related to this allegation, it appears to be undisputed that no SRS Contractor Defendant presently holds or is covered by any form of ESA permit that would allow any such SRS Contractor to "incidentally take"[1] listed salmonids.

In addition, certain aspects of Plaintiffs' ESA Section 9 claim against the U.S. Bureau of Reclamation ("Reclamation") survive to be tried. Plaintiffs allege that Reclamation unlawfully "took" ESA-listed salmonids by approving water transfers from SRS Contractors to others in 2014 and 2015 in violation of the ESA. Plaintiffs' success on this claim hinges in part on proving that Reclamation's conduct was not in conformity with the Incidental Take Statement ("ITS") (a form of permit to incidentally take ESA-listed species) issued by the National Marine Fisheries Service ("NMFS") as part of its 2009 Biological Opinion ("BiOp") covering the coordinated operation of the federal Central Valley Project ("CVP") and California's State Water Project ("SWP").

All parties have been aware for some time that Reclamation and NMFS have been engaged in the process of revisiting and possibly revising the conclusions of and conditions set forth in the 2009 NMFS BiOp through a process of "reconsultation" under ESA Section 7, 16 U.S.C. § 1536. In early February 2019, Reclamation took a major step forward in the reconsultation process, issuing its Biological Assessment ("BA") on the impacts of coordinated CVP and SWP operations on variously listed species, including winter-run and spring-run Chinook. *See* ECF No. 1232-1. Pursuant to a Presidential

---

[1] "Take" is defined in the ESA as meaning "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). "Incidental taking means any taking otherwise prohibited, if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 50 C.F.R. § 17.3.

Memorandum issued October 19, 2018,[2] NMFS has been tasked with completing its review of the BA and issuing its formal revised BiOp on or before mid-June 2019. *See id*.

On March 8, 2019, Federal Defendants filed a motion to dismiss on prudential mootness grounds, or in the alternative to stay litigation of the sixth claim. ECF No. 1323. Specifically, Federal Defendants argue that the anticipated issuance of the revised BiOp in June 2019 "will" moot the sixth claim for relief, at least as against Reclamation, because after the issuance of the new BiOp, the CVP and SWP will be operating under an entirely new regulatory regime and ITS. *Id*. at 10-14. The SRS contractors filed a related motion the same day, arguing that Ninth Circuit authority requires any new BiOp to provide them with protection from take liability as well. ECF No. 1324-1.

The Court has reviewed these motions in detail in light of the entire record and relevant authorities and concludes that it cannot make a definitive determination as to the fate of Plaintiffs' claims against either the SRS Contractors or Reclamation without first having an opportunity to review the not-yet-released BiOp. If that BiOp sets forth a substantially revised regulatory regime that includes incidental take exemptions for both Reclamation and the SRS Contractors, it is difficult to imagine a path forward for any aspect of the sixth claim for relief. In contrast, if the BiOp does not materially alter the regulatory regime or again omits to include any incidental take exemption for the SRS Contractors, the outcome may be very different. And, obviously, the BiOp may present a mixed picture, necessitating careful examination of whether any or all aspects of Plaintiffs' sixth claim are moot. Given this posture, the Court is extremely reticent to plow forward blindly at this time, as no one has time for a dry run in a matter as complex as this one.

All the parties appear to agree that one sensible option is to continue the trial date in anticipation of the BiOp issuing in June. The Court is inclined to adopt this approach. However, the Court is concerned about the possibility that NMFS may not meet the mid-June deadline and/or may ask for

---

[2] October 19, 2018 Presidential Memorandum on Promoting the Reliable Supply and Delivery of Water in the West, *available at* https://www.whitehouse.gov/presidential-actions/presidential-memorandum-promoting-reliable-supply-delivery-water-west (last visited Apr. 10, 2019).

additional time under the Presidential Directive. If the government is reasonably certain that the mid-June deadline will be met, the Court will continue the trial date to the late summer or Fall of this year, permitting additional briefing on the motions to dismiss after the new BiOp issues.[3] (If the government cannot reasonably be certain of the timeline for issuance of the new BiOp, the Court may take a different approach.) Therefore, on or before **noon on Friday, April 12, 2019**, Federal Defendants shall provide the Court with a brief written update on the status of the preparation of the new BiOp.

If the trial is continued in anticipation of the issuance of a new BiOp in June 2019, the Court will hold the pending motions *in limine* in abeyance until the motions to dismiss are decided. Accordingly, the hearing on the motions to dismiss, currently set for April 12, 2019, is **VACATED**.

Plaintiffs' pending motion for reconsideration concerns the previously dismissed fifth claim for relief and previously dismissed aspects of the sixth claim for relief. ECF No. 1335. Because the motion relates at least in part to claims set for bench trial, the Court is likewise inclined to hold that motion in abeyance pending further regulatory action. Upon resolution of the question of the trial continuance, the Court anticipates that it will request a brief joint status report outlining the Parties' positions as to whether the motion for reconsideration should move forward.

IT IS SO ORDERED.

Dated: __**April 10, 2019**__     _____/s/ Lawrence J. O'Neill_____
                UNITED STATES CHIEF DISTRICT JUDGE

---

[3] If the Court determines a continuance is appropriate, the parties will be asked to meet and confer in order to suggest three alternative trial dates.

4