# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NATURAL RESOURCES DEFENSE COUNCIL**, *et al.*, <br><br> **Plaintiffs,** <br><br> vs. <br><br> **DAVID BERNHARDT, Acting Secretary, U.S. Department of the Interior**, *et al.*, <br><br> **Defendants.** | Case No. 1:05-cv-01207 LJO-EPG <br><br> **ORDER REQUESTING SUPPLEMENTAL BRIEFING RE MOTION TO DISMISS SEVENTH CLAIM FOR RELIEF.** <br><br> **ECF NO. 1381** |
| **SAN LUIS & DELTA MENDOTA WATER AUTHORITY**, *et al.*, <br><br> **Defendant-Intervenors.** | |
| **ANDERSON-COTTONWOOD IRRIGATION DISTRICT**, *et al.*, <br><br> **Joined Parties.** | |

Before the Court for decision is Federal Defendants' motion to dismiss as moot the seventh claim for relief. ECF No. 1381. For the reasons set forth below, the Court orders supplemental briefing.

The assigned magistrate judge succinctly summarized much of the relevant procedural history:

> Plaintiff Natural Resources Defense Council ("NRDC") [ ] subpoenaed the deposition testimony of two employees of [non-party] National Marine Fisheries Service ("NMFS"). NMFS is a component of the National Oceanic and Atmospheric Administration ("NOAA"), which is an agency of the U.S. Department of Commerce ("USDOC"). Plaintiffs are seeking the deposition testimony in connection with their Sixth Claim for Relief, asserted against Defendants Sacramento River Settlement ("SRS") Contractors and the U.S. Bureau of Reclamation ("BOR") for the unlawful take of endangered Sacramento River winter-run Chinook salmon and threatened Central Valley spring-run Chinook salmon in violation of Section 9 of the Endangered Species Act ("ESA").

1

> Under the ESA, NMFS is the federal agency charged with overseeing the protection of winter-run and spring-run Chinook salmon. NMFS wrote the ESA-mandated Biological Opinion ("BiOp") analyzing the effects of the BOR's Central Valley Project ("CVP") operations on Chinook salmon and establishing the reasonable and prudent alternatives ("RPA") that the BOR must perform to avoid jeopardizing the survival and recovery of Chinook salmon. The BiOp also establishes the limit of "incidental take" authorized under the ESA, and requires the BOR to update NMFS periodically on the take caused by CVP operations.
>
> NOAA's Acting General Counsel [ ] refused to permit the two NMFS employees to testify and [ ] moved to quash the subpoenas, claiming that the employees cannot be compelled to obey a subpoena contrary to USDOC's "Touhy" regulations. NRDC [ ] filed a motion to compel compliance with the subpoenas, arguing that USDOC's decision to refuse compliance is improper, and the testimony is permitted under the Federal Rules of Civil Procedure.
>
> ***
>
> On March 12, 2018, Plaintiffs filed a Sixth Supplemental Complaint adding a Seventh Claim for Injunctive Relief seeking an order requiring USDOC and NOAA Acting General Counsel to allow Ms. Rea and Dr. Danner to testify in compliance with NRDC's subpoenas. (ECF No. 1187, 6th Supp. Compl.)
>
> On March 13, 2018, Defendants USDOC, Wilbur Ross (in his official capacity as Secretary of the U.S. Department of Commerce), and Kristin L. Gustafson (in her official capacity as Acting General Counsel of NOAA) were served with process in this case. (ECF No. 1189.)
>
> On March 26, 2018, Wilbur Ross and Kristen L. Gustafson filed an answer to the Sixth Supplemental Complaint and the newly-added Seventh claim. (ECF No. 1195.)
>
> On April 6, 2018, USDOC filed a statement regarding the deposition subpoenas. (ECF No. 1199.) The statement provided a detailed explanation for NOAA's decision to refuse to permit the deposition testimony of Ms. Rea and Dr. Danner. (*See id*.) Specifically, USDOC asserted that NOAA reasonably concluded that: 1) topics of the proposed depositions fell within the ambit of unretained expert or opinion testimony or sought factual information that was publicly available; and 2) Plaintiffs seek testimony from NMFS on the same subject matter that is currently under consideration in the on-going consultation on long-term operations of the CVP. (*Id*. 7-11)

ECF No. 1204 at 1-2, 7-8.

The Court previously summarized the seventh claim as follows:

> Filed on March 12, 2018 as part of the Sixth Amended Complaint at the behest of the magistrate judge, the Seventh Claim is for "Injunctive Relief" and seeks a "direct order compelling authorization of testimony." ECF No. 1187 at 67. It relies on the waiver of sovereign immunity contained in the APA, 5 U.S.C. § 702, and alleges that pursuant to various cases, including *Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994), "a party seeking to compel an agency to authorize its employee to comply with a subpoena may seek a direct order and prospective injunctive relief requiring the responsible agency or agency official to allow the employee to testify." ECF No. 1187 at ¶ 209. The Seventh Claim incorporates by reference, *id*. at ¶ 206, factual allegations located at paragraphs 166 through 175. As explained therein, pursuant to DOC "housekeeping" regulations, 15 C.F.R. § 15.14(b), DOC officials refused to permit Plaintiffs to take the noticed depositions of Maria Rea, in her official capacity as Assistant Regional Administrator at the NMFS California Central Valley Area Office, and Dr. Eric Danner, in his official capacity as fisheries ecologist at the NMFS Southwest Fisheries Science Center. Plaintiffs sought their testimony in Sacramento, California on topics pertaining Plaintiffs' Sixth Claim for Relief brought under the [ESA] against [BOR] and the [SRS Contractors], which alleges "the Bureau's excessive releases, and the SRS Contractors' diversions, of water during the temperature management season in 2014 and 2015 caused massive take of winter-run and spring-run Chinook." Although the factual allegations relevant to the Seventh Claim mention that DOC refused to permit the depositions pursuant to internal regulations, nowhere does Seventh Claim seek to challenge the DOC's internal decision as "arbitrary" or "capricious" under the APA. Rather, the claim seeks relief based upon the allegation that the refusal "is contrary to federal law and the federal rules of civil procedure."

ECF No. 1244 at 2-3.

Plaintiffs filings confirm that they did not intend to bring the seventh claim "under the APA." ECF No. 1203 at 1-2. Specifically, Plaintiffs intended to allege only "that Section 702 of the APA waives the Department's sovereign immunity against [Plaintiffs'] claim for prospective injunctive relief." *Id*. at 2. In particular, Plaintiffs argued that "whereas Section 702 waives sovereign immunity for all non-monetary claims against federal agencies, the APA's other procedures and requirements do not apply to such non-APA claims for injunctive relief." *Id*. (citing *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1168, 1171-72 (9th Cir. 2017)).

On April 20, 2018, the assigned magistrate judge issued an order denying DOC's motion to

quash and granting Plaintiffs' motion to compel. ECF Nos. 1204 ("April 20, 2018 Order").

On May 18, 2018, the Court issued an order indicating formally its intent to treat the April 20, 2018 Order as findings and recommendations ("F&Rs"), because adopting the F&Rs would either dispose of entirely or moot in part or in full the seventh claim for relief. ECF No. 1239. The Court did <u>not</u> determine definitively whether its decision on the F&Rs would result in disposition or mootness.

The Court then found that the F&Rs applied the appropriate standard and reached the appropriate resolution. Pertinent to the pending motion, the Court reviewed the relevant authorities, which it quotes here at length for the sake of expedience:

> The F&Rs properly apply *Exxon*, which plainly held that "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action." 34 F.3d at 780. *Exxon* concerned a collateral complaint brought by Exxon against five federal agencies and their employees seeking to compel discovery requested as part of its defense in the underlying damages action arising out of the Exxon Valdez oil spill. 34 F.3d at 775. The agencies instructed eight federal employees not to submit to deposition and restricted the testimony of two others. *Id*. Exxon contended that these decisions violated the Federal Housekeeping Statute, 5 U.S.C. § 301, and the APA, 5 U.S.C. § 706(2)(A). *Id*. The district court found that § 301 authorized the agencies actions and that the actions were not arbitrary and capricious under the APA. *Id*.
>
> The Ninth Circuit reversed, beginning its analysis with an explanation of why *United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951), did not support the district court's conclusion. The Ninth Circuit explained that in *Touhy*, the Supreme Court held "that an FBI agent could not be held in contempt for refusing to obey a subpoena *duces tecum* when the Attorney General, acting pursuant to valid federal regulations governing the release of official documents, had ordered him to refuse to comply." *Exxon,* 34 F.3d at 776 (citing *Touhy*, 340 U.S. at 469). *Touhy* specifically left open the question of whether an agency head had the power to withhold evidence from a court without a specific claim of privilege. *Touhy*, 340 U.S. at 467; *see also In re Recalcitrant Witness Richard Boeh v. Daryl Gates*, 25 F.3d 761, 764 & n.4 (9th Cir. 1994) (noting that *Touhy* did not decide the legality of agency heads' executive privilege claim).
>
> The Ninth Circuit <u>answered that open question</u> in *Exxon*, at least with sufficient clarity to bind lower courts within this Circuit under the circumstances presented here. The Ninth Circuit reasoned that § 301 "does not, by its own force, authorize federal agency heads to withhold evidence

4

sought under a valid federal court subpoena." 34 F.3d at 777. This conclusion was based upon an extensive evaluation of § 301's legislative history, *id*. at 777-78, as well as reference to prominent commentators on the issue, *id*. at 778 n.6 (quoting one commentator who reasoned that "[t]he proposition for which *Touhy* is often cited—that a government agency may withhold documents or testimony at its discretion—simply is not good law and hasn't been since 1958").

The Ninth Circuit next rejected the government's argument that principles of sovereign immunity granted to agency heads the authority to determine whether agency employees may testify. The Ninth Circuit concluded that all of the cases cited for that proposition involved the power of a state court to subpoena federal officials, which does implicate sovereign immunity. The Ninth Circuit refused to extend that logic to federal courts:

> Moreover, under the government's argument, sovereign immunity would authorize the executive branch to make conclusive determinations on whether federal employees may comply with a valid federal court subpoena. Such a broad definition would raise serious separation of powers questions. As the Supreme Court has said, "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953).

*Id*. at 778. In addition, the Ninth Circuit concluded that "[t]he government's argument would also violate the fundamental principle that the public has a right to every man's evidence." *Id*. at 779 (internal quotation and alteration omitted).

Finally, the Ninth Circuit acknowledged the government's "serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations," but concluded "that district courts can, and will, balance the government's concerns under the general rules of discovery." *Id* at 779. The Ninth Circuit expanded upon this reasoning by pointing to the numerous protections within the federal rules for <u>litigants and nonparties</u>:

> The Federal Rules of Civil Procedure explicitly provide for limitations on discovery in cases such as this. Rule 26(c) and Rule 45(c)(3) give ample discretion to district courts to quash or modify subpoenas causing "undue burden." The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). In addition, the Rules can prevent private parties from exploiting government employees as tax-supported pools of experts. *See* Fed. R. Civ. P. 45(c)(3)(B)(ii), (iii) (a court may in its discretion disallow the taking of a non-retained expert's testimony unless the proponent makes a showing of "*substantial need*" that "cannot be

5

otherwise met without undue hardship" and payment of reasonable compensation) (emphasis added). The Rules also recognize and protect privileged information. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii).

In ruling on discovery requests, Rule 26(b)(2) instructs district courts to consider a number of factors relevant to the government's expressed interests. For example, a court may use Rule 26(b) to limit discovery of agency documents or testimony of agency officials if the desired discovery is relatively unimportant when compared to the government interests in conserving scarce government resources. *See, e.g., Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1198 (11th Cir.1991) (considering the "cumulative impact" of repeated requests for the testimony of Center for Disease Control researchers working on a cure for the AIDS virus in upholding a decision to quash a subpoena under Rule 45).

*Id*. at 779- 80 (footnote omitted). In sum, the Ninth Circuit issued a broad holding:

Section 301 does not create an independent privilege to withhold government information or shield federal employees from valid subpoenas. Rather, district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action. Under the balancing test authorized by the rules, courts can ensure that the unique interests of the government are adequately considered.

*Id*. at 780 (emphasis added).

Joined/Intervenor Defendants first attempt to distinguish *Exxon* on the ground that "the holding in *Exxon* was decided under a claim that was not brought under the [APA], and the court declined to reach the APA claim that the 'agencies' actions were arbitrary and capricious under § 706(2)(A) until after further district court review, and, if necessary, fact-finding." ECF No. 1240 at 2 (quoting *Exxon*, 34 F.3d at 780). It is true that immediately after the broad holding quoted above regarding the housekeeping statute, the Ninth Circuit declined to reach Exxon's APA claim as follows:

Because of our disposition, we decline to reach Exxon's claim that the agencies' actions were arbitrary and capricious under § 706(2)(A) until after further district court review, and, if necessary, fact-finding. Thus, we remand for the court to exercise its discretion on Exxon's discovery requests.

The implication of this language is not entirely clear, but a related discussion in footnote 11 sheds some light on what the Ninth Circuit was

6

> getting at:
>
>> The APA also authorizes judicial review of agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise unlawful." 5 U.S.C. § 706(2)(A) (1982). Because § 301 provides authority for agency heads to issue rules of procedure in dealing with requests for information and testimony, an agency head will still be making the decisions on whether to comply with such requests in the first instance. Thus, review under § 706(2)(A) will be available. However, we acknowledge that collateral APA proceedings can be costly, time-consuming, inconvenient to litigants, and may "effectively eviscerate [ ]" any right to the requested testimony. *In re Recalcitrant Witness Boeh*, 25 F.3d at 770 n. 4 (Norris, J., dissenting) (if the plaintiff had a right to obtain the witness' testimony, "he had a right to obtain it when he needed it, which in this case was immediately, when the trial was still going on"). Therefore, the need for district court review in such instances is all the more compelling.
>
> *Exxon*, 34 F.3d at 780 n.11. The Court believes this language is best interpreted as standing for the proposition that, while an APA collateral action may be available, it is not the only way to obtain review of an agency decision regarding a discovery dispute. As the Ninth Circuit plainly articulated, "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action." *Id*. at 780. At bottom, *Exxon* stands for the proposition that the fact that an APA claim might also be outstanding and worthy of resolution at some point should not stand in the way of a court resolving a discovery dispute in a timely manner pursuant to the Federal Rules of Civil Procedure. What the Ninth Circuit did not discuss, and from what the Court can tell has yet to discuss anywhere, is what the consequences of the Rules-based discovery decision might be for any outstanding APA claim. Might it not moot that claim? Perhaps, but perhaps not. There might be other aspects to an APA challenge to an agency's housekeeping determination regarding disclosure of evidence that could survive a Rules-based discovery decision. If a discovery ruling required only narrow disclosures, for example, a plaintiff might still want to move forward with a challenge under the APA asserting that the housekeeping determination was arbitrary, capricious or contrary to law. All of this is to say that, while the dual track suggested by *Exxon* is somewhat perplexing, it is not nonsensical. In this Circuit, treating a discovery dispute like the one presented here under the Federal Rules is not only lawful, <u>it is required</u>. The magistrate judge properly concluded that the underlying discovery dispute could and should be resolved pursuant to the Federal Rules.

ECF No. 1244 at 3-7 (emphasis in original, footnotes omitted)

Federal Defendants' motion assumes without much discussion that this Court has already signaled its intent to find that the rules-based decision issued by the magistrate judge (and adopted by this Court) moots the seventh cause of action. This is not the case, as indicated by the Court's own inquiries quoted above. The questions the Court raised previously represent only some of the relevant issues. To be more direct, one question that the Court did not raise is this: If the seventh claim for relief is a valid one over which this Court has subject matter jurisdiction, why would the rules-based decision, which gave Plaintiffs the relief they requested, not <u>also</u> constitute success on the merits of the APA claim? The parties do not address this issue in any detail. The Court is cognizant of the fact that Federal Defendants do argue that the Court lacks subject matter jurisdiction over the seventh claim for relief, a contention raised seriously for the first time in Federal Defendants' reply. *See* ECF No. 1390 at 17-18. Ninth Circuit authority suggest that where the APA is relied upon only as a waiver of sovereign immunity, a court must have independent subject matter jurisdiction over the underlying claim (e.g., a claim premised on a constitutional amendment). *See Navajo Nation*, 876 F.3d at 1168-69. Although Federal Defendants have previewed their position(s) on these subjects, the Court believes it will be beneficial if they clarify and refine their arguments in a supplemental brief. Most critically, Plaintiffs will then have an opportunity to respond directly to what may amount, at least in part, to a motion to dismiss the seventh claim for lack of subject matter jurisdiction.

Accordingly, and for the reasons set forth above, supplemental briefing is required. On or before March 6, 2020, Federal Defendants shall file a supplement to their motion to dismiss no longer that ten pages in length addressing the issues outlined above and any other justiciability issues. Plaintiffs may file a response, also no longer than ten pages in length, on or before April 10, 2020.

IT IS SO ORDERED.

Dated: **January 28, 2020**         /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE